No. 25-70014

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

CARLOS MANUEL AYESTAS,
also known as Dennis Zelaya Corea,

*Petitioner-Appellee*,

vs.

HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE,

*Defendant-Appellant.*

## APPELLEE'S OPPOSED MOTION TO DISMISS

On appeal from the United States District Court
Southern District of Texas, Houston Division, Case No. 4:09-CV-2999
Hon. Christina A. Bryan, United States Magistrate Judge

Lee B. Kovarsky
PHILLIPS BLACK, INC.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
CORNELL LAW SCHOOL
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

*Attorneys for Petitioner-Appellee*

# CERTIFICATE OF INTERESTED PERSONS

No. 25-70014: *Ayestas v. Harris County District Attorney's Office*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Petitioner - Appellee:**

Carlos Manuel Ayestas
*Represented by:*

Lee B. Kovarsky
Phillips Black, Inc.

Sheri Lynn Johnson
Cornell Law School

**Defendant - Appellant:**

Harris County District Attorney's Office
*Represented by:*

Sean Teare
Harris County District Attorney

Meagan T. Scott
Assistant District Attorney

**Other Interested Entities:**

Texas Department of Criminal Justice

*/s/ Lee B. Kovarsky*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.....................................................................................iii

INTRODUCTION AND GROUNDS FOR RELIEF................................................1

BACKGROUND.......................................................................................................2

    I.     FACTUAL BACKGROUND.....................................................................2

    II.    PROCEDURAL HISTORY......................................................................4

ARGUMENT ...........................................................................................................7

    I.     THIS COURT LACKS JURISDICTION TO HEAR THIS
           APPEAL BECAUSE HCDA FAILED TO TIMELY
           OBJECT TO THE DISCOVERY ORDER ..........................................7

    II.    THE DISCOVERY ORDER IS NOT APPEALABLE
           UNDER THE COLLATERAL-ORDER DOCTRINE......................12

CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A-Mark Auction Galleries v. Am. Numismatic Ass'n*,
233 F.3d 895 (5th Cir. 2000) .............................................................. 17

*Am. Trucking Associations, Inc. v. Alviti*,
14 F.4th 76 (1st Cir. 2021) ................................................................. 20

*Armstrong v. McAlpin*,
625 F.2d 433 (1980) .......................................................................... 15

*Ayestas v. Davis*,
584 U.S. 28 (2018) ...................................................................... 3, 5, 6

*Bellum v. PCE Constructors, Inc.*,
407 F.3d 734 (5th Cir. 2005) ............................................................. 11

*Carpenter v. Mohawk Indus. Inc.*,
541 F.3d 1048 (11th Cir. 2008), *aff'd*, 558 U.S. 100 (2009) ...................... *passim*

*Castillo v. Wal-Mart Stores Tex., LLC*,
2024 WL 4531080 (W.D. Tex. Oct. 8, 2024) ...................................... 18

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) .................................................................... 13, 15

*Diamantis v. Milton Bradley Co.*,
772 F.2d 3 (1st Cir. 1985) .................................................................. 10

*Digit. Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) .......................................................................... 16

*Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*,
242 F. Supp. 3d 576 (S.D. Tex. 2017) ................................................ 17

*Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer,
LLP*, 816 F.3d 1319 (11th Cir. 2016) ................................................. 15

*Esquivel v. Kendrick*,
2023 WL 5584168 (5th Cir. Aug. 29, 2023) ...................................... 7-8

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981) .......................................................................... 15

*Global Tubing, LLC v. Tenaris Coiled Tubes, LLC*,
621 F. Supp. 3d 757 (S.D. Tex. 2022) ................................. 18

*Granite State Ins. Co. v. Pulliam Enters., Inc.*,
2015 WL 4946156 (N.D. Ind. Aug. 18, 2015) ................................. 11

*Green v. Bock Laundry Mach. Co.*,
490 U.S. 504 (1989) ................................. 11

*Gregg v. Linder*,
349 F.3d 860 (5th Cir. 2003) ................................. 8

*Henry v. Lake Charles Am. Press, LLC*,
566 F.3d 164 (5th Cir. 2009) ................................. 13, 19

*In re U.S. Dep't of Educ.*,
25 F.4th 692 (9th Cir. 2022) ................................. 20

*John v. State of La.*,
899 F.2d 1441 (5th Cir. 1990) ................................. 18

*La Union Del Pueblo Entero v. Abbott*,
68 F.4th 228 (5th Cir. 2023) ................................. 17

*LeClerc v. Webb*,
419 F.3d 405 (5th Cir. 2005) ................................. 9

*Lee v. Plantation of La., LLC*,
454 F. App'x 358 (5th Cir. 2011) ................................. 9, 19

*Leonard v. Martin*,
38 F.4th 481 (5th Cir. 2022) ................................. *passim*

*Manning v. Walgreen Co.*,
638 F. Supp. 3d 730 (S.D. Tex. 2022) ................................. 18

*Martin v. Halliburton*,
618 F.3d 476 (5th Cir. 2010) ................................. 13, 19

*Mayfield v. Butler Snow, LLP*,
75 F.4th 494 (5th Cir. 2023) ................................. 9

*MDK, Inc. v. Mike's Train House, Inc.*,
27 F.3d 116 (4th Cir. 1994) ........................................................ 18

*Merritt v. Int'l Bhd. of Boilermakers*,
649 F.2d 1013 (5th Cir. 1981) .................................................... 18

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
2 F.3d 1397 (5th Cir. 1993) ................................................... 14, 20

*Nat'l Savings Bank of Albany v. Jefferson Bank*,
127 F.R.D. 218 (S.D. Fla. 1989) ................................................. 11

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*,
591 F.2d 174 (2d Cir. 1979) ....................................................... 20

*Nken v. Holder*,
556 U.S. 418 (2009) ................................................................... 7

*Sealed Appellees v. Sealed Appellants*,
112 F.3d 173 (5th Cir. 1997) ...................................................... 15

*SEC v. Voight*,
2023 WL 1778178 (5th Cir. Feb. 6, 2023) ..................................... 8

*Shields v. Sturm, Ruger & Co.*,
864 F.2d 379 (5th Cir. 1989) ................................................. 16, 17

*Singletary v. B.R.X., Inc.*,
828 F.2d 1135 (5th Cir. 1987) ..................................................... 8

*Stancu v. Hyatt Corp./Hyatt Regency Dallas*,
791 F. App'x 446 (5th Cir. 2019) ............................................. 8, 12

*United States v. Cline*,
566 F.2d 1220 (5th Cir. 1978) ..................................................... 8

*United States v. Renfro*,
620 F.2d 497 (5th Cir. 1980) ................................................ 8, 9, 12

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
913 F.3d 443 (5th Cir. 2019) ............................................ 13, 14, 16

*Whole Woman's Health v. Smith*,
  896 F.3d 362 (5th Cir. 2018) ............................................................... 19

*Will v. United States*,
  389 U.S. 90 (1967) ............................................................................... 15

**Statutes & Other Authorities:**

12 Wright & Miller, *Fed. Practice & Proc.* § 3068.2 (4th ed.) ............................. 18

15B Wright, Miller & Cooper, *Fed. Practice & Proc.* § 3031 (4th ed.) ............... 12

28 U.S.C. § 636(b)(1)(A) ........................................................................ 18

28 U.S.C. § 636(c)(1) ............................................................................... 8

28 U.S.C. § 636(c)(3) ............................................................................... 8

28 U.S.C. § 1291 .............................................................................. 1, 15

Fed. R. Civ. P. 71 ............................................................................ 11, 12

Fed. R. Civ. P. 72 ............................................................................ 10, 11

Fed. R. Civ. P. 72(a) ..................................................................... *passim*

# INTRODUCTION AND GROUNDS FOR RELIEF

A magistrate judge granted Petitioner Carlos Ayestas's motion to compel discovery from the Harris County District Attorney's Office's ("HCDA"). ROA.3172-3181 (the "Discovery Order"). The Discovery Order was adverse to HCDA's assertion of the work-product and deliberative process privileges, as well a general assertion that the discovery was burdensome.[1] HCDA lodged no objections with the district court; instead, and in clear violation of Fed. R. Civ. P. 72(a) and this Court's precedent, HCDA skipped the district judge and appealed directly to the Fifth Circuit.

This interlocutory appeal should be dismissed without further briefing for two reasons. First, the Fifth Circuit's black-letter law makes clear that this Court lacks jurisdiction to review magistrate-judge orders not first appealed to the district court. *See* ARGUMENT Part I, *infra*. Second, the Discovery Order is neither a final decision appealable under 28 U.S.C. § 1291 nor an order appealable under the collateral-order doctrine, which specifies only a narrow category of interlocutory orders eligible for prejudgment appeal. *See* ARGUMENT Part II, *infra*. A prompt order dismissing the appeal will ensure that this Court's time is not wasted and will

---

[1] Ayestas cites to the Record on Appeal ("ROA") where possible. All "ECF No." citations are to docket entries in *Ayestas v. Guerrero*, No. 4:09-cv-02999 (S.D. Tex.).

allow the parties to expeditiously resolve issues before the district court.[2]

## BACKGROUND

This case has a lengthy procedural history, and what follows is only the background necessary to understand the discovery dispute between Ayestas and HCDA.

## I.   FACTUAL BACKGROUND

On September 5, 1995, Santiaga Paneque was found dead in Houston, Texas. ROA.2545. Law enforcement identified Ayestas and two others as persons of interest. *Id.* At that time, the Harris County District Attorney was John B. "Johnny" Holmes, Jr., and Kelly Siegler was his Court Chief. *Id.* Before Ayestas was arrested, Siegler wrote, and Holmes signed, an internal "Capital Murder Summary" (the "Siegler Memorandum") on behalf of HCDA. *Id.*; *see* ROA.8090-8092 (Siegler Memorandum). The Siegler Memorandum recommended that HCDA capitally charge and seek death against Ayestas. ROA.2545, 8092.

The Siegler Memorandum identified two facts to support this recommendation: that Paneque was "a helpless 67 year old woman" and that "the Defendant is not a citizen." ROA.2545, 8092; *see also* ROA.2316. HCDA ultimately secured a capital conviction, and Ayestas was sentenced to death. ROA.8003-8022

---

[2] Ayestas has contacted all other parties pursuant to 5th Cir. Rule 27.4. HCDA opposes the relief sought herein.

(*Ayestas v. State*, No. AP-72,928 (Tex. Crim. App. 1998) (affirming sentence and conviction)); *see also* ROA.2314. The conviction only required that Ayestas was party to the robbery during which the murder occurred. ROA.8010 ("[S]ufficient evidence exists that could lead a rational trier of fact to the conclusion that a murder occurred during the commission of a burglary and appellant was directly involved as a party.").

The Siegler Memorandum was never disclosed to Ayestas because HCDA treated it as work product. Br. in Opp'n at 18 n.10, *Ayestas v. Davis*, 584 U.S. 28 (2018) (No. 16-6795). It was discovered nearly two decades later, in December 2014, when HCDA inadvertently left it in the case file provided to Ayestas's habeas counsel. *See* ROA.1150-1153. Ayestas immediately sought to amend his initial federal petition to add Eighth and Fourteenth Amendment claims, and he spent years litigating his entitlement to do so. *See* ROA.2316-2317.

He ultimately succeeded. On August 12, 2021, the district court granted Ayestas leave to file an amended habeas petition with claims arising out of the Siegler Memorandum. ROA.1609-1617, 2317. The court explained that the Siegler Memorandum "raises questions about whether Ayestas's national origin was a factor" in the decision to seek the death penalty, and that declining to address the merits would result in a "substantial risk of injustice" and "a substantial risk of undermining public confidence in the judicial process." ROA.1616. On September

28, 2021, Ayestas filed his amended habeas petition with claims based on the newly discovered evidence. ROA.1707-1734.

## II.   <u>PROCEDURAL HISTORY</u>

On August 31, 2022, Ayestas moved for discovery under Rule 6(b) of the Rules Governing Section 2254 Cases in the United States District Courts, which the district court granted on March 16, 2023. ROA.2196-2206 (motion); ROA.2314-2330 (order). In his discovery motion, Ayestas sought charging memoranda that HCDA created during Holmes's and Siegler's tenures, which are probative of Ayestas's underlying constitutional claims in that such information would "allow [Ayestas] to ascertain the HCDA's treatment of pertinent comparators." ROA.2201. Holmes was the District Attorney from 1979 to 2000, and Siegler remained at HCDA until 2008. (The briefing in this litigation refers to 1979 to 2008 as the "Covered Period.") In granting Ayestas's motion, the court found that Ayestas "presented evidence raising questions as to whether the decision to seek the death penalty against him was based on constitutionally impermissible factors." ROA.2329.

A month after the district court granted Ayestas's discovery motion, the Texas Department of Criminal Justice ("TDCJ") filed a petition for mandamus challenging the court's authority to order discovery and to adjudicate the Siegler Memorandum claims. *See* Pet. for Writ of Mandamus, *In re Bobby Lumpkin*, No. 23-20169 (5th Cir. Apr. 20, 2023). This Court unanimously denied TDCJ's petition. Order, *In re*

*Bobby Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023). The district court ordered discovery to resume and authorized Ayestas to serve discovery requests by August 7, 2023. ROA.2379-2380.

Acting pursuant to that authority, Ayestas served a subpoena on HCDA on August 7, 2023. He sought (among other things) any and all charging memoranda for HCDA defendants charged, during the Covered Period, with murder or capital murder. ROA.3116-3127, 2991; *see also* ROA.3173 (Discovery Order describing Ayestas's subpoena). He also sought case files for relevant Hispanic and non-citizen defendants, including Ayestas. ROA.2991, 3124-3127. On August 18, 2023, HCDA objected, asserting work-product and deliberative-process privileges, and that discovery was unduly burdensome. *See* ROA.3011-3014. The parties met and conferred on September 11, 2023, and HCDA reiterated its objections. ROA.3016-3020. At that time, Ayestas was actively engaged in discovery efforts with TDCJ and the Harris County District Clerk's Office to obtain the information at issue in this motion without burdening HCDA. ROA.3173.

In the spirit of compromise, Ayestas narrowed his request to HCDA. Specifically, on November 21, 2024, Ayestas served a further narrowed request for charging memoranda and case files. *See id.*; ROA.3015-3020. HCDA refused to negotiate and reiterated its general objections. *See* ROA.3173, 3022-3026. On February 12, 2025, Ayestas again narrowed his request to specific memoranda

identified from discovery he obtained from TDCJ, the primary party to the habeas proceeding. *See* ROA.3035-3036. The next day, HCDA reiterated its privilege assertion. *See id.* Facing a categorical refusal to turn over any information whatsoever, Ayestas moved to compel the discovery from HCDA the following day. ROA.2985-3009.

On June 3, 2025, after the parties briefed Ayestas's motion to compel, the magistrate judge granted it. ROA.3181. HCDA had argued that compliance would be "unduly burdensome," ROA.3109-3112, but it failed to explain the burden with any specificity or to offer any compromise, *id.* (Ayestas had said he would be willing to negotiate the scope of his request. ROA.3007.) The magistrate judge therefore found HCDA's arguments "only conclusory" and without "any supporting evidence." ROA.3175. The magistrate judge also determined that the documents are not protected by the work-product or deliberative-process privileges, and that they "must be produced." ROA.3178, 3181. HCDA was ordered to produce by July 3, 2025:

> (i) charging memoranda created from 1979 to 2008 (the "Covered Period") for comparator defendants charged with capital murder who are sufficiently likely to be non-white, foreign nationals, or non-citizens;
>
> (ii) charging memoranda from the Covered Period for comparator defendants charged with capital murder of victims with certain demographic attributes; [and]
>
> (iii) full access to the prosecutorial file from the Ayestas prosecution,

including any material that the HCDA treats as privileged and confidential."

ROA.3181. Pursuant to Rule 72(a), HCDA's deadline to object to the Discovery Order was June 17, 2025. However, HCDA never objected to the Discovery Order.

Instead, on June 27, 2025, HCDA filed a Notice of Appeal to this Court, ROA.3182-3183, and a district court motion to stay the Discovery Order, ROA.3184-3200 (the "Stay Motion"). Litigation over that stay remains pending.[3]

## ARGUMENT

## I. THIS COURT LACKS JURISDICTION TO HEAR THIS APPEAL BECAUSE HCDA FAILED TO TIMELY OBJECT TO THE DISCOVERY ORDER.

Rule 72(a) provides that a party "may serve and file objections within fourteen days" of any order that is "not dispositive," but that "[a] party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a). HCDA's failure to lodge a timely Rule 72(a) objection therefore deprives this Court of jurisdiction. *See Esquivel v. Kendrick*, 2023 WL 5584168, at *3 (5th Cir. Aug. 29, 2023) (holding that a party "may not preserve as error a [purported] defect in a

---

[3] On July 1, 2025, before Ayestas's deadline to oppose HCDA's stay request, Magistrate Judge Bryan granted HCDA's motion to stay. ROA.3202 (the "Stay Order"). On July 15, 2025, Ayestas moved to reconsider the Stay Order because no stay is warranted under the factors set forth in *Nken v. Holder*, 556 U.S. 418, 425-26 (2009), and because this Court lacks jurisdiction over HCDA's appeal, making a stay unnecessary. ECF No. 212. On August 5, 2025, HCDA responded in opposition to Ayestas's motion for reconsideration. ECF No. 213. On August 12, 2025, Ayestas replied in support. ECF No. 215.

magistrate judge's nondispositive order that is not timely objected to within fourteen days of service" (citing Fed. R. Civ. P. 72(a))); *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980) ("appellate courts are without jurisdiction to hear appeals directly from federal magistrates").[4]

This Court's precedent emphasizes how *well-settled* the rule is. Indeed, as this Court has stated, "[a]ppeals from the magistrate's ruling must be to the district court," and "the law is *settled* that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." *Singletary*, 828 F.2d at 1137 (emphasis added); *see also Renfro*, 620 F.2d at 500-01 (observing that the "law is settled"); *United States v. Cline*, 566 F.2d 1220, 1221 (5th Cir. 1978) ("This Court is without jurisdiction to hear appeals from decisions of the United States Magistrates."). The law has been well-settled for nearly fifty years because "[a] magistrate judge's order is not a final order and it does not fall into any of the other categories that would make it appealable." *Lee v. Plantation of La., LLC*, 454 F. App'x 358, 359 (5th Cir.

---

[4] *See also SEC v. Voight*, 2023 WL 1778178, at *1 (5th Cir. Feb. 6, 2023) (holding that a party who failed to timely object to a magistrate judge's non-dispositive order pursuant to Rule 72(a), "as is required to preserve such an objection," had "forfeited th[e] issue by failing to do so"); *Stancu v. Hyatt Corp./Hyatt Regency Dallas*, 791 F. App'x 446, 453 (5th Cir. 2019) (same, and concluding that a party "may not assign as error a defect in [a nondispositive] order not timely objected to" (quoting Fed. R. Civ. P. 72(a))); *Gregg v. Linder*, 349 F.3d 860, 862 (5th Cir. 2003) ("The only circumstance in which an order of a magistrate judge may be appealed directly to this Court is described in 28 U.S.C. § 636(c)(1) and (3)."); *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1137 (5th Cir. 1987) (because "pretrial matters referred by a trial judge to a magistrate must be appealed first to the district court," "[w]e therefore cannot now address the issue of whether the magistrate's granting of the protective order was error").

2011) (dismissing appeal for lack of jurisdiction because appellant failed to object to magistrate judge's order in the district court); *see also Renfro*, 620 F.2d at 500 (same, noting that failure to appeal magistrate judge's ruling to the district court "deprived the trial judge of his ability to effectively review the magistrate's holding"). This "well-settled" bar involving magistrate judge orders is an outcrop of the general rule that appellate courts only decide issues adequately raised below. *See, e.g.*, *Mayfield v. Butler Snow, LLP*, 75 F.4th 494, 502 (5th Cir. 2023) ("Plaintiffs challenge discovery orders made by a magistrate judge. At no point did the district court judge ever consider the discovery issues raised by the Plaintiffs. 'The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates.'" (citing *Renfro*, 620 F.2d at 500)).

In its stay motion below, HCDA did not cite to any of this Court's Rule 72(a) precedent; instead, it concocted an interpretation of Rule 72(a) that restricts the appellate rights of *parties* but leaves *non-parties* completely unrestricted. *See* ECF No. 213 at 2.[5] HCDA provided no authority for this interpretation because there is none. While Rule 72(a) refers to "parties," it is clear that "Rule 72(a) 'parties' are the parties before the magistrate, not the parties to the litigation from which the

---

[5] HCDA made this argument for the first time in response to Ayestas's motion for reconsideration of the Stay Order, which is improper. *See LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005) ("[a] motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments").

nondispositive matter originated." *Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4 n.2 (1st Cir. 1985). Indeed, "[t]o read the rule narrowly … as permitting a party to object to rulings involving only third party witnesses ignores the rest of the language of the rule and, more importantly, well-settled standing doctrine." *Id.*

The practical implications of HCDA's novel Rule 72 interpretation are absurd and should be rejected. If the Court were to accept HCDA's novel interpretation, that would mean:

- A party to the underlying proceeding would have fourteen days to "serve and file objections" to the magistrate judge's order under Rule 72(a), but a non-party would face no such time limit.

- A party could not "assign[] as error a defect in the order not timely objected to," but a non-party would be exempt from that forfeiture rule.

- A party's objections to magistrate judge determinations could be set aside only if they are "clearly erroneous" or "contrary to law" under Rule 72(a), but there would be no such standard for non-party objections.

- A party to the underlying proceeding would have to "promptly arrange for transcribing the record" for magistrate judge recommendations on dispositive matters, but there would be no such burden for a non-party.

The Rules Committee did not recommend, and Congress did not enact, such absurdities. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989)

(rejecting "odd" textual interpretation of Rule passed under the Rules Enabling Act); *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 740 (5th Cir. 2005) (rejecting interpretation of text that produces an "absurd result"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 234 (2012) (discussing the "absurdity canon").

HCDA's theory concerning the applicability of Rule 72 is also inconsistent with existing practice. If non-parties were exempt from Rule 72, there would be no reason for courts to enforce Rule 72(a)'s time limits against them, *see, e.g.*, *Nat'l Savings Bank of Albany v. Jefferson Bank*, 127 F.R.D. 218 (S.D. Fla. 1989), or to forbid parties from attempting to object on their behalf, *see, e.g.*, *Granite State Ins. Co. v. Pulliam Enters., Inc.*, 2015 WL 4946156, at *3 (N.D. Ind. Aug. 18, 2015). Under HCDA's reimagined rule, prejudgment discovery would endlessly prolong litigation as non-parties receiving discovery requests would face no deadlines for challenging adverse orders.

Finally, even if Rule 72 did not apply to HCDA because it was not a "party" within that Rule's meaning, HCDA would still lose because Fed. R. Civ. P. 71 makes clear that Rule 72 is enforced the same way against non-parties: "[W]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." Thus, whether by force of Rule 72 alone or in combination with Rule 71, the procedures specified in Rule 72 apply to

HCDA even though it is not a formal party *to the underlying litigation*. This is "manifest common sense" because "nonparties have recourse to, and are subject to, process in the same measure as parties." 15B Wright, Miller & Cooper, *Fed. Practice & Proc.* § 3031 (4th ed.).

By failing to timely object to the Discovery Order within fourteen days of being served with it—as Rule 72(a) requires—HCDA has deprived this Court of jurisdiction over the interlocutory appeal.[6] This Court should dismiss the appeal on this basis alone, and it need not even reach any other question, including the applicability of the collateral-order doctrine.

## II.  THE DISCOVERY ORDER IS NOT APPEALABLE UNDER THE COLLATERAL-ORDER DOCTRINE.

The Discovery Order is not final and appealable, and the collateral-order doctrine does not provide an alternative source of jurisdiction to hear the appeal. As explained below, the collateral-order doctrine applies *categorically*, whereby certain *categories* of judicial orders have been made subject to prejudgment appeal. This Court has made clear that the collateral-order doctrine does not provide it with

---

[6] Even if HCDA later appeals a final order in this case, this Court still would have no jurisdiction over the now-forfeited objections to the Discovery Order. *See Renfro*, 620 F.2d at 500 ("[W]hile Renfro did appeal the magistrate's ruling to the district court, he did not do so until after trial. This delay deprived the trial judge of his ability to effectively review the magistrate's holding. In essence then, defendant is now appealing a magistrate's decision directly to this Court. The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates."); *Stancu*, 791 F. App'x at 453 (no appellate jurisdiction over magistrate judge's sanction order because appellee failed to object so issue was not preserved).

prejudgment jurisdiction to review the *category* of discovery orders adverse to claims of attorney-client privilege, work-product immunity, or burden.

The collateral-order doctrine permits prejudgment appeals for only a "narrow class of decisions" that are "'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). "To fall within *Cohen*'s collateral order doctrine, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009) (internal quotation marks and citations omitted). As emphasized above, this determination is made categorically—i.e., by "looking only at whether the class of claims, taken as a whole, can be vindicated by other means than immediate appeal"—not case-by-case. *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019) (quoting *Martin v. Halliburton*, 618 F.3d 476, 483 (5th Cir. 2010)). The "bar set by the collateral order doctrine is high," *id.*, and HCDA does not clear it here.

*Mohawk* is the leading modern case, and it holds that, as a category, "orders adverse to the attorney-client privilege" do not "qualify for immediate appeal under the collateral-order doctrine." 558 U.S. at 103. This is because, as to that category,

"[p]ostjudgment appeals, together with other review mechanisms, suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege." *Id.* So "[t]he sole fact '[t]hat a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment … has never sufficed' to make a decision effectively unreviewable" and therefore appealable under the collateral-order doctrine. *Vantage Health Plan*, 913 F.3d at 449.

This principle is repeated in *Leonard*, which is a case involving a discovery order adverse to a non-party. *Leonard v. Martin,* 38 F.4th 481, 484 (5th Cir. 2022).[7] The *Leonard* court observed that "this court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order." *Id.* at 487; *see also Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1405 n.16 (5th Cir. 1993) ("A discovery order, even one directed at a non-party, is not a final order and hence not appealable."). After acknowledging *Mohawk*'s prejudgment bar on interlocutory appeals that "can be vindicated by other means" than immediate appeals—such as interlocutory appeals

---

[7] HCDA has asserted that *Leonard* does not "concern the application of the doctrine to a non-party." ECF No. 213 at 6. That is wrong. In *Leonard*, a non-party (Dr. Joseph Turnipseed) filed the appeal, and this Court "DISMISS[ed] *Turnipseed's* appeal for lack of jurisdiction" and "conclude[d] that an order denying this *nonparty's* motion to quash is not reviewable under the collateral order doctrine." *Leonard*, 38 F.4th at 485, 491 (emphasis added).

seeking to enforce claims of attorney-client privilege—*Leonard* extended *Mohawk*'s prejudgment bar to the category of orders denying a motion to quash a subpoena on burden grounds. 38 F.4th at 486, 488 ("In our view, the class of orders at issue here is those denying a nonparty's motion to quash a subpoena on undue burden grounds." (citing *Mohawk*, 558 U.S. at 108 (defining the class of claims as "orders adverse to the attorney-client privilege")). And *Leonard* also makes clear that appeals seeking to enforce claims of *work-product immunity* are to be treated the same way: "[C]ases are legion that deny immediate appeals under the collateral order doctrine in an array of discovery contexts." *Id.* at 487 & n.2 (citing *Sealed Appellees v. Sealed Appellants*, 112 F.3d 173, 174 (5th Cir. 1997) (discovery order compelling production over attorney work-product objection)).[8]

---

[8] *See also*, *e.g.*, *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981) (holding an order refusing to disqualify counsel is not appealable under the collateral-order doctrine because "the potential harm" from an erroneous order "does not 'diffe[r] in any significant way from the harm resulting from … orders requiring discovery *over a work-product objection*"; and "[p]ermitting wholesale appeals on that ground" would be "an unjustified waste of scarce judicial resources" and would "transform the limited exception" in *Cohen* "into a license for broad disregard of the finality rule imposed by Congress in § 1291") (emphasis added) (first quoting *Armstrong v. McAlpin*, 625 F.2d 433, 438 (1980); and then quoting *Will v. United States*, 389 U.S. 90, 98, n.6 (1967)); *see also Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1325 (11th Cir. 2016) (recognizing that "[t]here is some difference between exposing attorney work product and exposing attorney client privilege," but declining to extend *Mohawk* because "we are not convinced that the difference favors more interlocutory protection for work product"); *Carpenter v. Mohawk Indus. Inc.*, 541 F.3d 1048, 1053 (11th Cir. 2008) (except in cases involving the assertion of governmental privilege, the court has "never exercised jurisdiction under the collateral order doctrine to review any discovery order involving any privilege"), *aff'd*, 558 U.S. 100 (2009).

For *any* category of judicial orders, there is a strong presumption in favor of post-judgment appeals. *Mohawk* and *Leonard* rather plainly reflect where third-party discovery disputes sit within the hierarchy of interlocutory urgency. "[T]he Supreme Court has repeatedly admonished lower courts that the collateral order doctrine must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.'" *Leonard*, 38 F.4th at 486 (quoting *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

HCDA asserts a basis for urgency that courts have repeatedly deemed insufficient for prejudgment review. Specifically, HCDA argues that it would otherwise have to produce documents over which it claims privilege, *see* ROA.3188, but this Court has held that "even an order to disclose potentially privileged material is … insufficient by itself to provide jurisdiction." *Vantage Health Plan*, 913 F.3d at 449 (citing *Mohawk*, 558 U.S. at 108). In any event, court-ordered production adverse to claims of attorney-client privilege or work-product immunity does not waive those protections. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (privilege is waived only when the "attorney discloses the information to the court voluntarily or makes no objection when it is offered"); *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 242 F. Supp. 3d 576, 578 (S.D. Tex. 2017) (citing *Shields* in support of same rule for work product).

The categorical rule against prejudgment appeal of discovery orders like the

one here exists because the discovery recipient would ordinarily have adequate alternative remedies. *Leonard*, 38 F.4th at 488. Specifically, discovery orders adverse to claims of attorney-client privilege, work-product immunity, and burden are not immediately appealable because parties in that position are supposed to refuse compliance and appeal any contempt sanction. *See Leonard*, 38 F.4th at 488; *A-Mark Auction Galleries v. Am. Numismatic Ass'n*, 233 F.3d 895, 898-99 (5th Cir. 2000).[9]

HCDA argued below that the Discovery Order was actually a dispositive order because it resolved the only claim affecting HCDA—and that it therefore satisfied the first prong of the collateral-order doctrine. ECF No. 213 at 4. As *Leonard* makes clear, however, that understanding of what "dispositive" means is incorrect; in this Circuit, discovery matters are non-dispositive. *See, e.g.*, *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981) ("[D]iscovery issues are by

_____

[9] Although HCDA asserted below that the legislative privilege is "much more analogous" to the work-product issues in this dispute than is the attorney-client privilege, ECF No. 213 at 6-7, the legislative privilege is unique, and it reflects values far afield from those in garden variety work-product disputes. The "importance" of the legislative privilege—as described by the case that HCDA cites—"derives from [its purpose], which is not to protect against disclosure in general, but to foster the 'public good' by protecting lawmakers from 'deterrents to the uninhibited discharge of their legislative duty.'" *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023). So, the court explained, "[r]equiring legislators to negotiate protective orders or to suffer contempt proceedings would diminish that protection [because] litigation itself distracts lawmakers from the job that voters sent them to do." *Id.* HCDA cannot claim that prosecutors, who must ensure justice is done under strict ethical and legal obligations, must be free to discharge their duties without inhibition, or that negotiating protective orders would distract a prosecutor from performing their job.

definition pretrial matters," and a magistrate judge has "the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders."); *Castillo v. Wal-Mart Stores Tex., LLC*, 2024 WL 4531080, at *1 (W.D. Tex. Oct. 8, 2024) (citing 12 Wright & Miller, *Fed. Practice & Proc.* § 3068.2 (4th ed.) ("Motions on discovery matters are generally non-dispositive.")); *see also John v. State of La.*, 899 F.2d 1441 (5th Cir. 1990) (motion for sanctions was non-dispositive); *Global Tubing, LLC v. Tenaris Coiled Tubes, LLC*, 621 F. Supp. 3d 757 (S.D. Tex. 2022) (same); *Manning v. Walgreen Co.*, 638 F. Supp. 3d 730 (S.D. Tex. 2022) (motion to strike expert testimony was a non-dispositive matter); *cf. MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116 (4th Cir. 1994) (order compelling non-party witness to provide business records was not immediately appealable under collateral-order doctrine regardless of witness's non-party status). If this precedent applied only to parties to the underlying proceeding, then every case would grind to a halt as third-party deponents and subpoena recipients engaged in piecemeal litigation over their own discovery disputes.

Even if the Discovery Order were dispositive, that fact would not support HCDA's misguided application of the collateral-order doctrine. If this Court agrees that the Discovery Order was non-dispositive, then HCDA was "required to appeal to the district court to preserve the issue for appeal in this court." *Lee*, 454 F. App'x at 360. And if the order were dispositive, then it "constituted no more than a Report

and Recommendation to which Appellants had to file objections in the district court, and which never became an 'order' without a de novo district court ruling." *Id.* "Either way, there was no order over which this court may exercise appellate jurisdiction." *Id.*

There are other Fifth Circuit cases permitting interlocutory review of discovery orders adverse to other types of privilege, but those categories are distinct from orders adverse to claims of attorney-client privilege, work-product immunity, and burden. *See*, *e.g.*, *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) ("the constitutional protection of religious belief and practice as well as citizens' right to advocate sensitive policies in the public square"). Specifically, "the forms of immunity that may be vindicated on appeal at an early stage through collateral order review are those that involve 'not simply a right to prevail, but a right not to be tried.'" *Martin*, 618 F.3d at 483 (quoting *Henry*, 566 F.3d at 177). Here, HCDA does not have immunity from suit, so the collateral-order doctrine does not provide grounds for HCDA's appeal of the Discovery Order.

And there is more that distinguishes interlocutory review of attorney-client privilege, work-product immunity, and burden claims. This Circuit has explained that discovery orders adverse to these claims do not get prejudgment review because such claims are within the unique competence of district courts. District courts have "general familiarity … with standards governing the attorney-client privilege, a fact

that heightens courts' ability to review materials for which privilege is claimed; mitigates the potential for lower court discovery errors; and lessens the novelty of the issues." *Id.* at 368 (citing *Mohawk*, 558 U.S. at 110).[10] The Discovery Order is not appealable under the collateral-order doctrine, and the Court should therefore dismiss HCDA's appeal.

## **CONCLUSION**

For the foregoing reasons, this appeal should be dismissed and returned to the district court for expeditious processing and consideration of the underlying issues in the case.

Date: August 20, 2025                                     Respectfully submitted,

---

[10] In its motion to stay, HCDA referenced the deliberative-process privilege, but did not cite to anything indicating that a discovery order adverse to that privilege falls within the collateral-order doctrine. *See* ROA.3192. There appears to be no binding authority suggesting that an assertion of deliberative-process privilege can be appealed before judgment—let alone any such authority announced after *Mohawk*. *See, e.g., Am. Trucking Ass'ns, Inc. v. Alviti*, 14 F.4th 76, 83-84 (1st Cir. 2021) (rejecting interlocutory jurisdiction over claim of deliberative process privilege); *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 591 F.2d 174, 181 (2d Cir. 1979) (same regarding similar assertion of "governmental privilege"); *In re U.S. Dep't of Educ.*, 25 F.4th 692, 697, 706 (9th Cir. 2022) (using mandamus jurisdiction rather than interlocutory appeal for prejudgment review of deliberative-process claim). As a result, discovery orders adverse to claims of deliberative process are subject to the standard Fifth Circuit rule that non-parties cannot obtain prejudgment appeal of discovery orders without first incurring a contempt citation. *See Leonard*, 38 F.4th at 488; *Nat. Gas Pipeline Co. of Am.*, 2 F.3d at 1405 n.16.

/s/ Lee Kovarsky
Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2025, an electronic copy of the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and served on counsel for Defendant-Appellant using the appellate CM/ECF system.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit and the word limit of Fed. R. App. P. 27(d)(2)(A)because, excluding the parts of the document exempted by the Rules, this document contains less than 5,200 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(7)(B)(i) and Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in size 14 font in Times New Roman for above-the-lone text and 12 font in Times New Roman for Footnotes.

*/s/ Lee B. Kovarsky*

Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER