## Case No. 25-70014

In the
United States Court of Appeals
For the
Fifth Circuit

———————◆———————

**CARLOS MANUEL AYESTAS,**
*Petitioner - Appellee*

v.

**HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE**
*Respondent - Appellant*

———————◆———————

On Appeal from the United States District Court
For the Southern District of Texas, Houston Division
Case No. 4:09-CV-2999

———————◆———————

BRIEF OF APPELLANT

———————◆———————

**SEAN TEARE**
District Attorney
Harris County, Texas

**MEAGAN T. SCOTT**
Assistant District Attorney
Harris County, Texas
State Bar No. 24088378
S.D. Texas Federal No.
2802414
scott_meagan@dao.hctx.net

1201 Franklin, Suite 600
Houston, Texas 77002
Tel: (713) 274-5816
FAX: (713) 437-4966

*Counsel for the Appellant*

<u>CERTIFICATE OF INTERESTED PERSONS</u>

| | | |
|---|---|---|
| **CARLOS MANUEL AYESTAS,** | § | |
| *Petitioner - Appellee* | § | |
| v. | § | Case No. 25-70014 |
| **HARRIS COUNTY DISTRICT** | § | |
| **ATTORNEY'S OFFICE** | § | |
| *Respondent - Appellant* | § | |

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representatives are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Carlos Manuel Ayestas       Petitioner - Appellee

2. Lee B. Kovarsky     Counsel for Petitioner – Appellee
   Phillips Black, Inc.

3. Sheri Lynn Johnson     Counsel for Petitioner – Appellee
   Cornell Law School

4. Sean Teare     Counsel for Respondent – Appellant
   Harris County District Attorney

5. Meagan T. Scott     Counsel for Respondent - Appellant
   Assistant District Attorney

6. Gwendolyn S. Vindell     Counsel for Respondent
   Assistant Attorney General     in the Underlying Litigation

*/s/ MEAGAN T. SCOTT*
**MEAGAN T. SCOTT**
Attorney of Record for Appellant

2

## STATEMENT REGARDING ORAL ARGUMENT

Two important questions are before the Court in this case. One is the question of whether an order compelling the production of documents with claimed prosecutorial work-product privilege should be appealable as a class of claims under the collateral order doctrine. The second is whether a prosecutor's claimed work-product privilege survives the litigation for which it was prepared, and can be used to shield core opinion work-product in unrelated litigation. Both questions strike at the core of our judicial framework, and as such, Appellant suggests that oral argument be permitted in this case.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................2

STATEMENT REGARDING ORAL ARGUMENT ................................................3

TABLE OF CONTENTS ................................................................................4

TABLE OF AUTHORITIES ...........................................................................6

JURISDICTIONAL STATEMENT ...................................................................11

    I.    Summary of the Relevant Background as to Jurisdiction ...........................11

    II.   Jurisdiction is Established Under the Collateral Order Doctrine ...............13

        a.    The Three Collateral Order Doctrine Conditions are Met .......................13

        b.    *Mohawk* is Distinguishable from the Case at Bar under this Court's
Precedent ......................................................................................15

    III.   Prosecutorial Work-Product Privilege as a Class Should be Permitted under
the Collateral Order Doctrine ...............................................................19

    IV.   HCDA has Standing to Appeal as a Non-Party .........................................21

ISSUES PRESENTED ...................................................................................24

STATEMENT OF THE CASE .........................................................................25

    II.   HCDA's Involvement in the Proceedings .................................................26

SUMMARY OF THE ARGUMENT ...................................................................30

ARGUMENT ..............................................................................................32

    I.    Standard of Review ...............................................................................32

    II.   Under *Armstrong*, HCDA Should not be Compelled to Produce the
Requested Materials ............................................................................32

        a.    *Armstrong* is Applicable to Ayestas's Claims .......................................33

        b.    The *Armstrong* Requirement Applies to Work Product Concerning
Capital Charging Practices ...............................................................36

    III.   The Materials at Issue are Work Product Protected from Disclosure .........38

        a.    The Capital Murder Summaries at Issue, and Some Withheld Case File
Materials, are Opinion Work Product ...............................................39

        b.    The Work Product Privilege Survives the Litigation for Which it was
Prepared ......................................................................................41

        c.    Substantial Need does not Overcome the Assertion of Privilege as to

Core Work Product ......................................................................47

PRAYER ............................................................................................50

CERTIFICATE OF SERVICE ..................................................................50

CERTIFICATE OF COMPLIANCE ...........................................................51

<u>Table of Authorities</u>

## Cases

*Atchison v. City of Tulsa, Okla.*,
  344 F.R.D. 28 (N.D. Okla. 2023) ............................................................*passim*

*Ayestas v. State*,
  No. AP-72,928 (Tex. Crim. App. Nov. 4 1998) .......................................26

*Belmontes v. Brown*,
  414 F.3d 1094 (9th Cir. 2005),
  *rev'd sub nom. Ayers v. Belmontes*, 549 U.S. 7 (2006) ...............................35

*Blockbuster Ent. v. McComb Video*,
  145 F.R.D. 402 (M.D.La 1992) ..................................................................40

*Bonneau v. F & S Marine, Inc.*,
  No. 09–3336, 2010 WL 1254552 (E.D.La. Mar. 25, 2010) .......................39

*Bross v. Chevron U.S.A. Inc.*,
  No. 06–1523, 2009 WL 854446 (W.D.La. Mar. 25, 2009) .......................39

*Castillo v. Cameron Cnty.*,
  238 F.3d 339 (5th Cir. 2001) ........................................................... 22, 32

*Cohen v. Beneficial Industrial Loan Corp.*,
  337 U.S. 541 (1949)....................................................................................13

*Dunn v. State Farm Fire & Cas. Co.*,
  927 F.2d 869 (5th Cir.1991).......................................................................39

*Duplan Corp. v. Moulinage et Retorderie de Chavanoz*,
  487 F.2d 480 (4th Cir.1973).......................................................................42

*Emery v. United States Dep't of Just.*,
  639 F. Supp. 3d 87 (D.D.C. 2022) .............................................................41

*Frontier Refining, Inc. v. Gorman Rupp–Co., Inc.*,
    136 F.3d 695 (10th Cir.1998) ....................................................... 41

*Gabrion v. U.S.*,
    No. 1:15-CV-447, 2018 WL 4786310 (W.D. Mich. Oct. 4, 2018),
    *aff'd*, 43 F.4th 569 (6th Cir. 2022) ............................................... 34

*Garcetti v. Ceballos*,
    547 U.S. 410, 126 S.Ct. 1951, 1960, 164 L.Ed.2d 689 (2006) .................... 40

*Henry v. Lake Charles Am. Press, L.L.C.*,
    566 F.3d 164 (5th Cir. 2009) ........................................................ 14

*Hickman v. Taylor*,
    329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) .............................. 44, 45

*In re Cendant Corp. Sec. Litig.*,
    343 F.3d 658 (3d Cir. 2003) ......................................................... 44

*In re Copley Press, Inc.*,
    518 F.3d 1022 (9th Cir. 2008) ....................................................... 17

*In re Doe*,
    662 F.2d 1073 (4th Cir.1981) ........................................................ 40

*In re Grand Jury Proceedings*,
    43 F.3d 966 (5th Cir. 1994) ................................................. 19, 41, 42

*In re Grand Jury Subpoena*,
    220 F.3d 406 (5th Cir. 2000) ........................................................ 20

*In re Int'l Sys. & Controls Corp. Sec. Litig.*,
    693 F.2d 1235 (5th Cir. 1982) ................................................... 39, 40

*In re Katrina Canal Breaches Consol. Litig.*,
    No. 05–4182, 2010 WL 2522968 (E.D.La. June 14, 2010) ..................... 39

*In re Nw. Senior Hous. Corp.*,
    661 B.R. 345 (Bankr. N.D. Tex. 2024) ........................................................45

*In re Murphy*,
    560 F.2d 326 (8th Cir. 1977).................................................40, 41, 47, 48

*In re United States*,
    397 F.3d 274 (5th Cir. 2005)..........................................................36

*Johnson v. Outlaw*,
    659 F. Supp. 2d 732 (M.D.N.C. 2009) ..........................................34

*Klein v. Jefferson Par. Sch. Bd.*,
    2003 WL 1873909 (E.D. La. Apr. 10, 2003).................................42

*La Union Del Pueblo Entero v. Abbott*,
    93 F.4th 310 (5th Cir. 2024) (*"Bettencourt"*) .............................*passim*

*La Union Del Pueblo Entero v. Abbott*,
    68 F.4th 228 (5th Cir. 2023) (*"Hughes"*)....................................*passim*

*Leonard v. Martin*,
    38 F.4th 481 (5th Cir. 2022)....................................................14, 15

*Lewis v. Crochet*,
    105 F.4th 272 (5th Cir. 2024) ................................................. 18

*McCleskey v. Kemp*,
    481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) ............................ 36

*Mohawk Industries, Inc. v. Carpenter*,
    558 U.S. 100 (2009).................................................................*passim*

*Republic Gear Co. v. Borg–Warner Corp.*,
    381 F.2d 551 (2d Cir. 1967)........................................................41

*Robinson v. Tex. Auto. Dealers Ass'n,*
    214 F.R.D. 432, 441 (E.D.Tex.2003), *vacated in part on other grounds,*
    2003 WL 21911333(5th Cir. Jul. 25, 2003) ................................................. 40

*Shields v. Sturm, Ruger & Co.,*
    864 F.2d 379 (5th Cir. 1989) ............................................................... 19

*Tex. Off. of Pub. Util. Couns. v. FCC,*
    183 F.3d 393 (5th Cir. 1999) ............................................................... 32

*Upjohn Co. v. U.S.,*
    449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ................................... 39

*U.S. v. Armstrong,*
    517 U.S. 456 (1996) .................................................................... *passim*

*U.S. v. Casey,*
    No. CR 05-277 (ADC), 2013 WL 12190569 (D.P.R. Jan. 30, 2013) ......... 35

*U.S. v. Chagra,*
    701 F.2d 354 (5th Cir. 1983) ............................................................... 22

*U.S. v. Chemical Foundation, Inc.,*
    272 U.S. 1, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926) ...................................... 33

*U.S. v. Henderson,*
    485 F. Supp. 2d 831 (S.D. Ohio 2007) ................................................. 35

*U.S. v. Hoover,*
    777 F.3d 387 (5th Cir. 1984) ............................................................... 33

*U.S. v. Johnson,*
    No. 02 C 6998, 2003 WL 1193257 (N.D. Ill. Mar. 12, 2003) .................... 34

*U.S. v. Nobles,*
    422 U.S. 225, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) ............ 38, 39, 45

*U.S. v. Siegelman*,
    282 F.R.D. 640 (M.D. Ala. 2012), *aff'd,* 786 F.3d 1322 (11th Cir. 2015) .34

*U.S. v. Sparks*,
    2 F.3d 574 (5th Cir. 1993) ...........................................................................33

*U.S. v. Webster*,
    162 F.3d 308 (5th Cir. 1998) .....................................................................33

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
    913 F.3d 443 (5th Cir. 2019) ................................................................*passim*

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018), *as revised* (July 17, 2018) ........................*passim*

## Statutes

28 U.S.C. § 1291................................................................................................13

## Rules

FED. R. CIV. P. 26(b)(1) ...............................................................................47

FED. R. CIV. P 26(b)(3) ........................................................................42, 43, 48

FED. R. CIV. P. 45 (d)(3)(A) .......................................................................43

## Other Authorities

8 FED. PRAC. & PROC. § 2024 ...................................................................44

<u>**JURISDICTIONAL STATEMENT**</u>

## I.    Summary of the Relevant Background as to Jurisdiction

This is a federal habeas action against Bobby Lumpkin in his capacity as the Director for the Texas Department of Criminal Justice. Appellant, the Harris County District Attorney's Office ("HCDA"), is not a party to the underlying litigation in this case.

After being granted the right to conduct discovery under Habeas Rule 6, Carlos Manuel Ayestas issued a subpoena to HCDA for records. ROA.3116–3127. HCDA's sole involvement in the years-long litigation is in relation to this subpoena.

On August 7, 2023, HCDA was served with a subpoena duces tecum with 18 requests for production and 7 interrogatories. ROA.3116–3127. The compliance date for that subpoena was September 6, 2023. On August 18, 2023, HCDA replied advising receipt of the subpoena, and agreed to produce certain non-confidential, non-privileged responsive documents. ROA.3011-3014. HCDA informed Ayestas, however, that it was objecting to and exerting the work-product and deliberative process privileges over some of the materials requested. ROA.3012-3013. HCDA also asserted that compliance with the request would be unduly burdensome in violation of Federal Rule of Civil

11

Procedure 26. ROA.3012-3013.

Ayestas filed a motion to compel discovery from the HCDA on February 14, 2025. ROA.3152-3170. Ayestas sought a more limited subset of records, all of which (with the exception of some records not previously subpoenaed), were covered by HCDA's claims of privilege. This motion was referred to United States Magistrate Judge Christina A. Bryan. ROA.3171.

HCDA responded to Ayestas's motion, and asserted that Ayestas did not meet the threshold for discovery established by *U.S. v. Armstrong*, 517 U.S. 456, 465-66 (1996), that the materials at issue were protected by prosecutorial work product privilege, as well as deliberative process privilege and undue burden. ROA.3089-3114.

On June 3, 2025, Magistrate Judge Christina A. Bryan issued an order compelling HCDA to produce all documents requested by Ayestas in his motion. ROA.3172-3181. This order requires HCDA to turn over privileged memorandum related to charging decisions for hundreds of murder and capital murder cases spanning several decades.  ROA.3181.

Following this order, which required production within 30 days of its issuance, HCDA timely filed notice of appeal on June 27, 2025. ROA.3182-3183.

Ayestas filed a motion to dismiss this appeal, on August 21, 2025, on the basis that this Court lacks jurisdiction to review the magistrate judge's order, and argued that the discovery order is not appealable under the collateral order doctrine. ECF No, 15. This Court denied the motion to dismiss on September 8, 2025. ECF No, 29.

## II. Jurisdiction is Established Under the Collateral Order Doctrine

This is an appeal of a magistrate judge's order granting a motion to compel discovery filed by Ayestas against non-party HCDA. HCDA seeks to prevent Ayestas from invading the prosecutorial work-product privilege held by the Harris County District Attorney and his staff. Whether such an order is appealable is a threshold matter.

By and large, this Court's appellate jurisdiction "extends only to 'final decisions of the district courts.'" *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 232 (5th Cir. 2023) ("*Hughes*") (quoting 28 U.S.C. § 1291). However, the Supreme Court established an exception to 28 U.S.C. § 1291, the collateral order doctrine, in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949).

### a. The Three Collateral Order Doctrine Conditions are Met

This Court has clarified that an order may be appealed, even when no final judgment has been rendered, as a collateral order if it meets three

conditions. "To qualify as a collateral order, an 'order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'" *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) (quoting *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009)).

Over recent years, this Court has allowed appellate review of similar orders in several cases: *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), *as revised* (July 17, 2018); *Vantage Health Plan, Inc. v. Willis-Knighton Medical Center*, 913 F.3d 443 (5th Cir. 2019); *Hughes*, 68 F.4th 228; *La Union Del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024) ("*Bettencourt*"); and *Lewis v. Crochet*, 105 F.4th 272 (5th Cir. 2024). The three conditions are met here for essentially the same reasons they were met in each of those cases.

First, the Court's order conclusively determines the disputed question of the application of privilege to the documents at issue. *See e.g.*, *Whole Woman's Health*, 896 F.3d at 367; *Vantage Health*, 913 F.3d at 448; and *Lewis*, 105 F.4th at 280 (all finding that disclosure orders adverse to non-parties to be conclusive determinations). Second, the application of privilege to the

requested documents is an important issue completely separate from the merits of the action. *Id.*

Third, the Court's denial of the privilege is effectively unreviewable on appeal. *See Whole Woman's Health*, 896 F.3d at 367 (holding that the collateral order doctrine is met when a district court's discovery order to a third-party - failure to comply with which may result in sanctions - was conclusive and effectively unreviewable on appeal from the final judgment).

### b. *Mohawk* is Distinguishable from the Case at Bar under this Court's Precedent

As other litigants before him argued, Ayestas relied on *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), in his motion to dismiss this appeal to argue that this Court has no jurisdiction to hear a prejudgment appeal of the discovery order. ECF No, 15. In *Mohawk*, the Supreme Court held that parties may not immediately appeal discovery orders adverse to attorney-client privilege under the collateral order doctrine. *Mohawk Industries, Inc.*, 558 U.S. at 114. The Court emphasized that such orders are not "effectively unreviewable" on appeal from a final judgment because alternative mechanisms—such as post-judgment appeals or contempt proceedings—adequately protect the privilege. *Id*. at 110-12.

This reliance on *Mohawk* ignores this Court's precedent which distinguishes *Mohawk* in cases involving non-party appellants. *Mohawk* did not address the rights of non-parties, nor did it categorically bar all discovery-related appeals under the collateral order doctrine. This Court has acknowledged that non-parties may, in some circumstances, appeal discovery orders under the collateral order doctrine, particularly when the order is effectively unreviewable and implicates important rights.

In *Vantage Health Plan, Inc. v. Willis-Knighton Medical Center*, 913 F.3d 443, 449-50 (5th Cir. 2019), this Court held that a non-party could appeal a discovery order requiring the unsealing of confidential documents. The Court determined it had jurisdiction under the collateral order doctrine, reasoning that once confidential information is disclosed, the harm is irreparable and non-litigants lack other adequate appellate remedies. *Id*. While the bar for interlocutory review is high, this Court recognized that certain discovery orders—particularly those involving the unsealing or compelled disclosure of sensitive information—are effectively unreviewable because the harm cannot be undone once disclosure occurs. *Id*.

As this Court noted, "'[s]ecrecy is a one-way street,' and '[o]nce information is published, it cannot be made secret again.'" *Id*. at 449 (quoting

*In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008)). This principle is especially compelling where, as here, the discovery order targets a non-party who lacks control over the litigation and has no right to appeal from a final judgment. *Vantage Health* emphasized that the harm to non-parties is not merely the introduction of adverse evidence at trial, but the forced disclosure of confidential information without full access to appellate review. *Id*.

Although mandamus or contempt may theoretically provide alternative avenues for review, this Court acknowledged that mandamus is narrow and incurring sanctions is risky and burdensome, particularly for non-parties. *Id*. (citing *Mohawk*, 558 U.S. at 109–12). Thus, where a discovery order compels disclosure of sensitive material from a non-party, immediate appeal is the only meaningful mechanism to prevent irreparable harm.

Similarly, in *Whole Woman's Health*, this Court allowed an interlocutory appeal under the collateral order doctrine where the discovery order implicated First Amendment associational rights. This Court distinguished the Supreme Court's reasoning in *Mohawk*, which relied on the alternative methods for review available to litigants, because "*Mohawk* does not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect." *Whole*

*Woman's Health*, 896 F.3d at 368.

In *Lewis,* this Court relied on its holding in *Whole Woman's Health* to again provide jurisdiction to a non-party seeking appeal of a discovery order. This Court held that because "*Mohawk* was a case addressing a *party's* interlocutory appeal of a disclosure order adverse to the attorney-client privilege [,] [it did] not apply to bar appellate jurisdiction" to the non-party appellant. *Lewis*, 105 F.4th at 281. "[T]the consequences of forced discovery were 'effectively unreviewable' on appeal from the final judgment because the appellant was a non-party to the case." *Id.* at 280.

Unlike parties, non-parties cannot appeal from a final judgment in the underlying litigation. This distinction is critical. Non-parties face unique burdens and risks—such as professional consequences—if forced to violate a court order to obtain appellate review via contempt. *See Leonard v. Martin*, 38 F.4th 481, 492-93 (5th Cir. 2022) (Haynes, C. dissenting). Accordingly, the discovery order at issue here is effectively unreviewable and satisfies the third prong of the collateral order doctrine.

### III.    Prosecutorial Work-Product Privilege as a Class Should be Permitted under the Collateral Order Doctrine

Whether an order is immediately appealable is also determined by "the entire category to which a claim belongs" and on "the class of claims[ ] taken as a whole." *Bettencourt*, 93 F.4th at 319. (alteration in original) (quoting *Hughes*, 68 F.4th at 232; and *Mohawk*, 558 U.S. at 107). This Court, in *In re Grand Jury Proc.*, 43 F.3d 966, 969 (5th Cir. 1994), has held that orders compelling the production of documents with claimed work-product privilege are appealable under this standard.

In *Hughes*, this Court allowed a non-party to appeal a dispositive discovery order. This Court not only permitted the appeal under the collateral order doctrine, but agreed that the class it concerned – legislative privilege – protected the non-party from production. *Hughes*, 68 F.4th at 232.

The legislative privilege at issue in *Hughes*, and the confidential documents in *Vantage Health*, are comparable to the prosecutorial work product privilege asserted by HCDA – more so than to the attorney-client privilege at issue in *Mohawk*. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) ("The work product privilege is very different from the attorney-client privilege . . . The work product privilege . . . [exists] to

19

promote the adversary system"). Just as the legislative privilege ensures that lawmakers can deliberate freely without judicial intrusion,[1] the work product doctrine ensures that attorneys can prepare cases without fear of exposing their strategies. Both doctrines serve to protect the integrity of core governmental functions—the adversarial legal process and the legislative process, respectively. *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000) (". . . the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality . . .").

Additionally, in *Hughes* this Court made many of the same points HCDA now asserts with regard to its claim of work product privilege:

1. "The order's conclusiveness is apparent, among other reasons, because 'failure to comply with it may result in sanctions' . . .".

2. Requiring HCDA "to negotiate protective orders or to suffer contempt proceedings would diminish" the protection afforded by the privilege.

3. Once HCDA produces the documents, "an appellate court cannot 'remedy the improper disclosure of privileged material in the same

---

[1] *See Hughes*, 68 F.4th at 235–36 (the legislative privilege "protect[s] actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'"); *Bettencourt*, 93 F.4th at 323 (documents "created, transmitted, and considered *within* the legislative process itself" are protected by legislative privilege).

way [it can] remedy a host of other erroneous evidentiary rulings' . . . ".

4. As a non-party HCDA "cannot move for a new trial. And even if they could, a new trial cannot retract privileged information that has been shared into the public domain."

5. HCDA "has no remedy on appeal from a final judgment in the original action."

*Hughes*, 68 F.4th at 232–34 (internal citations omitted).

This language evidences the similarities in both posture and privilege between the non-parties in *Hughes* and HCDA. To the extent that this class of claims has not yet been deemed appealable under the collateral order doctrine, this Court may decide to do so now. This issue not only affects HCDA in this litigation and the many other federal suits it engages in, but affects the assertion of the work product privilege by all non-parties in federal litigation in this Circuit. Like the documents at issue in *Vantage Health*, disclosing core opinion work product cannot be undone.

## IV.    HCDA has Standing to Appeal as a Non-Party

In addition to the question of jurisdiction is the question of HCDA's standing to bring this appeal. While non-parties, such as HCDA, cannot generally appeal an order or judgment, exceptions to this rule have been

frequently applied when the decree affects the third party's interests. *See Castillo v. Cameron Cnty.*, 238 F.3d 339, 349 (5th Cir. 2001). Specifically, "a non-party may appeal orders for discovery if he has no other effective means of obtaining review." *U.S. v. Chagra*, 701 F.2d 354, 359 (5th Cir. 1983).

Three factors guide the determination of whether a non-party qualifies for that exception: (1) whether the nonparty actually participated in the proceedings below, (2) whether the equities weigh in favor of hearing the appeal, and (3) whether the nonparty has a personal stake in the outcome. *Castillo*, 238 F.3d at 349.

Application of these factors establish standing. HCDA, having been served with a third-party subpoena seeking the documents at issue in the appeal, objected, invoked claims of privilege, and responded to Ayestas's motion to compel those materials. *See Bettencourt*, 93 F.4th at 315–16 (holding a third-party "participated" under this requirement by objecting to a subpoena directed at them).

The equities weigh in favor of allowing the appeal as substantial questions of core work product privilege are in dispute. Moreover, equities favor an appeal when appeal is the only "mechanism to vindicate [a] potentially meritorious claim[]" of privilege. *Id*. at 316.

And lastly, HCDA has a very real stake in the ultimate determination of whether it will be required to turn over decades worth of privileged materials, or risk contempt. *See Lewis*, 105 F.4th at 282 (5th Cir. 2024) (finding a personal stake in the outcome when the appellant must comply with the order or risk contempt or sanctions).

## ISSUES PRESENTED

I.      Whether this Court has jurisdiction over the appeal under the collateral order doctrine.[2]

II.     Whether HCDA has standing to bring this appeal.

III.    Whether the lower court erred in concluding that *Armstrong* does not preclude discovery of the requested materials.

IV.     Whether the trial court erred in determining that the requested materials are not protected from disclosure under the work-product doctrine.

---

[2] HCDA's arguments concerning issues I and II are contained in the Jurisdictional Statement, rather than body of the argument.

<u>STATEMENT OF THE CASE</u>

## I.    Federal Petition for Writ of Habeas Corpus

Ayestas, a Texas state inmate sentenced to death, filed a Petition for Writ of Habeas Corpus in the District Court on September 11, 2009. ROA.24-84. HCDA is not a party to the underlying litigation in this case.

During Ayestas's prosecution, the Harris County District Attorney was John B. "Johnny" Holmes, Jr., and Assistant District Attorney Kelly Siegler was a District Court Chief. Pre-trial, ADA Siegler prepared an internal Capital Murder Summary (the "Siegler Memorandum") on behalf of HCDA, for purposes of determining whether HCDA would seek death against Ayestas. *See* ROA.8090-8092.

The Siegler Memorandum identified two aggravating circumstances: that "the victim is a helpless 67 year old woman killed in her home" and that "the Defendant is not a citizen." ROA.2545, 8092; *see also* ROA.2316. It lists as a mitigating circumstance that "the defendant's only prior conviction is for misdemeanor theft." ROA.8092. Ultimately, the second aggravating circumstance, referencing Ayestas's citizenship status, was crossed through. In explaining his decision to seek death against Ayestas, DA Holmes wrote:

> Ok to plead non-killers for Agg. Rob. Life, deadly weapon, seek death on killer Ayestas.  2 pleading [defendant's][3] to testify.

ROA.8092.

Ayestas was ultimately convicted and sentenced to death. ROA.8003-8022; *Ayestas v. State*, No. AP-72,928 (Tex. Crim. App. Nov. 4 1998) (affirming sentence and conviction); *see also* ROA.2314.  During the habeas litigation that followed, most of which is not relevant to this appeal, Ayestas's federal habeas counsel reviewed HCDA's prosecution case file. The Siegler Memorandum was inadvertently left in the case file later provided to Ayestas's habeas counsel. *See* ROA.1149-1153.

In his habeas petition, Ayestas asserted an Equal Protection-based claim of selective prosecution. The basis of his current claim derives from the Siegler Memorandum, and the issue of whether the reference to citizenship status "raises questions about whether Ayestas's national origin was a factor" in the decision to seek the death penalty. ROA.1616.

## II.     HCDA's Involvement in the Proceedings

 On August 7, 2023, HCDA was served with a subpoena duces tecum with 18 requests for production and 7 interrogatories. ROA.3116-3127. The

---

[3] District Attorney Holmes uses the symbol of a triangle to represent "defendant."

compliance date for that subpoena was September 6, 2023. ROA.3116. On

August 18, 2023, HCDA replied advising receipt of the subpoena and that it

considered the subpoena as a request for the following categories of

documents:

1) Case files, demographics information and charging memoranda for all murder and capital murder cases prosecuted by the Harris County District Attorney's Office (DAO) from 1979 to 2008.
2) Correspondence related to Mr. Ayestas' prosecution and sentencing, including the identities of the DA personnel involved.
3) Internal policies, both written and unwritten, training manuals, and correspondence related to the DAO's prosecution of death-eligible cases, including the charging memoranda, from 1979 to 2008.
4) Performance reviews, disciplinary actions and investigations of Kelly Siegler, Casey O'Brien, Keno Henderson, and Johnny Holmes.
5) Performance reviews, disciplinary actions and investigations related to all other DAO personnel from 1979 to 2008.
6) Documents or correspondence concerning internal investigations by the DAO from 1979 to present related to discrimination based on alienage, national origin, race, or immigration status.

ROA.3011. The privileged portions of HCDA's prosecution file for Ayestas

were not requested.

HCDA agreed to produce the requested personnel file excerpts of Kelly

Siegler, Casey O'Brien, Keno Henderson, and Johnny Holmes, and the names

and file excerpts of employees identified as being involved in the

prosecution of Ayestas from arrest in 1995 to his conviction in 1997, along

with available HCDA operations manuals. ROA.3013. HCDA informed

Ayestas, however, that it was objecting and exerting the work product and deliberative process privileges with respect to some of the materials requested. ROA.3012-3013. HCDA also asserted that compliance with the request would be unduly burdensome in violation of Federal Rule of Civil Procedure 26. ROA.3011-3014.

Ayestas filed a motion to compel discovery from the HCDA on February 14, 2025. ROA.2985-3088. Specifically, Ayestas continued to seek, and in the case of request 3 sought for the first time, the following –

(1) charging memoranda created from 1979-2008 for comparator defendants charged with capital murder who are sufficiently likely to be non-white, foreign nationals, or non-citizens;
(2) charging memoranda from 1979-2008 for comparator defendants charged with capital murder of victims with certain demographic attributes; and
(3) full access to the prosecutorial file from the Ayestas prosecution, including any material that the HCDAO treats as privileged and confidential.

ROA.2990.

Accompanying this motion, were exhibits containing lists of "comparator cases" to which requests 1 and 2 applied. Essentially, Ayestas now seeks the charging memoranda for each of these unrelated criminal prosecutions. To date, HCDA has been able to identify and locate 406 Capital Murder Summaries using the lists provided by Ayestas, which forms the

responsive information now at issue for those portions of the lower court's discovery order.

The subpoena issued to HCDA in September 2023 did not seek access to these case file materials.  ROA.3124-3127. Counsel for Ayestas submitted a Texas Public Information Act ("TPIA") request for the prosecution's file for Ayestas on November 7, 2019.  ROA.3138.  In response to that request, 1501 pages of case file materials were produced to counsel. ROA.3096. Prior to his motion to compel, Ayestas had not subpoenaed the portions of HCDA's file previously received in 2019, nor had he subpoenaed the portions of HCDA's prosecution's file that were withheld from production in 2019 due to statutory confidentialities and work-product privilege. Having already produced the non-privileged and non-confidential portions of the file at issue, HCDA's response to Ayestas's motion to compel was only pertinent to the privileged portions of HCDA's prosecution file.

The discovery order grants Ayestas's requests in full.   ROA.3181.

## SUMMARY OF THE ARGUMENT

The discovery order at is issue is immediately appealable under the collateral order doctrine because it conclusively resolves a significant issue—whether core work-product privilege protects the requested documents—completely separate from the merits and effectively unreviewable after final judgment.

This Court has repeatedly distinguished *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), in cases involving non-party appellants, recognizing that compelled disclosure of sensitive, privileged materials—similar to the prosecutorial work product at issue here — causes irreparable harm that cannot be remedied on appeal. HCDA also satisfies the requirements for non-party standing, having actively objected to the subpoena, asserted privilege, and demonstrated a direct stake in avoiding disclosure or contempt.

Ayestas's motion to compel should have been denied on several grounds. Ayestas seeks discovery of charging memoranda from comparator cases to support a selective prosecution claim under the Equal Protection Clause, but he has failed to meet the rigorous threshold established by *U.S. v. Armstrong*, 517 U.S. 456 (1996), which requires a prima facie showing of both

discriminatory effect and intent. Ayestas's attempt to distinguish *Armstrong* based on procedural posture or constitutional theory—such as invoking the Eighth Amendment—misreads the decision, which articulates a general standard applicable to all selective prosecution claims. Because Ayestas has not demonstrated the required discriminatory effect or intent, and because the discovery he seeks intrudes upon privileged prosecutorial deliberations, the trial court erred in granting disclosure.

Assuming for the sake of argument that *Armstrong* is not a bar to discovery, the materials at issue are still protected by work-product privilege. Courts have held that the work-product privilege extends to non-parties and to subsequent litigation, regardless of its relation to the original case. Moreover, opinion work product is afforded near-absolute immunity and may only be disclosed in rare and extraordinary circumstances, which are not present here. The lower court's order compelling production of internal prosecutorial memoranda and case file materials that constitute core opinion work product violates these well-established protections.

Ayestas's broad discovery request, which seeks access to charging memoranda from unrelated prosecutions, far exceeds the scope of permissible discovery and threatens to chill prosecutorial deliberation. The lower court's

rationale—that allegations of prosecutorial misconduct justify overriding the privilege—misapplies the law and sets a dangerous precedent that would erode the doctrine's core purpose: safeguarding the candid legal analysis necessary for effective prosecution. Ayestas has not demonstrated the compelling necessity required to overcome this protection, and the privilege must be upheld.

## ARGUMENT

### I.     Standard of Review

The legal issue of a non-party's "[s]tanding is reviewed under a *de novo* standard." *Castillo*, 238 F.3d at 347 (citing *Tex. Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393, 419 n.34 (5th Cir. 1999)).

This Court reviews discovery orders "for abuse of discretion." *Hughes*, 68 F.4th at 235 (quoting *Whole Woman's Health*, 896 F.3d at 369). "The district court's legal conclusions should be reviewed de novo, and its factual findings should not be disturbed unless they are clearly erroneous." *Id.*

### II.     Under *Armstrong*, HCDA Should not be Compelled to Produce the Requested Materials

Ayestas's argument relies on his need to prove discrimination in his prosecution, compared to other defendants, using the charging memoranda

of the other "comparator cases."  More succinctly, Ayestas is attempting to prove an equal protection violation. A court's consideration of an equal protection-based claim of selective prosecution necessarily begins with a presumption of good faith and constitutional compliance by the prosecutors. *U.S. v. Armstrong*, 517 U.S. 456, 465-66 (1996).

### a. *Armstrong* is Applicable to Ayestas's Claims

Before an individual, is entitled to any discovery on a claim of selective prosecution, he must make out a prima facie case. Here, the prima facie case of selective prosecution requires Ayestas to bring forward some evidence that HCDA could have sought death against similarly situated individuals, but did not. *Armstrong*, 517 U.S. at 465; *U.S. v. Webster*, 162 F.3d 308, 333-34 (5th Cir. 1998).

More specifically, Ayestas must present clear evidence of both discriminatory effect and discriminatory intent.  *Armstrong*, 517 U.S. at 465 (citing *U.S. v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926)). Discriminatory intent is proven by showing the prosecution was done invidiously or in bad faith, and that it rested on such impermissible consideration as race, religion, or the desire to exercise one's constitutional rights.  *Webster*, 162 F.3d at 334; *U.S. v. Sparks*, 2 F.3d 574, 580 (5th Cir. 1993); *U.S. v. Hoover*, 727 F.3d 387, 389

(5th Cir. 1984).

Respondent Lumpkin has raised similar objections in his discovery disputes with Ayestas. In the district court, Ayestas argued that *Armstrong* only involved the availability of discovery to federal criminal defendants under Federal Rule of Criminal Procedure 16, rather than to habeas petitioner's under Habeas Rule 6. ROA.3157-3158.; *See* Armstrong, 517 U.S. at 461-64. Although HCDA is not aware of any circuit courts that have applied *Armstrong* to Rule 6 discovery, there are a number of federal district courts that have. *See e.g.*, *Gabrion v. U.S.*, No. 1:15-CV-447, 2018 WL 4786310, at *93 (W.D. Mich. Oct. 4, 2018), *aff'd,* 43 F.4th 569 (6th Cir. 2022) (citing *Armstrong*, 517 U.S. at 468) ("Moreover, to the extent Gabrion contends that the Government prosecuted him or approved the death penalty for improper reasons, he has not satisfied the Supreme Court's 'rigorous standard' for discovery in aid of a selective-prosecution claim."); *U.S. v. Johnson*, No. 02 C 6998, 2003 WL 1193257, at *12 (N.D. Ill. Mar. 12, 2003); *Johnson v. Outlaw*, 659 F. Supp. 2d 732, 737 (M.D.N.C. 2009); *U.S. v. Siegelman*, 282 F.R.D. 640, 652 (M.D. Ala. 2012), *aff'd,* 786 F.3d 1322 (11th Cir. 2015).

Ayestas also contends that *Armstrong* limits discovery only in Equal Protection claims under the Fourteenth Amendment and does not apply to

34

Eighth Amendment claims. But this interpretation misreads *Armstrong* and undermines the doctrinal coherence of selective prosecution jurisprudence. The Supreme Court in *Armstrong* did not limit its holding to Equal Protection claims under the Fourteenth Amendment. Rather, it articulated a general standard for discovery in selective prosecution cases, requiring defendants to produce "some evidence" of both discriminatory effect and discriminatory intent before obtaining discovery. *Armstrong*, 517 U.S. at 469.

Indeed, the Court emphasized that "[t]he requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *Id.* at 465. The core concern in *Armstrong* was preventing fishing expeditions into prosecutorial discretion, not the specific constitutional label attached to the claim. [4]

If defendants could evade *Armstrong*'s discovery threshold simply by invoking the Eighth Amendment, the standard would become meaningless.

---

[4] *See e.g., Belmontes v. Brown*, 414 F.3d 1094, 1125 (9th Cir. 2005), *rev'd sub nom. Ayers v. Belmontes*, 549 U.S. 7 (2006) (analyzing an Eighth Amendment and Equal Protection Clause claim regarding racially discriminatory charging decisions as a selective prosecution claim); *U.S. v. Henderson*, 485 F. Supp. 2d 831, 861 (S.D. Ohio 2007) (applying *Armstrong* to selective prosecution claim raised under the Fifth and Eighth Amendments); *U.S. v. Casey*, No. CR 05-277 (ADC), 2013 WL 12190569, at *2 (D.P.R. Jan. 30, 2013) (applying *Armstrong* to selective prosecution claim raised under equal protection principals and the Eighth Amendment).

Courts would be forced to entertain the same claim under a different label, opening the door to precisely the kind of speculative discovery *Armstrong* sought to prevent.

A significant barrier to discovery is necessary because discovery "imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution"; it diverts governmental resources and discloses prosecutorial strategies. *Armstrong*, 517 U.S. at 468. Thus, the Supreme Court admonished in *Armstrong*, "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id*. at 464. Mere statistical evidence of racial disparity usually will be *per se* insufficient to support an inference of any "unacceptable risk" of discrimination in the administration of capital punishment. *McCleskey v. Kemp*, 481 U.S. 279 (1987).

### b. The *Armstrong* Requirement Applies to Work Product Concerning Capital Charging Practices.

Importantly, the *Armstrong* requirement has been shown to apply to substantially similar materials as those at issue in this case – core work product. In *In re United States*, 397 F.3d 274, 277 (5th Cir. 2005), this Court granted mandamus relief from a trial court order requiring the government

36

to "reveal its capital-charging practices 'inclusive of this case but not this case exclusively'", even after the government asserted work product, attorney-client, and deliberative process privileges against the orders. *Id.* at 285. This Court stated that the trial court's order "required the government to allow [the defendant] access to its internal, privileged data concerning its use of its discretion in seeking the death penalty." *Id.* at 281. To do so was clear legal error. *Id.* at 285.

This Court agreed with the government's assertion that the trial court had incorrectly applied *Armstrong* and consequently had improperly ordered discovery against the United States. *Id.* at 283. And, more specifically, the Court found that:

> [S]haring a charge alone does not make defendant 'similarly situated' for purposes of a selective prosecution claim. A much stronger showing, and more deliberative analysis, is required before a district judge may permit open-ended discovery into a matter that goes to the core of a prosecutor's function and implicates serious separation of powers concerns.

*Id.* at 285.

Furthermore, this Court noted that even *in camera* review of documents over which the Government asserted privilege would be inappropriate and "could engender various privilege claims, and as a precedent, could be

subject to abuse in this and in future cases." *Id.* at 286.

Ayestas has not met his threshold burden as clearly established by *Armstrong* to obtain discovery. Assuming *arguendo* that a defendant's citizenship status is a protected class for purposes of selective prosecution, Ayestas fails to show that he has suffered a discriminatory effect or that there was discriminatory intent. Lastly, assuming that Ayestas is entitled to discovery on this issue, he is not entitled to discovery of core prosecutorial work product related to his, or any other, case prosecuted by HCDA.

### III.    The Materials at Issue are Work Product Protected from Disclosure

It is axiomatic that the prosecution has as much of a work product privilege as a criminal defendant. *U.S. v. Nobles*, 422 U.S. 225, 238 (1975)("The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of *each* side of the case.")(emphasis added). Assuming *arguenedo* that *Armstrong* is not a bar to discovery of the requested materials, the documents at issue are still protected from disclosure by work-product privilege.

In the lower court, HCDA asserted that the work product privilege

applied to the charging memoranda and to the work product contained within its criminal case file. *See Atchison v. City of Tulsa, Okla.*, 344 F.R.D. 28, 31 (N.D. Okla. 2023) (a non-party may assert the work product privilege). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigant in our adversary system." *Nobles*, 442 U.S. at 240.

   **a. The Capital Murder Summaries at Issue, and Some Withheld Case File Materials, are Opinion Work Product**

   Tangible materials that contain the mental impressions, conclusions, opinions, or legal theories of a party's attorney or representative, otherwise known as "opinion work product," are afforded a high degree of protection. *See e.g., In re Katrina Canal Breaches Consol. Litig.,* No. 05–4182, 2010 WL 2522968, at *1 (E.D. La. June 14, 2010) (additional quotation omitted) (citing *Upjohn Co. v. U.S.,* 449 U.S. 383, 395–96 (1981)); *Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d 869, 875 (5th Cir.1991); *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1240 (5th Cir. 1982); *Bonneau v. F & S Marine, Inc.,* No. 09–3336, 2010 WL 1254552, at *2 (E.D.La. Mar. 25, 2010); *Bross v. Chevron U.S.A. Inc.,* No. 06–1523, 2009 WL 854446, at *5 (W.D.La. Mar. 25,

2009); *Blockbuster Ent. v. McComb Video,* 145 F.R.D. 402, 403–04 (M.D.La 1992)) (additional citations omitted).

This Court has recognized "opinion work product" and noted that "[s]ome courts have provided an almost absolute protection for such materials." *In re Int'l Sys.,* 693 F.2d at 1240 (citing *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977); *In re Doe,* 662 F.2d 1073, 1080 (4th Cir. 1981)). "A court cannot order production of opinion work-product absent a showing of even higher necessity, which is a rare situation if it exists at all." *Robinson v. Tex. Auto. Dealers Ass'n,* 214 F.R.D. 432, 441 (E.D.Tex. 2003), *vacated in part on other grounds,* 2003 WL 21911333 (5th Cir. Jul. 25, 2003).

Here, the lower court's order compels production of over 400 memoranda prepared by individual prosecutors, which outline the prosecutor's opinions and mental impressions of the case, and recommend a charging decision to the elected District Attorney in a criminal case. These documents constitute core work product of HCDA. *See Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006)(where a deputy district attorney alleged that he was subjected to employment retaliation for writing a disposition memorandum in which he recommended dismissal, the Supreme Court held that the memorandum was work product created while performing official duties);

40

*see also Emery v. United States Dep't of Just.*, 639 F. Supp. 3d 87, 101 (D.D.C. 2022) (finding that an AUSA's memorandum analyzing the facts of a case and making recommendations with regard to its prosecution was privileged attorney work product).

### b. The Work Product Privilege Survives the Litigation for Which it was Prepared

The order also compels production of the work product maintained in HCDA's case file relating to Ayestas's criminal prosecution. ROA.3181. The case file also includes core opinion work product documents (*e.g.,* prosecutorial strategy notes, memoranda, and witness interviews). Importantly, the majority of the Circuit Courts of Appeals have held that the work product privilege extends to subsequent litigation, regardless of whether the litigation is related or not. *See, e.g., Frontier Refining, Inc. v. Gorman Rupp–Co., Inc.,* 136 F.3d 695, 703 (10th Cir. 1998); *Murphy,* 560 F.2d at 335; *Republic Gear Co. v. Borg–Warner Corp.,* 381 F.2d 551, 557 (2d Cir. 1967). Indeed, although this Court has never expressly held that the privilege extends to subsequent litigation, it has recognized that the "broader" view appears to be the doctrine applies to all subsequent litigation. *In re Grand Jury Proceedings,* 43 F.3d 966, 971 (5th Cir. 1994).

As the Fourth Circuit held in *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484–85 n.15 (4th Cir.1973):

> While, of course, the Court in *Hickman* was addressing itself to material obtained by an attorney incident to the litigation then in progress, the rationale is scarcely less applicable to a case which has been closed than to one which is still being contested. The decision was not in any manner based upon the rights or posture of the litigants vis–a–vis each other. Such a basis was expressly disavowed. Rather, the thrust of the decision was the qualified protection of the professional effort, confidentiality and activity of an attorney which transcends the rights of the litigants . . . [W]e find no indication that the Court intended to confine the protection of the work product to the litigation in which it was prepared or to make it freely discoverable in a subsequent law suit. To so interpret *Hickman* would in our opinion elide the broad rationale of the Court's decision.

Accordingly, it is immaterial that the litigation for which the document was prepared has concluded or that it is now sought in a separate proceeding. *See Grand Jury Proceedings*, 43 F.3d at 971.

In the lower court Ayestas relied heavily on the argument that exceptions to FED. R. CIV. P. 26(b)(3) applies to the materials he now seeks from HCDA. He also cites several cases, including *Klein V. Jefferson Par. Sch. Bd.*, 2003 WL 1873909 (E.D. La. Apr. 10, 2003), to support the contention that a prosecutor cannot claim privilege to protect their files from discovery in collateral civil litigation. What this argument leaves out, however, is that

HCDA did not rely solely on 26(b)(3) in its assertion of privilege.

Rule 26(b)(3) applies to parties in the litigation. FED. R. CIV. P. 26 (b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for *another party* or its representative") (emphasis added). HCDA is not a party to this litigation, and the materials at issue were not prepared for this case. But HCDA's assertion of privilege also stems from the protections afforded by FED. R. CIV. P. 45 (d)(3)(A) and common law.

Instructive on this issue is *Atchison v. City of Tulsa, Okla.*, 344 F.R.D. 28 (N.D. Okla. 2023). Atchison filed suit seeking redress for his alleged wrongful conviction. *Id*. at 30. As part of that litigation, he subpoenaed records from the Tulsa County District Attorney's Office ("TCDA"), who was not a party to the suit. *Id*. The records sought were part of the prosecutor's criminal case file for Atchison's own prior prosecution, including prosecutorial work product. *Id*. TCDA withheld protected attorney work product and argued that production of those materials was not required. *Id*. It also asserted protection under the deliberative process privilege. *Id*. TCDA limited its withholding to core attorney, or opinion, work product. *Id*.

Atchison moved the court to compel a blanket production of the withheld portions of the file, arguing that the withheld documents are relevant to his claims and that TCDA's privilege assertions were improper. *Id*. Specifically, Atchison argued that work product protections are not available to non-parties and that he had shown a substantial need that would overcome any privilege. *Id*.

TCDA asserted that the work product protection of *Hickman v. Taylor*, 329 U.S. 495 (1947), was broader than Rule 26 and, therefore, applied to non-parties. *Id*. at 30-31. The court agreed, holding that "the protections of *Hickman* are not entirely codified in Rule 26, and that—instead—where *Hickman* would warrant a finding of protection, that protection applies despite the rule's literal language." *Id*. at 34 (citing *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003)). "This finding avoids the 'intolerable' result caused by a narrow confinement of work product protection to the parties in a litigation." *Id*. at 34 (citing 8 FED. PRAC. & PROC. § 2024).

In his arguments before the lower court, Ayestas repeatedly called upon two of the purposes of work product doctrine generally recognized - preventing opponents from "free-loading" off their adversaries' work and preventing interference with ongoing litigation - as support for why

HCDAO should not be entitled to assert privilege for the requested memoranda and case file documents, finding rationale for those purposes lacking in this case. But Ayestas conspicuously omits the most important purpose of the protection - preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases. *In re Nw. Senior Hous. Corp.*, 661 B.R. 345, 360 (Bankr. N.D. Tex. 2024) (*citing Hickman*, 329 U.S. at 511 ("Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.")).

The court in *Atchison* found that implication of this purpose was sufficient to trigger application of the privilege. An attorney's opinion work product, the type of information highlighted by the Court in *Hickman*, is "entitled to the most protection." *Atchison*, 344 F.R.D. at 35. In fact, in the case of district attorney's offices, the Court stated:

> The role of work product 'in assuring the proper functioning of the criminal justice system is ... vital.' *Nobles*, 422 U.S. at 238, 95 S.Ct. 2160. TCDA is the quintessential 'repeat player' whose most basic practices would be affected by the threat of its attorneys' trial preparation strategies being subject to discovery in a subsequent action.

*Id.*

45

The lower court distinguished *Atchison* because the plaintiff there did not assert wrongful conduct on the part of the prosecution, but held that "[h]ere, prosecutor misconduct 'constitutes the heart of the issues' in Petitioner's case. *United States v. Rodgers*, 2022 WL 1074013, at *7." ROA.3177-3178.[5] The court also held:

> [T]o the extent the work product privilege attaches to prosecutor work product, it is overcome where prosecutorial misconduct is at issue in collateral litigation. *See United States v. Rodgers*, No. 4:20-CR-00358, 2022 WL 1074013, at *7 (E.D. Tex. Apr. 8, 2022) (finding that review of cases "reveals a common thread among them—opinion work product privilege can be overcome when the material sought constitutes the heart of the issues in the case.").

ROA.3177.

But the court's order did not merely compel disclosure of the work product contained in the prosecution file for Ayestas. Instead, its holding stands for a far broader proposition: that an allegation of misconduct in a single case is sufficient to override the work-product privilege protecting the internal charging memoranda of hundreds of unrelated prosecutions. In effect, the decision authorizes a sweeping fishing expedition through a vast collection of core opinion work product.

---

[5] HCDA does not concede prosecutorial misconduct occurred in the underlying criminal prosecution of Ayestas.

The implication is troubling. If upheld, this reasoning would render HCDA's work-product privilege vulnerable in virtually any civil case—regardless of whether the DA's office is a party—so long as the plaintiff alleges misconduct. Such a precedent would severely dilute the privilege, reducing it to a near-nullity and exposing sensitive prosecutorial deliberations to routine civil discovery.

### c.  Substantial Need does not Overcome the Assertion of Privilege as to Core Work Product

Opinion work product is entitled to substantially greater protection than ordinary work product. Ayestas cannot overcome the privilege that protects opinion work product with a showing of substantial need.  As the court in *Atchison* explained, only non-opinion work product may be subject to disclosure upon a showing of substantial need. *Atchison*, 344 F.R.D. at 35; *see also Murphy*, 560 F.2d at 335 ("Our conclusion that the work product privilege extends to documents prepared in previous, unrelated litigation will not make attorneys' files impregnable. *As to ordinary work product*, a litigant can secure access to these documents by establishing the relevance of the requested documents, FED. R. CIV. P. 26(b)(1), and by satisfying the substantial need and undue hardship requirements of Rule

26(b)(3).")(emphasis added).

Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances. *Murphy*, 560 F.2d at 336. Those circumstances are not present here—particularly not to justify the sweeping disclosure Ayestas seeks. Ayestas identifies hundreds of cases as his "best efforts to identify a tranche of comparator cases." ROA.2994. But he also states that the identified cases constitute "defendants who were either coded or modeled to be noncitizens, nonwhite, or foreign born, and who were convicted for killing a victim was either female or non-white (including unknowns)." ROA.2995. The order to compel found that "that the material Petitioner seeks is relevant and proportional to the needs of the case." ROA.3175. But this request far exceeds the scope of comparator cases, which can arguably only pertain to noncitizens. Moreover, the timeframe in which these memoranda were created cover more than a decade before and after the criminal prosecution at issue. Ayestas has not made a showing of the high necessity required to traipse through HCDA's work product on the scale contemplated by the lower court's order.

The lower court nevertheless concluded that Ayestas had met a "compelling need" standard because this is a case involving alleged

prosecutorial misconduct and because the requested materials—victim and perpetrator statistics—are "highly relevant and important" to his claim. ROA.3178-3179. But this mischaracterizes the scope of Ayestas's request. He is not merely seeking statistical summaries; he is demanding access to charging memoranda that reveal the District Attorney's internal reasoning and punishment recommendations across a broad swath of unrelated prosecutions.

Permitting such discovery would eviscerate the protections afforded to opinion work product. The work-product doctrine—especially as it applies to opinion work product—exists to protect precisely this kind of internal legal analysis from disclosure. Ayestas's request far exceeds what the law permits, and the privilege must be upheld.

<u>**PRAYER**</u>

For these reasons, appellant HCDA respectfully requests that this Court reverse the decision of the lower court to compel production of HCDA's privileged materials.

Respectfully submitted,

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 274-5816

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing instrument has been electronically served via the Court's ECF system in compliance with FED. R. APP. P. 25(b) and (c), on September 26, 2025, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) and 5th CIR. R. 32.2:

- Exclusive of the exempted portions in FED. R. APP. P. 32(f) and 5th CIR. R. 32.2, this brief contains 7, 588 words.

The undersigned certifies that this brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5th CIR. R. 32.1, and the type requirements of FED. R. APP. P. 32(a)(6):

- This brief has been prepared in proportionally spaced typeface using Microsoft Word in Book Antiqua font, with 14 point font for text and 12 point font for footnotes.

The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits, may result in the Court's striking the brief and imposing sanctions.


*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**
**Counsel for Respondent - Appellant**
**Harris County District Attorney's Office**

Date: September 26, 2025