I{\sc n the}

# United States Court of Appeals for the Fifth Circuit

CARLOS MANUEL AYESTAS,
also known as Dennis Zelaya Corea,
*Petitioner–Appellee*

v.

HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE,
*Defendant–Appellant.*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
Civil Action No. 4:09-CV-2999

## BRIEF OF THE CORRECTIONAL INSTITUTIONS DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT–APPELLANT URGING REVERSAL

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

GWENDOLYN VINDELL*
Assistant Attorney General
State Bar No. 24088591
 *Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
gwendolyn.vindell2@oag.texas.gov

*Counsel for Amicus Curiae*

# CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Amicus Curiae, as a governmental party, need not furnish a certificate of interested persons.

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL
Assistant Attorney General

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................I

TABLE OF CONTENTS ........................................................ II

TABLE OF AUTHORITIES.................................................... III

IDENTITY AND INTEREST OF AMICUS CURIAE ............................1

SUMMARY OF THE ARGUMENT ........................................3

BACKGROUND ...............................................................4

ARGUMENT ...................................................................10

I.  The Discovery Order Is Invalid Because the Lower Court Lacks Jurisdiction Over the Proceedings. .............................................10

II.  Ayestas's Lack of Diligence in Developing His Claims Precludes Merits-Based Discovery. ...........................................18

III.  The District Court's Grant of Discovery Violates *Armstrong*......24

CONCLUSION.................................................................31

CERTIFICATE OF SERVICE................................................32

CERTIFICATE OF COMPLIANCE WITH RULE 29(A) AND 32(A) .....32

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Ayestas v. Stephens*, 817 F.3d 888 (5th Cir. 2016) ............................. 5, 21

*Balbuena v. Sullivan*, 980 F.3d 619 (9th Cir. 2020) ............................... 15

*Banister v. Davis*, 590 U.S. 504 (2020) .......................................... Passim

*Beaty v. Schriro*, 554 F.3d 780 (9th Cir. 2009) ...................................... 15

*BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612 (2025) ...................... 15

*Burton v. Stewart*, 549 U.S. 147 (2007) ................................................. 17

*Clark v. Davis*, 850 F.3d 770 (5th Cir. 2017) ......................................... 13

*Crutsinger v. Davis*, 936 F.3d 265 (5th Cir. 2019) ........................... 16, 17

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ............................................. 22

*Demahy v. Schwarz Pharma., Inc.*, 702 F.3d 177 (5th Cir. 2012) .......... 14

*Ex parte Ayestas*, 2020 WL 7234770 (Tex. Crim. App. Dec. 9, 2020) .........

......................................................................................................... 6, 20

*Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195 (2d Cir. 2006) ........ 14, 15

*Fisher v. Kadant, Inc.*, 589 F.3d 505 (1st Cir. 2009) ............................. 15

*Ford v. Davis*, 910 F.3d 232 (5th Cir. 2018) ................................. 6, 12, 20

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ......................................... Passim

*Goodwin v. Johnson*, 224 F.3d 450 (5th Cir. 2000) ............................... 20

*In re Edwards*, 865 F.3d 197 (5th Cir. 2017) .............................. 12, 13, 16

*In re United States*, 397 F.3d 274 (5th Cir. 2005) .......................... Passim

*Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987) ...................... 25

*Rivers v. Guerrero*, 605 U.S. 443 (2025) .................................................. 10

*Sandoval Mendoza v. Lumpkin*, 81 F.4th 461 (5th Cir. 2023) ......... 16, 17

*Shinn v. Martinez Ramirez*, 596 U.S. 811, 389 (2022) .................... 18, 22

*Shoop v. Twyford*, 596 U.S. 811 (2022) ......................................... Passim

*State v. Stephens*, 663 S.W.3d 45 (Tex. Crim. App. 2021) ...................... 25

*United States v. Armstrong*, 517 U.S. 456 (1996) ........................ 2, 24, 25

*United States v. Bass*, 536 U.S. 862 (2002) ............................................. 24

*United States v. Lee*, 358 F.3d 315 (5th Cir. 2004) ................................. 12

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998) .......................... 29

*Vidimos, Inc., v. Wysong Laser Co., Inc.*, 179 F.3d 1063 (7th Cir. 1999) ...

.................................................................................................................... 23

*Wayte v. United States*, 470 U.S. 598 (1985) ......................................... 24

*Woodfox v. Cain*, 772 F.3d 358 (5th Cir. 2014) ...................................... 12

## Statutes

28 U.S.C. § 2244 ............................................................. Passim

28 U.S.C. § 2254 ................................................................. 11

28 U.S.C. § 2254(e)(1) ........................................................... 6

28 U.S.C. § 2254(e)(2) ........................................................ 3, 8

## Rules

Rule Governing § 2254 Cases R.6 ............................................ 8

Rule 6(b)(2) of the Federal Rules of Civil Procedure .............................. 4

Rule 26 of the Federal Rules of Civil Procedure ................................... 9

## Other Authorities

6 Charles Alan Wright & Arthur R. Miller, Federal Practice and

   Procedure § 1489 (3d ed.) ...................................................... 16

## IDENTITY AND INTEREST OF AMICUS CURIAE

Amicus, the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), is the custodian of felony inmates in Texas. Petitioner–Appellee Carlos Ayestas is one such inmate, and because he seeks federal habeas relief in the court below, TDCJ is the proper responding party. *See* R. Gov'g § 2254 Cases R.2(a). In those ongoing proceedings, and over TDCJ's vociferous objection, Ayestas was permitted to pursue unprecedented discovery from both TDCJ and several third parties. Defendant–Appellant, the Harris County District Attorney's Office (Harris County), is one of those many third parties and now appeals the district court's order that it produce highly privileged materials in hundreds of other cases.

Though Harris County's appeal may appear limited on its face, it implicates the comity, federalism, and limited-jurisdiction principles that the Anti-Terrorism and Effective Death Penalty Act (AEDPA) was intended to balance. TDCJ—the entity charged with defending against suits arising under AEDPA—is uniquely equipped to address these broader legal and policy issues. During the litigation below, TDCJ consistently argued that AEDPA bars these proceedings and this

discovery, and it has long attempted to enforce the heightened-discovery standards enumerated in *United States v. Armstrong*, 517 U.S. 456 (1996), along with those enumerated in AEDPA. TDCJ's interest in this appeal is therefore broader than Harris County's, and that broader focus on the adjudicative limits attendant to federal habeas generally—which the district court circumvented here—is necessarily relevant to the narrower questions raised by Harris County.

Amicus curiae TDCJ files this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure, and all parties to the appeal have consented to its filing. No counsel for either party authored this brief in whole or in part, nor did they, or any other person other than the amicus, its members, or its counsel, provide a monetary contribution intended to fund the preparation or submission of this brief.

## SUMMARY OF THE ARGUMENT

Harris County asks this Court to reverse the district court's order compelling it to produce thirty-years' worth of highly privileged work product—memoranda relating to whether the office intends to seek the death penalty against a defendant. Amicus TDCJ agrees with Harris County. Indeed, the district court should not even have reached the discovery-on-the-merits stage of Ayestas's selective prosecution claim for several reasons.

*First*, the district court lacked jurisdiction because Ayestas's motion to reopen the proceedings was a disguised second-or-successive petition under AEDPA, and even if it was proper, the district court erred when it granted Rule 60(b) relief. *Second*, the district court could not grant merits-based discovery when, as multiple courts have determined, Ayestas failed to diligently develop the factual basis of his claims, and he therefore cannot surmount AEDPA's numerous other procedural hurdles, including the statute of limitations, procedural default, and 28 U.S.C. § 2254(e)(2). *Third*, as Harris County correctly argues, the district court's discovery orders violate *Armstrong* because Ayestas conceded he could not meet its comparator requirement without discovery, and he could not

meet it even if he tried because Harris County declined to pursue the death penalty against his two co-defendants of the exact same citizenship status, national origin, and race. The district court's discovery order should be reversed.

## BACKGROUND

Ayestas has sought federal habeas relief from his death sentence since 2009. But relevant events began on November 18, 2014, when the district court entered final judgment denying relief on remanded ineffective-assistance-of-counsel claims Ayestas pursued in his initial habeas petition. ROA.984. Ayestas moved to alter or amend the judgment on December 16, 2014, attacking the district court's resolution of his ineffective-assistance claims. ROA.985–1022. This filing was within Rule 59(e)'s immovable 28-day deadline. *See* Fed. R. Civ. P. 6(b)(2).

After that deadline had passed, Ayestas asked to pursue new claims based on "newly discovered" evidence "not relevant to the [ineffective-assistance] claims considered by the [district court] on remand from" this Court. ROA.1243. On January 9, 2015, he filed a "motion for leave to amend [his] original petition for writ of habeas corpus." ROA.1148. On January 14, 2015, he filed a "supplement" to his Rule 59(e) motion

"urging the court to grant leave to amend [his] original petition for writ of habeas corpus." ROA.1159. Both motions alleged that "[o]n December 22, 2014, Ayestas's counsel, while reviewing portions of the prosecution's file at the Office of the District Attorney in Houston, discovered a Capital Murder Summary memorandum, prepared by the prosecution, stating that Ayestas's lack of citizenship was an 'aggravating circumstance [ ].'" *Ayestas v. Stephens*, 817 F.3d 888, 894 (5th Cir. 2016), *vacated on other grounds sub nom. Ayestas v. Davis*, 584 U.S. 28 (2018). Ayestas argued "that the prosecution, at least in part, sought capital punishment on the improper basis of national origin." *Id*.

The district court denied the timely Rule 59(e) motion and found, under then-Circuit precedent, Ayestas's "supplemental" Rule 59(e) and motion to amend were unauthorized second-or-successive petitions. ROA.1238, 1243. This Court affirmed. Ayestas could not pursue his new claims because they were outside the scope of its earlier mandate and because Ayestas "did not exercise reasonable diligence in attempting to discover the memorandum earlier." *Ayestas*, 817 F.3d at 901. The Supreme Court denied review on this claim. *Ayestas v. Davis*, 581 U.S.

904 (2017). But four years later, the district court allowed Ayestas to pursue those very same claims.

The district court purported to do so based on intervening Supreme Court authority. In 2020, the Supreme Court held that proper Rule 59(e) motions are not subject to the successive-petition bar. *Banister v. Davis*, 590 U.S. 504, 517 (2020). The Supreme Court distinguished the severely time-limited Rule 59(e) from Rule 60(b) because the former "does not enable a prisoner to abuse the habeas process by stringing out his claims over the years." *Id*.

Ayestas moved for relief from judgment under Rule 60(b),[1] ROA.1343, arguing that, based on *Banister*'s reversal of prior circuit precedent, there was a "defect in the integrity of the federal habeas proceedings" that could be considered in a Rule 60(b) motion, ROA.1565–67. The district court granted "[t]o the extent that Ayestas's [Rule 60(b)]

---

[1]    Before returning to federal court, Ayestas sought to exhaust his new claims in the state court, but the Texas Court of Criminal Appeals (CCA) dismissed the subsequent state habeas application as an abuse of the writ without considering the merits of the claims. *See Ex parte Ayestas*, No. WR-69,674-02, 2020 WL 7234770, at *1 (Tex. Crim. App. Dec. 9, 2020) (unpublished). In doing so, the CCA "necessarily found that [Ayestas] knew or could have reasonably known about the [factual basis of his claims] before the filing of his first" state habeas application. *See Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018). This implicit factual finding is presumed correct under 28 U.S.C. § 2254(e)(1). *See id*. at 235–36.

6

motion seeks relief from the denial of his motion to amend his Rule 59(e) motion." ROA.1616.

While the language of the district court's order seemed limited, its effect was not. The district court treated that Rule 60(b) order as a vacatur of the final judgment itself. ROA.1630 (declining to adopt TDCJ's proposed scheduling order permitting parties to re-brief the Rule 59(e) motion); ROA.1874 (stating court had "vacated the court's previous order denying Ayestas' motion to amend and granted him leave to file an amended petition"). The end result: Seven years after final judgment was entered for the second time, Ayestas was allowed to file an amended petition raising two new habeas claims. ROA.1707–35. And the court refused to transfer the successive petition to this Court for authorization; instead, the district court decided (incorrectly) that Ayestas's sentencing-based claims satisfy 28 U.S.C. § 2244(b). ROA.2319.

The district court simultaneously authorized Ayestas to pursue twenty-three categories of discovery seeking party and third-party documents spanning a thirty-year period. ROA.2198–200, 2328–29. In doing so, the district court overruled, with little explanation, TDCJ's objections that it lacked jurisdiction to grant discovery, that it could not

grant Ayestas's merits-based discovery under § 2254(e)(2), and that Ayestas could not meet *Armstrong*'s comparator requirement. ROA.2328 (holding all TDCJ's objections "have been addressed").[2]

For the next two years, TDCJ and Ayestas engaged in protracted discovery litigation.[3] Ayestas served TDCJ with eighteen requests for production of documents and seven interrogatories seeking thirty years of partially confidential TDCJ data regarding Harris County defendants

---

[2]    At this juncture, TDCJ unsuccessfully petitioned this Court for mandamus relief, raising the below jurisdictional issue. *See infra* Argument I; *In re Lumpkin*, No. 23-20169, slip op. (5th Cir. July 18, 2023), ECF No. 63-1. As TDCJ explained then, it sought this Court's intervention because it lacked adequate remedies by appeal, and the parties were on the precipice of a potentially extraordinary intrusion into the state criminal-justice system via the remarkably broad discovery Ayestas was permitted to seek. *See, e.g.,* Reply in Supp. Pet. Writ Mandamus at 10–12, *In re Lumpkin*, No. 23-20169, slip op. (5th Cir. July 18, 2023), ECF No. 48. The description of the discovery litigation that follows—and the instant appeal before this Court—show just how extraordinary that intrusion has become, another reason amicus TDCJ has an interest in this appeal.

[3]    It is unclear whether discovery has concluded—while the district court initially imposed a deadline by which Ayestas was required to serve discovery on all relevant parties, *see* ROA.2379 (requiring Ayestas to serve all discovery by August 7, 2023), Ayestas continued to serve new discovery on both TDCJ and third parties long after that deadline. *See* ROA.2498–511 (subpoena duces tecum to the Harris County District Clerk issued on September 10, 2023, and second set of interrogatories served on TDCJ on November 14, 2023); *see also* ROA.2615–16 (Ayestas arguing his timely requests are "continuing in nature"); ROA.2959–63 (overruling TDCJ's objections to new discovery as exceeding the Rule 6 grant and untimely).

convicted of capital murder and murder. ROA.2383–404. The district court[4] continued to overrule, again with little explanation, all TDCJ's objections under AEDPA, *Armstrong*, and Rule 26 of the Federal Rules of Civil Procedure. ROA.2418–20, 2447–48, 2744–46, 2860–61, 2956–68, 2984. At bottom, the district court imposed not a single limitation on the unprecedented discovery Ayestas sought.

Having perhaps exhausted all TDCJ had to offer, Ayestas set his sights on Harris County. Using TDCJ's data, Ayestas sought to compel Harris County to produce the capital murder charging memoranda of hundreds of Harris County defendants over a thirty-year period. ROA.2985–3009, 3037–88. Harris County objected, arguing Ayestas had failed to meet *Armstrong*, and work product and deliberative process privileges prohibit the release of the materials. ROA.3089–114. The district court once again refused to limit Ayestas's discovery, holding it had already overruled TDCJ's *Armstrong* objection "on several occasions," ROA.3174, and privilege did not protect the discovery from disclosure, ROA.3176–81. This interlocutory appeal follows.

---

[4] For ease of reference, TDCJ refers to the many orders issued by either the magistrate judge or district judge in this case as being issued by the "district court."

## ARGUMENT

### I. The Discovery Order Is Invalid Because the Lower Court Lacks Jurisdiction Over the Proceedings.

The district court's order compelling Harris County to produce an extraordinary amount of discovery is invalid from the get-go because the district court had no jurisdiction to enter it. That's because, under AEDPA, Ayestas's Rule 60(b) motion should have been dismissed as a second-or-second successive petition that he did not (and could not) obtain authorization to file. And even if the Rule 60(b) was not successive, judgment should not have been reopened.

"[A] state prisoner always gets one chance to bring a federal habeas challenge to his conviction," but that one chance is over once there is a "final judgment granting or denying habeas relief." *Banister*, 590 U.S. at 509, 521; *Rivers v. Guerrero*, 605 U.S. 443, 446–47 (2025) (second-in-time petition is successive "once the district court has entered its judgment with respect to the first petition"). After that, any filing containing a habeas claim "must clear [the] strict procedural hurdles" within § 2244(b). *Rivers*, 605 U.S. at 446. This applies "even if the filing is not styled as a § 2254 habeas application by the filer—so long as the document is a § 2254 petition in substance." *Id*. at 450–51. A so-called

post-judgment "'motion' that 'seeks to add a new ground for relief' or 'attacks the federal court's previous resolution of a claim on the merits' can be construed as a second or successive petition and forced to face the gauntlet of § 2244(b), no matter how it is labeled." *Id*. at 451.

Here, Ayestas twice filed such post-judgment "motions": first, in 2015 when he filed his so-called "supplemental" Rule 59(e) motion, along with a post-judgment motion to amend, expressly seeking to raise new claims; and second, in 2021 when he filed a Rule 60(b) motion whose sole purpose was to clear post-judgment procedural hurdles to his ability to raise new claims. Each of these motions had a single, impermissible goal: "to add a new ground for relief." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005); *see also id*. at 531 ("Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts."). Ayestas's motions (then, as now) were paradigmatic successive petitions. *Id*.

Further, both the CCA and this Court have already determined Ayestas failed to exercise reasonable diligence in discovering the

foundation of his new claims. *See supra* n.1; *Ayestas*, 817 F.3d at 901; *see Ford*, 910 F.3d at 235–36; *cf. Woodfox v. Cain*, 772 F.3d 358, 370 (5th Cir. 2014) (quoting *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004)). And both determinations necessarily mean Ayestas could've raised his new claims before final judgment, which again renders them successive. *See In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) (per curiam) ("A petition is successive when it 'raises a claim . . . that was or could have been raised in an earlier petition."). Thus, regardless of whether Ayestas's new claims could've been raised before or after final judgment, the upshot is clear: the district court lacked jurisdiction to consider them absent this Court's authorization, *see* § 2244(b)(4), much less to reopen proceedings and grant unheard-of discovery in a federal habeas case.

Yet the district court sidestepped § 2244 altogether, effectively acting like final judgment had never been entered. The district court justified reopening long-final proceedings and permitting Ayestas to file an unauthorized second petition on two grounds. *First*, it appeared to misunderstand *Gonzalez*'s "defect in the integrity of the federal habeas proceedings" rule, holding that a post-judgment motion seeking to reopen an earlier post-judgment "jurisdictional ruling" was a proper Rule 60(b)

motion. *See* ROA.1613. But defect or not, the court was *not* permitted to

accept Ayestas's new claims in the guise of a Rule 60(b) motion. *See*

*Edwards*, 865 F.3d at 204–05 (Rule 60(b) motion urging abandonment by

habeas counsel for purpose of adding a new claim is "the definition of a

successive claim"); *cf. Clark v. Davis*, 850 F.3d 770, 784 (5th Cir. 2017)

(indicating a Rule 60(b) motion addressing a defect in the federal habeas

proceedings does not also allow the district court to "reopen and

reconsider" the merits). Again, Ayestas's sole goal in both 2015 and now

is expressly prohibited by AEDPA. *See Gonzalez*, 545 U.S. at 532 (a filing

that seeks "vindication of such a claim" is "similar enough" in substance

to an "application" that "failing to subject it to the same requirements

[under AEDPA] would be 'inconsistent with' the statute").

*Second*, the district court misunderstood *Banister*'s application to

Ayestas's 2015 filings. *See* ROA.1613–14. *Banister* explained its holding

in terms of three limitations unique to Rule 59(e) motions: (1) a Rule 59(e)

motion cannot add new habeas claims, *see* 590 U.S. at 516 ("Courts will

not entertain arguments that could have been but were not raised before

the just-issued decision"); (2) Rule 59(e) "gives a prisoner only a narrow

window to ask for relief—28 days, with no extension," *id*.; and (3) Rule

59(e) allows only "a one-time effort" to amend the district court's judgment, *id.* at 521. Each of these attributes were absent from Ayestas's 2015 filings.

Namely, his 2015 "supplemental" Rule 59(e) did not "request 'reconsideration of matters properly encompassed' in the challenged judgment," 590 U.S. at 516; rather, it added new habeas claims, constituting the exact kind of "serial habeas litigation" proper Rule 59(e) motions are meant to avoid, *see id.* at 521. Moreover, it was filed outside the twenty-eight-day window, *id.* at 516, and therefore should have been treated as a Rule 60(b) motion outside *Banister*'s ambit. *See Demahy v. Schwarz Pharma., Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012) ("If the motion [asking for reconsideration of a prior ruling] was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59, and if it was filed outside of that time, it is analyzed under Rule 60."). And the motion—an alleged "supplement" to a timely filed Rule 59(e) motion that had not yet been ruled on—was not a "one time effort" to amend the judgment. *See Banister*, 590 U.S. at 516. Ayestas cannot "supplement" his Rule 59(e) motion and remain outside the reach of § 2244(b). *See id.*; *Feldberg v.*

*Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) (per curiam) ("Permitting [plaintiffs] to supplant their timely yet insufficient 'placeholder' Rule 59(e) motion . . . with their subsequent augmented filing . . . would afford them an easy way to circumvent Rule 6(b)'s prohibition on granting an enlargement of time."). *Banister* had no impact on the successive nature of Ayestas's "supplemental" Rule 59(e).

Similarly, his post-judgment motion to amend, *see* ROA.1148, could not possibly have been affected by *Banister* because post-judgment motions to amend a complaint should be construed as Rule 60(b) motions subject to *Gonzalez*'s framework. *See BLOM Bank SAL v. Honickman*, 145 S. Ct. 1612, 1617 (2025) (holding Rule 60(b)(6) standards apply to motions seeking to amend complaint after judgment because "satisfaction of Rule 60(b)(6) necessarily precedes any application of Rule 15(a)"); *see also Balbuena v. Sullivan*, 980 F.3d 619, 636 (9th Cir. 2020) ("Because petitioner did not move to amend until 'after the district court had denied his claims,' he was required to satisfy the requirements for successive petitions under § 2244(b)." (quoting *Beaty v. Schriro*, 554 F.3d 780, 782–83 (9th Cir. 2009))); *Fisher v. Kadant, Inc.*, 589 F.3d 505, 508 (1st Cir. 2009) ("If, however, a motion to amend is filed after the entry of

judgment, the district court lacks authority to consider the motion under Rule 15(a) unless and until the judgment is set aside."); *Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 470 (5th Cir. 2023) (citing 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1489 (3d ed.))). His 2015 motion to amend was, and remains, successive.

In short, *Banister* was irrelevant to Ayestas's 2015 motions, and regardless, it doesn't change that Ayestas was in 2015 and is now trying to litigate new claims. *Edwards*, 865 F.3d at 204–05; *Gonzalez*, 545 U.S. at 532 ("In most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify."). His 2021 Rule 60(b) motion was a successive habeas petition over which the district court had no jurisdiction to do anything but dismiss or transfer to this Court.

But assuming *arguendo* that Ayestas's Rule 60(b) motion was not itself successive, the district court still could not reopen judgment because "[m]ere changes in decisional law"—like *Banister*'s abrogation of circuit precedent—"without more, do not constitute extraordinary circumstances" sufficient to warrant Rule 60(b) relief. *Crutsinger v.*

*Davis*, 936 F.3d 265, 270 (5th Cir. 2019); *see also Gonzalez*, 545 U.S. at 536 ("It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation" of the statute of limitations.); ROA.1549–50. And Ayestas failed to demonstrate any other extraordinary circumstances existed or that his Rule 60(b) motion was timely. *See* ROA.1540–55. Thus, the district court abused its discretion in granting Rule 60(b) relief. And if judgment should not have been reopened, then the district court had no jurisdiction to permit, consider, or grant discovery on an unauthorized amended petition. *See Sandoval Mendoza*, 81 F.4th at 470 (amendment under Rule 15 is permitted only after judgment is reopened); *see also* § 2244(b)(4).

Ayestas's Rule 60(b) motion should have either been dismissed as successive or denied on the merits. Either way, the amended petition is successive, and Ayestas never sought authorization to file it, so the "District Court never had jurisdiction to consider it in the first place." *See Burton v. Stewart*, 549 U.S. 147, 152 (2007). This Court should reverse the district court's order with instruction to dismiss Ayestas's unauthorized amended petition as successive.

## II. Ayestas's Lack of Diligence in Developing His Claims Precludes Merits-Based Discovery.

Assuming the district court had jurisdiction over the proceedings, Ayestas's lack of diligence means, under AEDPA, Ayestas's case should never have reached the discovery stage, and the district court should never have compelled Harris County to produce discovery.

AEDPA "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop v. Twyford*, 596 U.S. 811, 819 (2022). "[A] federal court, in deciding whether to grant an evidentiary hearing or 'otherwise consider new evidence' under § 2254(e)(2), must first take into account these restrictions." *Id.* (quoting *Shinn v. Martinez Ramirez*, 596 U.S. 811, 389 (2022)). "The reasons for this are familiar"—"[a] federal court 'may *never* needlessly prolong a habeas case, particularly given the essential need to promote the finality of state convictions[.]'" *Id.* (quoting *Martinez Ramirez*, 596 U.S. at 390). So before a court can "facilitat[e] the development of new evidence," it "must, consistent with AEDPA, determine at the outset whether the new evidence sought could be lawfully considered." *Id.* at 820. Discovery "that enables a prisoner to gather evidence that would not be admissible would 'needlessly prolong' resolution of the federal habeas case." *Id.* at 821. Evidence would be

inadmissible if, for example, a petitioner failed to diligently develop the factual basis of his claim, and § 2254(e)(2) would prohibit its consideration. *See id*. at 819–20.

As mentioned, both this Court and the CCA have already determined that "Ayestas did not exercise reasonable diligence in attempting to discover the memorandum earlier." *Ayestas*, 817 F.3d at 901; *see also supra* Background. Indeed, Ayestas waited until after final judgment was entered for the second time before deciding to conduct a review of Harris County's trial file. *See Ayestas*, 817 F.3d at 901. As this Court held, Ayestas "never suggest[ed] he sought to examine the prosecution's file prior to the December 22[, 2014] search that uncovered the memorandum." *Id*. at 900. Nor did he show "that [the memorandum] was unavailable to [his] trial counsel through a reasonably diligent examination of the case file the prosecution had made available." *Id*. And Ayestas's excuses for not searching sooner did not "mitigate [his] own responsibility to undertake a reasonably diligent investigation."[5] *Id*. The

---

[5]    Indeed, however the memorandum found its way into the casefile, it *did* find its way into the file, and Ayestas had a "duty to secure information in the possession of the prosecution." *Ayestas*, 817 F.3d at 900.

CCA agreed, implicitly rejecting his excuses as not credible. *See Ex parte Ayestas*, 2020 WL 7234770, at *1; *Ford*, 910 F.3d at 235–36.

Ayestas never provided sufficient justification to depart from this Court's factual determinations. *Cf. Goodwin v. Johnson*, 224 F.3d 450, 457–58 (5th Cir. 2000) (a request to revisit a prior decision should be declined, unless: 1) the evidence on a subsequent trial was substantially different, 2) there is intervening, contrary controlling authority; or 3) the decision was clearly erroneous and would work manifest injustice). And Ayestas failed to overcome with clear and convincing evidence the presumption of correctness afforded the CCA's determinations. *See Ford*, 910 F.3d at 235–36.

Those determinations have important consequences on the proceedings below and, in turn, the discovery order at issue in this appeal—Ayestas's lack of diligence means his claims are: (1) barred by the statute of limitations because it began to run when his conviction became final, *see* ROA.1916–23; (2) procedurally barred by the state court's abuse-of-the-writ bar, which he cannot establish cause to overcome, *see* ROA.1935–39; and (3) barred by § 2254(e)(2), *see Twyford*, 596 U.S. at 819–20; *see also* ROA.2089–92. Accordingly, facilitating the

development of new evidence on the *merits* of Ayestas's claims would constitute an abuse of discretion, as it "would 'prolong federal habeas proceedings with no purpose.'" *Twyford*, 596 U.S. at 820. Given Ayestas could not overcome this Court's and the CCA's lack-of-diligence findings—and the downstream AEDPA consequences of those findings— Ayestas should never have been granted discovery.

Startlingly, the district court initially agreed that Ayestas wasn't diligent. Indeed, in 2015, the district court had expressly held Ayestas failed to show the memorandum "could not have been previously discovered through the exercise of due diligence" in that Ayestas did "not allege that the prosecutor's file was previously unavailable to him, or that the document was omitted from the file when it was produced." ROA.1238. This Court confirmed that determination on appeal. *See Ayestas*, 817 F.3d at 901.

But from 2015 (when it denied Ayestas's post-judgment motions partially for lack of diligence) to 2021 (when it, apparently, granted every post-judgment motion since 2015), the district court made an about-face. First, it held Ayestas diligently raised his claims in federal court *after* he discovered the memo. *See* ROA.1614–15. Second, it permitted Ayestas to

submit with his *reply* to TDCJ's answer and motion for summary judgment[6] new evidence on his diligence, for the first time in seven years of litigating his diligence in state and federal court. *See* ROA.2318. Dismissing this Court's factual determinations, the district court said Ayestas had "now developed evidence which, at a minimum, raises a genuine *question* as to whether trial counsel could have discovered the Seigler memo through the exercise of due diligence." ROA.2321. (emphasis added). Addressing TDCJ's § 2254(e)(2) argument, the district court said "*if* the Siegler Memo was not included in the case file given to trial counsel for review," then *Martinez Ramirez* did not bar development

---

[6]    TDCJ titled its response to Ayestas's amended petition a motion for summary judgment because, at the time, the Southern District of Texas required it pro forma. *See* ROA.2238, 2275. TDCJ never cited or argued the standard or the rules governing summary judgment. That's because, regardless of the title of the pleading, the habeas rules control, and under those rules, it was Ayestas's burden, not TDCJ's, to show entitlement to relief. *See* R. Gov'g § 2254 Cases R.12; *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Yet Ayestas relied on traditional summary-judgment principles as justification for why he should be permitted to add new evidence for the first time in seven years with a reply brief. *See* ROA.2237–42. TDCJ tried striking Ayestas's new evidence, *see id.*, but the district court declined and did not even permit TDCJ to file a sur-reply addressing the new evidence, ROA.2318. Worse, however, the district court used traditional summary judgment principles to grant Ayestas discovery, *see, e.g.,* ROA.2325 ("In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to Ayestas and grant all reasonable inferences in Ayestas's favor."), even though TDCJ also asked the court to strike "the motion portion of [TDCJ's] responsive pleading and consider it an answer only," ROA.2275 n.7.

of the claims. *See* ROA.2327 (emphasis added). And to TDCJ's discovery opposition, the court simply said: "the[] objection[] ha[d] been addressed." ROA.2328.

But Ayestas's diligence evidence was always available to him, and his sandbagging of that evidence for seven years should not have been sufficient justification for the lower court to depart from this Court's and the CCA's diligence determinations. *Cf. Vidimos, Inc., v. Wysong Laser Co., Inc.*, 179 F.3d 1063, 1065–66 (7th Cir. 1999) (Posner, C.J.) ("[T]he doctrine of law of the case bars . . . an argument for reconsideration that is based not on intervening authority, new (and heretofore *undiscoverable*) evidence, or other changed circumstances[.]" (emphasis added)). Nonetheless, the district court's mere "questions" and hypotheticals run afoul of *Twyford*'s directive that courts must "*determine* at the outset whether the new evidence sought could be lawfully considered." 596 U.S. at 820 (emphasis added). The district court never determined that. And its facilitation of expansive discovery has "'needlessly prolong[ed]' resolution of th[is] federal habeas case." *Twyford*, 596 U.S. at 821. This the court could not do, and its order should be reversed.

## III. The District Court's Grant of Discovery Violates *Armstrong*.

Aside from the already stringent limitations on discovery imposed by AEDPA *generally*, additional requirements apply to the *specific* type of claim here—a selective prosecution claim.

In *Armstrong*, the Supreme Court outlined the elements necessary to prove that claim. 517 U.S. at 465 (claimant must demonstrate the prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose" (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985))). But it also took the extraordinary step of spelling out the prerequisites to even get discovery. 517 U.S. at 468. The "requisite showing to establish entitlement to discovery" on the discriminatory-effect prong is "some evidence that similarly situated defendants of other races could have been prosecuted, but were not[.]" *Id.* at 468–69; *see also id.* at 470 ("the required threshold" for discovery as "a credible showing of different treatment of similarly situated persons"). Thus, petitioners claiming selective-prosecution violations must meet a "rigorous standard" both with respect to the elements of the claim *and* "for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468; *see also United States v. Bass*, 536 U.S. 862, 862–64 (2002) (overturning the

affirmance of discovery in a federal death penalty case because the decision was "contrary to *Armstrong*" where the defendant said "nothing about charges brought against *similarly situated defendants*"). Anything less "threatens the 'performance of a core executive constitutional function.'"[7] *Id.* (quoting *Armstrong*, 517 U.S. at 465).

So important is this requirement that this Court has granted mandamus relief where a district court "incorrectly appl[ied] *Armstrong*" in granting a federal criminal defendant discovery. *In re United States*, 397 F.3d 274, 283 (5th Cir. 2005). There, the defendant was one of fourteen co-defendants involved in the deaths of numerous undocumented immigrants. *Id.* at 277. Two of the co-defendants were African American; the rest were Hispanic. *Id.* at 278. The defendant, an African American, was the driver of the vehicle in which the immigrants

---

[7]      In Texas, the decision to prosecute violations of state criminal law lies with the judicial branch of government. *See State v. Stephens*, 663 S.W.3d 45, 50 (Tex. Crim. App. 2021) ("The office of county and district attorney, on the other hand, are in the judicial branch of government. . . . [T]heir primary function is 'to prosecute the pleas of the state in criminal cases.'" (quoting *Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987))). However, the structure of Texas government does not change that these offices wield the power to prosecute and punish, a core executive function. And that Ayestas asked for federal court intrusion into a *state*'s constitutional functions, especially in the face of a valid and final state court judgment, is even more reason to apply *Armstrong*'s stringent gateway-discovery standard.

were killed, and he alleged he was selectively prosecuted because of his race. *Id*. at 277–78. "After summarily declaring that [the defendant] had made a prima facie case under *Armstrong*, [the district court] granted" the defendant's discovery request. *Id*. at 279.

Affirming *Armstrong*'s gateway-discovery rule, the Court held that the district court "ignored Supreme Court precedent and the plain facts *as stated by the defendant himself*." *Id*. at 284. First, the defendant admitted he *needed* discovery to make the required showing. *Id*. Second, the defendant acknowledged "that the Government declined to pursue the death penalty against a similarly situated, black co-defendant." *Id*. That's because a "valid, non-discriminatory explanation for seeking the death penalty against" the defendant existed: the defendant, "the driver of the truck, was allegedly able to prevent the victims' deaths." *Id*. at 284 & n.10. It was thus "clear to the naked eye" that the defendant had "not made the requisite showing under *Armstrong* to warrant discovery on a selective prosecution claim." *Id*. at 284. Third, the defendant relied on a "study" that was "exactly the type of evidence" warranting reversal in *Bass* because "sharing a charge alone does not make defendants 'similarly situated' for purposes of a selective prosecution claim." *Id*. at

285. The district court's "misapplication of *Armstrong* represent[ed] clear legal error." *Id.*

Here, Ayestas sought from Harris County the exact kind of "broad and vague discovery" pertaining to "capital-charging practices" "inclusive of this case but not this case exclusively" that this Court found improper. *See id.* at 285. Relying on the above precedent, Harris County thus argued in the court below—and argues now, *see* Appellant's Br. 32–38—that *Armstrong* demands the denial of Ayestas's motion to compel. ROA.3097–101. Harris County is right for the reasons it enumerated then and now, but for other reasons, too.

For one, like the defendant in *In re United States*, Ayestas *conceded* that, "without access to many of the requested items," he "cannot respond to the thrust of [TDCJ]'s argument" that he failed to make the *Armstrong* showing. ROA.2202; *see also id.* ROA.2128 (Ayestas arguing his claim "does not fail because he *cannot* plead an identically situated white citizen defendant against whom death was not sought" (emphasis added)). Indeed, Ayestas has spilled much ink on the argument that he's *exempt* from *Armstrong*'s requirement. *See, e.g.*, ROA.2126–30;

Appellant's Br. 33–36. But neither the Supreme Court nor this Court have recognized any exceptions to *Armstrong*'s requirements.

For another, it is "clear to the naked eye" that Ayestas hasn't, and can't, meet *Armstrong* where Harris County "declined to pursue the death penalty against [his] similarly situated" co-defendants. *In re United States*, 397 F.3d at 284. Ayestas's two co-defendants are the exact same ethnicity, national origin, and citizenship status as he is. All three are Hispanic men from Honduras. *See* ROA.1945–46. And all three were illegally in the country when the murder occurred. *See* ROA.2026 (co-defendant Meza), ROA.2068 (co-defendant Gutierrez). Yet despite identical backgrounds, only Ayestas was convicted and sentenced to death; Harris County pled out the two similarly situated co-defendants to lesser offenses. *See* ROA.1946. This was consistent with the District Attorney's justification on the memorandum that it was "OK to plead non-killers for agg[ravated] robb[ery] life, deadly weapon, [and to] see[k] death on killer Ayestas." ROA.1376; *see also* Appellant's Br. 25–26.

Simply put, Harris County had "a valid, non-discriminatory explanation for seeking the death penalty": Ayestas was the triggerman; his co-defendants were not. *In re United States*, 397 F.3d at 284 n.10; *see*

*also United States v. Webster*, 162 F.3d 308, 335 (5th Cir. 1998) (no prima facie showing where a "non-discriminatory explanation for seeking the death penalty against Webster is . . . justified by the objective circumstances of the crime and the sufficiency and availability of evidence to prove the required elements under the law"). That is why Harris County "pursu[ed] the death penalty against [Ayestas] alone." *In re United States*, 397 F.3d at 284.

Overruling Harris County's *Armstrong* objection, the district court grappled with none of this case law or facts. Instead, it claimed it "ha[d] overruled this objection 'on several occasions'" and "d[id] so again here." ROA.3174 (citing ROA.2963). But the court's orders on this issue are akin to Russian nesting dolls—requiring one to dig for orders within orders before finally arriving at the inescapable conclusion that the court had never once even cited *Armstrong* before it referred discovery disputes to the magistrate judge. *See* ROA.1609–17, 1630, 1873–75, 1878–79, 2314–30, 2369–70, 2375, 2379–80.

The *most* the district court ever said was to reject, as already "hav[ing] been addressed," TDCJ's argument that Ayestas failed to show good cause for discovery because he had "not made a prima facie case for

relief." ROA.2328. But it is unclear where that objection had been addressed—certainly, it had no bearing on the Rule 60(b) motion or the court's reconsideration of its apparent grant. *See* ROA.1609–17, 1873–74. And if the court was referring to earlier in the same opinion, perhaps when it discussed the merits of the claims, the court never analyzed *Armstrong* nor even discussed the discriminatory-effect prong of Ayestas's selective prosecution claim. *See* ROA.2325–26. It did not specify whether it believed Ayestas *had* made the requisite comparator showing or whether it agreed with Ayestas that he *didn't* have to because he was exempt. In short, it did even less than the "summar[y] declar[ation]," *In re United States*, 397 F.3d at 279, that this Court criticized.[8]

Still, from this miasma, the magistrate judge somehow found clarity, stating the district court had overruled the *Armstrong* objection,

---

[8]    The district court's lack of clarity on whether, and how, Ayestas met *Armstrong* has emboldened other capital defendants, too. *See* Mot. Discovery & Evid. Hr'g at 21–25, *Curry v. Guerrero*, No. 4:23-CV-3144 (S.D. Tex. Sept. 5, 2025), ECF No. 62 (citing this case as good cause for discovery on selective prosecution claim); Renewed Mot. Discovery 4, 20–22, *Suniga v. Lumpkin*, No. 5:22-CV-124-H (N.D. Tex. Sept. 2, 2025), ECF No. 74 (same). Notably, sixty-three inmates from Harris County remain on death row. Death Row Information, TDCJ (last visited Sept. 27, 2025), https://www.tdcj.texas.gov/death_row/dr_county_conviction_offenders.html.

*see* ROA.3223, and remained steadfast in that conclusory belief all the way through the order at issue in this appeal. Yet the court was wrong—it has never made an *Armstrong* determination, nor could it make one in Ayestas's favor under the facts here. Like *In re United States*, the district court's discovery orders are clear abuses of discretion and should be reversed.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's order compelling Harris County to produce discovery.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

TOMEE M. HEINING
Chief, Criminal Appeals Division

s/ Gwendolyn Vindell
GWENDOLYN VINDELL*
Assistant Attorney General
Criminal Appeals Division
State Bar No. 24088591

*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1400
gwendolyn.vindell2@oag.texas.gov

*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

On October 3, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

s/ Gwendolyn Vindell
GWENDOLYN VINDELL
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH RULE 29(a) AND 32(a)

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and 32(a)(7) because it contains 6,443 words; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft 365 Word (the same program used to calculate the word count).

s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL
Assistant Attorney General