No. 25-70014

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

CARLOS MANUEL AYESTAS,
also known as Dennis Zelaya Corea,

*Petitioner-Appellee*,

vs.

HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE,

*Defendant-Appellant.*

## BRIEF OF APPELLEE

On appeal from the United States District Court
Southern District of Texas, Houston Division, Case No. 4:09-CV-2999
Hon. Christina A. Bryan, United States Magistrate Judge

Lee B. Kovarsky
PHILLIPS BLACK, INC.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
CORNELL LAW SCHOOL
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

*Attorneys for Petitioner-Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

No. 25-70014: *Ayestas v. Harris County District Attorney's Office*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Petitioner-Appellee:**

Carlos Manuel Ayestas
*Represented by:*

Lee B. Kovarsky, Phillips Black, Inc.

Sheri Lynn Johnson, Cornell Law School

**Defendant-Appellant:**

Harris County District Attorney's Office
*Represented by:*

Sean Teare, Harris County District Attorney

Meagan T. Scott, Assistant District Attorney

**Other Interested Entities:**

Texas Department of Criminal Justice
*Represented by:*

Gwendolyn S. Vindell, Assistant Attorney General

*/s/ Lee B. Kovarsky*

i

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner-Appellee Carlos Ayestas does not believe that oral argument is necessary. This Court does not have jurisdiction to hear the appeal of Defendant-Appellant Harris County District Attorney's Office, and the decision of the court below to grant Ayestas's motion to compel was not arbitrary or clearly unreasonable. If the Court decides that it would benefit from oral argument on any of the issues in the case, however, Ayestas welcomes the opportunity to provide such argument at the Court's convenience.

# <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. ii

TABLE OF AUTHORITIES ........................................................................... v

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF THE ISSUES .................................................................... 2

STATEMENT OF THE CASE ....................................................................... 3

    I.     BACKGROUND ..................................................................... 3

    II.    HISTORY OF DISCOVERY DISPUTE ........................................ 5

SUMMARY OF THE ARGUMENT ............................................................... 9

STANDARD OF REVIEW ......................................................................... 11

ARGUMENT ......................................................................................... 11

    I.     THIS COURT LACKS JURISDICTION OVER THIS
APPEAL ........................................................................... 11

          A.    This Court Lacks Jurisdiction Because HCDA Did Not
Object Before the District Court ................................ 12

          B.    This Court Lacks Jurisdiction Because the Discovery
Order Is Not Final and Is Not Subject to the Collateral-
Order Doctrine ....................................................... 16

    II.    *ARMSTRONG* DOES NOT PRECLUDE DISCOVERY ................... 23

          A.    The Court Below Correctly Held That *Armstrong* Does
Not Preclude Discovery Where There is Direct
Evidence of Discrimination ...................................... 24

          B.    The Courts Below Correctly Held That *Armstrong*
Does Not Preclude Discovery on An Eighth
Amendment Claim ................................................. 28

C.    *In re United States* Does Not Control the Inquiry for Collateral Attacks Involving Direct Evidence of Discrimination..................................................................31

III.    THE WORK-PRODUCT PRIVILEGE DOES NOT PRECLUDE PRODUCTION OF THE REQUESTED MATERIALS .........................................................................32

A.    Nonparty Prosecutors Cannot Claim Work-Product Privilege in Subsequent Suits Alleging Prosecutorial Misconduct to Shield Material Prepared in Anticipation of Completed Prosecutions .........................................33

B.    Ayestas's Substantial and Compelling Need for the Requested Materials Overcomes Any Work-Product Protection .................................................................38

1.    Ayestas Has a Substantial and Compelling Need for the Charging Memoranda .........................................41

2.    Ayestas Has a Substantial and Compelling Need for the Remainder of His Own Case File .......................46

IV.    THE COURT SHOULD ORDER ADDITIONAL BRIEFING IF IT INTENDS TO CONSIDER TDCJ'S ARGUMENTS...............47

A.    Additional Case History.............................................48

B.    This Court Should Afford Ayestas the Opportunity to Brief Any Non-*Armstrong* Arguments That It Intends to Consider .................................................................51

1.    Ayestas Should Not Have to Respond to TDCJ's Improper Presentation of Jurisdictional Arguments Not Appealed by TDCJ or HCDA, and That This Court Rejected Unanimously in the Mandamus Proceeding.............................................52

2.    Ayestas Should Not Have to Respond to TDCJ's Improper Presentation of Non-Jurisdictional Issues Not Subject to Final Disposition in the Court Below...................................................................53

CONCLUSION ..........................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*A-Mark Auction Galleries v. Am. Numismatic Ass'n*,
233 F.3d 895 (5th Cir. 2000) ...............................................................17

*Atchison v. City of Tulsa*,
344 F.R.D. 28 (N.D. Okla. 2023) ...................................36, 37, 44, 45

*Banister v. Davis*,
590 U.S. 504 (2020)..............................................................................50

*Bellum v. PCE Constructors, Inc.*,
407 F.3d 734 (5th Cir. 2005) ...............................................................15

*Burnham v. Cleveland Clinic*,
89 N.E.3d 536 (Ohio 2016) ...........................................................21, 22

*Burns v. Thiokol Chem. Corp.*,
483 F.2d 300 (5th Cir. 1973) ...............................................................42

*Carroll v. Fort James Corp.*,
470 F.3d 1171 (5th Cir. 2006) .............................................................53

*Carver v. Atwood*,
18 F.4th 494 (5th Cir. 2021) ................................................................53

*Castillo v. Cameron Cnty.*,
238 F.3d 339 (5th Cir. 2001) ...............................................................17

*Castillo v. Wal-Mart Stores Tex., LLC*,
2024 WL 4531080 (W.D. Tex. Oct. 8, 2024).....................................17

*Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*,
933 F.2d 1285 (5th Cir. 1991) .......................................................48, 52

*Cinel v. Connick*,
15 F.3d 1338 (5th Cir. 1994) ................................................. 33, 46-47

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949)..............................................................................16

*Crosby v. City of N.Y.*,
269 F.R.D. 267 (S.D.N.Y. 2010)...........................................37, 38, 42

*Diamantis v. Milton Bradley Co.*,
  772 F.2d 3 (1st Cir. 1985) .................................................................... 14

*Doe No. 2 v. Oologah-Talala Indep. Sch. Dist. No. 4 of Rogers Cnty.*,
  2023 WL 3391441 (N.D. Okla. May 11, 2023) ........................................... 37, 40

*Doubleday v. Ruh*,
  149 F.R.D. 601 (E.D. Cal. 1993) .................................................... 35, 36, 42, 43

*Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*,
  242 F. Supp. 3d 576 (S.D. Tex. 2017) ...................................................... 18

*Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer*, LLP,
  816 F.3d 1319 (11th Cir. 2016) ........................................................... 19

*Erie Cnty. Dist. Att'y's Off. v. Gugino*,
  2021 WL 4172876 (W.D.N.Y. Sept. 14, 2021) ............................................ 36

*Esquivel v. Kendrick*,
  2023 WL 5584168 (5th Cir. Aug. 29, 2023) ............................................... 12

*Est. of Christman v. Liberty Mut. Ins. Co.*,
  2021 WL 2325330 (M.D. La. June 7, 2021) ............................................... 39

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981) .............................................................. 18, 19, 22

*Foster v. Boise-Cascade, Inc.*,
  1975 WL 11888 (S.D. Tex. May 29, 1975) ................................................ 43

*Furman v. Georgia*,
  408 U.S. 238 (1972) .................................................................... 29

*Green v. Bock Laundry Mach. Co.*,
  490 U.S. 504 (1989) .................................................................... 15

*Gregg v. Georgia*,
  428 U.S. 153 (1976) .................................................................... 29

*Gregg v. Linder*,
  349 F.3d 860 (5th Cir. 2003) ........................................................... 12

*Harrell v. DCS Equip. Leasing Corp.*,
  951 F.2d 1453 (5th Cir. 1992) .......................................................... 14

*Henry v. Lake Charles Am. Press*, LLC,
  566 F.3d 164 (5th Cir. 2009) ........................................................... 16

*Hernandez v. Tanninen,*
   604 F.3d 1095 (9th Cir. 2010) ...........................................................19

*Hickman v. Taylor,*
   329 U.S. 495 (1947)...................................................................35, 37

*Ibarra v. Harris Cnty.,*
   2007 WL 9723645 (S.D. Tex. Nov. 16, 2007) ...................................38

*In re Avantel, S.A.,*
   343 F.3d 311 (5th Cir. 2003) .............................................................19

*In re Grand Jury 2021 Subpoenas,*
   87 F.4th 229 (4th Cir. 2023) ..............................................................19

*In re Grand Jury Proceedings,*
   43 F.3d 966 (5th Cir. 1994) ..........................................20, 21, 33, 34

*In re Int'l Sys. & Controls Corp. Sec. Litig.,*
   693 F.2d 1235 (5th Cir. 1982)......................................................39, 40

*In re Sealed Petitioner,*
   106 F.4th 397 (5th Cir. 2024) ...........................................................14

*In re United States,*
   397 F.3d 274 (5th Cir. 2005) .......................................................31, 32

*Kem Mfg. Corp. v. Wilder,*
   817 F.2d 1517 (11th Cir.1987) .........................................................14

*Klein v. Jefferson Par. Sch. Bd.,*
   2003 WL 1873909 (E.D. La. Apr. 10, 2003).....................................36

*La Union Del Pueblo Entero v. Abbott ("Hughes"),*
   68 F.4th 228 (5th Cir. 2023) ..............................................................20

*La Union Del Pueblo Entero v. Abbott ("Bettencourt"),*
   93 F.4th 310 (5th Cir. 2024) ..............................................................20

*Lawrence v. Suffolk Cnty.,*
   2022 WL 855380 (E.D.N.Y. Mar. 23, 2022).....................................36

*Lee v. City of Midland,*
   2024 WL 4005959 (W.D. Tex. Feb. 15, 2024) ...........................34, 36

*Lee v. Plantation of La., LLC,*
   454 F. App'x 358 (5th Cir. 2011).......................................................12

*Leonard v. Martin*,
    38 F.4th 481 (5th Cir. 2022) ................................................17, 19, 22

*Lewis v. Crochet*,
    105 F.4th 272 (5th Cir. 2024) .............................................................22

*Matter of Dallas Morning News Co.*,
    916 F.2d 205 (5th Cir. 1990) ..............................................................14

*Mayfield v. Butler Snow, LLP*,
    75 F.4th 494 (5th Cir. 2023) ...............................................................12

*McCleskey v. Kemp*,
    481 U.S. 279 (1987) ...............................................................29, 30, 31

*MDK, Inc. v. Mike's Train House, Inc.*,
    27 F.3d 116 (4th Cir. 1994) .................................................................17

*Menges v. Knudsen*,
    538 F. Supp. 3d 1082 (D. Mont. May 11, 2021) .......................... 25-26

*Merritt v. Int'l Bhd. of Boilermakers*,
    649 F.2d 1013 (5th Cir. 1981) .............................................................17

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009).................................................................*passim*

*Nieves v. Bartlett*,
    587 U.S. 391 (2019)..............................................................................26

*Perlman v. United States*,
    247 U.S. 7 (1918).................................................................................20

*Ramirez v. Abreo*,
    2010 WL 11470102 (N.D. Tex. Nov. 24, 2010) ................................... 41-42, 47

*Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev.*,
    980 F.2d 1043 (5th Cir. 1993) .............................................10, 48, 52

*Robinson v. Tex. Auto. Dealers Ass'n*,
    214 F.R.D. 432 (E.D. Tex. 2003) .................................................39, 47

*Sealed Appellees v. Sealed Appellants*,
    112 F.3d 173 (5th Cir. 1997) ..............................................................19

*SEC v. Brady*,
    238 F.R.D. 429 (N.D. Tex. 2006)........................................................40

*SEC v. Voight*,
   2023 WL 1778178 (5th Cir. Feb. 6, 2023) ........................................12

*Serv. Lloyds Ins. Co. v. N. Am. Risk Srvs., Inc.*,
   2021 WL 148054 (W.D. Tex. Jan. 15, 2021) ....................................40

*Shields v. Sturm, Ruger & Co.*,
   864 F.2d 379 (5th Cir. 1989) ...........................................................18

*Singletary v. B.R.X., Inc.*,
   828 F.2d 1135 (5th Cir. 1987) .........................................................12

*Smith v. Fifthian*,
   2006 WL 548529 (W.D. La. Mar. 2, 2006) .......................................34

*Stancu v. Hyatt Corp./Hyatt Regency Dallas*,
   791 F. App'x 446 (5th Cir. 2019) ....................................................12

*Turner v. Murray*,
   476 U.S. 28 (1986) ...........................................................................28

*United States v. Al Jibori*,
   90 F.3d 22 (2d Cir. 1996) .................................................................25

*United States v. Armstrong*,
   517 U.S. 456 (1996) ................................................................*passim*

*United States v. Arthur Young & Co.*,
   465 U.S. 805 (1984) .........................................................................35

*United States v. Berrios*,
   501 F.2d 1207 (2d. Cir. 1974) ................................................... 23-24

*United States v. Butler*,
   429 F.3d 140 (5th Cir. 2005) ...........................................................11

*United States v. Castro-Alfonso*,
   841 F.3d 292 (5th Cir. 2016) ...........................................................22

*United States v. Cline*,
   566 F.2d 1220 (5th Cir. 1978) ................................................... 12-13

*United States v. Copar Pumice Co.*,
   714 F.3d 1197 (10th Cir. 2013) .......................................................22

*United States v. El Paso Co.*,
   682 F.2d 530 (5th Cir. 1982) ...........................................................40

*United States v. Fluitt*,
  99 F.4th 753 (5th Cir. 2024) .......................................................17, 20

*United States v. Renfro*,
  620 F.2d 497 (5th Cir. 1980) .............................................................12

*United States v. Rodgers*,
  2022 WL 1074013 (E.D. Tex. Apr. 8, 2022)..............................*passim*

*United States v. Webster*,
  162 F.3d 308 (5th Cir. 1998) .............................................................42

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
  913 F.3d 443 (5th Cir. 2019) .......................................................*passim*

*Wayte v. United States*,
  470 U.S. 598 (1985)...........................................................................26

*Webb v. Hendricks Cnty. Sheriff's Off.*,
  2021 WL 3077925 (S.D. Ind. July 21, 2021) ....................................36

*Whole Women's Heath v. Smith*,
  896 F.3d 362 (5th Cir. 2018) .......................................................20, 21

*World Wide St. Preachers Fellowship v. Town of Columbia*,
  591 F.3d 747 (5th Cir. 2009) .............................................................52

*X Corp. v. Media Matters for Am.*,
  120 F.4th 190 (5th Cir. 2024) ......................................................11, 33

## Statutes and Other Authorities:

28 U.S.C. § 636(b)(1)(A).....................................................................17

28 U.S.C. § 636(c)(1)...........................................................................12

28 U.S.C. § 636(c)(3)...........................................................................12

Fed. R. App. P. 3 .................................................................................14

Fed. R. App. P. 3(c)(1)(A) ..................................................................14

Fed. R. App. P. 4 .................................................................................14

Fed. R. App. P. 21 ...............................................................................14

Fed. R. Civ. P. 26 ...........................................................................35, 38

Fed. R. Civ. P. 26(b)(1).......................................................................40

Fed. R. Civ. P. 26(b)(3).................................................................33, 34, 35, 39

Fed. R. Civ. P. 26(b)(5)...............................................................................40

Fed. R. Civ. P. 26(c)....................................................................................38

Fed. R. Civ. P. 26(c)(1)...............................................................................17

Fed. R. Civ. P. 45.........................................................................33, 35, 37, 38

Fed. R. Civ. P. 45(c)(3)(A)..........................................................................38

FED. R. CIV. P. 45(d)(3)(A)..........................................................................35

Fed. R. Civ. P. 45(e)(2)(B)..........................................................................37

Fed. R. Civ. P. 60(b)..............................................................................14, 50

Fed. R. Civ. P. 71.......................................................................................13

Fed. R. Civ. P. 72....................................................................................*passim*

Fed. R. Civ. P. 72(a)...............................................................................*passim*

Fed. R. Crim. P. 16......................................................................24, 27, 28

Fed. R. Crim. P. 16(a)................................................................................23

Habeas Rule 6 (i)........................................................................................28

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 234 (2012) ....................................................................15

8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Fed. Prac. & Proc.* § 2024 (3d ed. Apr. 2023 update).......................................34

8 *Fed. Prac. & Proc.* § 2025 (3d ed.) ............................................... 39-40

12 *Fed. Prac. & Proc. Civ.* § 3031 (3d ed.)................................................13

12 Wright & Miller, *Fed. Prac. & Proc.* § 3068.2 (4th ed.) ...................17

13 Moore's Fed. Prac. – Civ. § 71.04 (2025) .........................................13

## **JURISDICTIONAL STATEMENT**

This Court lacks jurisdiction because, as set forth in ARGUMENT Part I, *infra*, appellant skipped the district court and appealed directly from the magistrate judge's order in violation of Fed. R. Civ. P. 72(a). Furthermore, the magistrate judge's at-issue order is non-final and does not exempt Appellant from the final-judgment rule.

## <u>STATEMENT OF THE ISSUES</u>

1.     Does this Court lack jurisdiction either because it cannot hear appeals directly from magistrate judges or because the non-final order at-issue is not encompassed by the collateral-order doctrine?

2.     Did the court below abuse its discretion in deciding that *United States v. Armstrong*, 517 U.S. 456 (1996), did not preclude discovery, when the motion to compel was supported with direct evidence of discrimination.

3.     Did the court below abuse its discretion in ordering discovery over the prosecutor's claim of work-product privilege?

## STATEMENT OF THE CASE

This case has a lengthy procedural history, and what follows is only the content necessary to understand the discovery dispute between Carlos Manuel Ayestas and the Harris County District Attorney's Office ("HCDA"). ARGUMENT Part IV, *infra*, presents additional factual content needed to respond to the amicus brief filed by the Texas Department of Criminal Justice ("TDCJ")—which makes arguments rejected in earlier mandamus proceedings and that HCDA does not raise.

## I.    BACKGROUND

On September 5, 1995, Santiaga Paneque was found dead in Houston, Texas. ROA.2545. Law enforcement identified Ayestas and two others as persons of interest. *Id.* The Harris County District Attorney was John B. Holmes, Jr., and Kelly Siegler was his Court Chief. *Id.* Before Ayestas was arrested, Siegler wrote, and Holmes signed, an internal "Capital Murder Summary" (the "Siegler Memorandum"), *id.*; *see* ROA.8090-92 (Siegler Memorandum), which recommended that HCDA capitally charge and seek death against Ayestas, ROA.2545, 8092.

The Siegler Memorandum justified this recommendation with two facts: Paneque was elderly and "the Defendant is not a citizen." ROA.2545, 8092; *see also* ROA.2316 (district court discovery order describing Siegler Memorandum).



**III.  AGGRAVATING CIRCUMSTANCES**

A.  THE VICTIM IS A HELPLESS 67 YEAR OLD WOMAN KILLED IN HER HOME.

~~B.  THE DEFENDANT IS NOT A CITIZEN.~~

An unknown person at an unknown date struck through the Memorandum's typed out reference to non-citizenship. HCDA ultimately secured a conviction and death sentence. ROA.8003-22 (*Ayestas v. State*, No. AP-72,928 (Tex. Crim. App. 1998)); *see also* ROA.2314. The conviction required only that Ayestas was party to the robbery during which the murder occurred. *See* ROA.8010.

The Siegler Memorandum was never disclosed to Ayestas because HCDA treated it as work product. *See* Appellant's Br. in Opp'n at 18 n.10, *Ayestas v. Davis*, 584 U.S. 28 (2018) (No. 16-6795). It was discovered nearly two decades later, in December 2014, when HCDA inadvertently left it in the case file provided to Ayestas's habeas counsel. *See* ROA.1150-53. Ayestas immediately sought leave to amend his initial federal habeas petition, and he spent years litigating his entitlement to do so. *See* ROA.2316-17.

He ultimately succeeded after TDCJ admitted in U.S. Supreme Court pleadings that the Siegler Memorandum would have been withheld as work product. On August 12, 2021, the district court granted Ayestas leave to file an amended petition with claims arising out of the Siegler Memorandum. ROA.1609-17, 2317.

4

The court explained that the Siegler Memorandum "raises questions about whether Ayestas's national origin was a factor" in seeking death, and that declining to address the merits would result in a "substantial risk of injustice" and "a substantial risk of undermining public confidence in the judicial process." ROA.1616. Ayestas thereafter filed his amended habeas petition with Eighth and Fourteenth Amendment claims based on the newly discovered evidence. ROA.1707-34.

## II.   HISTORY OF DISCOVERY DISPUTE

On August 31, 2022, Ayestas moved for discovery under Rule 6(b) of the Rules Governing Section 2254 Cases, which the district court granted. ROA.2196-2206 (motion); ROA.2314-30 (order). In his discovery motion, Ayestas sought charging memoranda that HCDA created during Holmes's and Siegler's tenures. Those memoranda are probative of Ayestas's underlying claims because such information would "allow [Ayestas] to ascertain the HCDA's treatment [of people with similar profiles]." ROA.2201. Holmes was the District Attorney from 1979 to 2000, and Siegler remained at HCDA until 2008. (1979 to 2008 is the "Covered Period.") In granting Ayestas's motion, the court found that Ayestas "presented evidence raising questions as to whether the decision to seek the death penalty against him was based on constitutionally impermissible factors." ROA.2329.

A month later, TDCJ filed a mandamus petition challenging the court's authority to order discovery and to adjudicate the Siegler Memorandum claims. *See*

Pet. for Writ of Mandamus, *In re Lumpkin*, No. 23-20169 (5th Cir. Apr. 20, 2023). TDCJ raised the same jurisdictional arguments that now reappear in its Amicus Brief. ECF No. 33. This Court unanimously denied TDCJ's petition. Order, *In re Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023). The district court ordered discovery to resume and authorized Ayestas to serve discovery requests. ROA.2379-80.

On August 7, 2023, Ayestas served a subpoena on HCDA. The subpoena sought, in part, case files for relevant Hispanic and non-citizen defendants, along with all charging memoranda for HCDA defendants charged, during the Covered Period, with murder or capital murder. ROA.2991, 3116-27; *see also* ROA.3173 (June 3, 2025 "Discovery Order"). On August 18, HCDA objected on the basis that the subpoena imposed an undue burden, and it also asserted work-product and deliberative-process privileges. *See* ROA.3011-14.

Attempting compromise, Ayestas served a narrowed request for charging memoranda and case files on November 21, 2024. *See id.*; ROA.3015-20. In response, HCDA reiterated its general objections. *See* ROA.3173, 3022-26. Ayestas again narrowed his request to only his own case file and specific memoranda identified from discovery he obtained from TDCJ—the primary party to the habeas proceeding. *See* ROA.3035-36.[1] And HCDA again reiterated its privilege assertion. *See id.* Facing a categorical refusal to turn over any information, Ayestas moved to

---

[1] Ayestas no longer requested comparators' case files, only their charging memoranda.

compel the requested discovery. ROA.2985-3009.

In response to Ayestas's motion to compel, HCDA argued that compliance would be "unduly burdensome," ROA.3109-12, but failed to explain the burden with any specificity or to offer any compromise, *id.* (Ayestas had offered to negotiate the scope of his request. ROA.3007.) The magistrate judge issued the Discovery Order granting Ayestas's motion to compel, finding HCDA's burden arguments to be "only conclusory" and without "any supporting evidence." ROA.3175. The magistrate judge also determined that the documents are not protected by the work-product or deliberative-process privileges, and that they "must be produced" by July 3, 2025. Specifically, HCDA was ordered to produce:

> (i) [Covered Period charging memoranda] for comparator defendants charged with capital murder who are sufficiently likely to be non-white, foreign nationals, or non-citizens;

> (ii) [Covered Period charging memoranda] for comparator defendants charged with capital murder of victims with certain demographic attributes; [and]

> (iii) full access to the prosecutorial file from the Ayestas prosecution, including any material that the HCDA treats as privileged and confidential.

ROA.3181. Pursuant to Rule 72(a), HCDA's deadline to lodge *district court* objections to the Discovery Order was June 17, 2025. Instead of objecting, it noticed a June 27 appeal to *this* Court, ROA.3182-83.

On August 21, 2025, Ayestas moved to dismiss the appeal. Appellee's

Opposed Mot. to Dismiss, ECF No. 15 ("Mot." or "Mot. to Dismiss"). He argued that (i) this Court lacks jurisdiction over direct appeals from magistrate judge orders and (ii) the Discovery Order was non-final and not encompassed by the collateral-order doctrine. This Court denied Ayestas's motion without comment. HCDA subsequently filed its Appellant's Brief and then TDCJ filed its Amicus Brief. This Brief follows.

## SUMMARY OF THE ARGUMENT

In possession of a HCDA charging memorandum revealing that his non-citizenship was as a reason for capitalizing his prosecution, Ayestas moved to compel HCDA to produce certain charging memoranda and content from his own file. The magistrate judge granted that motion, adverse to HCDA's claim of work-product privilege. HCDA filed a prejudgment appeal from that discovery order, but this Court lacks appellate jurisdiction for two distinct reasons. First, it has no jurisdiction to hear appeals of magistrate judge orders not first objected to in the district court. Second, orders adverse to claims of work-product privilege do not trigger the collateral-order doctrine, which is a necessary exception to the final-judgment rule.

HCDA argues that, under *United States v. Armstrong*, 517 U.S. 456 (1996), the district court abused its discretion in allowing any discovery. On HCDA's telling, Ayestas may not obtain any discovery until he first identifies a similarly situated American citizen who was white, non-Hispanic, and not prosecuted capitally. But *Armstrong*'s discovery rule is only for Equal Protection allegations lacking *direct* evidence of discrimination. Ayestas has produced such direct evidence, so *Armstrong*'s comparator requirement does not apply. *Armstrong*, moreover, was an Equal Protection case, and its discovery rule has no bearing on Ayestas's Eighth Amendment claim.

HCDA further argues that the district court abused its discretion by

9

compelling discovery over HCDA's claim of work-product privilege. That privilege, however, does not attach to non-party prosecutorial material prepared in anticipation of a completed prosecution. And even if the privilege attached, courts uniformly find that such assertions of privilege are overcome when prosecutorial misconduct is the primary issue in a subsequent civil case.

This matter also features a brazen attempt by TDCJ—which sought no relief from this Court—to present appellate arguments in the form of an amicus brief. Absent exceptional circumstances, however, parties to the lower-court proceeding may not use an amicus brief to enlarge the scope of issues beyond those framed by the appellant and appellee. *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev.*, 980 F.2d 1043, 1049 (5th Cir. 1993). If this Court plans to entertain issues not raised by HCDA, then Ayestas respectfully requests notice and an additional opportunity to respond.

## STANDARD OF REVIEW

This Court reviews discovery rulings for abuse of discretion and will "generally affirm unless a ruling on discovery is 'arbitrary or clearly unreasonable.'" *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 197 (5th Cir. 2024) (quoting *United States v. Butler*, 429 F.3d 140, 148 (5th Cir. 2005) (per curiam)).

## ARGUMENT

Despite the order granting discovery and Ayestas's attempt to narrow the request, HCDA has not produced any charging memoranda or Ayestas's full case file. It has asserted privilege and burden, refusing to explain the latter to either Ayestas or the courts below. After the magistrate judge compelled production, HCDA failed to object to the district judge and sought *ultra vires* review here, in violation of Fed. R. Civ. P. 72(a). There is no jurisdiction over a non-final discovery order appealed directly from a magistrate judge to this Court, and the equities of HCDA's discovery conduct tilt against it. And HCDA should still lose on the merits because (i) *Armstrong* does not preclude discovery and (ii) the work-product privilege does not preclude production.

## I.    THIS COURT LACKS JURISDICTION OVER THIS APPEAL.

As set forth in Ayestas's Motion to Dismiss, this Court lacks jurisdiction over this appeal for two distinct reasons: (i) HCDA failed to perfect the chain of appellate review by objecting to the district court, and (ii) the Discovery Order is neither final nor encompassed by the collateral-order doctrine. Mot. at 7-20. HCDA's Brief

contains lengthy argument on the collateral-order doctrine, but not a single word about skipping the district court. *See* ECF No. 30.

### A.    This Court Lacks Jurisdiction Because HCDA Did Not Object Before the District Court.

Fed. R. Civ. P. 72(a) provides that a "party may serve and file objections to the order within 14 days after being served with a copy," but that the party "may not assign as error a defect in the order not timely objected to." As set forth in his Motion to Dismiss, hereby incorporated by reference, HCDA's failure to lodge timely objections before the district court deprives this Court of jurisdiction. Mot. at 7-12. This Court has endorsed this black-letter limit on its jurisdiction for generations.[2]

---

[2] *See, e.g.*, *Esquivel v. Kendrick*, 2023 WL 5584168, at *3 (5th Cir. Aug. 29, 2023) (holding that a party "may not preserve as error a [purported] defect in a magistrate judge's nondispositive order that is not timely objected to within fourteen days of service" (citing Fed. R. Civ. P. 72(a))); *Mayfield v. Butler Snow, LLP*, 75 F.4th 494, 502 (5th Cir. 2023) ("Plaintiffs challenge discovery orders made by a magistrate judge.… The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." (internal citations and quotation marks omitted)."); *SEC v. Voight*, 2023 WL 1778178, at *1 (5th Cir. Feb. 6, 2023) (holding that a party who failed to meet the timing requirements of Rule 72(a) had "forfeited th[e] issue by failing to do so"); *Stancu v. Hyatt Corp./Hyatt Regency Dallas*, 791 F. App'x 446, 453 (5th Cir. 2019) (same, and concluding that a party "may not assign as error a defect in [a nondispositive] order not timely objected to" (quoting Fed. R. Civ. P. 72(a))); *Lee v. Plantation of La., LLC*, 454 F. App'x 358, 359 (5th Cir. 2011) (dismissing appeal for lack of jurisdiction because appellant failed to object to magistrate judge's order in the district court); *Gregg v. Linder*, 349 F.3d 860, 862 (5th Cir. 2003) ("The only circumstance in which an order of a magistrate judge may be appealed directly to this Court is described in 28 U.S.C. § 636(c)(1) and (3)."); *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1137 (5th Cir. 1987) (characterizing as "settled" the rule that "pretrial matters referred by a trial judge to a magistrate must be appealed first to the district court," and holding that "[w]e therefore cannot now address the issue of whether the magistrate's granting of the protective order was error"); *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980) (characterizing as "settled" the rule that "appellate courts are without jurisdiction to hear appeals directly from federal magistrates," and holding that failure to object in district court "deprived the trial judge of his ability to effectively review the magistrate's holding"); *United States v. Cline*,

HCDA ignores Rule 72 entirely, focusing instead on the collateral-order doctrine. Its only Rule 72 argument in the record is the two pages appearing in its Response to Appellee's Opposed Motion to Dismiss. *See* ECF No. 22 at 8-10. HCDA's interpretation of Rule 72 is that non-parties to the underlying lawsuit are exempt and therefore free to take any appeal directly to the appellate court. *See id.* But no court anywhere has ever endorsed HCDA's preposterous reading of the Rule.

First, the Federal Rules of Civil Procedure expressly contemplate, and reject, the distinction that HCDA asserts. *See, e.g.*, Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty or *may be enforced against a nonparty*, the procedure for enforcing the order is the same as for a party." (emphasis added)). The Rule is "common sense," and "provides that, when [an order is made for or against a nonparty], nonparties have recourse to, and are subject to, process in the same measure as parties." 12 Fed. Prac. & Proc. Civ. § 3031 (3d ed.) (internal quotation marks and citations omitted). Per the other leading treatise, Rule 71 exists so that "[w]hen obedience to an order may be lawfully required of a person who is not a party to the lawsuit, that nonparty becomes *fully amenable to all the processes* that might be used to assure the obedience of a party." 13 Moore's Fed. Prac. – Civ. § 71.04 (2025) (emphasis added).

---

566 F.2d 1220, 1221 (5th Cir. 1978) ("This Court is without jurisdiction to hear appeals from decisions of the United States Magistrates.").

Second, some courts do not even reach questions about non-party compliance because they treat subpoena recipients who contest disclosure before the district court as "parties" within the meaning of Rule 72. *See* Mot. at 9-10. "Rule 72(a) 'parties' are the parties before the magistrate, not the parties to the litigation from which the nondispositive matter originated." *Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4 n.2 (1st Cir. 1985). Indeed, "[t]o read the rule narrowly … as permitting a party to object to rulings involving only third party witnesses ignores the rest of the language of the rule and, more importantly, well-settled standing doctrine." *Id*. And courts regularly apply Rule text about "parties" to other entities in litigation before the district court.[3] Ironically, HCDA can notice *this appeal* only because certain non-parties are permitted to file such notice under Fed. R. App. P. 3 and 4—which speak only in terms of "party" appeals. *See, e.g.*, Fed. R. App. P. 3(c)(1)(A) (requiring that all notices of appeal "specify the *party or parties* taking" them (emphasis added)); Fed. R. App. P. 4 (requiring that "the notice of appeal required by Rule 3" be filed within 30 days of order).

Third, courts do not adopt absurd Rule interpretations when there are

---

[3] Fed. R. Civ. P. 60(b) refers only to post-judgment relief against a "party," though this Circuit recognizes that certain entities not formally parties can move under that Rule. *See, e.g.*, *Harrell v. DCS Equip. Leasing Corp*., 951 F.2d 1453, 1458 n.14 (5th Cir. 1992) (recognizing principle as stated in *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1520 (11th Cir.1987)). Fed. R. App. P. 21 speaks only of a "party" that may petition for mandamus, yet the Fifth Circuit regularly permits non-party mandamus petitions. *See, e.g.*, *In re Sealed Petitioner*, 106 F.4th 397, 399 (5th Cir. 2024) (exercising mandamus jurisdiction over petition filed by a non-party); *Matter of Dallas Morning News Co.*, 916 F.2d 205, 206 (5th Cir. 1990) (same).

reasonable alternatives. HCDA's novel interpretation of Rule 72(a) means that: A party to the underlying proceeding has fourteen days to "serve and file objections" to the magistrate judge's order, but a non-party has no time limit; a party could not "assign[] as error a defect in the order not timely objected to," but a non-party cannot forfeit issues; a party's objections to magistrate judge determinations could be set aside only if they are "clearly erroneous" or "contrary to law," but non-party objections could trigger *de novo* review; and a party to the underlying proceeding would have to "promptly arrange for transcribing the record" for magistrate judge recommendations on dispositive matters, but there would be no such burden for a non-party. The Rules Committee did not recommend, and Congress did not enact, such absurdities. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989) (rejecting "odd" textual interpretation of Rule passed under the Rules Enabling Act); *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 740 (5th Cir. 2005) (rejecting interpretation of text that produces an "absurd result"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 234 (2012) (discussing the "absurdity canon").

Non-parties own no special privilege to forum shop between district and circuit courts. Permitting such practice would contravene the ordinary meaning of the applicable Rules and dramatically protract civil litigation. This Court should not become the first to hold that non-parties get special treatment under Rule 72, and

this appeal should end here.

### B.     This Court Lacks Jurisdiction Because the Discovery Order Is Not Final and Is Not Subject to the Collateral-Order Doctrine.

This Court also lacks jurisdiction because the Discovery Order is non-final and does not fit into the collateral-order doctrine.[4] *See* Mot. at 12-19. The collateral-order doctrine permits prejudgment appeals for only a "narrow class of decisions" that are "'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). "To fall within *Cohen*'s collateral order doctrine, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009) (internal quotation marks and citations omitted). This determination is made categorically—i.e., by "looking only at whether the class of claims, taken as a whole, can be vindicated by other means than immediate appeal"—not case-by-case. *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019) (quotations omitted); *see also Mohawk*, 558 U.S. at 107 (requiring categorical

---

[4] HCDA's Brief states that the collateral-order doctrine "establishe[s]" jurisdiction, Appellant's Br. at 13, but HCDA needs to prevail on *both* jurisdictional issues—Rule 72 and the collateral-order doctrine—for this Court to reach the merits of the appeal.

inquiry). The "bar set by the collateral order doctrine is high," *Vantage Health*, 913 F.3d at 449, and there is a strong presumption in favor of post-judgment appeals.

The Discovery Order is not dispositive and HCDA has other remedies,[5] so HCDA flunks two elements of the test. That reality is reflected in this Circuit's general rule: An entity possessing documents and asserting privilege may not appeal a compulsion order until it has disobeyed the order and been held in contempt. *See Leonard v. Martin*, 38 F.4th 481, 488 (5th Cir. 2022); *A-Mark Auction Galleries v. Am. Numismatic Ass'n*, 233 F.3d 895, 898-99 (5th Cir. 2000). Only then might that party have standing to appeal,[6] and only then might the order fit within the collateral-order doctrine. *See Leonard*, 38 F.4th at 488; *see also United States v. Fluitt*, 99 F.4th 753, 760 (5th Cir. 2024) (the defy-contempt-appeal route creates an "immediately appealable" contempt order and is the approach that "has long been

---

[5] *See, e.g.*, *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-18 (5th Cir. 1981) ("[D]iscovery issues are by definition pretrial matters," and a magistrate judge has "the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders."); *Castillo v. Wal-Mart Stores Tex., LLC*, 2024 WL 4531080, at *1 (W.D. Tex. Oct. 8, 2024) (citing 12 Wright & Miller, *Fed. Prac. & Proc.* § 3068.2 (4th ed.) ("Motions on discovery matters are generally non-dispositive.")); *see also MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116 (4th Cir. 1994) (order compelling non-party witness to provide business records was not immediately appealable under collateral-order doctrine regardless of witness's non-party status).

[6] The standing requirement is distinct from the collateral-order doctrine requirements. Non-parties may appeal judgments if they "actually participated in the proceedings below, the equities weigh in favor of hearing the appeal, and the[y] have a personal stake in the outcome." *Castillo v. Cameron Cnty.*, 238 F.3d 339, 349 (5th Cir. 2001). But HCDA does not have standing under *Castillo* because it did not meaningfully participate in the district court proceedings. In fact, it ignored every mechanism to protect its interests. It did not ask the magistrate judge to reconsider the Discovery Order, object to the district judge under Rule 72, request to have the issue certified for appeal, or seek mandamus. It even failed to seek a protective order. *See* Fed. R. Civ. P. 26(c)(1).

followed in this circuit"). Seeking a novel exemption from this Circuit's defy-contempt-appeal rule, HCDA resorts to claiming that it would suffer immense harm from disclosure—but compelled disclosure does not waive work-product privilege and protective orders can preserve necessary confidentiality. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (rule for attorney-client privilege); *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 242 F. Supp. 3d 576, 578 (S.D. Tex. 2017) (applying rule to work-product privilege).

*Mohawk* makes this point clear in its holding that, as a category, "orders adverse to the attorney-client privilege" do not "qualify for immediate appeal under the collateral-order doctrine" because "[p]ostjudgment appeals, together with other review mechanisms, suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege." 558 U.S. at 103. So "[t]he sole fact '[t]hat a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment … has never sufficed' to make a decision effectively unreviewable" and therefore appealable under the collateral-order doctrine. *Vantage Health*, 913 F.3d at 449. Even before *Mohawk*, "orders requiring discovery over a *work-product objection*" were quintessential forms of "harm" that are "not appealable" before judgment because they would transform the collateral-order doctrine "into a license for broad disregard of the finality rule imposed by Congress." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981)

(quotation marks and citations omitted, emphasis added).

This Court's precedent does not (and cannot) undermine *Mohawk* and *Risjord*. As this Court explained in *Leonard*, a litigant's non-party status does not transform an otherwise non-appealable discovery order into an appealable one: "[T]his court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order." 38 F.4th at 487. *Leonard* also indicates that claims of *work-product privilege* fall outside the collateral-order doctrine; citing a case about discovery orders adverse to claims of work-product privilege, it held that "cases are legion that deny immediate appeals under the collateral order doctrine in an array of discovery contexts." *Id.* at 487 & n.2 (citing *Sealed Appellees v. Sealed Appellants*, 112 F.3d 173, 174 (5th Cir. 1997)).[7] Even before *Leonard* and *Mohawk*, this Circuit held that an order compelling "discovery of privileged documents … would not be reviewable on appeal." *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003).

The Fifth Circuit authority to which HCDA cites is far afield of the work-

---

[7] At least three sister circuits have held that *Mohawk*'s rule for claims of attorney-client privilege extends naturally to claims of work-product privilege. *See In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 246 (4th Cir. 2023) (with respect to work-product dispute noticed for interlocutory appeal, "there remains no doubt that this Court lacks jurisdiction under the collateral-order doctrine"); *Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer*, LLP, 816 F.3d 1319, 1325 (11th Cir. 2016) (holding that, for collateral-order doctrine purposes, the distinction between "work product privilege" and the "attorney-client privilege" was immaterial); *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010) ("The reasoning of *Mohawk*, which eliminated collateral order jurisdiction on appeals of disclosure orders adverse to the attorney-client privilege, applies likewise to appeals of disclosure orders adverse to the attorney work product privilege.").

product question here. HCDA relies heavily on *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023) ("*Hughes*") and *La Union Del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024) ("*Bettencourt*"), but *Hughes* and *Bettencourt* involve orders adverse to *legislative* privilege claims. *See Hughes*, 68 F.4th at 23; *Bettencourt*, 93 F.4th at 314. HCDA extensively cites *Whole Women's Heath v. Smith*, 896 F.3d 362 (5th Cir. 2018), but that case was a third-party appeal of an order adverse to a religious institution's claim of First-Amendment associational privilege. *See* 896 F.3d at 368. *Vantage Health* was a third-party appeal from an order to unseal confidential information not relevant to the litigation, and this Circuit expressly distinguished the appealability of the unsealing issue from the appealability of an order that merely compelled "disclos[ure of] potentially privileged material." 913 F.3d at 449. The instant case, however, involves no First Amendment-based privilege (unlike *Hughes*, *Bettencourt*, and *Whole Women's* health), and involves no attempt to unseal information (as in *Vantage Health*).[8]

---

[8] HCDA misrepresents the holding and precedential effect of *In re Grand Jury Proceedings*, 43 F.3d 966 (5th Cir. 1994), which involves a different exception to the final-judgment rule. Specifically, HCDA cites *Grand Jury* to claim that this Court has "held that orders compelling the production of documents with claimed work-product privilege are appealable." *Id.* at 969 (cited in Appellant's Brief at 19, 20, 41, 42). First, *Grand Jury* is not even a case about the collateral-order doctrine. It is a holding about a distinct exception to the final-judgment rule, the *Perlman* doctrine, *see id.* at 969-70 (citing *Perlman v. United States*, 247 U.S. 7 (1918)). Under *Perlman*, discovery orders concerning "disinterested third parties" who lack an incentive to incur a contempt finding are immediately appealable because the "party holding the disputed materials is different from the individuals or entities asserting privilege." *United States v. Fluitt*, 99 F.4th 753, 761-62 (5th Cir. 2024). HCDA is not a "disinterested" third party in this way—it both holds the materials and asserts the privilege. Second, the judge in *Perlman* was in possession of work product and was

Although HCDA claims that its assertion of "prosecutorial work product privilege" is more "comparable to" the First Amendment and anti-publication privileges than it is to the "attorney-client privilege in *Mohawk*," Appellant's Br. at 19, this Circuit's precedent expressly distinguishes between privileges based on "constitutional issues" and those within "the general familiarity of courts with standards governing the dispute," *Vantage Health*, 913 F.3d at 450 n.2 (internal citations and quotation marks omitted). District courts' "general familiarity" with the applicability of the work-product and attorney-client privileges is sufficient to preclude prejudgment review. *Id.* at 368 (citing *Mohawk*, 558 U.S. at 110). HCDA cites one case about how work-product and attorney-client privileges have different purposes, but the differences are not material here. Appellant's Br. at 19-20. To the extent that work-product and attorney-client privileges differ, orders adverse to the latter are more readily appealable because they are closer to a "constitutional" guarantee of confidentiality. *See Burnham v. Cleveland Clinic*, 89 N.E.3d 536, 537 (Ohio 2016) (holding that, contrary to "attorney-work-product doctrine," orders adverse to "attorney client privilege causes harm and prejudice that inherently cannot be meaningfully or effectively remedied by a later appeal").

---

planning to turn that work product over to the adverse party *without giving the producing party the option of retaining the documents and taking a contempt citation. See id.* at 969-70 (explaining that the crucial point was unavailability of contempt). Third, to the extent one might be tempted to read *In re Grand Jury Proceedings* as a broader rule about appealability of discovery orders adverse to work-product privilege, it is overruled by *Mohawk*.

HCDA also cites to *Lewis v. Crochet*, 105 F.4th 272 (5th Cir. 2024), which held that, under certain circumstances, a non-party could obtain interlocutory review of an order invoking the crime-fraud exception to the attorney-client privilege. *See id.* at 281. Contradicting *Leonard* without citing it, *Lewis* distinguished *Mohawk*: "*Mohawk* was a case addressing a *party's* interlocutory appeal of a disclosure adverse to attorney-client privilege and thus does not apply to bar appellate jurisdiction here." *Id.*; *but see United States v. Copar Pumice Co.*, 714 F.3d 1197, 1205 (10th Cir. 2013) (expressly holding that *Mohawk* does not distinguish between parties and non-parties). To the extent *Lewis* conflicts with the natural readings of *Mohawk*, *Risjord*, *Leonard*, and *Aventel*, the rule of orderliness requires that *Lewis* yield. *See United States v. Castro-Alfonso*, 841 F.3d 292, 297 (5th Cir. 2016) (prior holdings control even if "cursory").

But recourse to orderliness is unnecessary because *Lewis*'s narrow holding concerned the *crime-fraud exception to the attorney-client privilege* claimed by a third party. And the interest-balancing for review of unusual crime-fraud determinations works out differently than it does for routine determinations of work-product privilege and party need. *Cf. Burnham*, 89 N.E.3d at 537 (distinguishing between the immediate appealability of orders adverse to attorney-client privilege claims and orders adverse to work-product protection claims). *Mohawk* itself explains that, even for "valuable rights" that are "central to adversarial system,"

courts "routinely require litigants to wait until after judgment" because "deferring review until final judgment does not meaningfully reduce the ex ante incentives" to engage in the immunized conduct. 558 U.S. at 109. And the ex ante incentives do not change with compelled disclosure here. Prosecutors will continue to produce charging memoranda in the face of some risk of erroneous production that cannot be reviewed until judgement in a distant federal habeas case becomes final.

## II.    *ARMSTRONG* DOES NOT PRECLUDE DISCOVERY.

HCDA argues that *Armstrong* bars discovery in this case. *Armstrong* involved an attempt to use Fed. R. Crim. P. 16(a) to discover evidence supporting a federal noncapital defendant's Equal Protection claim, where the defendant lacked "direct evidence" of discrimination. *Armstrong*, 517 U.S. at 467; *see also id.* at 469 n.3 (refusing to reach "the question whether a defendant must satisfy the similarly situated requirement in a case involving direct admissions by prosecutors of discriminatory purpose" (internal quotation marks and citations omitted)).[9] Here, however, the Siegler Memorandum is "*direct evidence*" of Ayestas's discrimination claim since it "tend[s] to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." *Id.* at 468 (quoting *United States v.*

---

[9] Although Ayestas primarily contends that comparators are not required when direct evidence of discriminatory intent is present, HCDA produced the identities of comparators to Ayestas— defendants capitally charged for killing elderly victims but who did not get the death penalty. However, if the district court concluded that comparator evidence was required, HCDA's decision to appeal directly to this Court deprived Ayestas of the opportunity to put these comparators into the factual record.

*Berrios*, 501 F.2d 1207, 1211 (2d. Cir. 1974). And even if *Armstrong* barred discovery seeking evidence of selective prosecution under Criminal Rule 16, there are two more problems: (i) *Armstrong* does not apply to discovery requests pursuant to Habeas Rule 6, and (ii) it does not preclude discovery requests made pursuant to an Eighth Amendment claim.

### A.   The Court Below Correctly Held That *Armstrong* Does Not Preclude Discovery Where There is Direct Evidence of Discrimination.

The parties agree that an Equal Protection claim requires proof of discriminatory purpose and effect, and that a petitioner must make out a prima facie case before being entitled to discovery on that claim. The district court has repeatedly found that the evidence Ayestas has put forth satisfies these procedural requirements. ROA.2328-29, 2418-20, 2447-48, 2744-46, 2860-61, 2963-64, 2984, 3164-76. The Siegler Memorandum directly reveals HCDA's discriminatory purpose with respect to alienage, and also its potential intent to discriminate on the basis of race and/or national origin. With respect to discriminatory effect, HCDA sought and obtained death against Ayestas after considering these invidious factors.

HCDA argues that direct evidence is not enough. It relies on *Armstrong* to assert that, because Ayestas has not identified a comparator against whom HCDA sought a non-capital sentence, he is not entitled to discovery on his Equal Protection claim. Appellant's Br. at 32-38. But *Armstrong* involved a federal defendant who

was seeking to pierce the "background presumption" of regularity supporting prosecutorial decision-making and establish a prima facie case using indirect, circumstantial evidence. 517 U.S. at 463. *Armstrong* acknowledges that this presumption, which might otherwise preclude discovery, dissolves when "a criminal defendant [] present[s] clear evidence" of discrimination. *Id*. at 463-65. The Siegler Memorandum presents "clear evidence" of such discrimination since it explicitly articulates reliance on a constitutionally impermissible factor, thus obviating the need to produce a comparator. The balance between the government's interest in "vigorous prosecution," *id*. at 470, and the defendant's interest in avoiding discriminatory prosecution shifts in the presence of such direct evidence.

*Armstrong* simply refused to announce a standard for the showing necessary to obtain discovery when there is direct evidence of discrimination. *Armstrong*'s scope is unsurprising, as selective prosecution cases involving direct evidence of forbidden classification are exceedingly rare. And post-*Armstrong* courts have maintained that defendants need not identify comparators before obtaining discovery under such circumstances. *See*, *e.g.*, *United States v. Al Jibori*, 90 F.3d 22 (2d Cir. 1996) (noting *Armstrong*'s refusal to announce a direct-evidence standard, and determining that the prosecutor's direct admission that the defendant's middle-eastern origin was taken into account when making the decision to prosecute justified further inquiry); *Menges v. Knudsen*, 538 F. Supp. 3d 1082, 1113 n.11 (D.

Mont. May 11, 2021) (stating that "it remains controlling Supreme Court precedent that a showing of discriminatory intent is not necessary when the equal protection claim is based on an overtly discriminatory classification." (internal quotation marks and citations omitted)).

The rule that direct-evidence cases do not require comparator showings is also consistent with both pre-*Armstrong* Equal Protection law and common sense. *See Wayte v. United States*, 470 U.S. 598, 610 (1985) ("A showing of discriminatory intent is not necessary when the equal protection claim is based on an overtly discriminatory classification." (internal citations omitted)); *Nieves v. Bartlett*, 587 U.S. 391, 418 (2019) (Gorsuch, J., concurring in part, dissenting in part) (explaining that *Armstrong* "indicated that a plaintiff *generally* must produce evidence that the prosecutor failed to charge other similarly situated persons," but that "the Court also suggested that equally clear evidence in the form of 'direct admissions by prosecutors of discriminatory purpose' might be enough to allow a claim to proceed" (emphasis added)). If courts adopted HCDA's broad assertion that a defendant is entitled to discovery *only* upon identifying an identically situated comparator, then the law would be unable to address even the outermost registers of discrimination. For example, the law would not permit discovery for a Native American claimant whose prosecutor openly stated that he would seek death only in cases where Native Americans killed white victims on reservations. Per HCDA, the prosecutor could

racially target such defendants without fear of discovery or liability, at least until that prosecutor sought death against a non-Native American who murdered a white victim on a reservation.

*Armstrong* does not require such an absurd result, and the rules about what represents sufficient evidence are context dependent. Courts balance prosecutors' interests in avoiding undue burden and exercising discretion against the likelihood that granting discovery will reveal a constitutional violation. In an ordinary case lacking direct evidence of discrimination, discovery is only justified when the claimant identifies similarly-situated defendants who were treated differently. Otherwise, discovery simply serves as a fishing expedition. But here, the evidence of discrimination is more than statistics and other circumstantial evidence—such evidence increases the likelihood that there is *other* material corroborating discrimination, and it therefore justifies the district court's grant of discovery.

There is yet another reason why *Armstrong*'s discovery rule is inapplicable: It concerned the proper interpretation of "the defendant's defense" in Fed. R. Crim. P. 16. *See* 517 U.S. at 463. That is, *Armstrong* assessed the discovery to which a federal defendant is entitled in order to respond "to the Government's case-in-chief." *Id.* at 462. *Armstrong* determined that Rule 16 "authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution

claims." *Id*. at 463. In so doing, the Court noted that this limitation to Rule 16 discovery is grounded in a "core" concern that such discovery "delays" a criminal prosecution. *Id.* at 465. But Ayestas's claims are in a federal habeas posture, so the interests balance differently. In contrast to Criminal Rule 16, Habeas Rule 6 (i) authorizes discovery upon a showing of "good cause," (ii) is not limited to "the defendant's defense," and (iii) does not "delay" the prosecution.[10]

### B.    The Courts Below Correctly Held That *Armstrong* Does Not Preclude Discovery on An Eighth Amendment Claim.

HCDA insists that *Armstrong* also governs Eighth Amendment claims, Appellant's Br. at 34-35, but when discovery is keyed to the prima facie showing of a constitutional violation, that showing necessarily depends on the elements of *that violation*. An Eighth Amendment violation, unlike a Fourteenth Amendment Equal Protection violation, does not require discriminatory purpose or effect. Instead, the Eighth Amendment bars capital sentences when the "circumstances under which they were imposed created an unacceptable risk that the death penalty [may have been] meted out arbitrarily or capriciously or through whim … or mistake." *Turner v. Murray*, 476 U.S. 28, 35-36 (1986) (citations omitted, alterations in original).

---

[10] HCDA acknowledges that no circuit court has applied *Armstrong* to Rule 6 discovery, and instead cites to a few district courts, Appellant's Br. at 34, none of which involve direct admissions of invidious discrimination.

*McCleskey v. Kemp*, which involved allegations of both Eighth and Fourteenth Amendment violations, analyzes the claims by reference to the distinct elements of each. *See* 481 U.S. 279, 309-09 (1987). In assessing McCleskey's *Eighth Amendment* claim, the Supreme Court did not look to Equal Protection cases; it was "guided" by "two principal decisions": *Gregg v. Georgia*, 428 U.S. 153 (1976), and *Furman v. Georgia*, 408 U.S. 238 (1972). *Id*. at 301. *Gregg* described *Furman* as a case in which the Court held that "sentencing procedures [may not] create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner," and "that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg*, 428 U.S. at 188-89. *McCleskey* then determined that "absent a showing that the Georgia capital punishment system operate[d] in an arbitrary and capricious manner," McCleskey could not prove an Eighth Amendment violation "by demonstrating that other defendants who may be similarly situated did not receive the death penalty." 481 U.S. at 306-07.

*McCleskey* therefore demonstrates that "arbitrary and capricious punishment," not discriminatory intent and effect, "is the touchstone under the Eighth Amendment" *Id*. at 317. Because the Siegler Memorandum reveals that HCDA explicitly relied upon Ayestas's alienage as a reason to seek death against him, it establishes a substantial risk that his alienage impermissibly influenced its decision—thereby creating good cause for discovery into the question of whether

that decision was arbitrary and capricious. Nothing more could be required, given the elements of an Eighth Amendment claim.

HCDA insists that the "doctrinal coherence of selective prosecution jurisprudence" demands a unitary standard across Equal Protection and Eighth Amendment claims. Appellant's Br. at 35. But requiring different proof for claims that have different elements does not disrupt doctrinal coherence; it reflects existing differences between claims that rely on different constitutional provisions. *McCleskey* did not disrupt the "doctrinal coherence of selective prosecution claims" by distinguishing the Eighth and Fourteenth Amendment analysis; it reflected different elements. Faced with neither an Eighth Amendment claim nor a Due Process claim, the *Armstrong* Court had no reason to say anything about them. Therefore, a defendant does not "evade *Armstrong*'s discovery threshold simply by invoking the Eighth Amendment," *id.*; he becomes entitled to the additional protection of the Eighth Amendment when the State seeks death against him. When a death-sentenced habeas litigant has established a prima facie case of the violation of that protection, as Ayestas has done, the Eighth Amendment entitles him to discovery.

Finding no support in *Armstrong* for the counterintuitive proposition that the elements of a claim have no bearing on discovery prerequisites, HCDA compensates by citing three lower-court cases in a footnote. Two of those cases did not concern

discovery at all, and all evaluated Eighth Amendment claims that relied *exclusively* upon statistical evidence—evidence that *McCleskey* held insufficient to establish an Eighth Amendment violation. 481 U.S. at 313. Those cases have no significance here because Ayestas, unlike McCleskey, has direct evidence "demonstrat[ing] a prima facie case in support of the contention that the death penalty was imposed upon him because of his race [or national origin]." *id.* at 288 (internal citations and quotations omitted).

### C. *In re United States* Does Not Control the Inquiry for Collateral Attacks Involving Direct Evidence of Discrimination.

HCDA supports its arguments against discovery by emphasizing *In re United States*, 397 F.3d 274 (5th Cir. 2005). Appellant's Br. at 36-38. But *United States* is distinguishable for the same general reasons discussed above. First, and like the respondents in *Armstrong*, the defendant in *United States* did not put forth any direct evidence of discrimination; he relied on a supplementing "study" instead. *United States*, 397 F.3d at 284-85. Second, and also like the defendant in *Armstrong*, the defendant in *United States* asserted only an Equal Protection claim. *See id.* at 277-79 (reciting allegations). *United States* says nothing whatsoever about discovery in Eighth Amendment litigation.

The case here is distinguishable in both respects. Ayestas adduces direct evidence of discrimination, mooting the question of whether he has provided the "prima facie" evidence that animated *Armstrong* and dictated the outcome in *United*

31

*States*; and he offers that direct evidence in a post-conviction posture to support his Equal Protection and Eighth Amendment claims. Even if HCDA had used the appropriate appellate vehicle (seeking mandamus or appealing a contempt judgment), relief would still be unjustified. A memorandum expressly documenting forbidden discrimination is not to be treated the same way as a fishing expedition unsupported by evidence. *See* ARGUMENT Section II.A, *supra*.

But there is an even more substantial distinction between *United States* and *Ayestas*. In *United States*, the district court had imposed a unique "sanction" on the government for its failure to produce evidence. 397 F.3d at 281, 286. It planned to instruct the jury that it could draw an adverse inference from the refused production, and double jeopardy would have precluded post-judgment appeal of the instruction. *See id.* at 281-82, 283. On mandamus review, this Court emphasized that its determination of error reflected the "nature of the 'sanction' imposed by the trial court," because it "placed the burden on the Government to prove that it had not engaged in discriminatory selective prosecution." *Id.* at 286. There is, of course, no such issue of sanction here; it is Ayestas who must prove the selective-prosecution claims, and there is no risk that double jeopardy bars appellate review.

## III. THE WORK-PRODUCT PRIVILEGE DOES NOT PRECLUDE PRODUCTION OF THE REQUESTED MATERIALS.

The court below correctly determined that (i) the work-product privilege does not protect documents prepared in connection with a prior criminal prosecution

unless they were prepared by a party in the subsequent civil action; (ii) to the extent that a common-law privilege attaches to prosecutor work product by way of Fed. R. Civ. P. 45, it is overcome when prosecutorial misconduct is at issue in collateral litigation; and (iii) Ayestas's compelling and substantial need for the requested materials overcomes any work-product protection that does attach. ROA.3176-79.[11] The magistrate judge's decision was not arbitrary or clearly unreasonable; it was correct. *See X Corp.*, 120 F.4th at 197 (discovery decisions are affirmed unless "arbitrary or clearly unreasonable").[12]

### A.     Nonparty Prosecutors Cannot Claim Work-Product Privilege in Subsequent Suits Alleging Prosecutorial Misconduct to Shield Material Prepared in Anticipation of Completed Prosecutions.

Under Rule 26(b)(3), the work-product privilege does not protect material prepared in anticipation of *nonparty* litigation. As this Court put it, "the literal language of [] Rule [26(b)(3)] protects materials prepared for *any* litigation or trial as long as they were prepared by or for a party to the subsequent litigation." *In re Grand Jury Proc.*, 43 F.3d 966, 971 (5th Cir. 1994). The court below was therefore

---

[11] Although it asserted deliberative-process privilege below, HCDA makes no such substantive argument on appeal; it merely recites that it objected on deliberative-process grounds in the district court. *Compare* ROA.3107-09, *with* Appellant's Br. at 11, 28. HCDA has therefore waived any deliberative-process privilege arguments. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994).

[12] Before filing its Appellant's Brief, HCDA never disclosed that it located 406 charging memoranda. Ayestas repeatedly offered to meet-and-confer with HCDA concerning the scope and burden of its request, but HCDA's blanket privilege assertion short-circuited meaningful negotiation. The district court found HCDA's burden arguments "only conclusory," ROA.3175, and HCDA has not appealed issues of breadth and burden so those issues are not before the Court.

correct in holding that the "privilege protects documents prepared in connection with a prior criminal prosecution if they were prepared by or for any party in the subsequent civil action." ROA.3176-77 (citing *In re Grand Jury Proc.*, 43 F.3d at 971).

This Circuit's rule excluding non-parties from work-product protection is consistent with federal practice more broadly. According to the leading treatise, the relationship between the party and non-party makes no difference: "Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit[.]" 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Fed. Prac. & Proc.* § 2024 (3d ed. Apr. 2023 update). The court below also applied the traditional rule in a manner consistently with its sister courts. *See*, *e.g.*, *Smith v. Fifthian*, 2006 WL 548529, at *1 (W.D. La. Mar. 2, 2006) ("Federal courts have repeatedly held that a non-party witness may not invoke work product protection [under Rule 26(b)(3)] to preclude production of materials prepared by or for that witness, even if created in contemplation of the witness's own pending or anticipated litigation."); *Lee v. City of Midland*, 2024 WL 4005959, at *8 (W.D. Tex. Feb. 15, 2024) ("[W]hile the documents claimed to be protected work product were prepared to prosecute Plaintiffs in a separate criminal action, they were not prepared *for* any party in *this* case[.]").

HCDA concedes that Rule 26(b)(3) does not protect the materials at issue here because "Rule 26(b)(3) applies to parties in the litigation[,] … HCDA is not a party to this litigation, and the materials at issue were not prepared for this case." Appellant's Br. at 43. Instead, HCDA argues that some *other* work-product protection—applicable to nonparty prosecutors in subsequent litigation around their office practice—covers the requested material. HCDA traces such protection to an under-specified combination of "FED. R. CIV. P. 45(d)(3)(A) and common law." *Id.* HCDA suggests that Rule 45 language permitting a subpoena recipient to assert work-product privilege contemplates a *common-law* privilege that extends to non-parties, rather than the *Rule 26* privilege that covers parties only.

HCDA's status as a public institution precludes that operation of Rule 45 here. Entities like HCDA that have "public obligations" also have a "public responsibility transcending any employment relationship with the client" and cannot be beneficiaries of a judge-created "analogue to the work-product doctrine established in [*Hickman v. Taylor*, 329 U.S. 495 (1947)]." *United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984). The oft-cited case of *Doubleday v. Ruh*, 149 F.R.D. 601 (E.D. Cal. 1993), invokes the public obligations of district attorneys in holding that they "cannot assert the immunity because they are not parties to the [subsequent civil] litigation." *Id.* at 606 (linking holding to idea that "district attorneys are not 'attorneys' who represent a 'client' as such"). *Doubleday* is the overwhelming

consensus position; in this context, "the cases denying privilege to the non-party district attorney's office are legion." *Lawrence v. Suffolk Cnty.*, 2022 WL 855380, at *7 (E.D.N.Y. Mar. 23, 2022).[13]

*Doubleday* is the rule that courts in this circuit observe, and they make no distinction allowing for nonparty prosecutors to assert a common law work-product privilege. For example, *Klein v. Jefferson Par. Sch. Bd.*, 2003 WL 1873909 (E.D. La. Apr. 10, 2003), cites *Doubleday*, surveys the case law, and concludes that courts have "consistently held that the [work-product] privilege is unavailable when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." *Id.* at * 3; *see also Lee*, 2024 WL 4005959, at *8 (documents "prepared to prosecute Plaintiffs in a separate criminal action, they were not prepared *for* any party in *this* case").

HCDA loads most of its argument onto *Atchison v. City of Tulsa*, 344 F.R.D. 28 (N.D. Okla. 2023), a federal district court decision out of the Northern District of Oklahoma that has been cited once. There is a good reason to ignore *Atchison* in the face of the voluminous authority inconsistent with it. For starters, *Atchison* itself indicates that there is a dispute on the availability of third-party work-product

---

[13] *See*, *e.g.*, *Erie Cnty. Dist. Att'y's Off. v. Gugino*, 2021 WL 4172876, at *3 (W.D.N.Y. Sept. 14, 2021) (collecting cases and stating that "[i]t is settled that the attorney-work product protection applicable to a prosecution file is inapplicable to subsequent civil rights action later brought by a defendant in a prior criminal case."); *Webb v. Hendricks Cnty. Sheriff's Off.*, 2021 WL 3077925, at *3 (S.D. Ind. July 21, 2021) (holding same and specifying "several courts" in agreement).

privilege within its own circuit. *See id.* 34 n.7 (collecting contrary Tenth Circuit authority). And *Atchison*'s interpretive argument—that Rule 45's reference to a "person" must mean something broader than work-product protection for "parties," *id.* at 33—ignores Rule 45's text. Many non-parties have evidentiary "privileges," so the textual reference to "persons" does not necessitate the that non-parties *also* get "protection as trial preparation." *See* Fed. R. Civ. P. 45(e)(2)(B). And the single Northern District of Oklahoma case citing *Atchison* read it to hold that non-parties could assert work product only in "certain instances" when "the purposes set forth in *Hickman* are implicated." *Doe No. 2 v. Oologah-Talala Indep. Sch. Dist. No. 4 of Rogers Cnty.*, 2023 WL 3391441, at *3 (N.D. Okla. May 11, 2023).

So, even if *Atchison* were persuasive, *Oolagah-Talala* means that the work-product privilege *still* would not immunize HCDA, because the memoranda do not implicate "the purposes set forth in *Hickman*." *Id.* The concerns that underlie the doctrine—protecting an attorney's ability to formulate legal theories and prepare her cases, preventing opponents from free-loading off their adversaries' work, and preventing interference with ongoing litigation—do not apply here. *See Crosby v. City of N.Y.*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010). It is difficult to grasp how production of charging memoranda *from other cases*—in a collateral attack on Ayestas's *own conviction* from 1998—would result in "freeloading" or "interference with ongoing litigation" when he is neither involved in nor intends to undertake

litigation on behalf of those defendants. *See id.* That is why courts in this Circuit will compel discovery under Rule 45, even from district attorneys. *See, e.g., Ibarra v. Harris Cnty.*, 2007 WL 9723645, at *1 (S.D. Tex. Nov. 16, 2007) (rejecting assertion of "work product privilege" under Rules 26(c) and 45(c)(3)(A) because "[the district attorney's] clients are citizens of the state of Texas, and except to protect the innocent and ongoing investigations, the work of a district attorney is not confidential").

In short, there is no leg upon which HCDA can stand. The *overwhelming* weight of authority, both in this Circuit and nationally, is that a non-party prosecutor cannot assert work-product privilege—whether under Rule 26, or by combination of Rule 45 and the common law. That authority reflects principles of non-party privilege generally, but it also reflects the more specific, public-facing responsibilities of a district attorney. And to the extent that anything turns on the vulnerability of disclosed information, Ayestas again emphasizes that he would consent to an appropriate protective order.

### B. Ayestas's Substantial and Compelling Need for the Requested Materials Overcomes Any Work-Product Protection.

Assuming *arguendo* that work-product privilege reaches non-party prosecutor material prepared in anticipation of a prior criminal prosecution, the court below still did not abuse its discretion in ordering disclosure. That is because sufficient need can overcome work-product protection, and the court properly found that Ayestas demonstrated compelling need for "highly relevant and important" material.

ROA.3178; *see also In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1241 (5th Cir. 1982) ("Some cases have found substantial need by emphasizing the importance of the documents themselves."). And the court's ruling is correct without respect to whether the material at issue is "ordinary" or "opinion" work product, with the latter overcome on a higher showing of need—"compelling" opposed to "substantial." *See also* ROA.3178 (finding Ayestas meets "compelling" need standard and citing *Est. of Christman v. Liberty Mut. Ins. Co.*, 2021 WL 2325330, at \*6 (M.D. La. June 7, 2021) (stating "opinion work product becomes subject to disclosure when 'mental impressions are at issue in a case and the need for the material is compelling'")).

The court below correctly noted that, when considering whether a party can overcome assertion of work-product privilege, this Circuit distinguishes between "ordinary" and "opinion" work product. *See* ROA.3178. "Ordinary work-product generally consists of 'primary information, such as verbatim witness testimony or objective data' collected by or for a party or a party's representative." *Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432, 441 (E.D. Tex. 2003), *vacated in part on other grounds*, 2003 WL 21911333 (5th Cir. July 25, 2003). "A court may order production of ordinary work-product if the party seeking production can show that it has a 'substantial need' for the material in the preparation of its case and that it cannot obtain the substantial equivalent of the material by other means without 'undue hardship.'" *Id.* (quoting Fed. R. Civ. P. 26(b)(3)); *see also* 8 *Fed. Prac. &*

*Proc.* § 2025 (3d ed.) ("substantial need" is "something more than relevancy sufficient to satisfy Rule 26(b)(1)").

Opinion work product "consists of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." *United States v. Rodgers*, 2022 WL 1074013, at *6 (E.D. Tex. Apr. 8, 2022) (citing *In re Int'l Sys.*, 693 F.2d at 1240). The court below correctly explained that the protection for opinion work product is higher but not absolute. *See* ROA.3178; *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (determining that a court may compel discovery of opinion work product if the requesting party demonstrates a compelling need for the information)).

As explained below, Ayestas has demonstrated sufficient need for the requested material such that HCDA's assertion of work-product privilege is overcome without respect to whether the disputed material is characterized as ordinary or opinion work product. HCDA simply argues, without having provided the privilege log required by Rule 26(b)(5),[14] that the ordered discovery is opinion work product—and that Ayestas cannot make a showing of compelling need.

---

[14] The failure to provide a privilege log in and of itself renders HCDA's assertion of privilege defective. *See United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("privilege may not be tossed as a blanket over an undifferentiated group of documents … [it] must be specifically asserted with respect to particular documents"); *Serv. Lloyds Ins. Co. v. N. Am. Risk Srvs., Inc.*, 2021 WL 148054, at *2 (W.D. Tex. Jan. 15, 2021) ("compliance is generally accomplished with a privilege log that identifies the documents by date, names of the author or authors and recipient or recipients, and generally describes the subject matter"); *see also Oologah-Talala*, 2023 WL 3391441, at *3 ("to claim work product protection, the OAG must first provide a privilege log").

Appellant's Br. at 39-41. The court below did not reversibly err in rejecting HCDA's arguments.

**1.** ***Ayestas Has a Substantial and Compelling Need for the Charging Memoranda.***

The charging memoranda should be treated as ordinary work product which is overcome upon a showing of substantial need. The memoranda might contain opinion work product *during the underlying prosecutions*—since they arguably capture prosecutors' motives and strategy—but those motives are only at issue in this collateral litigation as *historical facts*. Ayestas is not seeking to discover the prosecutor's theory of the case for purposes of optimizing his criminal defense; instead, he seeks to discover whether the prosecutor charged the case by reference to a forbidden characteristic. Whether or not that consideration occurred is a historical fact; the contents of the requested memoranda do not contain "candid legal analysis," Appellant's Br. at 32, about Ayestas's Eighth and Fourteenth Amendment claims.

But even if the Court treats the charging memoranda as opinion work product, Ayestas has demonstrated compelling need, as the court below recognized. *See* ROA.3178. His allegations make prosecutor motive and charging practice the central issues—and, given the length of time that has passed since his prosecution, Ayestas cannot solely rely on interrogatories, depositions, or other discovery tools to discover this information. *See Rodgers*, 2022 WL 1074013, at *7; *Ramirez v. Abreo*,

2010 WL 11470102, at *4-5 (N.D. Tex. Nov. 24, 2010) (compelling production of prosecutors' files that included mental processes when prosecutor misconduct allegations placed those processes "squarely at issue"). When animus is the "heart of" a civil complaint against a prosecutor's "handling of the case," there is a "compelling need" for the prosecutors' files documenting the decision making. *Doubleday*, 149 F.R.D. at 608. Under such circumstances, the typical concerns about production of opinion work-product are absent; the production of vintage charging memoranda would not threaten any HCDA prosecutor's ability to formulate legal theories or prepare cases today. *Cf. Crosby*, 269 F.R.D. at 277 (explaining that the work-product privilege is concerned with preventing "freeloading" and "interference with ongoing litigation").

The compelling need extends to charging memoranda in the comparator cases. These memoranda are not "unrelated" to the allegations, as HCDA repeatedly suggests. Appellant's Br. at 3, 28, 46, 47, 48. Overt discrimination in comparator cases is highly probative of whether a particular defendant was discriminated against. *See Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 306 (5th Cir. 1973) ("Even though a suit seeks only individual relief for an individual instance of discrimination, … the past history of both Black and White employees is surely relevant information."); *United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998) (in a selective prosecution case, noting that a court may "find[] a constitutional violation

(or prima facie finding thereof) in very limited circumstances if the data presents a 'stark' enough picture"); *Foster v. Boise-Cascade, Inc.*, 1975 WL 11888, at *3 (S.D. Tex. May 29, 1975) ("[P]ast history as revealed by statistical or other empirical evidence is relevant to a [discrimination claim], even if only individual relief is sought" and "despite the problem of compiling, assimilating and synthesizing voluminous employment records into cogent, responsive answers to interrogatories, [respondents] should not be permitted to avoid responding to such interrogatories because they invoke this burden"). Furthermore, HCDA's charging practice in comparator cases will reveal the type of discrimination at issue in Ayestas's case—whether it is alienage, immigration status, race, ethnicity, national origin, or some combination thereof.

There is compelling need not only because the evidence goes directly to the operative constitutional allegations, but also because the memoranda are the only way to acquire the underlying information. *See Rodgers*, 2022 WL 1074013, at *7 ("Where Government work product has been sought, courts have found the privilege was overcome where a party has alleged Government misconduct and the documents sought were the sole way for a party to prove his allegations…. Another situation where the privilege has been found to be overcome is where the 'prosecutors' mental impressions were at issue' because of allegations of prosecutor misconduct." (quoting *Doubleday*, 149 F.R.D. at 601)). Short of the memoranda, Ayestas has no

way of knowing whether HCDA considered forbidden characteristics in the comparator cases. Ayestas can think of no other place where such motives would be memorialized, and HCDA has never suggested that other evidence exists.

HCDA's extensive, near exclusive, reliance on *Atchison* presents three interrelated problems. First, HCDA tacitly admits that the allegations in *Atchison* were not about prosecutorial misconduct. Appellant's Br. at 46. The court below was therefore correct when it "readily distinguished" *Atchison* "because the plaintiff there did 'not assert that [the prosecutor's office] engaged in any wrongful conduct in its prosecution of him,'" while "[h]ere, prosecutor misconduct 'constitutes the heart of issues' in Petitioner's case." ROA.3177-78 (first quoting *Atchison*, 344 F.R.D. at 30; and then quoting *Rodgers*, 2022 WL 1074013, at *7).

Second, *Atchison* was primarily a decision about whether the privilege *attached at all* to non-party prosecutor work product, and the opinion emphasizes that crucial findings about *overcoming* an attached privilege simply reflected the plaintiff's failure to contest the district attorney's characterization. Because the plaintiff in *Atchison* "d[id] not argue that any specific document on the privilege log …. would *not* qualify as work product in the ordinary case," the court "accept[ed the prosecutor's] characterization of the majority of the documents at issue [as opinion work product] with *one limited exception.*" *Atchison*, 344 F.R.D. at 35 (emphasis added). The "limited exception" concerned memoranda and interview notes, which

the court treated as ordinary work product attainable on a showing of substantial need. *Id.* If anything, that "limited exception" suggests that the charging memoranda requested here should be discoverable as ordinary work product.

Third, HCDA fails to acknowledge what happened when *Atchison* actually reached questions about whether the plaintiff overcame work-product privilege. The court ordered the production of some documents for *in camera* determination of sufficient need. *See id.* at 36. The court's decision not to order production of the remaining documents was expressly grounded in the fact that the district attorney "is not a party and is not accused of vindictive or malicious prosecution." *Id.* This limiting language *supports* the magistrate judge's determination that HCDA's assertion of privilege "is overcome where, [as here], prosecutorial misconduct is at issue in collateral litigation." ROA.3177 (citations omitted). Indeed, a review of cases where assertions of prosecutorial work product are overcome "reveals a common thread among them—opinion work product privilege can be overcome when the material sought constitutes the heart of the issues in the case." *Rodgers*, 2022 WL 1074013, at *7. HCDA is unable to cite a single prosecutorial misconduct case where a court found that a claimant was not entitled to such discovery from a non-party prosecutor.

Towards the end of its briefing concerning whether Ayestas can overcome HCDA's assertion of privilege, HCDA accuses Ayestas of trying to "traipse through

HCDA's work product" and probe what it describes as "a broad swath of unrelated prosecutions." Appellant's Br. at 48-49. To the extent HCDA includes this language to argue undue burden, burden determinations are not subject to interlocutory appeal and HCDA made no meaningful effort to make a burden objection below. *See supra* Section I.B (interlocutory jurisdiction dispute over privilege status rather than burden); ROA.3175 (finding of court below that HCDA's burden arguments were "only conclusory" and without "any supporting evidence"). Furthermore, HCDA's accusations are without merit. HCDA categorically refused to negotiate over scope, and its interests can be addressed by either *in camera* review or the issuance of protective orders. Regardless, the requested material is "highly relevant and important" since it is probative of HCDA's institutional practice towards defendants with the protected characteristics at issue. *See supra* (collecting cases describing probativeness of comparators).

### 2.    *Ayestas Has a Substantial and Compelling Need for the Remainder of His Own Case File.*

HCDA's brief includes a subsection heading asserting that "some withheld case file materials are opinion work product," without any corresponding explanation in the text underneath it. Appellant's Brief at 39. Because it failed to include any substantive argumentation in that brief, HCDA has forfeited the ability to argue that Ayestas's case file is protected as opinion work product. *See Cinel*, 15

F.3d at 1345. This Court should therefore affirm the Discovery Order to produce the work product from Ayestas's case file.

Ayestas's case file likely contains "ordinary" work product such as transcripts of conversations with witnesses and investigative notes about Ayestas, his co-defendant, the victim, and the crime. *See* ROA.3178. This information may show whether—and to what extent—HCDA or detectives inquired into Ayestas's ethnicity, race, national origin, alienage, or immigration status. Documentary evidence concerning whether law enforcement focused on any of these factors would be highly probative of unconstitutional charging discrimination, and such evidence would only exist in his case file. *See Robinson*, 214 F.R.D. at 441.

To the extent that his case file contains opinion work product, Ayestas is also entitled to that information for the same reasons that he is entitled to the charging memoranda. If the relevant prosecutors' mental impressions are captured in the portions of the case file over which HCDA now asserts work-product privilege, then Ayestas has a compelling need for that material and has no other way to get it. *See Rodgers*, 2022 WL 1074013, at *7; *Ramirez*, 2010 WL 11470102, at *4-5.

## IV.  THE COURT SHOULD ORDER ADDITIONAL BRIEFING IF IT INTENDS TO CONSIDER TDCJ'S ARGUMENTS.

TDCJ's Amicus Brief mostly repeats arguments it made when it unsuccessfully sought mandamus from this Court in 2023. *See* Pet. for Writ of Mandamus, *In re Lumpkin*, No. 23-20169 (5th Cir. Apr. 20, 2023); Order, *In re*

*Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023). TDCJ's Amicus Brief argues that (i) the trial court erroneously reopened habeas proceedings, (ii) various state procedural defenses preclude Ayestas's requested relief, and (iii) *Armstrong* bars discovery.[15] But an amicus that was a party to the lower-court proceeding "generally cannot expand the scope of an appeal to implicate issues that have not been presented by the parties to the appeal." *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urb. Dev.*, 980 F.2d 1043, 1049 (5th Cir. 1993).

To seek consideration of additional issues, the amicus must formally allege "exceptional circumstances." *Christopher M. by Laveta McA. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1292 (5th Cir. 1991). HCDA raises the *Armstrong* argument, but not the other two. TDCJ does not allege the exceptional circumstances necessary to expand the parties' framing. Ayestas respectfully requests that this Court order additional briefing if it intends to expand its appellate consideration. Out of an abundance of caution, however, Ayestas includes some additional case history.

## A.   <u>Additional Case History.</u>

The full case history necessary to respond to HCDA's improperly raised arguments appears in Ayestas's 2023 mandamus filing, which he incorporates by reference. *See* Resp. to Pet. for Writ of Mandamus, *In re Lumpkin*, No. 23-20169

---

[15] Ayestas was not aware that TDCJ intended to expand the scope of the issues presented on appeal when he consented to TDCJ's filing of an amicus brief.

(May 10, 2023). As discussed above, Ayestas sought leave to amend his initial habeas petition upon discovery of the Siegler Memorandum—which HCDA considered to be confidential work product. TDCJ opposed Ayestas's request, falsely indicating that the Siegler Memorandum had been freely available to prior counsel. Acting on that representation, along with since-overturned precedent barring habeas amendments in the Rule 59(e) posture, the district court denied post-judgment relief. ROA.1235-44 (orders denying all post-judgment relief and attempts to amend).

On appeal to this Court, TDCJ continued to misrepresent that availability of the Seigler Memorandum. Laboring under that misrepresentation, this Court affirmed the district court's decision. *See Ayestas v. Stephens*, 817 F.3d 888, 900-902 (5th Cir. 2016). In so doing, this Court did not find the claims to be impermissibly successive; it determined that adjudication of the claims was outside the scope of a prior remand. *Id*. at 899. The Panel ultimately revised its opinion on rehearing to clarify that its finding of non-diligence was not directed at the "diligence of federal habeas counsel in locating the memo. It was the diligence of Ayestas's *trial counsel* that we were describing." *Ayestas v. Stephens*, 826 F.3d 214, 215 (5th Cir. 2016) (emphasis added).

During U.S. Supreme Court proceedings, TDCJ finally acknowledged that the Siegler Memorandum was not in fact available to prior counsel because HCDA

treated it, like it treated all such memos, as confidential work product. Appellant's Br. in Opp'n at 18 n.10, *Ayestas v. Davis*, 584 U.S. 28 (2018) (No. 16-6795) ("The fact that [the Siegler Memorandum] is privileged explains why it was not voluntarily turned over to [Ayestas's] counsel during the criminal trial."). The Supreme Court ultimately reversed the lower federal courts on an ineffective-assistance-of-trial-counsel ("IATC") issue, and vacated this Court's decision. *Ayestas*, 584 U.S. at 48. When this Court issued a new opinion on the IATC issue, it made no mention of the Siegler Memorandum claims. *See Ayestas v. Davis*, 933 F.3d 384 (5th Cir. 2019).

After Ayestas unsuccessfully sought certiorari from this Court's 2019 decision, the U.S. Supreme Court decided *Banister v. Davis*, which established that the district court's prior determination—that Rule 59(e) motions should be analyzed as successive petitions—was incorrect. 590 U.S. 504, 507 (2020). Ayestas then initiated state-court proceedings to exhaust his Siegler Memorandum claims, but the Texas courts dismissed his subsequent state application. *See* ROA.968-84. Ayestas then initiated this Fed. R. Civ. P. 60(b) litigation, asserting *Banister* and TDCJ's misrepresentation as grounds to reopen the judgment, and to revisit the 2015 orders refusing amendment in the Rule 59 posture. ROA.1343-69.

On August 12, 2021, the district court granted Ayestas's motion. ROA.1609-17. Lengthy litigation over the propriety of re-opening the judgment, permitting amendment, and ordering discovery followed (ROA.1634-2373)—culminating in

TDCJ's mandamus petition to this Court. That mandamus petition pressed most of the arguments now reappearing in its Amicus Brief, generally disputing the lower court's jurisdiction, the merit of its post-judgment rulings, and whether discovery should be permitted. *Compare In re Lumpkin*, No. 23-20169 (5th Cir. Apr. 20, 2023), *with* ECF No. 33. This Court denied the mandamus petition unanimously, sending the case back to the district court for discovery. *In re Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023).

TDCJ thereafter resisted discovery until it was compelled by force of judicial order. *See* ROA.2744-46, 2860-61, 2956-68, 2984 (granting and affirming various orders to compel). Although the district court has repeatedly affirmed Ayestas's diligence, it has issued no final ruling on TDCJ's non-jurisdictional defenses. TDCJ neither noticed appeals nor sought mandamus relief from any of the newer orders. And TDCJ could not seek mandamus on the non-jurisdictional issues because (i) with the exception of *Armstrong* arguments, it already lost mandamus relief on those issues; and (ii) for the most part, those are *still* unripe for appellate consideration because the district court has not yet ruled on them. Instead, it filed the Amicus Brief before this Court.

### B. This Court Should Afford Ayestas the Opportunity to Brief Any Non-*Armstrong* Arguments That It Intends to Consider.

The general rule is that a lower-court party that fails to notice its own appeal and then appears as an amicus cannot raise issues not presented by the appellant and

appellee. *See Allen Parkway*, 980 F.2d at 1049; *see also World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 n.3 (5th Cir. 2009) (describing rule as "well settled"). In order to seek resolution of issues that the appellate parties do not raise, the amicus must formally allege "exceptional circumstances." *Corpus Christi Indep. Sch. Dist.*, 933 F.2d at 1292. TDCJ, however, makes no such allegations.

The *Armstrong* arguments put forth by TDCJ are identical to those made by HCDA, and Ayestas has responded to those arguments above. *See* ARGUMENT Part II. With respect to TDCJ's other two arguments, which were not raised by HCDA, Ayestas respectfully requests an accommodation: If the Court plans to consider those arguments, then Ayestas asks that he be permitted to file additional briefing in response. Otherwise, Ayestas must use allotted space to respond to what are, in effect, two appellants' briefs raising distinct issues.

1.    *Ayestas Should Not Have to Respond to TDCJ's Improper Presentation of Jurisdictional Arguments Not Appealed by TDCJ or HCDA, and That This Court Rejected Unanimously in the Mandamus Proceeding.*

TDCJ raises the same jurisdictional argument that this Court unanimously rejected several years ago, but that argument is not the subject of HCDA's appeal. If TDCJ would like for its jurisdictional argument to be considered on appeal, it could have moved to reopen the earlier mandamus proceeding, noticed its own appeal, or attempted to intervene—but it cannot circumvent limits on this Court's jurisdiction by presenting the arguments through an amicus filing. Since TDCJ has taken none

of those steps, this Court would be considering those jurisdictional issues *sua sponte*, and Ayestas requests the briefing notice that would typically precede *sua sponte* consideration. *See Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021) (reciting principle of notice and an opportunity to be heard); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (same).

### 2.   *Ayestas Should Not Have to Respond to TDCJ's Improper Presentation of Non-Jurisdictional Issues Not Subject to Final Disposition in the Court Below.*

TDCJ argues that Ayestas was insufficiently diligent, and therefore (among other things) that his Siegler Memorandum claims are untimely, procedurally defaulted, and ineligible for evidentiary development. There is not yet a final order encompassing these issues; the district court has not even ruled on them. Any appeal would be procedurally defective, and TDCJ cannot circumvent limits on this Court's jurisdiction by presenting the arguments through an amicus filing. Before responding, Ayestas respectfully requests some indication that the Court thinks a response appropriate.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's discovery order.

Date: October 27, 2025

Respectfully submitted,

*/s/ Lee B. Kovarsky*

Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER-
APPELLEE

# CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, an electronic copy of the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and served on counsel for Defendant-Appellant using the appellate CM/ECF system.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER-APPELLEE

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit and the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 12,678 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(7)(B)(i) and Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 point font in Times New Roman for above-the-line text and 12 point font in Times New Roman for footnotes.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER-
APPELLEE