

KEN PAXTON
ATTORNEY GENERAL OF TEXAS

**VIA CM/ECF**

January 9, 2026

Mr. Lyle W. Cayce, Clerk
Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

**Re:** *Ayestas v. Harris County District Attorney's Office*, No. 25-70014

Dear Mr. Cayce:

This letter brief is submitted in response to the Court's request for the parties on appeal and amicus curiae, the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), to submit supplemental letter briefs addressing "both the jurisdiction of the district court and the appellate jurisdiction of this [C]ourt." ECF No. 42. Amicus TDCJ agrees with Appellant, the Harris County District Attorney's Office (Harris County), that this Court has appellate jurisdiction to hear this appeal. However, the district court lacked jurisdiction to enter the contested discovery order, and this Court should thus reverse and remand with instruction to dismiss Ayestas's case as successive.

**I. This Court Has Jurisdiction to Hear Harris County's Appeal.**

Two questions bear on this Court's jurisdiction to hear this appeal. The first is whether the discovery order is appealable under the collateral order doctrine. The second is whether Harris County was required to pro forma object to the magistrate's order before it could take up this appeal. The answer to the first question is yes; the answer to the second is no.

**A.** This Court's "appellate jurisdiction generally extends only to 'final decisions of the district courts.'" *La Union Del Pueblo Entero v.*

*Abbott*, 68 F.4th 228, 232 (5th Cir. 2023). But the Court also has jurisdiction "over a 'narrow class of decisions' that are 'immediately appealable as collateral orders even if no final judgment has been rendered.'" *Lewis v. Crochet*, 105 F.4th 272, 279 (5th Cir. 2024) (quoting *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019)). Such interlocutory orders are "immediately appealable under this rule only if they '(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [are] effectively unreviewable on appeal.'" *La Union*, 68 F.4th at 232 (quoting *Vantage*, 913 F.3d at 448). "[T]he decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (quoting *Will v. Hallock*, 546 U.S. 345, 352–53 (2006)).

While "as between parties," an appellate court can remedy an erroneous discovery order on appeal of final judgment, such "does not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect." *Whole Woman's Health v. Smith*, 896 F.3d 362, 367–68 (5th Cir. 2018); *see also La Union*, 68 F.4th at 233 (as to non-parties, "an appellate court cannot 'remedy the improper disclosure of privileged material in the same way [it can] remedy a host of other erroneous evidentiary rulings'"). Thus, non-parties subject to erroneous discovery orders that breach privilege are often able to appeal such orders because "the consequences of forced discovery [a]re 'effectively unreviewable' on appeal[.]" *Lewis*, 105 F.4th at 281 (quoting *Whole Women's Health*, 896 F.3d at 367); *Vantage Health*, 913 F.3d at 449 ("The harm to third parties is not the admission of adverse evidence at trial (an error potentially correctable for a party on retrial), but the disclosure of their confidential and sensitive information without full access to appellate review.").

Here, Harris County, a non-party in the litigation below, appeals the district court's order compelling it to produce, over its work-product (and other) objection, thirty-years' worth of privileged materials regarding discretionary charging decisions. "[T]]he first two factors of the collateral order] test are easily satisfied here, as the [discovery order] is conclusive and the issue regarding the [prosecutorial work-product]

privilege is completely separate from the merits of" Ayestas's federal habeas lawsuit. *See Lewis*, 105 F.4th at 280; *see also Whole Woman's Health*, 896 F.3d at 367 ("There is no dispute that the district court's discovery order was conclusive on [the non-party], such that failure to comply with it may result in sanctions against [it] or its witness."). The discovery order is also effectively unreviewable on appeal: As a non-party, Harris County can't move for a new trial, and even if it could, "a new trial cannot retract privileged information that has been shared into the public domain." *La Union*, 68 F.4th at 233.

And the class of claim at issue—prosecutorial work product concerning charging decisions—"'involves important questions' such that 'the cost of allowing immediate appeal' is justified." *La Union*, 68 F.4th at 233 (quoting *Mohawk*, 558 U.S. at 107–08). Like legislative privilege, "a prosecutor should not be required to explain his decisions" because if a prosecutor was required to do so each time he is accused of wrongdoing, "'his energy and attention would be diverted from the pressing duty of enforcing the criminal law.'" *McCleskey v. Kemp*, 481 U.S. 279, 297 n.18 (1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 425 (1976)); *cf. Wearry v. Foster*, 33 F.4th 260, 266 (5th Cir. 2022) ("[A] contemporary prosecutor's charging decision is protected by absolute immunity by virtue of being the functional equivalent of the activity protected at common law."). "Requiring [prosecutors] to negotiate protective orders or to suffer contempt proceedings" for potentially decades-old decisions "would diminish that protection." *La Union*, 68 F.4th at 233. This Court has jurisdiction over Harris County's appeal.

**B.** The discovery dispute at issue was referred to a magistrate judge for disposition, *see* ROA.2904, and it is that judge who entered the discovery order Harris County is presently appealing, *see* ROA.2968. Ayestas argues Federal Rule of Civil Procedure 72(a) required Harris County to object to the magistrate judge's order, and because it did not, this Court does not have jurisdiction. *See* Appellee Br. 12–16. Rule 72(a) states that, while "[a] *party* may serve and file objections to the order within 14 days after being served with a copy," the "*party* may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a) (emphasis added). Ayestas asks the Court to read the word "party" in Rule 72(a) as referring to *any* litigant before the magistrate judge. *See*

3

Appellee Br. 14 (citing *Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4 n.2 (1st Cir. 1985)[1]). But Ayestas's argument makes little sense in the context of the Federal Rules as a whole, which distinguish between "parties" and "nonparties." *See, e.g.*, Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). Indeed, Ayestas relies (at 13) on one such rule: Rule 71 titled "[e]nforcing relief for or against a nonparty." Where the drafters specifically delineated nonparties from parties in the rule *just before* Rule 72(a), they certainly could have chosen to make Rule 72(a) expressly applicable to nonparties as well.[2] *Cf. Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (cleaned up)). They did not.

Moreover, though Ayestas says this issue is clear cut, "[c]ourts faced with objections filed by nonparties have reached different conclusions regarding whether such objections may be *considered*." *In re Ulmans*, No. 1:23-mc-23-GHW-VF, 2023 WL 3412769, at *1 (S.D. N.Y. May 12, 2023) (emphasis added). "Some courts have rejected nonparty objections on the basis that Rule 72 only explicitly authorizes objections from a 'party.'" *Id.*; *see also Quantlab Grp., LP v. Dempster*, No. H-18-2171, 2019 WL 7037653, at *2 (S.D. Tex. Dec. 20, 2019) (Atlas, J.) ("As an initial matter, Rule 72(a) provides for 'a party' to file objections. Eames and Omeltchenko are not parties, and they have not requested leave to file objections. On this basis, the Court overrules the Non-Parties' Objection."). Others have treated such objections as essentially amicus briefs. *In re Ulmans*, 2023 WL 3412769, at *1. And though it generally appears that most courts would *consider* a non-party's objections to a

---

[1] Aside from being another circuit's opinion, *Diamantis* dealt with a *party*'s standing to appeal issues to which *only* a third-party objected. 772 F.2d at 4. The language Ayestas quotes was dicta related to "possible" reasons that the party, rather than the nonparty, took up the appeal, i.e., that perhaps she "read the rule [too] narrowly[.]" *Id.* at 4 n.2. *Diamantis* is inapposite.

[2] Ayestas argues (at 13) that Rule 71 makes Rule 72 applicable to non-parties, but Rule 71 says nothing about objections to magistrate orders and is in a distinct title of the Rules. *Compare* Fed. R. Civ. P. tit. 8 ("Provisional and Final Remedies"), *with* Fed. R. Civ. P. tit. 9 ("Special proceedings").

4

magistrate order, that's not the same as saying such objections are *required*. None of Ayestas's "black-letter" law, *see* Appellee Br. 12 & n.2, proves otherwise: every case he cites deals with a *party's* failure to object. And at the very least the rules are clear that even where a *party* is not "warned . . . of the consequences of failing to object" to a magistrate order, the party has not waived review on appeal. *See Campbell Harrison v. Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*, 744 F. App'x 192, 196 & n.7 (5th Cir. 2018); *United States v. Young*, 585 F.3d 199, 202 (5th Cir. 2009). Harris County was not so warned. *See* ROA.3181.

Harris County properly asserted the privilege objection currently at issue in response to Ayestas's subpoena and motion to compel. *See* ROA.3089–114, 3133–50. The magistrate judge overruled them. Harris County should not have been required to file pro forma objections under a rule intended to prevent *parties* from sandbagging errors until appeal of a final judgment years later, an appeal to which Harris County would not be a party and would not benefit from.

## II. The District Court Lacked Jurisdiction to Enter the Disputed Discovery Order.[3]

"[A] state prisoner always gets one chance to bring a federal habeas challenge to his conviction," but after that one shot ends, "the road gets

---

[3] Ayestas believes this issue is outside the scope of this appeal because Harris County did not raise it and amicus TDCJ did not "formally allege 'exceptional circumstances.'" *See* Appellee Br. 48, 51–53 (quoting *Christopher M. by Laveta McA. v. Corpus Christi Indep. School Dist.*, 933 F.2d 1285, 1292 (5th Cir. 1991)). But even if Harris County did not raise the district court's jurisdiction as an issue on appeal, this Court has jurisdiction to consider whether a federal habeas petition is successive sua sponte. *See Crone v. Cockrell*, 324 F.3d 833, 836 (5th Cir. 2003); *see also New Orleans City v. Aspect Energy, LLC*, 126 F.4th 1047, 1056 (5th Cir. 2025) (considering subject-matter jurisdiction argument first raised by amicus on appeal); Fed. R. App. P. 29 advisory committee's note to 1998 amendment ("An *amicus curiae* brief which brings relevant matter to the attention of the Court that has not already been brought to its attention by the parties is of considerable help to the Court."). Moreover, "exceptional circumstances" exist that permit this Court to consider AEDPA-specific arguments that could have outcome-determinative impact on Harris County's appeal and that TDCJ is uniquely suited to raise: Harris County's involvement in Ayestas's decades-long attempt at obtaining federal habeas relief amounted to a total of four months of litigation before Harris County noticed its intent to appeal the district

5

rockier." *Banister v. Davis*, 590 U.S. 504, 509 (2020); *see also Rivers v. Guerrero*, 605 U.S. 443, 450 (2025). That's because a district court does not have jurisdiction to consider a second-or-successive federal habeas petition absent a petitioner receiving authorization from the court of appeals to file it. *See Burton v. Stewart*, 549 U.S. 147, 152–53 (2007); *see also* 28 U.S.C. § 2244(b)(3)(A). Any "second-in-time habeas filings even if the filing is not styled as a § 2254 habeas application by the filer" are considered successive petitions "forced to face the gauntlet of § 2244(b)." *Rivers*, 605 U.S. at 450–51. This includes "a self-styled 'motion' that 'seeks to add a new ground for relief' . . . no matter how it is labeled." *Id.* (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)). And the crucial point at which a second-in-time habeas filing is considered a successive petition "turns on the existence of a final judgment with respect to the first petition[.]" *Rivers*, 605 U.S. at 453. That is, "once the district court has entered its judgment with respect to the first habeas petition, a second-in-time application qualifies as 'second or successive' and is thus properly subject to the requirements of § 2244(b)." *Id.* at 446–47.

The only exception to this rule is a timely filed, i.e., within twenty-eight days of final judgment, motion under Rule 59(e) that asks a federal court to "reconsider[] matters properly encompassed in a decision on the merits." *Banister*, 590 U.S. at 508 (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982)); *see also Rivers*, 605 U.S. at 453 (noting Rule 59(e) motions are "a unique variant to the otherwise applicable rule that entry of final judgment separates first from second or successive habeas filings" because such motions are "filed within 28 days" and "seek[] to correct an error in the District Court's judgment prior to an appeal"). A timely and proper Rule 59(e) motion is "a limited continuation of the original proceeding" that "merges into the final judgment." *Banister*, 590 U.S. at 516, 521. But post-judgment filings filed more than twenty-eight days after entry of judgment that seek to raise new claims, *see Rivers*, 605 U.S. at 452–53, or that ask the court to "entertain arguments that could have been but were not raised before the just-issued decision," *Banister*, 590 U.S. at 516, involve precisely the kind of "serial habeas litigation" that AEDPA prohibits, *id.* at 521. If a

---

court's discovery order. *Compare* ROA.2985 (Ayestas's motion to compel Harris County to produce discovery), *with* ROA.3182 (Harris County notice of appeal).

petitioner's so-called post-judgment "motion" seeks to add a new ground for relief, it is an impermissible successive petition, full stop.

The application of these principles to Ayestas's case is straightforward: the first time he raised his new equal protection claims in federal court was more than twenty-eight days after final judgment. *Compare* ROA.984 (final judgment entered November 18, 2014), *with* ROA.1148 (Ayestas's "motion for leave to amend [his] original petition for writ of habeas corpus" with his instant equal protection claims filed on January 9, 2015), *and* ROA.1159 (Ayestas's "motion" to "supplement" a timely filed Rule 59(e) motion with his new claims filed on January 14, 2015). Further, his claims relied on allegedly new evidence that he also did not even try to discover until more than twenty-eight days after final judgment. *See Ayestas v. Stephens*, 817 F.3d 888, 894 (5th Cir. 2016), *vacated on other grounds sub nom. Ayestas v. Davis*, 584 U.S. 28 (2018) (noting Ayestas's motions alleged that he discovered the capital murder summary memo underlying his equal protection claims during a review of the State's file that he conducted on December 22, 2014, thirty-four days after final judgment). And of course, the sole purpose of his 2021 Rule 60(b) motion was to clear post-judgment procedural hurdles to his ability to raise new claims more than five years after final judgment. *See* ROA.1565–67. Ayestas's post-judgment motions (in 2015 and in 2021) fall within the ambit of *Rivers* and *Gonzalez*, not *Banister*.

This has three downstream consequences. *First*, Ayestas's 2015 post-judgment motions were successive because they do not fall within *Banister*'s limited exception. *See Rivers*, 605 U.S. at 453 (*Banister*'s rejection of "a moment-of-judgment rule for distinguishing between second-in-time filings that qualify as second or successive applications and those that do not" "related to a materially different filing submitted in a materially different context"). The 2015 motions were not Rule 59(e) motions; they were Rule 60(b) motions. *See Demahy v. Schwarz Pharma., Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012) ("If the motion [asking for reconsideration of a prior ruling] was filed within twenty-eight days after the entry of the judgment, the motion is treated as though it was filed under Rule 59, and if it was filed outside of that time, it is analyzed under Rule 60."); *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025) (holding Rule 60(b)(6) standards apply to motions to amend complaint

7

after judgment because "satisfaction of Rule 60(b)(6) necessarily precedes any application of Rule 15(a)"); *accord Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 470 (5th Cir. 2023) (citing 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1489 (3d ed.))). Thus, they should have been—and initially were, *see* ROA.1238, 1243—dismissed as successive. *See Gonzalez*, 545 U.S. at 532 (Rule 60(b) motion that "seeks to add a new ground for relief" is successive).

But both the district court and Ayestas have resisted this result because, at the time Ayestas filed these motions, a timely filed Rule 59(e) motion was pending. *See* ROA.1613–14. While Ayestas's timely Rule 59(e) motion was undoubtedly proper, Ayestas's untimely "supplemental" motion relied on "newly discovered evidence [that] [wa]s *not relevant* to the ineffective assistance of counsel claims" before the district court on remand from this Court. *See* ROA.1243 (emphasis added). Ayestas was not permitted to "supplement" his Rule 59(e) motion and remain outside the reach of § 2244(b). *See Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986) ("The time limit [in Rule 6(b)] would be a joke if parties could continually file new motions, preventing the judgment from becoming final."); *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) (per curiam) (plaintiff could not simply "circumvent Rule 6(b)'s prohibition on granting an enlargement of time for filing motions under Rule 59(e)" by "supplant[ing] their timely yet insufficient" Rule 59(e) motion when their "placeholder" motion did not adequately "apprise the court and the opposing party of the grounds upon which reconsideration is sought"). This point is proven most saliently by the fact that, if no timely Rule 59(e) motion had been pending when Ayestas filed his 2015 motions, there would be *no question* that his 2015 motions were successive. To permit a petitioner to bypass that outcome by allowing him to raise new habeas claims *so long as* a timely filed, entirely unrelated Rule 59(e) motion remains pending[4] would permit exactly the type of

---

[4] District courts, especially in capital cases, are not always able to quickly rule on what can often be expansive (albeit timely and proper) Rule 59(e) motions. *See, e.g., Aranda v. Lumpkin*, No. 20-70008, 2021 WL 5627080, at *1 (5th Cir. Nov. 30, 2021) (capital habeas petitioner filed timely Rule 59(e) motion which remained pending "for nearly three decades"). While *Aranda* is hardly the usual case, a district court taking even several months to dispose of a timely Rule 59(e) motion would provide ample opportunity for capital habeas petitioners to go on fishing expeditions

abusive litigation AEDPA's successiveness prohibition was designed to prevent. *See Banister*, 590 U.S. at 512 ("The point of § 2244(b)'s restrictions, we have stated, is to conserve judicial resources, reduce piecemeal litigation, and lend finality to state court judgments within a reasonable time." (cleaned up)). AEDPA cannot condone that result.

*Second*, given that Ayestas's 2015 post-judgment motions were indisputably successive, Ayestas's 2021 Rule 60(b) motion seeking to undo the court's denials of those motions simply stacked successiveness on successiveness. Ayestas's 2021 Rule 60(b) motion purported to attack a defect in the integrity of the proceeding, *see, e.g.,* ROA.1613, but at bottom, it had a singular, impermissible goal: "to add a new ground for relief" long after final judgment. *See Gonzalez*, 545 U.S. at 532 (a filing that seeks "vindication of such a claim" is "similar enough" in substance to an "application" that "failing to subject it to the same requirements [under AEDPA] would be 'inconsistent with' the statute"); *see also In re Edwards*, 865 F.3d 197, 203 (5th Cir. 2017) (per curiam) (Rule 60(b) motion urging abandonment by habeas counsel for purpose of adding a new claim is "the definition of a successive claim"); *Clark v. Davis*, 850 F.3d 770, 784 (5th Cir. 2017) (indicating a Rule 60(b) motion addressing a defect in the federal habeas proceedings does not also allow the district court to "reopen and reconsider" the merits). Simply put, Ayestas's 2021 motion was a "successive-habeas wolf" in "Rule 60(b) sheep's clothing." *Runnels v. Davis*, 746 F. App'x 308, 316 (5th Cir. 2018).

*Third*, even if Ayestas's 2021 Rule 60(b) were not *itself* successive, the district court still could not have properly reopened judgment because "[m]ere changes in decisional law, without more, do not constitute extraordinary circumstances" sufficient to warrant Rule 60(b) relief. *Crutsinger v. Davis*, 936 F.3d 265, 270 (5th Cir. 2019); *see also Gonzalez*, 545 U.S. at 536 ("It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation" of the statute of limitations.); ROA.1549–50. This is especially true where *Banister* has absolutely no effect on Ayestas's more-than-twenty-eight-days-after-final-judgment 2015 motions. Because

---

to circumvent § 2244, just like Ayestas did when he did not even conduct his "routine" file review within the 28-day window. The law prohibits this kind of sandbagging in federal-habeas proceedings. *Cf. Rhines v. Weber*, 544 U.S. 269, 277–78 (2005).

Ayestas does not benefit from the change in decisional law, and because no other extraordinary circumstance exists, especially in light of the untimeliness of the Rule 60(b) motion, *see* ROA.1540–55, the district court abused its discretion in granting Rule 60(b) relief.[5]

Without a reopened judgment, the district court had no jurisdiction to permit, consider, or grant discovery in pursuit of an unauthorized amended petition. *See Burton*, 549 U.S. at 152.[6] Thus, whether Ayestas's 2021 Rule 60(b) motion should have been dismissed as successive or whether it should simply have been denied as an untimely and meritless Rule 60(b) motion, the court had no proper path to reopen a long-final judgment and permit an otherwise unauthorized successive petition to be filed. The district court's discovery order was invalid because it lacked jurisdiction to enter it, and this Court should reverse and remand with instruction to dismiss Ayestas's petition as successive.

Respectfully submitted,

/s/ Gwendolyn S. Vindell
GWENDOLYN S. VINDELL
Assistant Attorney General
(512) 936-1400

*Counsel for Amicus Curiae*

---

[5] Even if Rule 60(b) relief could have been granted, it is unclear how the district court used that relief—which was aimed at a prior *post-judgment* decision—to reopen judgment itself. *See* ROA.1616 (granting Rule 60(b) relief "[t]o the extent that Ayestas's motion seeks relief from the denial of his motion to amend his Rule 59(e) motion"). At best, the parties should have been restored to the prior post-judgment posture that was allegedly decided in error.

[6] Ayestas addressed none of TDCJ's arguments in his Appellee's Brief, in part because he suggests that this Court already rejected the arguments when it denied TDCJ's mandamus petition in 2023. *See, e.g.*, Appellee Br. 52. Ayestas reads far too much into a without-written-order denial of the mandamus petition, especially given that Ayestas relied heavily on the extremely high "clear and indisputable" error standard specific to mandamus when arguing that such relief should be denied. *See* Resp. to Pet. Writ of Mandamus 1, 13–24, *In re Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023), ECF No. 37.

p.s. This letter is being filed via this Court's Case Management/Electronic Case Filing system. The letter: (1) complies with the applicable page limitation; (2) follows the privacy redaction requirements; (3) is an exact duplicate of the paper document; and (4) has been scanned with the most recent version of a commercial virus-scanning program and is virus free. An electronic copy is being served on today's date, via this Court's Case Management/Electronic Case Filing system, upon counsel for Ayestas and Harris County.