**PHILLIPS BLACK**
a nonprofit, public interest law practice

LEE KOVARSKY (SPECIAL COUNSEL)     *l.kovarsky@phillipsblack.org*          Barred In:
727 E. Dean Keaton Street          512.232.1504 (tel)                          Texas
JON 5.231 (Room Number)            512.471.6988 (fax)                       New York
Austin, TX 78705                   434.466.8257 (mobile and main)

January 9, 2026

**Via Electronic Filing**
Lyle W. Cayce, Clerk of Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

Re: <u>*Ayestas v. Harris Cnty. District Atty's Office*</u>, No. 25-70014

Dear Mr. Cayce:

Appellee Carlos Ayestas submits this supplemental letter brief in response to the Court's December 23, 2025 Order, ECF No. 42.

The district court granted Ayestas's motion, under Fed. R. Civ. P. 60(b), permitting him to reopen his habeas judgment and to add claims associated with the "Siegler Memorandum." The Memorandum, drafted by the Harris County District Attorney's Office ("HCDA"), cited Ayestas's non-citizenship as a primary reason to capitally charge and seek death in his case. ROA.2545, 8092. The Texas Department of Criminal Justice ("TDCJ") repeatedly argued to the district court that the Rule 60(b) motion was a successive habeas petition, but the court rejected that argument every time. TDCJ sought mandamus relief to vindicate its position, but it lost unanimously. Pet. for Writ of Mandamus, *In re Lumpkin*, No. 23-20169 (5th Cir. Apr. 20, 2023) ("Mandamus Pet."); Order, *In re Lumpkin*, No. 23-20169 (5th Cir. July 18,

2023) ("Mandamus Order").

Ayestas thereafter sought and obtained discovery against the entity that drafted the Siegler Memorandum—HCDA. ROA.2196-2206 (motion); ROA.2314-30 ("Discovery Order"). Instead of following Fed. R. Civ. P. 72(a) and objecting to the Discovery Order before the district court, HCDA appealed directly here. ROA.3182-83. And instead of noticing its own appeal, petitioning for mandamus, or intervening, TDCJ filed an amicus brief to enlarge this appeal and to revive the jurisdictional issue that it had lost in the prior mandamus proceeding. This Court should dismiss HCDA's appeal for lack of appellate jurisdiction. But if it exercises appellate jurisdiction over TDCJ's claim, it should affirm the district court's refusal to treat Ayestas's Rule 60(b) motion as a successive petition.

## I.     THIS COURT LACKS APPELLATE JURISDICTION OVER HCDA'S CLAIMS.

This Court lacks appellate jurisdiction over HCDA's claims for two independent reasons. First, it does not have jurisdiction to review the magistrate judge's Discovery Order because HCDA failed to object before the district court, as Rule 72(a) requires. Second, the collateral-order doctrine does not encompass appeals from discovery orders adverse to claims of work-product privilege.

### A.     This Court Lacks Appellate Jurisdiction Because HCDA Did Not Timely Object to the District Court.

HCDA's failure to object before the district court—let alone within the

required timeframe—deprives this Court of jurisdiction. Rule 72(a) provides that a "party may serve and file objections to the order within 14 days" of being served, but that the party "may not assign as error a defect in the order not timely objected to." This black-letter rule has limited the scope of appellate jurisdiction for nearly 50 years.[1] HCDA nonetheless argues that non-parties to the underlying lawsuit are exempt from Rule 72 and may take any appeal to this Court at any time. ECF No. 22 at 9-10. Neither the Federal Rules of Civil Procedure nor caselaw supports this absurd interpretation of Rule 72.

Start with the Rules. Rule 71 expressly contemplates and rejects HCDA's interpretation of Rule 72. *See* Fed. R. Civ. P. 71 ("When an order grants relief for a nonparty *or may be enforced against a nonparty*, the procedure for enforcing the

---

[1] *See, e.g.*, *Esquivel v. Kendrick*, 2023 WL 5584168, at *3 (5th Cir. Aug. 29, 2023) (a party "may not preserve as error a [purported] defect in a magistrate judge's nondispositive order that is not timely objected to within fourteen days of service" (citing Fed. R. Civ. P. 72(a))); *Mayfield v. Butler Snow, LLP*, 75 F.4th 494, 502 (5th Cir. 2023) ("Plaintiffs challenge discovery orders made by a magistrate judge.… The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." (internal citations and quotation marks omitted).); *SEC v. Voight*, 2023 WL 1778178, at *1 (5th Cir. Feb. 6, 2023) (holding that a party who failed to meet the timing requirements of Rule 72(a) forfeits issues); *Stancu v. Hyatt Corp./Hyatt Regency Dallas*, 791 F. App'x 446, 453 (5th Cir. 2019) (same); *Lee v. Plantation of La., LLC*, 454 F. App'x 358, 359 (5th Cir. 2011) (dismissing appeal for lack of jurisdiction because appellant failed to object to magistrate judge's order in the district court); *Gregg v. Linder*, 349 F.3d 860, 862 (5th Cir. 2003) ("The only circumstance in which an order of a magistrate judge may be appealed directly to this Court is described in 28 U.S.C. § 636(c)(1) and (3)."); *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1137 (5th Cir. 1987) (characterizing as "settled" the rule that "pretrial matters referred by a trial judge to a magistrate must be appealed first to the district court"); *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980) (characterizing as "settled" the rule that "appellate courts are without jurisdiction to hear appeals directly from federal magistrates," and holding that failure to object in district court "deprived the trial judge of his ability to effectively review the magistrate's holding"); *United States v. Cline*, 566 F.2d 1220, 1221 (5th Cir. 1978) ("This Court is without jurisdiction to hear appeals from [magistrate judges].").

order is the same as for a party." (emphasis added)). Wright and Miller calls Rule 71 "common sense," explaining "that, when [an order is made for or against a nonparty], nonparties have recourse to, and are subject to, process in the same measure as parties." 12 Fed. Prac. & Proc. Civ. § 3031 (3d ed.) (quotation marks and citations omitted). Moore's treatise explains that Rule 71 exists so that "a nonparty becomes *fully amenable to all the processes* that might be used to assure the obedience of a party." 13 Moore's Fed. Prac. – Civ. § 71.04 (2025) (emphasis added).

Some courts do not even reach questions about non-party compliance under Rule 71 because they simply treat subpoena recipients who contest disclosure before the district court as "parties" under Rule 72. *See, e.g.*, *Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4 n.2 (1st Cir. 1985) ("Rule 72(a) 'parties' are the parties before the magistrate, not the parties to the litigation from which the nondispositive matter originated."). And courts regularly apply Rule text about "parties" to other entities.[2] Ironically, HCDA can notice this appeal only because certain nonparties are permitted to do so under Fed. R. App. P. 3 and 4—which speak only in terms of "party" appeals. *See, e.g.*, Fed. R. App. P. 3(c)(1)(A) (requiring that all notices of appeal "specify the *party or parties* taking" them (emphasis added)); Fed. R. App.

---

[2] Fed. R. Civ. P. 60(b) refers only to post-judgment relief against a "party," though this Court recognizes that certain entities that are not formally parties can move under that Rule. *See, e.g.*, *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 n.14 (5th Cir. 1992). Fed. R. App. P. 21 speaks only of a "party" that may petition for mandamus, yet this Court regularly permits non-party mandamus petitions. *See, e.g.*, *In re Sealed Petitioner*, 106 F.4th 397, 399 (5th Cir. 2024); *In re. Dall. Morning News Co.*, 916 F.2d 205, 206 (5th Cir. 1990).

P. 4 (requiring that "the notice of appeal required by Rule 3" be filed within 30 days of order).

Moreover, courts do not adopt absurd Rule interpretations when there are reasonable alternatives. HCDA's novel Rule 72(a) interpretation means that: A party has fourteen days to "serve and file objections" to a magistrate judge's order, but a non-party has no time limit; a party could not "assign[] as error a defect in the order not timely objected to," but a non-party cannot forfeit issues; a party's objections to could be set aside only if they are "clearly erroneous" or "contrary to law," but non-party objections could trigger *de novo* review; and a party would have to "promptly arrange for transcribing the record" for magistrate judge recommendations on dispositive matters, but there would be no such burden for a non-party. The Advisory Committee on Civil Rules did not recommend, and Congress did not enact, such absurdities. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989) (rejecting "odd" interpretation of Rule passed under the Rules Enabling Act); *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 740 (5th Cir. 2005) (rejecting interpretation that produces an "absurd result"); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 234 (2012) (discussing the "absurdity canon").

Non-parties have no special privilege to forum shop between district and circuit courts. Permitting that practice would contravene the ordinary meaning of the Rules and dramatically protract litigation. This Court should not be the first to hold

that non-parties get special treatment under Rule 72, and this appeal should be dismissed.

**B.** **This Court Lacks Appellate Jurisdiction Because the Collateral-Order Doctrine Does Not Apply to the Discovery Order.**

The collateral-order doctrine permits prejudgment appeals for only a "narrow class of decisions" that are "'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). "To fall within [the] collateral order doctrine, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009) (internal quotation marks and citations omitted). The "bar set by the collateral order doctrine is high," and such a determination is made categorically—i.e., by "looking only at whether the class of claims, taken as a whole, can be vindicated by other means than immediate appeal"—not case-by-case. *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019) (quotations omitted); *see also Mohawk*, 558 U.S. at 107 (requiring categorical inquiry).

The Discovery Order is not dispositive[3] and HCDA has other remedies, so it

---

[3] *See Merritt v. Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-18 (5th Cir. 1981).

fails two *Cohen* requirements. That reality is reflected in this Court's defy-contempt-appeal rule: An entity possessing documents and asserting privilege may not appeal a compulsion order until it has disobeyed the order and been held in contempt. *See Leonard v. Martin*, 38 F.4th 481, 488 (5th Cir. 2022); *A-Mark Auction Galleries v. Am. Numismatic Ass'n*, 233 F.3d 895, 898-99 (5th Cir. 2000); *see also United States v. Fluitt*, 99 F.4th 753, 760 (5th Cir. 2024) (this approach "has long been followed in this circuit"). Seeking a novel exemption from that rule, HCDA suggests that the disclosure of privileged materials would cause it immense harm. ECF No. 30 at 16-17. But compelled disclosure does not waive a party's assertion of work-product privilege, and protective orders can preserve confidentiality. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (rule for attorney-client privilege); *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 242 F. Supp. 3d 576, 578 (S.D. Tex. 2017) (applying rule to work-product privilege).[4]

*Mohawk* makes this point clear insofar as "orders adverse to the attorney-client privilege" do not "qualify for immediate appeal under the collateral-order doctrine" because "[p]ostjudgment appeals, together with other review mechanisms, suffice to protect the rights of litigants and preserve the vitality of the attorney-client

---

[4] HCDA abandoned its burden arguments long ago. ROA.3089, 3172; ECF No. 30. Also, while distinct from these jurisdictional issues, HCDA has no standing to appeal because it did not meaningfully participate in the district court proceedings. *See Castillo v. Cameron Cnty.*, 238 F.3d 339, 349 (5th Cir. 2001). In fact, it ignored every mechanism to protect its interests. It did not ask the magistrate judge to reconsider the Discovery Order, object under Rule 72, request to have the issue certified for appeal, or seek mandamus. It even failed to seek a protective order.

privilege." 558 U.S. at 103. So "[t]he sole fact '[t]hat a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment … has never sufficed' to make a decision effectively unreviewable" and therefore appealable under the collateral-order doctrine. *Vantage Health*, 913 F.3d at 449. Even before *Mohawk*, "orders requiring discovery over a *work-product objection*" were quintessential forms of "harm" that were "not appealable" before judgment because they would transform the collateral order doctrine "into a license for broad disregard of the finality rule imposed by Congress." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981) (quotation marks and citations omitted, emphasis added).

This Court's precedent effectuates *Mohawk* and *Risjord*, and the three circuits that have considered HCDA's position expressly rejected it.[5] As this Court explained in *Leonard*, non-party status does not transform an otherwise non-appealable discovery order into an appealable one: "[T]his court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's

---

[5] *See In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 246 (4th Cir. 2023) (with respect to work-product dispute on interlocutory appeal, "there remains no doubt that this Court lacks jurisdiction under the collateral-order doctrine"); *Drummond Co. v. Terrance P. Collingsworth, Conrad & Scherer, LLP*, 816 F.3d 1319, 1325 (11th Cir. 2016) (holding that, for collateral-order doctrine purposes, the distinction between "work product privilege" and the "attorney-client privilege" was immaterial); *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010) ("The reasoning of *Mohawk*, which eliminated collateral order jurisdiction on appeals of disclosure orders adverse to the attorney-client privilege, applies likewise to appeals of disclosure orders adverse to the attorney work product privilege.").

appeal from a discovery order." 38 F.4th at 487. Indeed, "cases are legion that deny immediate appeals under the collateral order doctrine in an array of discovery contexts," including for discovery orders adverse to claims of work-product privilege. *Id.* at 487 & n.2 (citing *Sealed Appellees v. Sealed Appellants*, 112 F.3d 173, 174 (5th Cir. 1997)). And even before *Leonard* and *Mohawk*, this Circuit held that an order compelling "discovery of privileged documents … would not be reviewable on appeal." *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003).

HCDA has previously cited *Lewis v. Crochet*, 105 F.4th 272 (5th Cir. 2024), which held that, under certain circumstances, a non-party could obtain interlocutory review of an order invoking the crime-fraud exception to the attorney-client privilege. *See id.* at 281. Contradicting *Leonard* without citing it, *Lewis* explained that "*Mohawk* was a case addressing a party's interlocutory appeal of a disclosure order adverse to the attorney-client privilege and thus does not apply to bar appellate jurisdiction here." *Id.*; *but see United States v. Copar Pumice Co.*, 714 F.3d 1197, 1205 (10th Cir. 2013) (expressly holding that *Mohawk* does not distinguish between parties and non-parties). To the extent *Lewis* conflicts with the natural reading of *Mohawk*, *Risjord*, *Leonard*, and *Aventel*, the rule of orderliness requires that *Lewis* yields. *See United States v. Castro-Alfonso*, 841 F.3d 292, 297 (5th Cir. 2016) (prior holdings control even if "cursory").

But recourse to orderliness is unnecessary because *Lewis* involved a narrow

holding about the crime-fraud exception to a third-party claim of attorney-client privilege. Crime-fraud determinations are unique, and courts balance the interests in those cases differently than they do in routine determinations of work-product privilege. *Cf. Burnham v. Cleveland Clinic*, 89 N.E.3d 536, 537 (Ohio 2016) (distinguishing between the immediate appealability of orders adverse to attorney-client privilege claims and orders adverse to work-product protection claims). *Mohawk* itself explains that, even for "valuable rights" that are "central to adversarial system," courts "routinely require litigants to wait until after final judgment" because "deferring review until final judgment does not meaningfully reduce the *ex ante* incentives" to engage in the immunized conduct. 558 U.S. at 109. And the *ex ante* incentives do not change with compelled disclosure here. Prosecutors will continue to use charging memoranda despite the risk that a prosecutor would be unable to immediately challenge court-ordered production. This Court should find that it has no jurisdiction to consider HCDA's appeal.

## II.     THE DISTRICT COURT CORRECTLY REFUSED TO TREAT THE MOTION AT ISSUE AS A SUCCESSIVE HABEAS PETITION.

TDCJ's amicus brief raises the same objection to the district court's jurisdiction that both this Court and the district court have rejected. *Compare* ECF No. 33, *with* Mandamus Pet.; Mandamus Order. TDCJ asserts yet again that Ayestas's Rule 60(b) motion, which sought to reverse an erroneous denial of amendment, was a successive habeas petition. This argument has failed repeatedly

because this Court's controlling precedent makes clear that a Rule 60(b) motion seeking to reopen an order denying amendment is not a successive petition.

## A.  <u>Additional Case History Relevant to Amicus TDCJ's Argument.</u>

Before *Banister v. Davis*, 590 U.S. 504 (2020), Fifth Circuit precedent required district courts to treat amendments attempted during the pendency of Rule 59(e) motions as successive petitions. *See* ROA.1235-38; ROA.1241-44; *see also Williams v. Thaler*, 602 F.3d 291, 302 (5th Cir. 2010) (setting forth now-overturned rule). Ayestas sought to amend his habeas petition and add the Siegler Memorandum in this posture—that is, while his Rule 59(e) motion was pending and before there was a perfected judgment. Specifically, he timely filed his Rule 59(e) motion on December 16, 2014, ROA.985-1023, and federal habeas counsel discovered the Siegler Memorandum eight days later, while conducting a routine review of HCDA's case file. *See* ROA.1150-53. Upon discovering that document, Ayestas immediately asked to amend his initial federal habeas petition to add claims associated with the Siegler Memorandum, ROA.1159, and he diligently spent years litigating his entitlement to do so. *See* ROA.2316-17.

TDCJ opposed and insisted—falsely, as it turns out—that reasonably diligent trial counsel could have discovered the Siegler Memorandum. ROA.1220-34. TDCJ convinced the district court that the Siegler Memorandum had been available to trial counsel, and the district court denied Ayestas's attempt to amend in the Rule 59(e)

posture.[6] ROA.1235. On appeal, TDCJ continued to falsely deny that HCDA treated the Siegler Memorandum as confidential work product[7] and this Court accordingly affirmed the district court's order refusing the amendment. ROA.1283-1301. But this Court did not find that the Siegler Memorandum claims were successive and jurisdictionally barred. *See Ayestas v. Stephens*, 817 F.3d 888 (5th Cir. 2016).[8] Instead, it held that the claims were outside the scope of the mandate to the district court on remand. *Id*. at 899. It also credited TDCJ's false representation of Memorandum's availability when refusing to stay the case for exhaustion. *See id*. at 900-92.[9]

---

[6] *See, e.g.*, ROA.1193, 1212 ("[T]he factual predicate for the new claims—the 1995 prosecution report—could have been discovered much earlier had Ayestas exercised due diligence."); *id.* ("[T]here is absolutely no indication that the report was not in those very same files prior to his filing his original federal habeas application in September 2009."); ROA.1191 ("Despite the apparent availability of this document for quite some time, this is the first time Ayestas has attempted to raise such a claim in any court."); ROA.1193 ("[I]t is clear that the factual predicate for the new claims—the 1995 prosecution report—could have been discovered much earlier had Ayestas exercised due diligence."); ROA.1194 ("Therefore, he should have raised these claims in his original federal petition because the factual predicate of the claim was available."); ROA.1197 ("Ayestas still cannot demonstrate any form of diligence because the 'evidence' he uses to support his new claims has always been available.").

[7] *See, e.g.*, Resp. to Pet. for Reh'g at 9, *Ayestas v. Stephens*, No. 15-70015 (5th Cir. May 23, 2016) ("Ayestas's attempt to excuse this lack of diligence by blaming the State and relying on the self-serving assumption that it would have been futile to ask the State to produce work product was unavailing.").

[8] The words "2244(b)" and "successive" appear nowhere in this Court's prior opinions, and the term "jurisdiction" appears only when describing the requirement that the Fifth Circuit certify appeals. *See id.* at 894-95. The portion of the opinion on the Siegler Memorandum claims passingly refer to some merits-based adjudication, but that portion of the opinion plainly refers to the *other* claims that were before the Court. *See id.* at 901.

[9] The Panel later clarified that it was not referring to the "diligence of federal habeas counsel in locating the memo. It was the diligence of Ayestas's *trial counsel* that we were describing." *Ayestas v. Stephens*, 826 F.3d 214, 215 (5th Cir. 2016) (emphasis added).

During certiorari proceedings, TDCJ finally acknowledged that the Siegler Memorandum was *not* available to trial counsel because HCDA treated it, like all such memoranda, as confidential work product. Appellant's Br. in Opp'n at 18 n.10, *Ayestas v. Davis*, 584 U.S. 28 (2018) (No. 16-6795) ("The fact that [the Siegler Memorandum] is privileged explains why it was not voluntarily turned over to [Ayestas's] counsel during the criminal trial."). The Supreme Court granted certiorari, reversed the lower federal courts' decision on Ayestas's ineffective-assistance-of-trial-counsel ("IATC") claim, and vacated the Fifth Circuit's 2016 opinion (in *Ayestas v. Stephens*) holding that the mandate rule foreclosed consideration of Siegler Memorandum claims. *Id.* at 47-48. When this Court again denied relief on Ayestas's IATC claim, it made no mention of Ayestas's Siegler Memorandum claims. *See Ayestas v. Davis*, 933 F.3d 384 (5th Cir. 2019).

After Ayestas unsuccessfully sought certiorari review of the Fifth Circuit's 2019 decision (in *Ayestas v. Davis*), the Supreme Court decided *Banister*. *Banister* established that the district court had erred when it held that amendments attempted before disposition of Rule 59(e) motions should be analyzed as successive petitions. 590 U.S. at 507. Following *Banister*, Ayestas initiated state-court proceedings to exhaust his Siegler Memorandum claims. When the state courts dismissed his subsequent application, ROA.8346-47, Ayestas initiated this Rule 60(b) litigation, citing *Banister* and TDCJ's misrepresentation as grounds to reopen the judgment

and revisit the 2015 denial of his attempt to amend. ROA.1343.

On August 12, 2021, the district court granted Ayestas's Rule 60(b) motion to reopen the judgment. ROA.1609-17. It determined (among other things) that (i) under *Gonzalez v. Crosby*, 545 U.S. 524 (2005), Ayestas's Rule 60(b) attack on the 2015 order refusing amendment was not a successive petition because that order was a "previous ruling which precluded a merits determination"; (ii) under *Banister*, his attempt to amend in a Rule 59(e) posture was not a successive petition; and (iii) "Ayestas has demonstrated his diligence in pursuing" the Memorandum-based claims. ROA.1612-15. The district court later reaffirmed that it "granted ... Ayestas's motion for relief from judgment," "vacated the [district] court's previous order denying Ayestas's motion to amend," and "granted him leave to file an amended petition." ROA.1873-74.

Following that decision, Ayestas filed an Amended Petition. ROA.1707-35. Fact development quickly confirmed what subsequent litigation has made obvious: "the Siegler Memo was not disclosed to Ayestas's [trial] counsel, but was withheld as attorney work product." ROA.2320.[10] The district court repeatedly referred to the

---

[10] This determination reflects TDCJ's course-reversal and other evidence. Billing records show that state post-conviction counsel and Ayestas's investigators reviewed the HCDA file four times before filing the initial state application. ROA.2119-20. Post-conviction counsel signed a declaration stating that he has no recollection of having seen the Siegler Memorandum and would have remembered it if he had. ROA.2182-83. And HCDA's Assistant General Counsel told Ayestas's postconviction counsel that HCDA would let the lawyer view the file except for "attorney work product or other material made confidential by law." ROA.2179-80.

initial disclosure of the Memorandum as "accidental," and underscored that "Ayestas present[ed] evidence that the [HCDA] withheld the Siegler memo until its accidental discovery well into his federal habeas proceedings." ROA.2320. In response to TDCJ's arguments that the district court was bound by this Court's since-vacated 2016 opinion (in *Ayestas v. Stephens*), the district court correctly observed that "judgment was vacated," ROA.2321, extinguishing its precedential effect.[11]

Once discovery commenced, TDCJ petitioned this Court for mandamus relief and unsuccessfully advanced, among other things, the same jurisdictional arguments for which this Court now requests briefing. *See* Mandamus Pet. Specifically, TDCJ argued that: (i) Ayestas's Rule 60(b) motion should be treated as a successive petition, *id.* at 7-9, and (ii) Ayestas's initial attempt to amend in 2015 should have been treated as a successive petition, *id.* at 11. This Court unanimously denied the mandamus petition. *See* Mandamus Order.

After TDCJ's mandamus effort failed, the district court issued a series of orders adverse to TDCJ. *See* ROA.2418, 2447, 2520, 2744, 2760, 2956, and 2984. TDCJ neither noticed appeals nor sought mandamus relief from those orders—it did

---

[11] *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 22 (1994) ("[V]acatur clears the path for future relitigation of the issues between the parties and eliminates a judgment...."); *Falcon v. Gen. Tel. Co.*, 815 F.2d 317, 320 (5th Cir. 1987) ("[T]o vacate a judgment is to take away from it any precedential affect. In essence, when a judgment is vacated all is effectually extinguished.") (citations and quotations omitted).

not raise jurisdictional issues in a new mandamus petition because it *already* lost in that posture. Instead, it sought to enlarge this appeal by filing an amicus brief.

**B.      Ayestas's Rule 60(b) Motion Was Not a Successive Petition Because it Challenged a Procedural Holding that Precluded Merits Consideration of Claims He Raised in 2015.**

Ayestas filed a Rule 60(b) motion to reopen his habeas case; he did not file a successive petition. This Court's controlling precedent establishes that a post-judgment motion to reopen an order denying amendment is *not* a successive petition. *See Uranga v. Davis*, 893 F.3d 282, 284 (5th Cir. 2018). *Uranga* follows *Gonzalez*, which explains that successive-petition status depends on whether the movant seeks to add a new claim or to attack a procedural holding that precluded merits consideration of a claim that the movant had tried to make before. *See Gonzalez*, 545 U.S. at 532. *Gonzalez* identified two categories of non-merits rulings that Rule 60(b) motions may challenge: (i) those that "precluded a merits determination"; and (ii) those that reflect a "defect in the integrity" of the proceedings, including those resulting from misrepresentations to the court. *Id.* at 532 nn.4-5. This Court recognizes that these two categories are separate "circumstances in which a district court may properly consider a Rule 60(b) motion in a § 2254 proceeding." *Gilkers v. Vannoy*, 904 F.3d 336, 344 (5th Cir. 2018).

*Uranga* forecloses TDCJ's argument. It holds that post-judgment motions attacking orders denying amendment are not successive petitions because they

precluded merits determination of claims raised at an earlier time. *See* 893 F.3d at 284. The *Uranga* claimant had challenged an order denying leave to amend his petition and this Court "address[ed] whether [his] postjudgment motion was an unauthorized successive [petition]." *See id.* at 284.[12] This Court held that his post-judgment motion was not a successive petition under *Gonzalez* because the claimant "did not seek to add a new ground for relief, nor did he attack the district court's previous resolution of a claim on the merits. Rather, he asserted that a previous ruling (the denial of his motion for leave to amend) which precluded a merits determination was in error." *Id.*

Like Uranga, Ayestas filed a post-judgment motion to reopen an order denying amendment of his initial habeas petition. And, like Uranga, he argued that his post-judgment motion was not a successive petition because he attacked a procedural holding that precluded merits consideration of the claims that he had tried to raise through amendment. The district court agreed, and its decision should be affirmed. ROA.1613 ("[The] Motion attacks the court's prior jurisdictional ruling that precluded adjudication on the merits. Therefore it is not a successive petition.").[13]

---

[12] In *Uranga*, the post-judgment attack came by way of a Rule 59(e) motion, not a Rule 60(b) motion, but the Court still applied *Gonzalez* and observed no distinction between the two types of post-judgment motions for these purposes. *See Uranga*, 893 F.3d at 284 n.6 ("Although *Gonzalez* involved a postjudgment motion under Rule 60(b), we have held *Gonzalez* applicable to postjudgment motions under Rule 59(e)." (citing *Williams*, 602 F.3d at 303)).

[13] Ayestas's 2021 motion was not a successive petition under *Gilkers* because it attacked *both* a

## C. **The District Court Correctly Held That the Rule 59(e) Motion Was Not a Successive Petition.**

TDCJ asks this Court to determine that Ayestas's *initial* attempt to amend was a successive petition because it was during the pendency of his Rule 59(e) motion. ECF No. 33 at 13-15. That argument has failed both on direct appeal and on mandamus because it is wrong. *Banister* categorically holds that arguments raised in Rule 59(e) postures are not successive petitions, 590 U.S. at 517 ("The upshot ... is that Rule 59(e) motions are not second or successive petitions, but instead a part of a prisoner's first habeas proceeding."), and that "courts may consider *new arguments* based on an intervening change in controlling law and newly discovered or previously unavailable evidence." *Id.* at 508 n.2 (internal quotations omitted and emphasis added).

Since *Banister*, this Court has repeatedly determined that arguments raised in Rule 59 postures are not successive petitions. "[T]he Supreme Court recently held that Rule 59(e) motions do not constitute successive habeas applications and that the rationale of *Gonzalez* does not apply to such motions." *In re Franklin*, 832 F. App'x 340, 341 (5th Cir. 2020). As a member of an earlier *Ayestas* Panel explained, "[*Banister*] held that Rule 59(e) motions should not be recategorized as successive applications *regardless of their contents*." *Thomas v. Lumpkin*, 995 F.3d 432, 440

---

procedural ruling that precluded merits determination *and* a defect in the proceeding's integrity.

(5th Cir. 2021) (Southwick, J.) (emphasis added).

TDCJ has sought to evade *Banister* by suggesting that any Rule 59(e) argument made more than 28 days after the un-perfected judgment is a successive petition. ROA.1192-94. But at no point has this Court or the district court *ever* suggested that the Siegler Memorandum claims were successive simply because Ayestas attempted to add them while the Rule 59(e) motion was pending. *See*, *e.g.*, ROA.1252 (analyzing Ayestas's motion as "[a] motion to alter or amend under Fed. R. Civ. P. 59(e)"); *Ayestas v. Stephens*, 817 F.3d at 894 ("Ayestas supplemented his December 16 Rule 59(e) motion to expand the basis upon which the district court should grant the motion").

Any amendment attempted during the pendency of a properly filed Rule 59(e) motion cannot be a successive petition because a Rule 59(e) motion "briefly suspends finality" for the court to "perfect its judgment before a possible appeal." *Banister*, 590 U.S. at 516. The Supreme Court just *unanimously* re-emphasized that an amendment is not a successive petition if attempted before "the district court has entered its judgment with respect to the first habeas petition," and there is no entry of such final judgment until the district court rules on a valid Rule 59(e) motion. *Rivers v. Guerrero*, 605 U.S. 443, 446, 454 (2025). That is because the adjudication of Rule 59(e) motion "is a limited continuation of the original proceeding—indeed, a part of producing the final judgment[.]" *Id.* at 454 (quoting *Banister*, 590 U.S. at

19

521). *Rivers* therefore extinguishes any remnants of TDCJ's argument. While Rule 59 itself gives a district court wide berth to reject amendments attempted while the post-judgment motions remain pending, such attempts are not successive petitions. Both the district court and this Court have been correct in rejecting TDCJ's jurisdictional arguments throughout this phase of the litigation. The Fifth Circuit should not change course now.

*     *     *

For the foregoing reasons, the Court should dismiss this appeal for lack of appellate jurisdiction. If it decides that it has appellate jurisdiction, then it should affirm the district court's holding that Ayestas's post-judgment motion was not a successive habeas petition.

Respectfully submitted,

*/s/ Lee B. Kovarsky* _____
Lee B. Kovarsky

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER-APPELLEE

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, an electronic copy of the foregoing document was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit and served upon all registered counsel using the appellate CM/ECF system.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky

## CERTIFCIATE OF COMPLIANCE

This brief is no more than 20 pages in length and otherwise complies with the requirements set out in this Court's Orders of December 23, 2025 and December 29, 2025. ECF Nos. 42, 54-2. In particular, this supplemental letter brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 point font in Times New Roman for above-the-line text and 12 point font in Times New Roman for footnotes.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky