Chandler Raine
First Assistant

Lauren Byrne
Chief of Staff

Harris County District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002

HARRIS COUNTY DISTRICT ATTORNEY
**SEAN TEARE**

January 9, 2026

Lyle W. Cayce
Clerk of the Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

**Via CM/ECF**

RE: Letter Brief, *Carlos Manuel Ayestas v. Harris County District Attorney's Office*, Fifth Circuit No. 25-70014

Dear Mr. Cayce,

The Harris County District Attorney's Office ("HCDA") submits this response to this Court's order that the parties file letter briefs addressing both the jurisdiction of the district court and the appellate jurisdiction of this Court. ECF No. 42. As explained below, HCDA agrees with the Texas Department of Criminal Justice ("TDCJ") as amicus curiae that the district court lacked jurisdiction under the Antiterrorism and Effective Death Penalty Act (AEDPA) to entertain Carlos Manuel Ayestas's post-judgment motions and to order discovery. It also contends that this Court may properly exercise its jurisdiction under the collateral order doctrine to prevent irreparable harm from the compelled disclosure of discovery from HCDA.

## I. Jurisdiction of the District Court

This Court reviews a district court's determination of its jurisdiction *de novo. Wadsworth v. Johnson,* 235 F.3d 959, 961 (5th Cir. 2000); *see also Will v. Lumpkin*, 978 F.3d 933, 937 (5th Cir. 2020) (holding that this Court reviews *de novo* a district court's jurisdictional determinations related to motions filed pursuant to Federal Rule of Civil Procedure 60(b)).

### A. Summary of the Relevant Background as to Jurisdiction

Although Ayestas has pursued federal habeas relief from his death sentence since 2009, proceedings relevant to his appeal began when, on November 18, 2014, the district

court entered final judgment denying relief related to ineffective-assistance-of-counsel claims. ROA.984. Ayestas timely filed a Rule 59(e) motion challenging that judgment, which the district court denied. ROA.985–1022. After the 28-day deadline expired, Ayestas sought to inject new claims into his habeas petition based on a newly-discovered prosecution memorandum referencing his immigration status as an aggravating factor in HCDA's decision to seek the death penalty. He filed a motion to amend his habeas petition and a "supplement" to his Rule 59(e) motion, both aimed at adding new claims. ROA.1148, 1159. The district court rejected these filings as unauthorized successive petitions under the AEDPA, ROA.1238, 1243, and this Court affirmed, holding that Ayestas failed to exercise reasonable diligence in discovering the memorandum. *Ayestas v. Stephens*, 817 F.3d 888, 901 (5th Cir. 2016), *vacated on other grounds sub nom. Ayestas v. Davis*, 584 U.S. 28 (2018). The Supreme Court denied review.

Years later, Ayestas invoked *Banister v. Davis*, 590 U.S. 504 (2020), which clarified that proper and timely Rule 59(e) motions are not successive petitions, and filed a Rule 60(b) motion arguing that the district court's prior rulings reflected a "defect in the integrity" of the habeas proceedings. ROA.1565–1567. The district court granted relief and treated its order as vacating the final judgment, allowing Ayestas to file an amended petition raising two new habeas claims—seven years after judgment became final. ROA.1609-1617, 1873-1874. The district court declined to transfer the successive petition to this Court for authorization and instead ruled that Ayestas satisfied § 2244(b). ROA.2319.

The district court then authorized sweeping discovery, first against TDCJ and later against HCDA. ROA.2198–2200, 2328–2330. It imposed no meaningful limits, compelling production of decades of sensitive prosecutorial work product. HCDA objected, asserting privilege and undue burden, but the district court ordered disclosure. ROA.3012-3013, 3089-3114, 3172-3181. This appeal followed, challenging the district court's lack of jurisdiction to reopen judgment and its order compelling privileged discovery. ROA.3182-3183.

**B. The District Court Lacked Jurisdiction to Reopen Habeas Proceedings**

The district court's order compelling HCDA to produce extensive discovery cannot stand because the court lacked jurisdiction from the outset. The AEDPA strictly limits federal habeas review: once a final judgment is entered, a state prisoner's "one chance" at federal habeas relief is over. *Banister*, 590 U.S. at 521 (2020); *Rivers v. Guerrero*, 605 U.S. 443, 446–47 (2025). Any later filing that introduces new grounds for relief or attacks the prior merits ruling is treated as a successive petition subject to 18 U.S.C. § 2244(b)'s rigorous gatekeeping—even if disguised as a Rule 60(b) motion. *Gonzalez v. Crosby*, 545 U.S. 524, 531–32 (2005).

Ayestas filed two such motions. In 2015, he submitted a "supplemental" Rule 59(e) motion and a post-judgment motion to amend, both adding new claims. In 2021, he filed a Rule 60(b) motion aimed at clearing procedural hurdles for those claims. Each filing had the same impermissible purpose: to inject new grounds for relief after judgment. The AEDPA forbids that tactic. *See In re Edwards*, 865 F.3d 197, 203–05 (5th Cir. 2017); *Gonzalez*, 545 U.S. at 532.

Both Ayestas's 2015 Rule 59(e) motion and his 2021 Rule 60(b) motion should have been dismissed by the district court as successive habeas petitions for which he neither sought nor obtained the requisite authorization from this Court pursuant to § 2244(b). Instead, the district court sidestepped § 2244 based on two fundamental errors. First, it misinterpreted *Gonzalez* by treating a purported "jurisdictional defect" as a basis for reopening judgment, notwithstanding the Supreme Court's clear directive that Rule 60(b) cannot be employed to advance new claims. *See Edwards*, 865 F.3d at 204–05. Second, it misapplied *Banister*, which expressly limits Rule 59(e) motions to a single, timely effort to seek reconsideration of matters encompassed in the judgment. *Banister*, 590 U.S. at 516, 521; *see also Demahy v. Schwarz Pharma.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012).

Rule 59(e) is a "limited" mechanism designed to allow a court to correct its own errors immediately after judgment—not to launch new litigation. As the Supreme Court explained in *Banister*, 590 U.S. at 516, a Rule 59(e) motion cannot be used to raise arguments or evidence that could have been presented before judgment and "will not entertain arguments that could have been but were not raised before the just-issued decision." Newly discovered evidence may justify reconsideration only if it relates to issues already litigated—not as a vehicle to introduce entirely new habeas claims. Ayestas's 2015 "supplemental" Rule 59(e) motion did precisely what *Banister* forbids: it sought to add new grounds for relief after judgment and therefore should have been treated as a Rule 60(b) motion subject to AEDPA's successive-petition bar.

When a post-judgment motion seeks to introduce new grounds for relief, courts treat it as a Rule 60(b) motion, and in the habeas context, as a successive petition subject to the AEDPA's gatekeeping requirements. *See Gonzalez*, 545 U.S. at 531–32; *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Both this Court and the Texas Court of Criminal Appeals have already held that Ayestas failed to exercise reasonable diligence in discovering these claims. *See Ayestas*, 817 F.3d at 901. That finding means the claims could have been raised earlier, rendering them successive under the AEDPA. Ayestas's 2015 filings were untimely and introduced new claims, so they should have been treated as Rule 60(b) motions subject to the AEDPA's successive-petition bar. The statute is unequivocal: absent prior authorization from this Court, the district court had no jurisdiction to consider those claims—much less reopen proceedings and order extensive discovery. § 2244(b)(4); *Burton v. Stewart*, 549 U.S. 147, 152 (2007).

Even if the Rule 60(b) motion were procedurally proper, Ayestas failed to show "extraordinary circumstances" warranting relief. A mere change in decisional law—such as *Banister*'s abrogation of circuit precedent—does not suffice. *Crutsinger v. Davis*, 936 F.3d 265, 270 (5th Cir. 2019); *Gonzalez*, 545 U.S. at 536. Without such circumstances, reopening judgment was an abuse of discretion. And if judgment should not have been reopened, the district court had no authority to permit discovery on an unauthorized amended petition. *See Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 470 (5th Cir. 2023).

Federal law guarantees finality in habeas proceedings. Ayestas's Rule 60(b) motion should have been dismissed as successive or denied outright, and his amended petition—filed without this Court's authorization—was jurisdictionally barred. By reopening judgment and granting discovery, the district court disregarded the AEDPA's strict limits and abused its discretion. This Court should reverse and direct dismissal.

## II. Jurisdiction of this Court

This Court has jurisdiction to review jurisdictional facts and determine the proper scope of its own jurisdiction. *See Flores-Garza v. I.N.S.*, 328 F.3d 797, 802 (5th Cir. 2003); *see also Balogun v. Ashcroft,* 270 F.3d 274, 278 (5th Cir.2001).

### A. Summary of the Relevant Background as to this Court's Jurisdiction

After being granted the right to conduct discovery under Habeas Rule 6, Ayestas issued a subpoena to HCDA for records. ROA.3116–3127. HCDA's involvement stems solely from this subpoena. On August 7, 2023, Ayestas served HCDA with a subpoena *duces tecum* containing 18 document requests and 7 interrogatories. ROA.3116–3127. HCDA agreed to produce certain non-confidential, non-privileged materials, ROA.3011–3014, but asserted objections based on prosecutorial work-product and deliberative-process privileges, and explained that full compliance would impose an undue burden under Federal Rule of Civil Procedure 26. ROA.3012–3013.

On February 14, 2025, Ayestas moved to compel production of a narrower set of records—most of which remained subject to HCDA's privilege claims – and sought the production of records not previously subpoenaed. ROA.3152–3170. This motion was referred to United States Magistrate Judge Christina A. Bryan. ROA.3171. HCDA opposed, arguing that Ayestas failed to satisfy the threshold for discovery under *United States v. Armstrong*, 517 U.S. 456, 465–66 (1996), and again asserted that the requested materials were protected by prosecutorial work-product and deliberative-process privileges, as well as unduly burdensome. ROA.3089–3114.

On June 3, 2025, Magistrate Judge Bryan granted Ayestas's motion and ordered HCDA to produce all documents identified in the motion. ROA.3172–3181. The order compels disclosure of privileged memoranda concerning charging decisions in hundreds

of murder and capital murder cases spanning decades. ROA.3181. HCDA timely filed its notice of appeal on June 27, 2025. ROA.3182–3183. Ayestas filed a motion to dismiss this appeal on the basis that this Court lacks jurisdiction to review the magistrate judge's order, and argued that the discovery order is not appealable under the collateral order doctrine. ECF No. 15. This Court denied the motion to dismiss on September 8, 2025. ECF No. 29.

**B. Jurisdiction is Established Under the Collateral Order Doctrine**

By and large, this Court's appellate jurisdiction "extends only to 'final decisions of the district courts.'" *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 232 (5th Cir. 2023) ("*Hughes*") (quoting 28 U.S.C. § 1291). However, *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), recognizes a narrow class of decisions—collateral orders—that are effectively final for purposes of immediate appeal.

**i. The Three Collateral Order Doctrine Conditions are Met**

Over recent years, this Court has allowed appellate review of similar orders in several cases: *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), *as revised* (July 17, 2018); *Vantage Health Plan, Inc. v. Willis-Knighton Medical Center*, 913 F.3d 443 (5th Cir. 2019); *Hughes*, 68 F.4th 228; *La Union Del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024) ("*Bettencourt*"); and *Lewis v. Crochet*, 105 F.4th 272 (5th Cir. 2024).

An order qualifies as a collateral order when it (1) conclusively resolves the disputed question, (2) decides an important issue wholly separate from the merits, and (3) would be effectively unreviewable after final judgment. *Vantage Health*, 913 F.3d at 448 (quoting *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009)). Each of these conditions is satisfied here.

First, the order finally decides whether privilege shields the subpoenaed materials. *See e.g.*, *Whole Woman's Health*, 896 F.3d at 367-68; *Vantage Health*, 913 F.3d at 448; and *Lewis*, 105 F.4th at 280 (all finding disclosure orders adverse to non-parties to be conclusive determinations). Second, the application of privilege to the requested documents is an important issue separate from the merits of the action. Privilege rulings concerning a non-party's internal prosecutorial work product do not turn on Ayestas's underlying habeas claims. *Id*.

Third, the Court's denial of the privilege is effectively unreviewable on appeal. *See id*. (holding that the collateral order doctrine is met when a district court's discovery order to a third-party – failure to comply with which may result in sanctions - was conclusive and effectively unreviewable on appeal from the final judgment). Once privileged information is disclosed, the harm is done and cannot be undone on post-judgment appeal.

### ii. *Mohawk* is Distinguishable from the Case at Bar Under this Court's Precedent

Ayestas relies on *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), to argue that interlocutory review is unavailable under the collateral order doctrine. ECF No. 15; ECF No2 37. In *Mohawk*, the Supreme Court held that parties may not immediately appeal discovery orders adverse to attorney-client privilege under the collateral order doctrine. *Mohawk Industries, Inc.*, 558 U.S. at 114. The Court emphasized that such orders are not "effectively unreviewable" on appeal from a final judgment because alternative mechanisms—such as post-judgment appeals or contempt proceedings—adequately protect the privilege. *Id*. at 110-12.

*Mohawk* is not outcome-determinative, however, because it did not address the rights of non-parties or categorically bar all discovery-related appeals under the collateral order doctrine. In fact, this Court has acknowledged that non-parties may appeal discovery orders under the collateral order doctrine, particularly when the order is effectively unreviewable and implicates important rights such as the compelled disclosure of sensitive information.

In *Vantage Health*, this Court exercised jurisdiction over a non-party's appeal from an order unsealing confidential documents, reasoning that disclosure causes irreparable harm and that non-parties lack adequate alternative remedies. 913 F.3d at 449-50. Similarly, *Whole Woman's Health* permitted a third-party appeal, noting that *Mohawk* "does not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect." 896 F.3d at 368. Most recently, *Lewis* reaffirmed that *Mohawk* does not bar jurisdiction where a non-party faces compelled disclosure, because the consequences of production are "effectively unreviewable" after final judgment. 105 F.4th at 280–81.

As this Court noted, "'[s]ecrecy is a one-way street,' and '[o]nce information is published, it cannot be made secret again.'" *Vantage Health*, 913 F.3d at 449 (quoting *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008)). This Court reasoned that once confidential information is disclosed, the harm is irreparable and non-litigants lack other adequate appellate remedies. *Id*. While the bar for interlocutory review is high, this Court recognized that certain discovery orders—particularly those involving the unsealing or compelled disclosure of sensitive information—are effectively unreviewable because the harm cannot be undone once disclosure occurs. *Id*.

This principle is especially compelling where, as here, the discovery order targets a non-party who lacks control over the litigation and has no right to appeal from a final judgment. *Vantage Health* emphasized that the harm to non-parties is not merely the introduction of adverse evidence at trial, but the forced disclosure of confidential information without full access to appellate review. *Id*. Mandamus and contempt are not

meaningful alternatives for non-parties, as this Court has acknowledged, given the narrow scope of mandamus and the burdens and risks associated with contempt. *Id.* at 449–50. Thus, where a discovery order compels disclosure of sensitive material from a non-party, immediate appeal is the only meaningful mechanism to prevent irreparable harm.

Unlike parties, non-parties cannot appeal from a final judgment in the underlying litigation. This distinction is critical. Non-parties face unique burdens and risks—such as professional consequences—if forced to violate a court order to obtain appellate review via contempt. *See Leonard v. Martin*, 38 F.4th 481, 492-93 (5th Cir. 2022) (Haynes, C. dissenting). Accordingly, the discovery order at issue here is effectively unreviewable and satisfies the collateral order doctrine.

**iii. Prosecutorial Work-Product Privilege as a Class Should be Permitted under the Collateral Order Doctrine**

Whether an order is immediately appealable is also determined by "the entire category to which a claim belongs" and on "the class of claims[ ] taken as a whole." *Bettencourt*, 93 F.4th at 319. (alteration in original) (quoting *Hughes*, 68 F.4th at 232; *Mohawk*, 558 U.S. at 107). This category-based analysis further supports jurisdiction. This Court, in *In re Grand Jury Proc.*, has held that orders compelling the production of documents with claimed work-product privilege are appealable under this standard. 43 F.3d 966, 969 (5th Cir. 1994) (reversing order and remanding for evidentiary hearing to assess government's showing of need to overcome work product).

Privileges protecting core governmental functions—such as legislative privilege—have likewise been deemed appropriate for collateral-order review. *Hughes*, 68 F.4th at 232. In *Hughes*, this Court not only allowed a non-party to appeal a dispositive discovery order under the collateral order doctrine, but agreed that the class it concerned – legislative privilege – protected the non-party from production. *Hughes*, 68 F.4th at 232.

Prosecutorial work product is closely analogous. Unlike attorney-client confidentiality, work product safeguards the integrity of the adversarial process and prosecutors' deliberations about charging and case strategy. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) ("The work product privilege is very different from the attorney-client privilege . . . The work product privilege . . . [exists] to promote the adversary system[.]"); *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000) (". . . the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality . . ."). The order here compels disclosure of core opinion work product from a governmental non-party; once revealed, it cannot be "made secret again." *Vantage Health*, 913 F.3d at 449. And as a non-party, HCDA lacks a path to relief via a post-judgment appeal in the underlying habeas case. *See Hughes*, 68 F.4th at 232–34.

To be sure, this Court has held that some non-party discovery orders—*e.g.*, denials of motions to quash based solely on undue burden—are not collateral orders, given available alternatives. *See Leonard*, 38 F.4th at 486–88 (finding no collateral jurisdiction and that mandamus or contempt are required). But *Leonard* itself distinguishes orders that implicate significant privileges and irreversible harms. Here, the order compels production of privileged prosecutorial work product across hundreds of cases; the disclosure will irreparably harm the integrity of HCDA's internal charging analyses and cannot be restored. That places this case squarely within the line of *Whole Woman's Health*, *Vantage Health*, *Lewis*, and *Hughes*, which recognize collateral-order jurisdiction for non-party privilege claims where disclosure would be effectively unreviewable and alternative avenues are inadequate. *See Whole Woman's Health*, 896 F.3d at 367–68; *Vantage Health*, 913 F.3d at 448–50; *Lewis*, 105 F.4th at 280–81; *Hughes*, 68 F.4th at 232–34.

The similarities in both posture and privilege between the non-parties in *Hughes* and the other cases discussed, and HCDA in the instant case, are numerous.[1] To the extent that this class of claims has not yet been deemed appealable under the collateral order doctrine, this Court may decide to do so now. This issue not only affects HCDA in this litigation and the many other federal suits it engages in, but affects the assertion of work product privilege by all non-parties in federal litigation in this Circuit. Like the documents at issue in *Vantage Health*, disclosing core opinion work product cannot be undone.

### C. Rule 72 Does Not Deprive This Court of Jurisdiction

Ayestas contends that Federal Rule of Civil Procedure 72(a) required HCDA to object to the magistrate judge's order, and because it did not, this Court lacks jurisdiction. *See* ECF No. 37 at 12–16. Rule 72 does not bar appellate review in this case because, by its plain terms, the rule applies only to non-dispositive pretrial matters involving parties to the litigation. HCDA is a non-party, and the order compelling production is dispositive of the only issue affecting HCDA. Therefore, Rule 72 is inapplicable.

---

[1] *See e.g.*, *Whole Woman's Health*, 896 F.3d at 371 ("The 'substantial burden' here is from compelling TCCB to reveal wholly internal communications concerning its approach to this issue . . . [and] from compelling TCCB to produce internal communications as the price for providing a witness in support of this controversial law, and subjecting TCCB to a threat of sanctions, ranging from monetary to striking the witness to contempt, if it fails to comply."); *Vantage Health*, 913 F.3d at 449 ("This rationale is even more persuasive where, as here, a third party like Humana was required to produce potentially sensitive documents."); *Hughes*, 68 F.4th at 233 ("The order's conclusiveness is apparent, among other reasons, because 'failure to comply with it may result in sanctions' . . . Requiring legislators to negotiate protective orders or to suffer contempt proceedings would diminish that protection . . . once the legislators produce documents, an appellate court cannot 'remedy the improper disclosure of privileged material in the same way [it can] remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence.' As non-parties, the legislators cannot move for a new trial. And even if they could, a new trial cannot retract privileged information that has been shared into the public domain.").

Rule 72(a) governs objections to a magistrate judge's ruling on "a pretrial matter not dispositive of a party's claim or defense." FED. R. CIV. P. 72(a). The rule repeatedly refers to "a party" and imposes obligations only on parties to the case. FED. R. CIV. P. 72(a) ("*A party may* serve and file objections to the order within 14 days after being served with a copy.") (emphasis added). Throughout the Federal Rules of Civil Procedure the existence of non-parties is referenced repeatedly. *See e.g.*, FED. R. CIV. P. 4, 5.2, 6, 14, 30, 32, 34, 37, 45, 53, 71. In each instance where the rule places a burden on a non-party, or a person affected by a ruling or order, it is explicitly stated.

Rule 72, however, contains no such language to require, or allow, objections by non-parties. *See Quantlab Grp., LP v. Dempster*, No. CV H-18-2171, 2019 WL 7037653, at *2 (S.D. Tex. Dec. 20, 2019) (overruling a non-party's objection to a magistrate's order on the basis that Rule 72(a) only provides for "a party" to file objections). Courts have repeatedly enforced a "plain language" reading of the rules.[2] And even if many courts allow such objections, that does not mean they are required. Ayestas cites no case holding otherwise; his authorities involve parties, not non-parties. Reading Rule 72 to impose obligations on non-parties would contradict that principle and create additional burdens on a non-party already pulled into litigation that is not their own.

Ayestas has also argued that Federal Rule of Civil Procedure 71 "makes clear" that Rule 72 is applicable to non-parties. Appellee's reliance on Rule 71 is misplaced. Rule 71 allows enforcement of orders against non-parties; it does not incorporate Rule 72's objection procedure or impose new obligations. It reinforces HCDA's argument because Rule 71 specifically references non-parties as a separate entity to parties in a way that Rule 72 does not. FED. R. CIV. P. 71. While Rule 71 allows for enforcement of an order against a non-party, it does not confer a duty on a non-party to comply with Rule 72.

Moreover, the claim at issue in this appeal is dispositive to the only claim affecting HCDA. Again, the plain language of Rule 72 only makes it applicable to matters "not dispositive of a party's claim or defense." Unlike routine discovery disputes between parties, this order ends HCDA's involvement in the case. HCDA cannot participate in any appeal from the final judgment on the merits, making Rule 72 inapplicable for the same reason the collateral order doctrine applies—the order is final as to HCDA.

Ayestas has argued that a reading of Rule 72 as inapplicable to non-parties will result in non-parties facing no deadlines for challenging adverse orders. This is not the

---

[2] *See e.g., Point Landing, Inc. v. Omni Cap. Int'l, Ltd.*, 795 F.2d 415, 427 (5th Cir. 1986), *aff'd sub nom. Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987); *Wernecke v. Tex. Dep't of Fam. & Protective Servs.*, No. CIV.A. C-07-238, 2008 WL 1776509, at *1 (S.D. Tex. Apr. 16, 2008); *Shaw v. Karnes Cnty., Tex.*, No. SA16CA203FBHJB, 2017 WL 6403060, at *1 (W.D. Tex. Nov. 17, 2017); *Adams v. Absolute Consulting, Inc.*, No. 620CV01099ADADTG, 2023 WL 3138043, at *5 (W.D. Tex. Apr. 27, 2023), *report and recommendation adopted*, No. 620CV01099ADADTG, 2023 WL 3874326 (W.D. Tex. June 7, 2023).

case. Non-parties face both deadlines for compliance and deadlines to file notice of appeal – as HCDA did in this case. HCDA timely filed notice of appeal of an order that was binding on HCDA and dispositive to its claims. HCDA asserted the privilege objection at issue in response to Ayestas's subpoena and motion to compel. *See* ROA.3089–114, 3133–50. The magistrate judge overruled those objections. Rule 72(a) was designed to prevent parties from holding back objections for use on appeal after final judgment—not to force non-parties to file perfunctory objections in proceedings where they will never be appellants or benefit from an appeal. Harris County should not be required to do so.

Because Rule 72 governs only non-dispositive matters involving parties, it does not restrict HCDA's right to appeal to this Court a dispositive order that conclusively determines its privilege claims. Reading Rule 72 to bar jurisdiction here would contradict its text, structure, and purpose.

## III. Conclusion

The district court exceeded its authority by reopening judgment and granting discovery in violation of the AEDPA's strict limits on successive habeas petitions. Its order compelling production of privileged prosecutorial work product cannot stand. And because this Court has jurisdiction under the collateral order doctrine to hear this appeal, it should reverse the discovery order and direct dismissal of the unauthorized amended petition, or in the alternative, find jurisdiction over this appeal is proper to reach a determination on the merits of HCDA's claim of privilege.

Respectfully submitted,

SEAN TEARE
District Attorney
Harris County, Texas

*/s/ Meagan T. Scott*
MEAGAN T. SCOTT
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 274-5816

Counsel for Appellant

cc: Counsel of Record via CM/ECF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been electronically served via the Court's ECF system on January 9, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this letter brief complies with the requirements set out in this Court's Order on December 23, 2025 and does not exceed 10 pages in length.

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**

**Counsel for Respondent - Appellant**
**Harris County District Attorney's Office**

Date: January 9, 2026