**PHILLIPS BLACK**
a nonprofit, public interest law practice

LEE KOVARSKY (SPECIAL COUNSEL)
727 E. Dean Keaton Street
JON 5.231 (Room Number)
Austin, TX 78705

*l.kovarsky@phillipsblack.org*
512.232.1504 (tel)
512.471.6988 (fax)
434.466.8257 (mobile and main)

Barred In:
Texas
New York

January 16, 2026

**Via Electronic Filing**
Lyle W. Cayce, Clerk of Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, LA 70130-3408

Re: *Ayestas v. Harris Cnty. District Atty's Office*, No. 25-70014

Dear Mr. Cayce:

Appellee Carlos Ayestas submits this reply in support of his letter brief and in response to the letter briefs of the "State Entities"—HCDA and TDCJ.[1] ECF Nos. 70, 62. As set forth in Ayestas's letter brief, and as elaborated below, this Court lacks jurisdiction to hear the appeal. But if it exercises jurisdiction, it should affirm that 28 U.S.C. § 2244(b) does not preclude jurisdiction in the district court.[2]

## I. THIS COURT LACKS JURISDICTION TO HEAR HCDA'S APPEAL.

First, HCDA's failure to object before the district court, as Fed. R. Civ. P. 72(a) requires, deprives this Court of jurisdiction. Second, the collateral-order doctrine does not apply to appeals from discovery orders adverse to claims of work-product privilege.

### A. Rule 72 Applies to HCDA.

The State Entities' only defense to HCDA's failure to object to the magistrate judge's Discovery Order is a strange and precedentially unsupported argument that Rule 72 permits non-parties to appeal directly to circuit courts. For all of the reasons described in Ayestas's letter brief, *see* ECF No. 68 at 2-6, they are wrong. This is

[1] Defined terms in Ayestas's letter brief, ECF No. 68, retain their definitions herein.
[2] HCDA refers to the discrimination in the Siegler Memorandum as an issue of "immigration status." ECF No. 70 at 2. That is false; the Siegler Memorandum captures a decision to seek death against Ayestas because he was "not a citizen." The facial issue is alienage discrimination.

the third round of Fifth Circuit briefing on this issue, and HCDA remains unable to identify a *single decision anywhere* permitting a non-party to skip the district court.

First, Fed. R. Civ. P. 71 states that the procedure for enforcing an order against a non-party is the same as against parties, because "nonparties have recourse to, and are subject to, process in the same measure as parties." 12 Fed. Prac. & Proc. Civ. § 3031 (3d ed.). The State Entities fail to contest this clear interpretation of Rule 71.[3] Second, even those jurisdictions that do not evaluate non-party compliance through the lens of Rule 71 do not exempt non-parties from Rule 72. They simply view "Rule 72(a) 'parties' [as] parties before the magistrate," bound by the same rules as "the parties to the litigation from which the nondispositive matter originated." *Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4 n.2 (1st Cir. 1985); *see also* ECF No. 68 at 4 n.2 (citing authority). Third, no court adopts the State Entities' absurd interpretation of Rule 72, because courts do not adopt absurd Federal Rule interpretations when there are reasonable alternatives. *See* ECF No. 68 at 5.

For their position, the State Entities cite to two unreported district court opinions that do not involve enforcement of orders against non-parties. *See* ECF No. 62 at 4 and ECF No. 70 at 9. In *Quantlab Grp., LP v. Dempster*, there was no "order grant[ing] relief for a nonparty or [to] be enforced against a nonparty," so Rule 71's rule of equal enforcement against non-parties never kicked in. In fact, the non-parties in that case were neither parties before the magistrate judge nor to the litigation from which the nondispositive matter originated. *See* 2019 WL 7037653, at *2 (S.D. Tex. Dec. 20, 2019). *Quantlab*'s refusal to permit those non-parties to participate in the discovery dispute was not a categorical rule against non-party objections. *See id. In re Ulmans* involves the same scenario: roving interlopers who sought to challenge a discovery order that neither granted relief to, nor could have been enforced against, the non-party. *See* 2023 WL 3412769, at *1 (S.D.N.Y. May 12, 2023).

Nothing about this case resembles *Quantlab* and *Ulmans.* First, HCDA *was* the adverse party in this discovery dispute and could have fully participated in the discovery proceedings before the magistrate judge. Second, and unlike the interlopers in those cases, HCDA falls within Rule 71 because Ayestas is seeking to enforce the Discovery Order against it. Third, neither *Quantlab* nor *Ulmans*

[3] Both HCDA and TDCJ argue that the reference to non-parties in Rule 71 suggests that Rule 72 does not apply against them. ECF No. 62 at 4 & n.2; ECF No. 70 at 9. But they are missing the *whole point of Rule 71*, which is not ambiguous. Rule 71 makes clear that the enforcement of orders against non-parties—like the Discovery Order—works the same way as against parties. Rule 71 "says nothing about objections to magistrate orders" specifically, ECF No. 62 at 4 n.2, because it supplies the rule for *any* order entered for or against a non-party.

addresses the salient issue here, which is whether a non-party seeking to appeal receives treatment that is *more favorable* than what a party gets. HCDA participated in the lower court's proceedings, was subject to a discovery order, and was required to object pursuant to Rule 72.[4] It did not, and there is no appellate jurisdiction here.

### B. <u>The Collateral-Order Doctrine Does Not Apply to HCDA's Appeal of the Discovery Order.</u>

The collateral-order doctrine does not apply to the Discovery Order for two reasons: (i) the Discovery Order is not dispositive; and (ii) the Discovery Order is not "effectively unreviewable after final judgment."

#### *1. The Discovery Order is not Dispositive.*

HCDA argues that the Discovery Order is dispositive, ECF 70 at 5, but this Circuit's clear precedent is that discovery orders are not. *See, e.g.*, *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. 1981) ("[D]iscovery issues are by definition pretrial matters," and a magistrate judge has "the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders."); *Castillo v. Wal- Mart Stores Tex., LLC*, 2024 WL 4531080, at *1 (W.D. Tex. Oct. 8, 2024) ("Motions on discovery matters are generally non-dispositive.") (citations omitted); This is true even when discovery is sought from a non-party. *See Leonard v. Martin*, 38 F.4th 481, 485 (5th Cir. 2022) (analyzing civil discovery order against non-party as a nondispositive order under Rule 72(a)); *Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F. Supp. 2d 675, 682 (N.D. Tex. 2013) (applying Rule 72(a) to review of discovery order in favor of third-party); *Westinghouse Elec. Corp. v. Carolina Power & Light Co.*, 1992 WL 300796, at *2 (E.D. La. Sept. 22, 1992) (holding that magistrate judge's order was non-dispositive because it "concerns a pretrial discovery matter, i.e., the production of documents from a non-party"); *see also Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1328 (11th Cir. 2020) (holding that motion to quash a third-party subpoena was non-dispositive).

---

[4] TDCJ's reliance on *Campbell Harrison v. Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*, 744 F. App'x 192, 196 & n.7 (5th Cir. 2018), and *United States v. Young*, 585 F.3d 199, 202 (5th Cir. 2009), to argue that HCDA needed to be "warned" about the consequences of failing to object is also misplaced. Those cases dealt with reports and recommendations from magistrate judges, to which parties "*may* serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b) (emphasis added). That is distinct from Rule 72(a) where a "party may not assign as error a defect in the order not timely objected to." The Discovery Order was not a report and recommendation, *see* ROA.2314-30, so Rule 72(a), not Rule 72(b), governs. Ayestas addresses below HCDA's argument that the Discovery Order was dispositive.

### *2. The Discovery Order is not "Effectively Unreviewable After Final Judgment."*

The State Entities are wrong that their non-party status renders the Discovery Order "effectively unreviewable" after final judgment. *See* ECF 62 at 2-3; ECF 70 at 6-7. That the compelled materials are "sensitive" or "confidential" does not change that analysis. *See* ECF 62 at 2-3; ECF 70 at 6-7.

*First*, HCDA's non-party status in the underlying litigation has no bearing on whether it has a mechanism to challenge the Discovery Order. Indeed, non-party status does not transform an otherwise non-appealable discovery order into an appealable one: "[T]his court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order." *Leonard*, 38 F.4th at 487; *see also* ECF No. 68 at 8-9. Instead, non-parties obtain prejudgment review of a discovery order by defying it, being held in contempt, and then appealing the contempt order. *See* ECF No. 68 at 7. HCDA is not exempt from this rule, which "has long been followed in this circuit." *See id.* (quoting *United States v. Fluitt*, 99 F.4th 753, 760 (5th Cir. 2024)).

The State Entities' reliance on *Lewis v. Crochet*, 105 F.4th 272 (5th Cir. 2024), is misplaced. *Lewis*'s narrow holding, which applied the crime-fraud exception to a third-party claim of attorney-client privilege, is inconsistent with the natural reading of *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009), *Leonard*, and other cases that all make clear that a discovery order is not reviewable on appeal. *See* ECF No. 68 at 8-10 (listing cases). The Discovery Order does not implicate the crime-fraud exception or otherwise merit treatment that is inconsistent with the weight of the case law, which dictates that "orders adverse to the attorney-client privilege" do not "qualify for immediate appeal under the collateral-order doctrine." *Mohawk*, 558 U.S. at 103; *see also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981) (comparing an order refusing to disqualify counsel to orders requiring discovery over a work-product objection and holding that permitting appeals on either basis would needlessly waste judicial resource). This Court's precedent does not (and cannot) undermine *Mohawk* and *Risjord*.

Against the weight of the case law, the State Entities make a last-ditch effort to support their argument by asserting that "prosecutorial work-product privilege"—a term wholly absent from any of their cited authorities—is analogous to legislative privilege. They are wrong, their cited authorities do not support their view, and expanding prejudgment review to reach claims of garden-variety privilege would grind ordinary civil litigation to a halt.

The rarely-invoked legislative privilege has a constitutional dimension—i.e., protecting the separation of powers. *See e.g.*, *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 233 (5th Cir. 2023) ("*Hughes*") (the purpose of legislative privilege is "to foster the public good by protecting lawmakers from deterrents to the uninhibited discharge of their legislative duty").[5] By contrast, "prosecutorial work-product privilege" is a *qualified* protection that can be overcome by showing substantial need. This Circuit's precedent expressly distinguishes between privileges based on "constitutional issues" and those within "the general familiarity of courts with standards governing the dispute." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 n.2 (5th Cir. 2019) (internal citations and quotation marks omitted). District courts' "general familiarity" with the applicability of the work-product and attorney-client privileges is sufficient to preclude prejudgment review. *Leonard*, 38 F.4th at 488 (citing *Mohawk*, 558 U.S. at 110). For this reason, the Fifth Circuit authority about legislative privilege misses the mark. *See Hughes*, 68 F.4th 228 (involving order adverse to legislative privilege claim); *La Union Del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024) ("*Bettencourt*") (same).

The State Entities' remaining Fifth Circuit authorities involve attempts to pierce First Amendment-based privilege or to unseal information, which differ materially from the privilege claimed here. *Whole Women's Health v. Smith* involved a third-party appeal of an order adverse to a religious institution's claim of First-Amendment associational privilege. *See* 896 F.3d 362, 368 (5th Cir. 2018). *Vantage Health* decided a third-party appeal from an order to unseal confidential information irrelevant to the litigation—and this Circuit expressly distinguished the appealability of the unsealing issue from the appealability of an order that merely compelled "disclos[ure of] potentially privileged material." 913 F.3d at 449. The Discovery Order in the instant case, however, involves no First Amendment-based privilege (unlike *Hughes*, *Bettencourt*, and *Whole Women's Health*), and involves no attempt to unseal information (as in *Vantage Health*).

*Second*, the State Entities argue that, because the Discovery Order compels production of voluminous "sensitive" and "confidential" material, the harm from production is irreparable. *See* ECF No. 62 at 2-3; ECF No. 70 at 6-7. Again, the guarded status of the material does not justify a novel exemption from the defy-contempt-appeal rule. The State Entities are conflating compelled disclosure with

[5] TDCJ quotes *Hughes*, but it replaces the word "legislators" with "prosecutors," implying that *Hughes* speaks to "prosecutorial work product." *See* ECF 62 at 3. But the alteration is misleading and the un-altered text provides little support for TDCJ's strained analogy.

public access. But compelled disclosure does not waive work-product privilege, and protective orders can preserve necessary confidentiality. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) (rule for attorney-client privilege); *Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 242 F. Supp. 3d 576, 578 (S.D. Tex. 2017) (applying rule to work-product privilege). And to the extent HCDA is concerned about the volume of materials it is compelled to produce (*see* ECF No. 70 at 9 (referencing compelled production of materials "across hundreds of cases")), it could have objected on burden. But HCDA long ago abandoned that argument,[6] instead taking a categorical position against any discovery whatsoever.

This Court cannot reach any issue that HCDA has appealed or that TDCJ has raised in its amicus briefing. The State Entities failed to prosecute their appeal properly and are now concocting a wild, heretofore undiscovered privilege for non-parties to skip district courts. And setting aside Rule 72(a), the collateral-order doctrine does not permit prejudgment appeals of discovery orders.

## II. THE SUCCESSIVE PETITION BAR DOES NOT PRECLUDE THE DISTRICT COURT'S JURISDICTION.

There are two issues as to whether 28 U.S.C. § 2244(b) precludes the district court's jurisdiction: (1) whether the district court should have treated the Rule 60(b) motion filed in 2021 as a successive petition, and (2) whether it should have treated the amendment attempted in 2015 that way. The authority is squarely against the State Entities on both issues. On the first (Rule 60(b)) issue, *Uranga v. Davis* holds that a post-judgment attack on a prior attempt to amend does not raise a "new" claim. *See* 893 F.3d 282, 284 (5th Cir. 2018). On the second (Rule 59) issue, *Rivers v. Guerrero* holds that attempts to amend before a final judgment are not successive petitions and, for the purposes of that analysis, there is not a final judgment until the district court disposes of a valid Rule 59 motion. *See* 605 U.S. 443, 453-54 (2025).

The State Entities' briefs necessitate a short rejoinder about the scope of this appeal. The State Entities are attempting to litigate issues that do not go to the jurisdictional questions for which this Court ordered supplemental briefing. For example, questions about diligence are not relevant to whether the 2015 amendment should be treated as a successive petition under § 2244(b); they go to whether Ayestas satisfies standards internal to Rule 59. Similarly, questions about whether

---

[6] *See* ECF No. 68 at 7 n.4. Notably, HCDA has done nothing to support its interest in protecting the compelled materials. It failed even to seek a protective order, despite Ayestas having remained willing to negotiate one throughout the discovery dispute.

Ayestas has demonstrated extraordinary circumstances sufficient to reopen the judgment in 2021 are not relevant to whether his petition qualifies as a successive petition; they go to whether he satisfies standards internal to Rule 60(b). Ayestas does not join issue on those non-jurisdictional questions because they are neither the subject of the appeal nor encompassed by the supplemental briefing order.

### A. A Rule 60(b) Motion Attacking a Prior Attempt to Amend Is Not a Successive Petition.

The State Entities first argue that, irrespective of how the amendment attempted in 2015 is denominated, Ayestas's 2021 motion was a successive petition because Ayestas was trying to litigate "new" claims. *See* ECF No. 62 at 5; ECF No. 70 at 3. *Uranga v. Davis*, a case that the State Entities ignore, squarely forecloses this argument. *See* 893 F.3d 282, 284 (5th Cir. 2018). *Uranga* explicitly held that, for the purposes of identifying which post-judgment motions are successive petitions, a claim like the one at issue here it is not "new" because the claimant tried to raise it when attempting amendment. *See id.* The order denying amendment "precluded a merits determination" of the claim at the moment Ayestas raised it in 2015. *See id.* The State Entities cannot answer *Uranga*, so they ignore it.

On this Rule 60(b) issue, the State Entities offer little.[7] HCDA's primary arguments are about diligence and extraordinary circumstances, which do not pertain to jurisdiction and are not even part of the appeal. *See* ECF No. 70 at 3-4; *see supra*. TDCJ also urges the Court to rule against Ayestas on Rule 60(b)'s extraordinary circumstances standard. ECF No. 62 at 9-10. Ayestas will not address these non-jurisdictional issues unless the Court indicates that they are part of this proceeding. On the issue of jurisdiction, the State Entities provide little other than general observations that Rule 60(b) motions cannot add new claims and conclusory statements that Ayestas was trying to do that. *See* ECF No. 62 at 7, 9; ECF No. 70 at 3. But this rhetoric clashes with binding precedent: The 2021 motion did not seek to add a new claim because it attacked a 2015 "ruling (the denial of his motion for leave to amend) which precluded a merits determination." *See Uranga*, 893 F.3d at 284.[8]

---

[7] Contrary to TDCJ's suggestion, Ayestas does not contest this Court's power to consider jurisdiction *sua sponte*. *Cf.* ECF No. 62 at 5 n.3. Ayestas respectfully asked for notice and an opportunity to respond if the Court were to consider the issue. But issues regarding diligence and extraordinary circumstances, which do not go to jurisdiction, remain outside the scope of the supplemental briefing order and appeal.

[8] The cases TDCJ quotes on page 9 of its brief do not address the amendment scenario at issue here, which *Uranga* resolves. *See In re Edwards*, 865 F.3d 197, 204 (5th Cir. 2017) (giving

**B. <u>The Attempt to Amend in 2015 Was Not a Successive Petition.</u>**

The State Entities devote more energy to the argument that the amendment attempted in 2015 was a successive petition, but to no greater avail. *Rivers* established two things that make this issue straightforward. First, "whether a filing qualifies as a second or successive application generally turns on the existence of a final judgment with respect to the first petition." 605 U.S. at 453. Second, there is no final judgment during the pendency of a Rule 59(e) motion because that motion "suspends finality of the original judgment," "is part of the producing the final judgment," and "merges into the final judgment of the initial habeas filing." *Id.* at 454 (internal quotation marks and citations to *Banister* omitted). *Banister* puts it a bit more succinctly: If there is a timely "Rule 59(e) motion, there is no longer a final judgment." 590 U.S. at 508.

The clarity of *Rivers* and *Banister* makes the analysis simple. On November 18, 2014, the *provisional judgment* appeared on the docket, but there was no *final judgment* in the case until April 1, 2015 (ROA.1241), and Ayestas could not appeal until that time. Ayestas's Rule 59(e) motion (ROA.985) was still pending when he attempted amendment on January 9, 2015 (ROA.1148). And it was still pending when he filed his "supplemental" motion specifying the different procedures the district court could use to permit the amendment on January 14, 2015 (ROA.1160-61). Those procedures included (1) treating the Siegler Memorandum claims as an additional ground to grant Rule 59(e) relief or (2) granting Rule 59(d) relief on its own initiative. *See id.* There was no final judgment when Ayestas attempted amendment, so the attempt was not a successive petition.

TDCJ's arguments about the 2015 amendment attempt to confuse the Court about what it means for something to happen "after judgment"—specifically, by confusing the *provisional* judgment (entered on November 18, 2014) with the *final* judgment (entered on April 1, 2015).[9] But both *Rivers* and *Banister* make abundantly

successive-petition treatment for new claim of attorney abandonment not raised in initial proceeding); *Clark v. Davis*, 850 F.3d 770, 784 (5th Cir. 2017) (refusing to decide successive-petition question because new claim of attorney conflict not raised initial proceeding was untimely under the limitations provision); *Runnels v. Davis*, 746 F. App'x 308, 316 (5th Cir. 2018) (giving successive-petition treatment to claimant's attempt to introduce newly discovered evidence on claim previously subject to merits disposition).

[9] For example, TDCJ quotes *Rivers* for the proposition that successiveness "turns on the existence of a final judgment" but does not acknowledge that "final judgment" refers to disposition of the Rule 59(e) motion. *See* ECF No. 62 at 6 (quoting *Rivers*, 605 U.S. at 446-47, 453).

clear that successive-petition status is pegged to the *final* judgment that materialized on April 1, 2015. And because there was no final judgment until that date, the Court should reject the rest of the arguments that the State Entities make.

Start with the repeated suggestion that the attempt to amend after the provisional judgment was a successive petition because the amendment involved a new claim. *See*, *e.g.*, ECF No. 70 at 3. That is wrong under *Banister* and *Rivers* because there was no final judgment until April 1, 2015, and nothing raised before then could have been a successive petition. *See Rivers*, 605 U.S. at 453-54; *Banister*, 590 U.S. at 508. Indeed, "[*Banister*] held that Rule 59(e) motions should not be recategorized as successive applications *regardless of their contents*." *Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021) (emphasis added). For the purposes of making the successive-petition determination, there is no distinction between attempts to raise new claims in a Rule 59 posture and attempts to litigate old ones.

TDCJ's next argument is that the attempt to amend while the Rule 59 motion was pending should be treated as a successive petition because, five days after seeking leave to amend on January 9, 2015, Ayestas also filed a "supplemental" motion specifying the ways that the Court could permit amendment in the Rule 59 posture. ECF No. 62 at 6-7. Again, this position is incompatible with *Rivers* and *Banister*, which hold that successiveness is tied to entry of final judgment. *See Rivers*, 605 U.S. at 453-54; *Banister*, 590 U.S. at 508. There was no final judgment until April 1, 2015, almost three months after attempted amendment and two-and-a-half months after the supplemental motion explaining how the district court could enlarge its Rule 59 consideration.

TDCJ nonetheless insists that, because amendment was attempted more than 28 days after the *provisional* judgment, the fact that there was not yet a *final* judgment does not matter—the attempt was still a successive petition. *See* ECF No. 62 at 6-7. In so doing, TDCJ crops language from *Banister* discussing the typical timing of Rule 59(e) motions, which must be within 28 days of the provisional judgment. *See id.* But the quoted language is simply a description of typical Rule 59(e) process, and it was used for purposes of explaining why the Court was imposing a different successiveness rule for motions made before *final* judgment and motions made after it. *See* 590 U.S. at 519 (explaining why "the two Rules … diverge"). *Banister* did not hold that enlarged Rule 59 consideration triggered the successive-petition statute. Recall *Banister*'s central holding: "[I]f he timely submits a Rule 59(e) motion, *there is no longer a final judgment to appeal from*." 590 U.S. at 508 (emphasis added). Once again, district courts can refuse to enlarge Rule 59

consideration under standards internal to the Rule itself; but Rule 59 enlargement is not successiveness.

The cases that TDCJ cites for nominal support do not deal with an amendment made while a Rule 59 motion is pending. *See* ECF No. 62 at 7-8 (citing BLOM *Bank SAL v. Honickman*, 605 U.S. 204, 213 (2025); *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005); *Demahy v. Schwarz Pharma, Inc*., 702 F.3d 177, 182 n.2 (5th Cir. 2012)). TDCJ also cites *Charles v. Daley*, which did not involve an attempt to enlarge a pending Rule 59 motion; it involved an attempt to make a subsequent Rule 59 motion after entry of final judgment on the initial Rule 59 motion. 799 F.2d 343, 344-45 (7th Cir. 1986). And *Charles* underscored that "[a] judge may enlarge the issues to be considered in acting on a timely motion under Rule 59." *Id.* at 347 (citing 11 Wright & Miller, Fed. Prac. & Proc. § 2817 at 192 n.34 (1969)).

The only case TDCJ cites where a party even tried to enlarge Rule 59 consideration is *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006). ECF No. 62 at 8. In *Feldberg*, a party filed a "placeholder" Rule 59(e) motion within the 28-day window and then filed a more robust motion after the 28-day window had passed. *See* 463 F.3d at 197. The court refused to treat the subsequent motion as a supplement to the placeholder motion *because the placeholder motion did not itself qualify as a valid Rule 59(e) motion*—not because there existed some rule against enlarging a valid Rule 59 motion. *See id.* And here, everyone concedes that there was a valid Rule 59 motion pending when Ayestas sought amendment.

* * *

This Court should resist the State Entities' attempts to confuse the issues. For their arguments, both TDCJ and HCDA rely heavily on inapplicable precedent and out-of-context quotation. *Uranga* precludes the argument that the Rule 60(b) motion sought to add a new claim. *Rivers* and *Banister* preclude the argument that amendment attempted before final judgment is a successive petition. And questions about diligence and extraordinary circumstances are not part of the appeal.

Respectfully submitted,

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER-APPELLEE

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2026, an electronic copy of the foregoing document was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit and served upon all registered counsel using the appellate CM/ECF system.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky

**CERTIFICATE OF COMPLIANCE**

This brief is no more than 10 pages in length and otherwise complies with the requirements set out in this Court's Orders of December 23, 2025 and January 12, 2026. ECF Nos. 42, 73. In particular, this supplemental letter brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 point font in Times New Roman for above-the-line text and 12 point font in Times New Roman for footnotes.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky