# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 9, 2026
Lyle W. Cayce
Clerk

No. 25-70014

Carlos Manuel Ayestas, *also known as* Dennis Zelaya Corea,

*Petitioner—Appellee*,

*versus*

Harris County District Attorney's Office,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2999

Before Smith, Southwick, and Ho, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Carlos Ayestas was convicted of capital murder and sentenced to death. He filed a federal habeas corpus petition raising claims of ineffective assistance of counsel ("IAC"). After his petition was denied, Ayestas filed a Federal Rule of Civil Procedure 59(e) motion to alter the judgment. Shortly thereafter, his habeas counsel located, in the case file provided by the prosecution, a memorandum indicating that the state had sought the death penalty on account of Ayestas's non-citizen status.

Ayestas filed a motion to amend his habeas petition, seeking to add

Eighth and Fourteenth Amendment selective-prosecution claims. The district court dismissed the claims in the motion to amend, holding that they were jurisdictionally barred as a "second or successive habeas corpus application" under 28 U.S.C. § 2244(b).

Six years later, Ayestas filed a Federal Rule of Civil Procedure 60(b) motion to reopen the judgment, citing the intervening decision in *Banister v. Davis*, 590 U.S. 504 (2020), which held that Rule 59(e) motions are not "successive habeas corpus applications" under § 2244(b). The district court granted the motion.

Ayestas filed an amended habeas petition, and discovery commenced. Over assertions of work-product privilege from the Harris County District Attorney's Office ("HCDA"), Ayestas sought, and the district court granted, discovery of charging memoranda for comparator capital murder defendants within a thirty-year span and the complete file related to Ayestas. HCDA appeals the discovery order.

Because we have jurisdiction over the appeal under the collateral-order doctrine and the district court lacked jurisdiction over Ayestas's selective-prosecution claims, we vacate the discovery order and dismiss the selective-prosecution claims.

## I.

Santiaga Paneque was found dead in Houston in 1995. Law enforcement identified Ayestas and two others as persons of interest. The Harris County District Attorney was John B. Holmes, Jr., and Kelly Siegler was his Court Chief. Before Ayestas was arrested, Siegler wrote, and Holmes signed, an internal Capital Murder Summary (the "Siegler Memorandum"), which recommended that HCDA seek death against Ayestas. The Siegler Memorandum justified that recommendation with two facts: Paneque was elderly, and "the Defendant is not a citizen." HCDA ultimately secured a conviction

and death sentence. The Siegler Memorandum was not made available to Ayestas during his state trial because it was treated as confidential work product.

Ayestas filed a federal habeas petition challenging his conviction and sentence. Ayestas asserted a constitutional IAC claim. The district court denied his petition on November 18, 2014.[1] Ayestas filed a Rule 59(e) motion to alter the judgment on December 16, 2014, once again asserting IAC.

On December 22, 2014, while the Rule 59(e) motion was pending, Ayestas's counsel discovered the Siegler Memorandum, which HCDA inadvertently had left in the case file provided to Ayestas's habeas counsel. On January 9, 2015, Ayestas filed a motion for leave to amend his habeas petition ("2015 Motion to Amend"), arguing that HCDA had sought the death penalty against Ayestas on account of his non-citizen status, violating the Eighth and Fourteenth Amendments.

The district court denied the 2015 Motion to Amend. The court held that the motion constituted a "second or successive habeas corpus application" under 28 U.S.C. § 2244(b)(2), which generally bars such applications. Further, the court held that Ayestas's claims based on the Siegler Memorandum did not meet the exceptions listed in § 2244(b)(2)(B) because Ayestas did not "allege that the [Siegler Memorandum] could not have been discovered previously though the exercise of due diligence." Thus, the court held that the claims were jurisdictionally barred. The litigation seemingly came to an end when the Fifth Circuit denied relief on Ayestas's IAC claim and the Supreme Court denied certiorari. *Ayestas v. Davis*, 933 F.3d 384 (5th Cir.

---

[1] The district court had denied his petition in 2011, before the Supreme Court granted certiorari and remanded in light of relevant IAC cases decided in 2012 and 2013. *See Ayestas v. Thaler*, 569 U.S. 1015 (2013).

2019), *cert. denied*, 589 U.S. 1203 (2020).

In 2020, the Supreme Court decided *Banister*. The Court held that a Rule 59(e) motion to alter or amend a habeas court's judgment is not a second or successive habeas petition under § 2244(b)(2). Ayestas filed a Rule 60(b) motion for relief from judgment, citing *Banister*.

The district court granted Ayestas's Rule 60(b) motion. First, it held that Ayestas's Rule 60(b) attack on the 2015 order refusing amendment was not a successive petition under § 2244(b)(2) because the 2015 order was a "previous ruling which precluded a merits determination." Second, it held that, under *Banister*, the 2015 Motion to Amend was not a successive habeas application because it was made in the posture of Rule 59(e).

Ayestas filed an amended habeas petition, and discovery commenced. Ayestas served a subpoena on HCDA seeking, in part, case files for relevant Hispanic and non-citizen defendants, along with all charging memoranda for HCDA defendants charged with murder or capital murder from 1979 to 2008. HCDA asserted work-product and deliberative-process privileges. Ayestas filed a motion to compel.

The magistrate judge granted the motion ordering HCDA to produce "(i) charging memoranda created from 1979 to 2008 (the 'Covered Period') for comparator defendants charged with capital murder who are sufficiently likely to be non-white, foreign nationals, or non-citizens; (ii) charging memoranda from the Covered Period for comparator defendants charged with capital murder of victims with certain demographic attributes; (iii) full access to the prosecutorial file from the Ayestas prosecution, including any material that the HCDA treats as privileged and confidential." HCDA did not object to the order in the district court. HCDA appeals.

II.

"An appellate federal court must satisfy itself not only of its own jurisdiction, but also of that of the district court in a cause under review. This court reviews subject-matter jurisdiction de novo as a question of law." *Cadence Bank v. Johnson*, 160 F.4th 197, 201 (5th Cir. 2025) (citation modified).

III.

This appeal presents five issues: (1) whether we have jurisdiction over the appeal, (2) whether HCDA has standing to bring this appeal, (3) whether the district court had jurisdiction, (4) whether *Armstrong* precludes discovery, and (5) whether the materials listed in the discovery order are protected under the work-product doctrine.

A.

1.

"Our appellate jurisdiction generally extends only to 'final decisions of the district courts.'" *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 232 (5th Cir. 2023) (quoting *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.,* 913 F.3d 443, 448 (5th Cir. 2019)). But we also have jurisdiction "over a 'narrow class of decisions' that are 'immediately appealable as collateral orders even if no final judgment has been rendered.'" *Lewis v. Crochet,* 105 F.4th 272, 279 (5th Cir. 2024) (quoting *Vantage,* 913 F.3d at 448). Such interlocutory orders are "immediately appealable under this rule only if they '(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [are] effectively unreviewable on appeal.'" *La Union,* 68 F.4th at 232 (quoting *Vantage,* 913 F.3d at 448). As the first prong is easily met,[2] and Ayestas does not

[2] The disputed issue—the discovery order against HCDA—was "conclusively

dispute that the order meets the second prong, we focus on the third prong of the test.

In *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), the Court held that parties may not immediately appeal discovery orders adverse to attorney-client privilege under the collateral-order doctrine. The Court emphasized that such orders are not "effectively unreviewable" on appeal from a final judgment because alternative mechanisms—such as post-judgment appeals or contempt proceedings—adequately protect the privilege. *Id.* at 110–12.

But "*Mohawk* does not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect." *Whole Woman's Health*, 896 F.3d at 368. Indeed, evidentiary privileges protect nonparties differently from parties:

> The harm to third parties is not the admission of adverse evidence at trial (an error potentially correctable for a party on retrial), but the disclosure of their confidential and sensitive information without full access to appellate review. Third parties have no power to control the course of litigation nor any influence over appeal from a final judgment. A third party may of course petition for a "writ of mandamus" or may "defy a disclosure order and incur court-imposed sanctions." Mandamus review, however, is very narrow, and incurring sanctions is risky.

*Vantage,* 913 F.3d at 449 (quoting *Mohawk*, 558 U.S. at 109–12) (citation modified). The "decisive consideration is whether delaying review until the entry of final judgment would imperil a substantial public interest or some

---

determined." We have routinely held that disclosure orders adverse to nonparties are conclusive determinations under the collateral-order doctrine. *See Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018), *as revised* (July 17, 2018); *Vantage*, 913 F.3d at 448.

particular value of a high order." *Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (citation modified).

The prosecutorial work-product privilege asserted by HCDA implicates a substantial public interest. The work-product doctrine "reflects the strong 'public policy underlying the orderly prosecution and defense of legal claims.'" *United States v. Nobles*, 422 U.S. 225, 236–37 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)). The disclosure of prosecutorial work product "delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). Those substantial public interests serve as the bases for *Armstrong*'s high bar for discovery. *Id*. at 468 ("The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim.").

The discovery order against HCDA is thus an appealable collateral order.

2.

Ayestas asserts that even if the discovery order is within the collateral-order doctrine, we do not have jurisdiction to review it because HCDA failed to object in the district court in compliance with Rule 72(a), which states:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to.

FED. R. CIV. P. 72(a).

Rule 72(a) does not speak to the obligations of nonparties. This stands in stark contrast to other rules that explicitly reference the rights and obligations of "nonparties" or "third parties." *See* FED. R. CIV. P. 4, 5.2, 14, 32, 34, 37, 53, 71. The plain wording of the disparate exclusion of "nonparty" is that Rule 72(a) does not cover nonparties. *See Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").[3] Ayestas asserts that HCDA's reading of Rule 72(a) to exclude nonparties is "absurd" since a nonparty would have no time limit for seeking review. But notices of appeal must be filed within 30 days of the order, limiting the time to seek relief. *See* FED. R. APP. P. 4(a)(1)(A).

The dissent posits that Rule 4(a)(1)(A) does not limit nonparty appeals because the rule references only "parties." But when faced with a rule with no textual deadline, we do not declare that there is no deadline. Rather, we establish a deadline by making a "judicial determination within the general framework of familiar legal principles." *Runyon v. McCrary*, 427 U.S. 160, 180 (1976).

We therefore have jurisdiction over this appeal.[4]

---

[3] Ayestas himself recognizes this distinction. In the merits section of his brief, he asserts that HCDA cannot claim the privilege protections of Rule 26(b)(3) because it protects only a "party."

[4] HCDA has standing to bring this appeal. *See Castillo v. Cameron Cnty.*, 238 F.3d 339, 349 (5th Cir. 2001) (providing the three factors for nonparty standing to appeal). First, HCDA participated in the proceedings in the district court, filing a response to Ayestas's motion to compel discovery. Second, "equity favors this appeal because [HCDA has] no other mechanism to vindicate [its] potentially meritorious claims of [work-product] privilege." *La Union del Pueblo Entero v. Abbott*, 93 F.4th 310, 316 (5th Cir. 2024). Third, HCDA has a personal stake in the outcome of this appeal: whether it will be required to

B.

Ayestas asserts that the district court had jurisdiction over his selective-prosecution claims from either the 2015 Motion to Amend or the 2021 Rule 61(b) Motion. Section 2244(b)(2) states:

> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C § 2244(b)(2). Where a petition does not meet the demands of § 2244(b)(2), we are "required to dismiss for lack of jurisdiction." *Blackman v. Davis*, 909 F.3d 772, 780 (5th Cir. 2018), *as revised* (Dec. 26, 2018).

1.

Ayestas asserts that the district court had jurisdiction over the claims raised in the 2015 Motion to Amend because *Banister* held that Rule 59(e) motions are not successive habeas corpus applications under § 2244(b).

Though *Banister* recognized that Rule 59(e) motions are not succes-

---

turn over decades' worth of privileged materials.

sive petitions under § 2244(b), it narrowly defined the scope of what constitutes a Rule 59(e) motion. "To begin with, Rule 59(e) gives a prisoner only a narrow window to ask for relief—28 days, with no extensions. Next, a prisoner may invoke the rule only to request reconsideration of matters properly encompassed in the challenged judgment. And 'reconsideration' means just that: Courts will not entertain arguments that could have been but were not raised before the just-issued decision. A Rule 59(e) motion is therefore backward-looking; and because that is so, it maintains a prisoner's incentives to consolidate all of his claims in his initial application." *Banister*, 590 U.S. at 516 (citation modified).

The claims raised in the 2015 Motion to Amend "could have been but were not raised before the just-issued decision." The claims in the 2015 Motion to Amend were Eighth and Fourteenth Amendment claims based on the Siegler Memorandum, unlike the IAC claims unrelated to the Siegler Memorandum. Though Ayestas's counsel did not realize he had possession of the Siegler Memorandum until December 22, 2014, he did not exercise reasonable diligence in searching for evidence such as the Siegler Memorandum.[5] Nothing "suggests [Ayestas's counsel] sought to examine the prosecution's file prior to the December 22 search that uncovered the memorandum." *Ayestas v. Stephens,* 817 F.3d 888, 900 (5th Cir. 2016), *vacated on other grounds sub nom. Ayestas v. Davis,* 584 U.S. 28 (2018).

[5] Ayestas asserts that TDCJ has admitted that the Siegler Memorandum was not previously available to Ayestas's counsel. Ayestas quotes a TDCJ brief opposing certiorari stating: "The fact that [the Siegler Memorandum] is privileged explains why it was not voluntarily turned over to [Ayestas's] counsel during the criminal trial." But TDCJ's "admission" only explains why prosecutors did not turn over the Siegler Memorandum *voluntarily during the state court trial*. Ayestas does not point to any evidence showing that the Siegler Memorandum was not made available to him, whether voluntarily or not, earlier in the habeas proceedings.

Ayestas asserts that even if his 2015 Motion to Amend is not a Rule 59(e) motion, it is not successive because his then-pending Rule 59(e) motion suspended finality, thus making any later filing not successive. A

> Rule 59(e) motion merely "suspends finality" of the original judgment so that the district court can "fix any mistakes and thereby perfect its judgment before a possible appeal." A Rule 59(e) motion is "a limited continuation of the original proceeding—indeed, a part of producing the final judgment granting or denying habeas relief." As a result, disposition on a Rule 59(e) motion 'merges into the final judgment' of the initial habeas filing.

*Rivers v. Guerrero*, 605 U.S. 443, 454 (2025) (quoting *Banister*, 590 U.S. at 516, 521) (citation modified). It is because Rule 59(e) motions merge into the final judgment that "they are not *themselves* properly considered to be second or successive filings under AEDPA." *Id.* (citing *Banister*, 590 U.S. at 517) (emphasis added).

Though the 2015 Motion to Amend was filed while a Rule 59(e) motion was pending, it is still a successive filing. First, the 2015 Motion to Amend did not ask the district court to "fix any mistakes" in the original judgment. It involved claims wholly separate from the IAC claims decided in the original judgment. Second, *Banister* and *Rivers* explain why Rule 59(e) motions *themselves* are not successive. Those cases do not require that anything filed during a pending Rule 59(e) motion be deemed non-successive. To hold otherwise would render the limits of Rule 59(e) motions meaningless. A petitioner could file a barren Rule 59(e) motion and then immediately flood the district court with extra claims not properly within the scope of Rule 59(e).

Because Ayestas's claims in the 2015 Motion to Amend "could have been but were not raised before the just-issued decision," the 2015 Motion to Amend does not qualify as a Rule 59(e) Motion and therefore falls outside

the scope of *Banister*. The 2015 Motion to Amend is thus a successive application under § 2244(b)(2). Because the 2015 Motion to Amend did not rely on a "new rule of constitutional law" and could "have been discovered previously through the exercise of due diligence," it is barred under § 2244(b)(2).

2.

Ayestas asserts that the district court had jurisdiction over the claims raised in the 2021 Rule 60(b) Motion because, instead of adding a new claim, he sought to attack a procedural holding that precluded merits consideration. "Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). But "[u]sing Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." *Id.* at 531.

Ayestas attempts what AEDPA prohibits. He filed a Rule 60(b) motion, citing the intervening change in law from *Banister*, attempting to add claims not included in his original habeas petition: Eighth and Fourteenth Amendment claims based on the Siegler Memorandum.[6] And "[a] motion that seeks to add a new ground for relief . . . will of course qualify" as a "claim" under § 2244(b)(2). *Gonzalez*, 545 U.S. at 532.

Because Ayestas's Rule 60(b) motion falls within the ambit of § 2244(b)(2), it must satisfy one of the two exceptions to the general bar for

---

[6] These claims were not properly presented in prior habeas petitions. They were not included in Ayestas's original petition, and his 2015 Motion to Amend was improper, for the reasons explained above.

the district court to have jurisdiction. It meets neither. First, the claim does not rely on "a new rule of constitutional law." *See* § 2244(b)(2)(A). Ayestas's 2021 Rule 60(b) Motion relies on the new *statutory* rule set forth in *Banister* that Rule 59(e) motions are not successive habeas corpus applications under § 2244(b). Second, the factual predicate for this claim *could* have been discovered previously through the exercise of due diligence, as discussed above. *See* § 2244(b)(2)(B). The claims in Ayestas's 2021 Rule 60(b) Motion are barred.

Because the claims raised by Ayestas, in both the 2015 Motion to Amend and the 2021 Rule 60(b) Motion, are jurisdictionally barred by § 2244(b)(2), the district court lacked jurisdiction to order discovery.

## Conclusion

We have jurisdiction over the appeal under the collateral-order doctrine, and the district court lacked jurisdiction over Ayestas's selective-prosecution claims. The discovery order is VACATED, and Ayestas's selective-prosecution claims in the habeas petition are DISMISSED.

Leslie H. Southwick, *Circuit Judge*, dissenting:

"The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates." *Mayfield v. Butler Snow, L.L.P.*, 75 F.4th 494, 502 (5th Cir. 2023) (quotation omitted). That rule controls the present appeal because none of the statutory exceptions to the rule apply. Indeed, the majority has created a new exception — an appeal will be allowed from a magistrate judge's denial of a non-party's motion to block discovery if such discovery would cause significant harm. There is no need for such an exception, and categorizing the appeal as a straightforward application of the collateral order doctrine does not work.

I respectfully dissent.

The Harris County District Attorney ("HCDA") did not raise any objections to the magistrate judge's order in the district court and instead appealed that order directly to this court. Absent "approval by the district judge of" a magistrate judge's order granting a motion to compel, "such order does not constitute a final decision of the district court. The only circumstance in which an order of a magistrate judge may be appealed directly to this Court is described in 28 U.S.C. § 636(c)(1) and (3)." *Gregg v. Linder*, 349 F.3d 860, 862 (5th Cir. 2003). Those statutory provisions require "the consent of the parties" to final disposition by the magistrate judge of matters referred to the magistrate judge. 28 U.S.C. § 636(c)(1), (3). Here, the parties did not consent, making those provisions inapplicable.

Under the collateral order doctrine, this court has "jurisdiction over a narrow class of decisions that are immediately appealable as collateral orders even if no final judgment has been rendered." *Lewis v. Crochet*, 105 F.4th 272, 279 (5th Cir. 2024) (quotation omitted). That doctrine, the Supreme Court has "underscored, is narrow, stringent, and of modest scope." *Geo Grp., Inc. v. Menocal*, No. 24-758, 2026 WL 513536, at *4 (U.S.

Feb. 25, 2026) (quotations omitted). Indeed, unless the conditions for use of the doctrine "are kept [stringent], the underlying doctrine will overpower the substantial finality interests [28 U.S.C.] § 1291 is meant to further." *Will v. Hallock*, 546 U.S. 345, 349–50 (2006). "A pre-judgment order, to get immediate review, must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment." *Geo Grp.*, 2026 WL 513536, at *4 (quotation marks omitted) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988)). Here, the discovery order was reviewable — by the district court.

Applying the collateral order doctrine "in the discovery context, this court allows immediate appeal of orders that unseal a nonparty's confidential business documents . . . or allow discovery against a nonparty with substantial First Amendment implications." *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022) (first citing *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449–50 (5th Cir. 2019); and then citing *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018)). We allow such appeals because "[e]ach of these cases implicates 'some particular value of a high order' or 'substantial public interest' that would be imperiled or destroyed if review were delayed until after entry of an archetypal final judgment." *Id.* (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009)). In each of those precedents, the discovery order in question was either issued by a district judge or issued by a magistrate judge and then upheld by a district judge.

Here, the contested discovery is a subpoena to a nonparty. Had the discovery order been issued or upheld by a district judge, it would run headlong into the fact that "this court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order because nonparties have alternative avenues

for appellate review." *Id.* Several options exist for those who, like HCDA, are not parties to the underlying case from which the order in question arises:

> For one, the nonparty may disobey the district court's order, be cited for contempt, and then challenge the underlying discovery order in appealing the contempt citation. . . . Indeed, the contempt route is broader for nonparties than it is for parties. Unlike a party, who may only appeal a criminal contempt citation, a nonparty may appeal either a criminal or a civil contempt order. . . . Alternatively, a nonparty may request that the district court certify a § 1292(b) appeal or, in extraordinary cases, seek a writ of mandamus.

*Id.* at 488 (citations omitted).

Those options are inapplicable here, as there is no need to utilize any of them until the district court has had an opportunity to resolve objections. Of significance, neither the majority opinion nor the briefs cite any decision where the collateral order doctrine has been used to support an appeal directly from a magistrate judge's order. Even if such an example exists, it does not change the fact that here there was no need to jump the line and get to this court ahead of a district court ruling.

Instead of coming to this court, HCDA should have sought review in the district court. HCDA could have done so by using the process outlined in Federal Rule of Civil Procedure 72 or appealing to the district court's power to reconsider the magistrate judge's order under 28 U.S.C. § 636(b)(1)(A).

I describe each, but first, some background. The district court, applying Rule 6 of the Rules Governing Section 2254 Cases, granted Ayestas leave to conduct discovery under the Federal Rules of Civil Procedure. Ayestas then properly issued a subpoena to HCDA under Federal Rule of Civil Procedure 45, to which HCDA objected.

As occurred here, subpoenas for discovery are often issued to nonparties. *See, e.g.*, *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1324 (11th Cir. 2020). In *Jordan*, the plaintiff Mississippi death row inmates subpoenaed the nonparty Georgia Department of Corrections. *Id.* That nonparty moved to quash in the Northern District of Georgia, where compliance with the subpoena was required; a magistrate judge granted the motion. *Id.* at 1326. *Jordan* describes the normal and necessary path for review of all magistrate judge discovery orders. It is true that there, it was the plaintiffs, not nonparties, who filed objections with the district court. Nonetheless, nonparties also must seek relief first from the district court. Nonparties do not have the right to appeal from a magistrate judge to a circuit court of appeals under a narrow and stringent doctrine of modest scope every time the alleged error is substantial. I will explain.

Rule 72 has two subsections. Rule 72(a) governs any "pretrial matter not dispositive of a party's claim or defense [that] is referred to a magistrate judge to hear and decide." FED. R. CIV. P. 72(a). It requires a "party" to file objections within 14 days to "assign as error a defect in the order." *Id.* Rule 72(b) concerns any "pretrial matter dispositive of a claim or defense." FED. R. CIV. P. 72(b)(1). A magistrate judge must enter a recommended disposition; a party may file objections to that recommendation within 14 days; the district court then considers *de novo* any part of the recommendation to which a party has properly objected. *Id.*

HCDA contends it is not subject to Rule 72's procedures because it is not a "party" to the underlying case. "Party" in Rule 72, however, is best understood to mean a "party" to an order issued by a magistrate judge under

that rule.[1] *See Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4 n.2 (1st Cir. 1985) ("Rule 72(a) 'parties' are the parties before the magistrate, not the parties to the litigation from which the nondispositive matter originated."). This circuit apparently has not made that holding before, but I would do so in this case to avoid the majority's distortions of the usual process for objecting to discovery in district court and instead allowing those objections to begin here. There is another means to avoid so impractical a result, and that will be discussed momentarily.

Reading Rule 72 to apply to any party to a magistrate judge's order also is consistent with the purpose of Rule 71, which provides that when an order "may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." FED. R. CIV. P. 71. In other words, "nonparties have recourse to, and are subject to, process in the same measure as parties." 12 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 3031 (3d ed. 2025). Here, HCDA has recourse to, and is subject to, the processes provided in Rule 72. Rule 71 may not apply directly, but it at least provides an analogy in the immediately preceding civil rule

---

[1] To support that nonparties would not be exempt from the time limit for an appeal, the majority states that nonparties must file notices of appeal within 30 days after issuance of the challenged order under Federal Rule of Appellate Procedure 4(a)(1)(A). Throughout, however, Rule 4 (like Rule 72) refers to appeals only by a "party." FED. R. APP. P. 4; *see also* FED. R. APP. P. 3(c)(1)(A) (requiring that any notice of appeal "specify the party or parties taking the appeal"). The majority addresses that fact by citing caselaw about borrowing a statute of limitations when the relevant statute governing the cause of action lacks one. *See Runyon v. McCrary*, 427 U.S. 160, 180 (1976). Even if that concept applies to the Federal Rules as well, I find the applicable principle here is that when the Federal Rules, Appellate and Civil, refer to a "party," they are referring to those affected by the relevant court ruling. In my view, that applies clearly to Civil Rule 72 because that Rule will often have to be used to obtain discovery from those who are not parties to the litigation.

regarding how persons subject to a magistrate judge's order may receive review under Rule 72.

This approach also accords with this court's approach in the Rule 60(b) context. That Rule refers only to relief from a judgment for "a party or its legal representative." FED. R. CIV. P. 60(b). Nevertheless, we have interpreted it to permit requests for relief by other persons whose legal rights are directly affected by a judgment. *See Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 n.14 (5th Cir. 1992) (citing *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1520 (11th Cir. 1987)).

Practice, too, supports allowing nonparties to follow Rule 72 procedures to challenge a magistrate judge's discovery order directed at them. District courts in this circuit and others regularly consider nonparties' Rule 72 objections to magistrate judges' orders or recommendations. *See, e.g.*, *Evans v. Robertson*, No. 24-13435, 2025 WL 1739385, at *1 (E.D. Mich. June 23, 2025); *Advanced Magnesium Alloys Corp. v. Dery*, No. 1:20-cv-02247, 2024 WL 244932, at *5 (S.D. Ind. Jan. 23, 2024); *Nike, Inc. v. Wu*, 349 F. Supp. 3d 346, 353 (S.D.N.Y. 2018); *Crable v. State Farm Mut. Auto. Ins. Co.*, No. 5:10–cv–402–Oc–37, 2012 WL 1325831, at *2 (M.D. Fla. Apr. 17, 2012); *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010); *MZH, Ag v. State Indus.-Trade Unitary Enter. "Belaya Russ"*, No. 03Civ. 3774RMBAJP, 2003 WL 22852895, at *1 (S.D.N.Y. Nov. 10, 2003); *Butler v. Rigsby*, No. Civ.A 96–2453, 1998 WL 164857, at *2 (E.D. La. Apr. 7, 1998).

The briefing in this case identifies only two supposed examples in which a district court refused to consider a nonparty's Rule 72 objections. *See Quantlab Grp., LP v. Dempster*, No. CV H-18-2171, 2019 WL 7037653 (S.D. Tex. Dec. 20, 2019); *In re Ulmans*, No. 1:23-MC-23, 2023 WL 3412769 (S.D.N.Y. May 12, 2023). Their circumstances differed significantly from the facts here. In the Texas case, the district court concluded the nonparties

needed leave of court to object. *See Quantlab*, 2019 WL 7037653, at *2. That case did not involve an objection by a nonparty to being ordered to provide discovery; rather, the objectors were interlopers whom the court prevented from objecting to an order entered in favor of one party and against another party. *See id.* at *1–2. In the New York case, the objectors were also interlopers, and the court stated it was unclear whether they had a concrete interest in the discovery sufficient to warrant consideration of their objections. *See In re Ulmans*, 2023 WL 3412769, at *2. Nonetheless, the court declined to resolve that question and instead based its refusal to consider the objections on the grounds that they were conclusory and not aimed particularly at the magistrate judge's recommendation. *Id.* These two cases are thus consistent with the proposition that a "party" under Rule 72 includes a party to an order issued by a magistrate judge under that Rule, as the nonparties in those cases did not appear before the magistrate judge and were not subject to the magistrate judge's order.

Rule 72(a) applies. It governs any "pretrial matter not dispositive of a party's claim or defense [that] is referred to a magistrate judge to hear and decide." Fed. R. Civ. P. 72(a). Ayestas's motion to compel discovery from HCDA constituted a nondispositive pretrial matter. *See Jordan*, 947 F.3d at 1327–28 (holding that motion to quash nonparty subpoena was nondispositive). A leading federal practice treatise agrees that "discovery rulings should ordinarily be viewed as nondispositive." 12 Wright & Miller's Federal Practice & Procedure § 3068.2 (3d ed. 2025). Accordingly, the district court stated in an order that Ayestas's motion was "referred" to the magistrate judge. After the magistrate judge issued the ruling in question, HCDA had 14 days to object. *See* Fed. R. Civ. P. 72(a).

HCDA argues that even if it is considered a party, Rule 72 is nevertheless inapplicable because "the plain language of Rule 72 only makes

it applicable to matters not dispositive of a party's claim or defense," and "the claim at issue in this appeal is dispositive to the only claim affecting HCDA." HCDA overlooks Rule 72(b), which governs pretrial matters dispositive of a claim or defense. That subsection also provides only a 14-day period during which a party may object to the magistrate judge's recommendation, which the district court then must review. *See* FED. R. CIV. P. 72(b). Therefore, either 72(a) or 72(b) applies, and neither of them allows this appeal because HCDA did not file, and the district court did not consider, any objections. Objections not timely made under Rule 72 are forfeited. *See* FED. R. CIV. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").

Alternatively, HCDA could have sought review under 28 U.S.C. § 636(b)(1)(A). That statute provides that when a district court designates a magistrate judge to determine a pretrial matter, the district court "may reconsider" the magistrate judge's order if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). The Seventh and Tenth Circuits have held that a district court retains this power even if a party fails to make a timely objection under Rule 72. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009); *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006). I find it is a sound approach to allow an objection under this statute even when there is no timely objection under Rule 72.

I would dismiss this appeal, recognizing that HCDA can now seek review in the district court under Section 636. To allow an appeal here directly from the magistrate judge converts the stringent collateral order doctrine into a frequently available path for everyday rulings, even if only the really important ones, by magistrate judges. Respectfully, I dissent.