No. 25-70014

# In the United States Court of Appeals for the Fifth Circuit

CARLOS MANUEL AYESTAS, *also known as* DENNIS ZELAYA COREA,
*Petitioner–Appellee*,

v.

HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE,
*Defendant–Appellant*.

On Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-2999

**BRIEF OF FEDERAL PROCEDURE PROFESSORS AS *AMICI CURIAE* SUPPORTING PETITIONER–APPELLEE'S PETITION FOR REHEARING EN BANC**

Thomas R. Phillips
Benjamin C. Hunt
BAKER BOTTS L.L.P.
401 South First Street
Austin, TX 78704
(512) 322-2500

*Counsel for Amici Curiae Federal Procedure Professors*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 29.2, I supplement the certificate of interested persons provided in the Brief of Appellee by naming the following persons who have an interest in the outcome of this litigation. *Amici* file this brief in their individual capacities as scholars; institutional affiliations are provided for identification purposes only.

***Amici Curiae*:**

Maureen Carroll, University of Michigan Law School

Scott Dodson, Horace O. Coil Chair in Litigation and Geoffrey C. Hazard Jr. Distinguished Professor, University of California San Francisco College of the Law

Brandon L. Garrett, David W. Ichel Distinguished Professor, Duke University School of Law

Helen Hershkoff, Herbert M. and Svetlana Wachtell Professor of Constitutional Law and Civil Liberties, New York University School of Law

Leah M. Litman, University of Michigan Law School

D. Theodore Rave, Bernard J. Ward Centennial Professor, University of Texas School of Law

Judith Resnik, Arthur Liman Professor of Law, Yale Law School

Adam Zimmerman, Robert Kingsley Professor of Law, University of Southern California Gould School of Law

**Counsel for *Amici*:**

Thomas R. Phillips
Benjamin C. Hunt
BAKER BOTTS L.L.P.

/s/ *Thomas R. Phillips*
Thomas R. Phillips

*Counsel of Record for Amici Curiae*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

INTEREST OF *AMICI CURIAE* ........ 1

ARGUMENT ........ 1

I. The panel erred in permitting nonparties to bypass Section 636's mandatory district court review. ........ 1

II. The Panel Opinion erroneously expands the collateral order doctrine. ........ 6

CONCLUSION ........ 11

## Table of Authorities

**Page(s)**

**Cases**

*Armstrong v. McAlpin*,
625 F.2d 433 (2d Cir. 1980) .......... 7

*Cobbledick v. United States*,
309 U.S. 323 (1940) .......... 7

*Colburn v. Bunge Towing, Inc.*,
883 F.2d 372 (5th Cir. 1989) .......... 6

*Cunningham v. Hamilton County*,
527 U.S. 198 (1999) .......... 6

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) .......... 9

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981) .......... 7

*Frias v. Hernandez*,
142 F.4th 803 (5th Cir. 2025) .......... 9

*Geo Grp., Inc. v. Menocal*,
146 S. Ct. 774 (2026) .......... 9

*Geras v. Lafayette Display Fixtures, Inc.*,
742 F.2d 1037 (7th Cir. 1984) .......... 2

*Gomez v. United States*,
490 U.S. 858 (1989) .......... 1

*Gregg v. Linder*,
349 F.3d 860 (5th Cir. 2003) .......... 3

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 5

*Lawson v. Stephens*,
900 F.3d 715 (5th Cir. 2018) .......... 2

*Leonard v. Martin*,
38 F.4th 481 (5th Cir. 2022) .......................................................... 8, 10

*MDK, Inc. v. Mike's Train House, Inc.*,
27 F.3d 116 (4th Cir. 1994) .......................................................... 9

*Mohawk Indus., Inc. v. Carpenter*,
558 U.S. 100 (2009) .......................................................... 6, 7, 8, 9, 10

*Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*,
725 F.2d 537 (9th Cir. 1984) .......................................................... 2, 3

*Peretz v. United States*,
501 U.S. 923 (1991) .......................................................... 2

*Swint v. Chambers Cnty. Comm'n*,
514 U.S. 35 (1995) .......................................................... 9

*Tex. Dep't of Pub. Safety v. Phillips*,
2024 WL 3930532 (5th Cir. Mar. 22, 2024) .......................................................... 6

*Thomas v. Arn*,
474 U.S. 140 (1985) .......................................................... 4

*United States v. Ecker*,
923 F.2d 7 (1st Cir. 1991) .......................................................... 6

*United States v. Raddatz*,
447 U.S. 667 (1980) .......................................................... 2

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
913 F.3d 443 (5th Cir. 2019) .......................................................... 10

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) .......................................................... 7, 10

*Will v. Hallock*,
546 U.S. 345 (2006) .......................................................... 9, 10

**STATUTES AND LEGISLATIVE MATERIALS**

18 U.S.C. § 3401 .......................................................... 4

28 U.S.C. § 636(b) .......................................................... 4

28 U.S.C. § 636(c) ........................................ 2, 3

28 U.S.C. § 1292(b) ........................................ 7

Act of Mar. 2, 1793, ch. 22, § 4, 1 Stat. 334 ........................................ 1

Act of May 28, 1896, ch. 252, § 19, 29 Stat. 184 ........................................ 1

28 U.S.C. §§ 631–39 ........................................ 2

**FEDERAL RULES**

Fed. R. App. P. 29(a) ........................................ 1

Fed. R. Civ. P. 23(f) ........................................ 10

Fed. R. Civ. P. 71 ........................................ 4, 5

**ACADEMIC LITERATURE**

Adam N. Steinman, *Reinventing Appellate Jurisdiction*, 48 B.C. L. REV. 1237 (2007) ........................................ 11

Ira P. Robbins*, Magistrate Judges, Article III, and the Power to Preside over Federal Prisoner Section 2255 Proceedings*, 1 Fed. Cts. L. Rev. 575 (2006) ........................................ 2

Judith Resnik, *Trial as Error, Jurisdiction as Injury: Transforming the Meaning of Article III*, 113 HARV. L. REV. 924, 989 (2000) ........................................ 3

Michael E. Harriss, *Rebutting the Roberts Court: Reinventing the Collateral Order Doctrine Through Judicial Decision-Making*, 91 WASH. U. L. REV. 721 (2014) ........................................ 11

William Baude, *Adjudication Outside Article III*, 133 HARV. L. REV. 1511 (2020) ........................................ 3

## INTEREST OF *AMICI CURIAE*[1]

*Amici curiae* are professors who specialize in federal procedure at distinguished law schools across the nation. They have published extensively in this field and have a keen interest in the sound interpretation and consistent application of procedural rules in federal courts. Relevant here, they write to explain why the Panel Opinion's two jurisdictional holdings will have widespread and pernicious effects that will not be limited to this Court's habeas docket.

## ARGUMENT

### I. The panel erred in permitting nonparties to bypass Section 636's mandatory district court review.

From almost the beginning of the Republic, federal district judges have had government-sanctioned assistance in one form or another. The Second Congress authorized commissioners, Act of Mar. 2, 1793, ch. 22, § 4, 1 Stat. 334, and the Fifty-Fourth Congress formalized that system, Act of May 28, 1896, ch. 252, § 19, 29 Stat. 184. Those officers provided a modest level of first-tier decision making on a fee-for-service basis; often they were not attorneys. *See Gomez v. United States*, 490 U.S. 858, 865 (1989).

In 1968, Congress created more formal and enhanced support by passing the

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae* or their counsel, contributed monetarily to the preparing or submitting of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

Federal Magistrates Act, 28 U.S.C. §§ 631–39, and over the next few decades it enhanced those officers' powers and responsibilities. In 1979, Congress gave magistrates authority to preside over the full course of civil proceedings—including trial—upon the consent of all parties. 28 U.S.C. § 636(c). In 1990, Congress conferred the title "magistrate judges" on these officers, reflecting their increased importance both in fact and in appearance. *See* Ira P. Robbins, *Magistrate Judges, Article III, and the Power to Preside over Federal Prisoner Section 2255 Proceedings*, 1 Fed. Cts. L. Rev. 575, 578–80 (2006).

But, despite their growing responsibilities, the "powers of magistrate judges, while consequential, are also confined—both statutorily and constitutionally." *Lawson v. Stephens*, 900 F.3d 715, 721 (5th Cir. 2018). Because magistrate judges are non-Article III officers working under Article III judges, magistrate judges have neither life tenure nor the constitutional guarantee of non-diminution of salaries. Thus, Congress has carefully delineated and circumscribed the powers of these "adjuncts" to Article III judges. As case law and commentary reflect, debates are ongoing about the breadth of magistrate judges' power, but not on the concept that this power is limited. *See, e.g.*, *Peretz v. United States*, 501 U.S. 923, 926–39 (1991); *United States v. Raddatz*, 447 U.S. 667, 681 (1980); *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1038 (7th Cir. 1984) (holding that Section 636(c) is constitutional); *id.* at 1045 (Posner, J., dissenting); *Pacemaker Diagnostic Clinic of*

*Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 547 (9th Cir. 1984) (en banc) (holding that Section 636(c) is constitutional); *id.* at 547 (Schroeder, J., dissenting); Judith Resnik, *Trial as Error, Jurisdiction as Injury: Transforming the Meaning of Article III*, 113 HARV. L. REV. 924, 989 (2000) ("Despite a few protests by lower court judges about unconstitutional delegations, the circuits have upheld magistrates' powers over an array of tasks, including, with consent of the parties, trying civil actions." (footnotes omitted)); William Baude, *Adjudication Outside Article III*, 133 HARV. L. REV. 1511, 1513 (2020) (Magistrate judges "can proceed only as an adjunct to another entity or on the basis of consent.").

There is no doubt about the line drawn by Congress in this case, and no doubt that HCDA's attempted appeal to this Court has crossed that line. The governing statute, consistent with Article III, forecloses direct appellate review of a magistrate's order absent specific exception. "The only circumstance in which an order of a magistrate judge may be appealed directly to this Court is described in 28 U.S.C. § 636(c)(1) and (3)," which are instances when the parties have agreed to repose final authority in the magistrate judge. *Gregg v. Linder*, 349 F.3d 860, 862 (5th Cir. 2003) (per curiam). Absent that consent, a party may only seek relief by first "serv[ing] and fil[ing] written objections to [the magistrate judge's] proposed findings and recommendations" with the district court, which "shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Here, therefore, "it is the district court, not the court of appeals, that must exercise supervision over the magistrate" in the first instance. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985).

The Panel Opinion points to Rule 72, governing proceedings before magistrate judges, which refers repeatedly to a "party" or "parties." From this word choice alone, the Panel Opinion concludes that "[t]he plain wording of the disparate exclusion of 'nonparty' is that Rule 72(a) does not cover nonparties." Slip Op. at 8. But this conclusion ignores Rule 71's directive to treat parties and nonparties "the same" for enforcement purposes. In so doing, Rule 71 recognizes that the process for reviewing magistrate rulings arises out of the statutory constraints on their authority. Any distinction between parties and nonparties is simply not relevant for determining these structural limits.

Section 636 is the governing provision for magistrate judges to conduct pretrial matters;[2] nothing in it suggests that Congress failed to use the cumbersome term "nonparty" in that provision because it intended thereby to make this Court's appellate jurisdiction broader for nonparties than parties. The Supreme Court has

---

[2] A provision not applicable here, 18 U.S.C. § 3401, also grants magistrates some authority to try misdemeanor cases, and also does not state that different rules apply between parties and non-parties.

repeatedly limited the creation of jurisdictional exceptions and expansions without congressional action. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts . . . possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.") (internal citations omitted).

Moreover, the Panel's distinction between parties and nonparties makes little sense here. Read literally, the clerk would have no duty to serve a copy of the magistrate judge's disposition on a nonparty under Rule 72(b)(1). Yet, even absent that notice, the nonparty would still have to discover the ruling's contents in time to seek appellate review. Even if the governing statute permitted it, the Federal Rules have carefully delineated appellate rights. Rule 71's provision that "the procedure for enforcing [an] order" is identical whether a party or a nonparty is involved confirms as much, as does the consistent practice of those nonparties seeking relief from magistrate judges' orders. *See* Slip. Op. at 19 (Southwick, J., dissenting) (collecting cases where district courts considered a nonparty's Rule 72 objection to a magistrate judge's order or recommendation). The requirement that a district court must review a magistrate's non-dispositive order before appellate jurisdiction applies flows from the statutory text, not from the procedural label borne by the litigant seeking review.

For all these reasons, the dissenting opinion was surely correct in concluding

that Rule 72 "is best understood to mean a 'party' to an order issued by a magistrate judge," not a party to the underlying case. *Id.* at 17. Once that conclusion is accepted, settled precedent from this and other circuits requires this Court to dismiss HCDA's petition for want of jurisdiction. *See, e.g.*, *Tex. Dep't of Pub. Safety v. Phillips*, No. 24-10175, 2024 WL 3930532, at *1 (5th Cir. Mar. 22, 2024) (per curiam); *United States v. Ecker*, 923 F.2d 7, 9 (1st Cir. 1991) (per curiam); *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 379 (5th Cir. 1989). When seeking review of a magistrate's decision, neither parties nor nonparties can skip the district court.

## II. The Panel Opinion erroneously expands the collateral order doctrine.

In addition to erring in permitting the appeal by a nonparty to this Circuit, the panel erred because this appeal violates the obligation to await final orders. The Supreme Court has carefully cabined the collateral order doctrine, for good reasons. Routine interlocutory appeals of trial court rulings eschew "the deference owed by appellate courts to trial judges charged with managing the discovery process," *Cunningham v. Hamilton County*, 527 U.S. 198, 209 (1999), and "unduly delay the resolution of district court litigation and needlessly burden the Courts of Appeals," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 112 (2009). Accordingly, most assertions of work-product or attorney-client privilege are not amenable to collateral order review. *See, e.g.*, *Mohawk*, 558 U.S. at 103 ("disclosure orders adverse to the attorney-client privilege [do not] qualify for immediate appeal under the collateral

order doctrine"); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981) (endorsing in dicta the proposition that "orders requiring discovery over a work-product objection" are not immediately appealable (quoting *Armstrong v. McAlpin*, 625 F.2d 433, 438 (2d Cir. 1980))).

To be sure, some lower court decisions are functionally unreviewable, severable from the merits, and sufficiently important to justify collateral review. But this is not such a case. Several mechanisms exist to protect assertions of garden-variety privileges like that asserted by HCDA. These include: seeking certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) after review by the district court, *Mohawk*, 558 U.S. at 110, seeking a writ of mandamus, *id.* at 111, and employing the defy, contempt, and appeal procedure first prescribed in *Cobbledick v. United States*, 309 U.S. 323, 328 (1940).

Instead of applying these established principles to foreclose interlocutory review, the Panel Opinion offers several justifications for asserting jurisdiction over HCDA's appeal. It begins by dismissing *Mohawk* as "not speak[ing] to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect" because "evidentiary privileges protect nonparties differently from parties." Slip Op. at 6 (quoting *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018)). But *Mohawk* did not distinguish third- from first-parties to a case. After all, in accepting interlocutory review, courts consider

not the particular facts of the dispute at bar, but rather whether "the *class* of claims, *taken as a whole*, can be adequately vindicated by other means." *Mohawk*, 558 U.S. at 107 (emphases added). And since nonparties possess at least some of the "potential avenues of review apart from collateral order appeal" that are available to parties, *id.* at 110, "this court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order," *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022).

Yet the Panel Opinion concludes that these mechanisms "protect nonparties differently from parties," making interlocutory review appropriate. Slip Op. at 6. It then deems the "substantial public interests" in preserving what it calls a "prosecutorial work-product privilege" to be sufficiently important to justify interlocutory review. *Id.* at 7. But courts "routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system," *Mohawk*, 558 U.S. at 108–09, because even more important countervailing interests—promoting "a healthy respect for the virtues of the final-judgment rule," avoiding "piecemeal, prejudgment appeals," and not "encroach[ing] upon the prerogatives of district court judges"—weigh against interlocutory review, *id.* at 106.

That is why the Supreme Court has repeatedly emphasized that the "so-called collateral-order doctrine . . . is 'narrow,' 'stringent,' and of 'modest scope.'" *Geo*

*Grp., Inc. v. Menocal*, 146 S. Ct. 774, 781 (2026) (first quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994); and then quoting *Will v. Hallock*, 546 U.S. 345, 350 (2006)). "The strength of these instructions is hard to overstate." *Frias v. Hernandez*, 142 F.4th 803, 811 (5th Cir. 2025) (Oldham, J., concurring). Thus, courts should be "cautious . . . about expanding the collateral-order doctrine" beyond the categories of orders already held to be immediately appealable. *Geo Grp., Inc.*, 146 S. Ct. at 790 (Alito, J., concurring).

Applying the Panel Opinion, however, would permit an interlocutory appeal, without district court review, from *any* magistrate judge's denial of a third-party's assertion of some garden-variety privilege. That is far from a narrow, stringent, and modest class of appealable orders. *See MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 120 (4th Cir. 1994) ("A judicially created exception to nonappealability for categories of sensitive information is the quintessential slippery slope.").

The Panel Opinion is *also* difficult to square with the Supreme Court's admonition that "rulemaking, 'not expansion by court decision,' [is] the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Mohawk*, 558 U.S. at 113 (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 48 (1995)); *see Frias*, 142 F.4th at 811 (Oldham, J., concurring) ("rulemaking, rather than judicial decisions, [is] the ordinary method to permit immediate appeals of classes of orders not already recognized by the Court"). Put

differently, it is principally the province of the Rules Enabling Act process to decide whether changes to the rules for interlocutory appeals are advisable. *See, e.g.*, FED. R. CIV. P. 23(f) (delineating process for interlocutory appeals from orders granting or denying class action certification).

In determining whether an interlocutory appeal is necessary to vindicate an asserted right, courts in general seek to identify instances when waiting for an appeal cannot reverse the injury; classic examples are bail, immunities to suit, sealing orders, and certain First Amendment rights. Matters that do not implicate "some particular value of a high order" that would be imperiled if review were delayed, by contrast, are not appropriate for interlocutory review. *Mohawk*, 558 U.S. at 107 (quoting *Will*, 546 U.S. at 352); *see Leonard*, 38 F.4th at 487 (comparing the kinds of rights that do and do not qualify for interlocutory review). The only two cases that the Panel Opinion cites in support of its holding—*Whole Woman's Health*, 896 F.3d at 368, and *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019)—involve either an asserted constitutional privilege (*Whole Woman's Health*) or an attempt to unseal information (*Vantage Health*), not as here, "a third-party document production order," *Vantage Health*, 913 F.3d at 450 n.2.

Courts have sometimes struggled to consistently distinguish appealable from non-appealable collateral orders, and scholars and commentators have proffered various taxonomies to make the case law more predictable. *See, e.g.*, Michael E.

Harriss, *Rebutting the Roberts Court: Reinventing the Collateral Order Doctrine Through Judicial Decision-Making*, 91 WASH. U. L. REV. 721, 747–50 (2014); Adam N. Steinman, *Reinventing Appellate Jurisdiction*, 48 B.C. L. REV. 1237, 1276–94 (2007). While some categories might raise questions on which scholars and jurists could reasonably differ, the category identified by the Panel Opinion falls short of meriting interlocutory appeal under the Supreme Court and this Circuit's criteria.

## CONCLUSION

*Amici* respectfully urge this Court to grant the petition for rehearing en banc and award the relief requested by Petitioner-Appellee.

Dated: March 30, 2026

Respectfully submitted,

*<u>/s/ Thomas R. Phillips</u>*
Thomas R. Phillips
Benjamin C. Hunt
BAKER BOTTS L.L.P.
401 South First Street
Austin, TX 78704
(512) 322-2500
tom.phillips@bakerbotts.com
ben.hunt@bakerbotts.com

*Counsel for Amici Curiae*
*Federal Procedure Professors*

## CERTIFICATE OF SERVICE

I certify that on March 30, 2026, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

*_/s/ Thomas R. Phillips_*
Thomas R. Phillips

*Counsel of Record for*
*Amici Curiae*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of Federal Rule of Appellate Procedure 29(b)(4) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,423 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

*/s/ Thomas R. Phillips*
Thomas R. Phillips

*Counsel of Record for Amici Curiae*