**No. 25-70014**

In the
United States Court of Appeals
For the Fifth Circuit

**CARLOS MANUEL AYESTAS,**
*Petitioner – Appellee*

v.

**HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE**
*Respondent – Appellant*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
No. 4:09-CV-2999

# EN BANC BRIEF OF APPELLANT

**SEAN TEARE**
District Attorney
Harris County, Texas

**MEAGAN T. SCOTT**
Assistant District Attorney
1201 Franklin Street, Suite 600
Houston, Texas 77002
Tel: (713) 274-5816

*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | | |
|---|---|---|
| 1. | Carlos Manuel Ayestas | Petitioner – Appellee |
| 2. | Lee B. Kovarsky<br>Phillips Black, Inc. | Counsel for Petitioner – Appellee |
| 3. | Sheri Lynn Johnson<br>Cornell Law School | Counsel for Petitioner – Appellee |
| 4. | Paul E. Mansur<br>Texas Defender Service | Counsel for Petitioner – Appellee |
| 5. | Sean Teare<br>Harris County District Attorney | Counsel for Respondent – Appellant |
| 6. | Meagan T. Scott<br>Assistant District Attorney | Counsel for Respondent – Appellant |
| 7. | Gwendolyn S. Vindell<br>Assistant Attorney General | Counsel for Respondent Lumpkin<br>& Amicus Counsel before the Panel |

Respectfully submitted,

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**
Counsel for Appellant

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ ii

TABLE OF AUTHORITIES ........................................................................ vii

JURISDICTIONAL STATEMENT ............................................................ 1

ISSUES PRESENTED ................................................................................ 2

STATEMENT OF THE CASE .................................................................. 3

I. Introduction ........................................................................................ 3

II. Habeas Litigation and Discovery in the District Court .................. 5

III. HCDA's Involvement in Discovery .................................................. 8

IV. Proceedings in this Court ................................................................. 9

SUMMARY OF THE ARGUMENT ....................................................... 11

ARGUMENT ........................................................................................... 15

I. This Court has appellate jurisdiction because the discovery order was final, HCDA has standing, and this Court has jurisdiction under the collateral-order doctrine. ........................... 15

A. Standard of Review ...................................................................... 15

B. The Order is final. ........................................................................ 16

C. HCDA has standing to appeal as a non-party. ........................... 19

D. This appeal is permitted under the collateral-order doctrine. ............................................................................................ 20

1. The three conditions are met. ..................................... 21

2. *Mohawk* does not dictate otherwise. ............................ 25

**TABLE OF CONTENTS, con't**


3. Prosecutorial work-product privilege should be permitted as a class under the collateral-order doctrine. .... 28

   a. This privilege is comparable to already recognized categories. .... 28

   b. This category conforms with prior precedent .... 31

4. Rule 72 does not negate this Court's jurisdiction. .... 33

   a. Rule 72 is not jurisdictional. .... 33

   b. Rule 72's text limits it to parties and non-dispositive matters. .... 35

   c. Rule 71 does not incorporate Rule 72 or impose objection obligations on non-parties. .... 37

   d. Civil procedure and policy considerations support this interpretation. .... 39

   e. Even if Rule 72 applied to non-parties, error is not waived under *Douglass* and its progeny. .... 42

5. If this Court determines it does not have appellate jurisdiction under the collateral-order doctrine, it may still review the jurisdiction of the district court .... 43

II. The magistrate judge abused its discretion when it granted the motion to compel and ordered production of privileged materials .... 47

   A. Standard of Review .... 47

**TABLE OF CONTENTS, con't**


B. Under *Armstrong*, the district court's discovery order cannot stand. ........ 47

C. The materials at issue are work product and thus protected from disclosure. ........ 52

1. The capital murder summaries at issue, and some withheld case file materials, are opinion work product. ........ 53

2. The work product privilege survives the litigation for which it was prepared. ........ 57

III. The district court lacked jurisdiction to reopen discovery because Ayestas's Rule 59(e) and Rule 60(b) motions were unauthorized second or successive petitions. ........ 61

A. Standard of Review ........ 61

B. The introduction of new legal claims outside the strict deadline forfeits Rule 59(e) status and constitutes a successive petition. ........ 61

C. The Rule 60(b) motion was an impermissible effort to circumvent the merits bar and failed to present extraordinary circumstances. ........ 66

IV. Alternatively, this Court can resolve this appeal in other manners. ........ 69

A. Standard of Review ........ 69

B. This Court may treat HCDA's appeal as a request for mandamus relief. ........ 70

1. This Court has jurisdiction to treat HCDA's appeal as a request for mandamus relief. ........ 70

**TABLE OF CONTENTS, con't**


2. The requirements for mandamus are met.................. 70

   a. HCDA has a clear right to relief........................ 71

   b. HCDA has no other adequate means to obtain relief. ....................................................... 72

   c. Mandamus is appropriate under the circumstances. ................................................... 74

B. This Court can reconsider the denial of TDCJ's mandamus petition. ........................................................... 75

C. This Court can hold that the subpoena issued to HCDA should have been quashed on the grounds that it is inconsistent with 28 U.S.C. § 2254(e)(2). ............................. 77

PRAYER ........................................................................................ 79

CERTIFICATE OF SERVICE............................................................ 80

CERTIFICATE OF COMPLIANCE..................................................... 81

# TABLE OF AUTHORITIES

## Cases

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) .......................................... 35

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997) ("*AOE*") ...... 45, 46

*Atchison v. City of Tulsa,* 344 F.R.D. 28 (N.D. Okla. 2023).......... 53, 58, 59

*Ayestas v. Harris Cnty. Dist. Attorney's Office*, 169 F.4th 586 (5th Cir. 2026), *vacated en banc*, *Ayestas v. Harris Cnty. Dist. Attorney's Office*, 180 F.4th 776 (5th Cir. July 6, 2026) ................ 10

*Ayestas v. State*, No. AP-72,928 (Tex. Crim. App. Nov. 4, 1998)............. 5

*Ayestas v. Stephens*, 817 F.3d 888 (5th Cir. 2016), *vacated on other grounds sub nom.*, *Ayestas v. Davis*, 584 U.S. 28 (2018)..... 6, 62, 65

*Banister v. Davis*, 590 U.S. 504 (2020) ........................................ 7, 62, 63

*Belmontes v. Brown*, 414 F.3d 1094 (9th Cir. 2005), *rev'd sub nom.*, *Ayers v. Belmontes*, 549 U.S. 7 (2006)........................................... 50

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986) ................ 43

*Bowles v. Russell*, 551 U.S. 205 (2007) .................................................. 40

*Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809 (5th Cir. 2026)........................................................................................... 36

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ........................................... 72

*Burton v. Stewart*, 549 U.S. 147 (2007) ........................................... 62, 68

*Castillo v. Cameron Cnty.*, 238 F.3d 339 (5th Cir. 2001) ................. 16, 19

*Castillo v. Frank*, 70 F.3d 382 (5th Cir. 1995)........................................ 18

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004) ........................... 70

## TABLE OF AUTHORITIES, con't

*Clark v. Doe*, 157 F.3d 902 (5th Cir. 1998) .......................................34, 42

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)...........15, 21

*Cottier v. City of Martin*, 604 F.3d 553 (8th Cir. 2010) (en banc) ....69, 77

*Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994)......54

*Crutsinger v. Davis*, 936 F.3d 265 (5th Cir. 2019)..................................68

*Davila v. Davis*, 582 U.S. 521 (2017). ....................................................73

Demahy v. Schwarz Pharma., 702 F.3d 177 (5th Cir. 2012)..................63

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) .......................................................................34, 42

Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480 (4th Cir. 1973) ..........................................................................57

*Edwards v. Vannoy*, 593 U.S. 255 (2021) ...............................................73

*Emery v. United States Dep't of Just.*, 639 F. Supp. 3d 87 (D.D.C. 2022) .........................................................................................55

*Ex parte Ayestas*, No. WR-69,674-02, 2020 WL 7234477 (Tex. Crim. App. Dec. 9, 2020) ..............................................................65

Frontier Refining, Inc. v. Gorman Rupp–Co., Inc., 136 F.3d 695 (10th Cir. 1998) .....................................................................57

*Gabrion v. U.S.*, No. 1:15-CV-447, 2018 WL 4786310 (W.D. Mich. Oct. 4, 2018)........................................................................49

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)...............................................55

*Gonzalez v. Crosby*, 545 U.S. 524 (2005).............................62, 64, 66, 68

**TABLE OF AUTHORITIES, con't**

*Gonzalez v. Thaler*, 565 U.S. 134 (2012) .......... 43, 75

*Green v. Bock Laundry Mach. Co.*, 490 U.S. 504 (1989) .......... 38

*Griffin v. Lee*, 621 F.3d 380 (5th Cir. 2010) .......... 46

*Harrington v. Richter*, 562 U.S. 86 (2011) .......... 72

*Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164 (5th Cir. 2009) .......... 21, 27

*Hickman v. Taylor*, 329 U.S. 495 (1947) .......... 31, 54, 59

*In Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245 (3d Cir. 1998) .......... 17, 18

*In re Avantel, S.A.*, 343 F.3d 311 (5th Cir. 2003) .......... 23

*In re Bobby Lumpkin*, No. 23-20169 .......... 76

*In re Cendant Corp. Sec. Litig.*, 343 F.3d 658 (3d Cir. 2003) .......... 59

*In re Copley Press, Inc.*, 518 F.3d 1022 (9th Cir. 2008) .......... 24

*In re CPDC, Inc.*, 337 F.3d 436 (5th Cir. 2003) .......... 38

*In re Deepwater Horizon*, 793 F.3d 479 (5th Cir. 2015) .......... 70

*In re Doe*, 662 F.2d 1073 (4th Cir. 1981) .......... 54

*In re Edwards*, 865 F.3d 197 (5th Cir. 2017) .......... 62, 67

*In re Gee*, 941 F.3d 153 (5th Cir. 2019) .......... 72, 74

*In re Grand Jury Investigation*, 599 F.2d 1224 (3d. Cir. 1979) .......... 53

*In re Grand Jury Proc.,* 43 F.3d 966 (5th Cir. 1994) .......... 17, 28, 57

*In re Grand Jury Subpoena*, 190 F.3d 375 (5th Cir. 1999) .......... 70

**TABLE OF AUTHORITIES, con't**


*In re Grand Jury Subpoena*, 220 F.3d 406 (5th Cir. 2000) .............29, 32

*In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235 (5th Cir. 1982) ........................................................................ 31, 53, 55

*In re Murphy*, 560 F.2d 326 (8th Cir. 1977).....................................55, 57

*In re Nw. Senior Hous. Corp.*, 661 B.R. 345 (Bankr. N.D. Tex. 2024) ..........................................................................................59

*In re Rogers*, 513 F.3d 212 (5th Cir. 2008)............................................35

*In re United States*, 397 F.3d 274 (5th Cir. 2005)..................................31

*Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 2121 v. Goodrich Corp.*, 410 F.3d 204 (5th Cir. 2005) ...............................46

*Irving v. United States*, 162 F.3d 154 (1st Cir. 1998) (en banc)............76

*Johnson v. Outlaw*, 659 F. Supp. 2d 732 (M.D.N.C. 2009).....................49

*Johnson-Williams v. Mortg. Elec. Registration Sys., Inc.*, 675 F. App'x 396 (5th Cir. 2017) (unpublished).......................................42

*La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023) ("*Hughes*").......................................................................... passim

*La Union Del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024) ("*Bettencourt*") .................................................................. passim

*Landry's, Inc. v. Ins. Co. of the State of Penn.*, 4 F.4th 366 (5th Cir. 2021) ..........................................................................................37

*Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670 (5th Cir. 2015). .........................................................................................42

*Leonard v. Martin*, 38 F.4th 481 (5th Cir. 2022).............................23, 27

*Lewis v. Crochet*, 105 F.4th 272 (5th Cir. 2024) ............................ passim

**TABLE OF AUTHORITIES, con't**

*McCleskey v. Kemp*, 481 U.S. 279 (1987) .......... 51

*McNabb v. United States*, 318 U.S. 332 (1942) .......... 69

*Messinger v. Anderson*, 225 U.S. 436 (1912) .......... 77

*Mitchell v. Maurer*, 293 U.S. 237 (1934) .......... 43, 61

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) .......... 15, 25, 27, 28

*Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304 (D.C. Cir. 1997) .......... 54

*Planned Parenthood of Greater Texas Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020) .......... 77

*Point Landing, Inc. v. Omni Cap. Int'l, Ltd.*, 795 F.2d 415 (5th Cir. 1986) .......... 36

*Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448 (5th Cir. 2018) .......... 15, 16

*Quantlab Grp., LP v. Dempster*, No. H-18-2171, 2019 WL 7037653 (S.D. Tex. Dec. 20, 2019) .......... 35, 40

*Republic Gear Co. v. Borg–Warner Corp.*, 381 F.2d 551 (2d Cir. 1967) .......... 57

*Rivers v. Guerrero*, 605 U.S. 443 (2025) .......... 64, 65

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) .......... 44

*Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173 (5th Cir. 1999) .......... 46

*Sandoval Mendoza v. Lumpkin*, 81 F.4th 461 (5th Cir. 2023) .......... 68

*Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96 (5th Cir. 2018) .......... 44

## TABLE OF AUTHORITIES, con't

*Shields v. Sturm, Ruger & Co.*, 864 F.2d 379 (5th Cir. 1989) ................ 28

*Shinn v. Ramirez*, 596 U.S. 366 (2022) ................................................ 73

*Sinochem Int'l Co. v. Malay. Int'l Shipping*, 549 U.S. 422 (2007) ......... 44

*Solomon v. St. Joseph Hospital*, 62 F.4th 54 (2d Cir. 2023) .................... 45

*Templet v. HydroChem Inc.*, 367 F.3d 473 (5th Cir. 2004) ...................... 64

*Thomas v. Arn*, 474 U.S. 140 (1985) ........................................................ 34

*Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966) .................... 69. 78

*United Kingdom v. United States*, 238 F.3d 1312 (11th Cir. 2001) ....... 55

*United States v. Armstrong*, 517 U.S. 456 (1996) ................... 12, 13, 19, 48

*United States v. Casey*, No. CR 05-277 (ADC), 2013 WL 12190569 (D.P.R. Jan. 30, 2013). ............................................................................ 50

*United States v. Castillo-Rivera*, 853 F.3d 218 (5th Cir. 2017) ........ 69, 76

*United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983) .......................... 19

*United States v. Chemical Found., Inc.*, 272 U.S. 1 (1926) ..................... 48

*United States v. Corrick*, 298 U.S. 435 (1936) ........................... 44, 46, 61

*United States v. Hammond*, 605 F.2d 862 (5th Cir. 1979) ...................... 69

*United States v. Henderson*, 485 F. Supp. 2d 831 (S.D. Ohio 2007) ....... 50

*United States v. Hoover*, 727 F.2d 387 (5th Cir. 1984) ........................... 49

*United States v. Johnson*, No. 02 C 6998, 2003 WL 1193257 (N.D. Ill. Mar. 12, 2003) ........................................................................... 49

*United States v. Leggett & Platt, Inc.*, 542 F.2d 655 (6th Cir. 1976). .... 57

## TABLE OF AUTHORITIES, con't

*United States v. McDaniels*, 907 F.3d 366 (5th Cir. 2018) ..................... 40

*United States v. Moats*, 961 F.2d 1198 (5th Cir. 1992)........................... 39

*United States v. Nobles*, 422 U.S. 225 (1975) ............................ 32, 52, 53

*United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc), *abrogated by Borden v. United States*, 593 U.S. 420 (2021). ........................................................................................ 76

*United States v. Siegelman*, 282 F.R.D. 640 (M.D. Ala. 2012) ............... 49

*United States v. Sparks*, 2 F.3d 574 (5th Cir. 1993).............................. 48

*United States v. Webster*, 162 F.3d 308 (5th Cir. 1998).......................... 48

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443 (5th Cir. 2019) ............................................................. passim

*Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000) ........................... 61

*Warren G. Kleban Eng'g Corp. v. Caldwell*, 490 F.2d 800 (5th Cir.1974) ......................................................................................... 61

*Wertenbroch v. Hardeman*, 178 F.4th 186 (5th Cir. 2026) ..................... 15

*Wetzel v. Lambert*, 565 U.S. 520 (2012) ................................................. 73

*Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018)..... passim

*Williamson v. Moore*, 221 F.3d 1177 (11th Cir. 2000)............................. 54

*X Corp. v. Media Matters for Am.*, 120 F.4th 190 (5th Cir. 2024).......... 25

**Statutes**

28 U.S.C. § 1291 ........................................................................... 15

28 U.S.C. § 1651(a) ........................................................................ 1

## TABLE OF AUTHORITIES, con't

28 U.S.C. § 2244(b) .......... 7

28 U.S.C. § 2244(b)(3) .......... 1

28 U.S.C. § 2244(b)(4) .......... 62, 68

28 U.S.C. § 2254(e)(2) .......... 15, 71, 77

28 U.S.C. § 636(b) .......... 33, 34

28 U.S.C. § 636(b)(1)(A) .......... 11, 16, 34, 35

28 U.S.C. § 636(b)(1)(A) .......... 18

**Rules**

FED. R. APP. P. 21 .......... 70

FED. R. APP. P. 4(A)(1)(A) .......... 1

FED. R. CIV. P. 4(E) .......... 36

FED. R. CIV. P. 26(B)(3) .......... 54

FED. R. CIV. P. 45(D)(3)(A) .......... 58

FED. R. CIV. P. 59(E) .......... PASSIM

FED. R. CIV. P. 60(B) .......... 7, 13

FED. R. CIV. P. 71 .......... 12, 38, 39

FED. R. CIV. P. 72 .......... 12, 33, 34

FED. R. CIV. P. 72(A) .......... 16, 17, 34, 35. 37

FED. R. CIV. P. 72(B) .......... 34

Rule 6 of the Rules Governing Section 2254 Cases .......... 49

## TABLE OF AUTHORITIES, con't

Rule 6(a) of the Rules Governing Section 2254 Cases............................17

Rule 6(b) of the Rules Governing Section 2254 Cases..............................1

**Other Authorities**

§ 3031 History and Purpose of Rule, 12 FED. PRAC. & PROC. (3d ed.) ......................................................................................38

FED. R. CIV. P. 72 advisory committee's note to 2007 amendment ........36

## JURISDICTIONAL STATEMENT

The district court (Lake, J.) lacks jurisdiction over Carlos Manuel Ayestas's second-or-successive habeas application, which was filed without authorization per 28 U.S.C. § 2244(b)(3). *See* Argument III, *infra*. Despite this, on March 16, 2023, the district court permitted discovery under Rule 6(b) of the Rules Governing Section 2254 Cases ("Habeas Rules"). ROA.2328–29. On June 3, 2025, the magistrate judge (Bryan, M.J.) granted Ayestas's motion to compel and issued an order ("the Order") requiring non-party Harris County District Attorney's Office ("HCDA") to produce privileged records to Ayestas. ROA.3172–81. HCDA timely filed a notice of appeal on June 27, 2025. ROA.3182–83; *see* FED. R. APP. P. 4(a)(1)(A).

This Court has jurisdiction over this interlocutory appeal under the collateral-order doctrine. *See* Argument I(D), *infra*. In addition, it has jurisdiction to issue a writ of mandamus under 28 U.S.C. § 1651(a). *See* Argument IV(A), *infra*.

## ISSUES PRESENTED

I. Whether this Court has appellate jurisdiction because the discovery order was final, HCDA has standing, and this Court has jurisdiction under the collateral-order doctrine.

II. Whether the magistrate judge abused its discretion when it granted the motion to compel and ordered production of privileged materials.

III. Whether the district court lacked jurisdiction to reopen discovery because Ayestas's Rule 59(e) and Rule 60(b) motions were unauthorized second-or-successive petitions.

IV. Whether this Court can resolve this appeal in other manners.

## STATEMENT OF THE CASE

### I. Introduction

Ayestas murdered Santiaga Paneque in her home more than thirty years ago, and a family has spent three decades waiting for justice. A Harris County, Texas, jury returned a death sentence for Ayestas—a sentence that has never been reversed, vacated, or declared unlawful.

Yet the finality of that judgment, and the closure it was meant to bring, has been stalled for years by litigation that has wandered far from the underlying crime, the record, and the limits Congress imposed on federal habeas review. The district court repeatedly departed from The Antiterrorism and Effective Death Penalty Act's ("AEDPA") strict limits governing habeas proceedings—treating untimely, post-judgment filings as if they were timely motions under Federal Rule of Civil Procedure Rule 59(e), reopening final judgment seven years later, and initiating years of sweeping discovery.

What is now before this Court illustrates the extraordinary scope of that derailment. Ayestas does not seek discovery even remotely tethered to his own case. Instead, he demands the prosecutorial work product from hundreds of *other* murder and capital cases spanning thirty years of state

prosecutorial charging decisions. He seeks core opinion work product—charging memoranda, internal evaluations, and privileged deliberations—not to litigate his own claims, but to trawl through decades of unrelated prosecutions in search of patterns his own record does not supply.

The district court permitted this sweeping intrusion despite the fact that Ayestas's petition was successive and unauthorized, and therefore the district court lacked jurisdiction to allow it. This was not merely legal error. It is a distortion of the adversarial process, an erosion of the work-product doctrine for every prosecutor in this Circuit, and an immense drain on judicial and state resources.

This procedural chaos is precisely the kind of trap AEDPA was enacted to prevent: a non-party dragged years later into a habeas case with no jurisdictional footing, compelled to defend core privileges under rules that do not apply to it and cannot protect it. HCDA, never a party to the underlying habeas case, was pulled into litigation only when Ayestas sought access to its privileged files via a discovery subpoena.

As a non-party, HCDA had no ability to contest the habeas petition, no role in shaping its procedural posture, and no opportunity to address

the jurisdictional limitations the district court disregarded. This en banc Court is the only entity that can halt a discovery order issued without jurisdiction, protect the integrity of prosecutorial work product, and prevent a decades-long capital murder case from collapsing under the weight of a baseless fishing expedition. It should do so.

## II. Habeas Litigation and Discovery in the District Court

In 1997, a jury convicted Ayestas of murdering Ms. Paneque. ROA.8003; *Ayestas v. State*, No. AP-72,928 (Tex. Crim. App. Nov. 4, 1998). During Ayestas's prosecution, then–Harris County District Attorney John B. Holmes, Jr. ("DA Holmes") oversaw capital charging decisions. Then–Assistant District Attorney Kelly Siegler prepared an internal Capital Murder Summary ("Siegler Memorandum") to assist DA Holmes in determining whether to seek the death penalty. ROA.8090–92. The Siegler Memorandum identified two aggravating circumstances: (1) "the victim is a helpless 67 year old woman killed in her home" and (2) "the Defendant is not a citizen." ROA.8092. The citizenship notation was later crossed out. DA Holmes ultimately approved seeking the death penalty, noting: "Ok to plead non-killers for Agg. Rob. Life, deadly

weapon, seek death on killer Ayestas. 2 pleading [defendant's][1] to testify." ROA.8092.

Although Ayestas has pursued federal habeas relief since 2009 ROA.24, proceedings relevant to this appeal began on November 18, 2014, when the district court entered final judgment denying relief on the ineffective-assistance-of-counsel claims Ayestas pursued in his initial habeas petition. ROA.968, 984.

Ayestas timely filed a Rule 59(e) motion challenging that judgment. ROA.985–1023. After the 28-day deadline expired, Ayestas filed a motion to amend his habeas petition and a "supplement" to his Rule 59(e) motion. ROA.1148–54, 1159–67. Ayestas's supplement to his Rule 59(e) motion sought to pursue new claims based on the newly-discovered Siegler Memorandum. ROA.1159–60, 1164–66. The district court correctly rejected these filings as unauthorized successive petitions under AEDPA, ROA.1235–44, and this Court affirmed, holding that Ayestas failed to exercise reasonable diligence in discovering the memorandum. *Ayestas v. Stephens*, 817 F.3d 888, 901 (5th Cir. 2016), *vacated on other grounds sub nom.*, *Ayestas v. Davis*, 584 U.S. 28 (2018).

[1] DA Holmes uses the symbol of a triangle to represent "defendant."

Six years later Ayestas, invoking *Banister v. Davis*, 590 U.S. 504 (2020), filed a Rule 60(b) motion asserting a purported defect in the integrity of the habeas proceedings. ROA.1348. The district court granted the motion, treated its order as vacating the final habeas judgment (rather than simply vacating its denial of the Rule 59(e) motion), and permitted Ayestas to file an amended petition raising new habeas claims. ROA.1609–17, 1873–74. The district court declined to transfer the successive petition to this Court for authorization and instead concluded that Ayestas satisfied 28 U.S.C. § 2244(b). ROA.2319, 2329–30.

With the judgment reopened, the district court then authorized sweeping discovery, first against Respondent Bobby Lumpkin and the Texas Department of Criminal Justice (together "TDCJ") and later against HCDA. ROA. 2196–05, 2328–30. The authorization imposed no meaningful limits, and ultimately compelled production of decades of prosecutorial materials, including privileged work product surrounding HCDA's charging decisions. ROA.3011–13, 3181. HCDA is not a party to Ayestas's habeas case. Its involvement is solely attributable to the district court's post-judgment discovery orders. ROA.2369–70, 3116–27.

## III. HCDA's Involvement in Discovery

On August 7, 2023, Ayestas served HCDA with a subpoena duces tecum containing 18 requests for production. ROA.3116–27. The subpoena sought—among other categories—case files for all murder and capital murder cases prosecuted by HCDA from 1979 through 2008; charging memoranda for every murder and capital-murder prosecution handled by HCDA from 1979 through 2008; personnel files for HCDA employees; internal policies, manuals, and unwritten practices concerning death-eligible prosecutions; and any documents relating to internal investigations concerning discrimination based on alienage, national origin, race, or immigration status. ROA.3011, 3124–26.

On August 18, 2023, HCDA agreed to produce certain materials, ROA.3013, but asserted work-product privileges for many of the requested materials. ROA.3011–14.

On February 14, 2025, Ayestas filed a motion to compel in the district court. ROA.2985, 3152. Ayestas moved to compel production of a narrower set of records—most of which remained subject to HCDA's privilege claims—and sought the production of records not previously subpoenaed. ROA.2990. Importantly, Ayestas still sought charging

memoranda from 1979–2008 for hundreds of unrelated murder and capital murder "comparator cases." ROA.2990. HCDA was able to identify and locate 406 responsive Capital Murder Summaries. The motion to compel also sought, for the first time, the privileged portions of HCDA's case file in the prosecution of Ayestas. ROA.2990.

After additional briefing—a response to the motion to compel by HCDA (wherein HCDA raised the same objections now before this Court), ROA.3089, and a reply by Ayestas, ROA.3152, the district court referred the motion to a magistrate judge for final decision. ROA.3171. On June 3, 2025, the magistrate judge granted the Order. ROA.3172. The Order required HCDA to produce the privileged memoranda and case file within 30 days of its issuance. ROA.3181. HCDA appealed. ROA.3182.

## IV. Proceedings in this Court

Ayestas moved to dismiss the appeal, arguing this Court lacked jurisdiction to review the Order. ECF No. 15. This Court denied Ayestas's motion to dismiss. ECF No. 29. After considering the briefs of the parties and oral argument, a panel of this Court held: (1) HCDA had standing as a non-party whose privileged materials were ordered disclosed; (2) the Order was an appealable collateral-order; (3) Federal Rule of Civil

Procedure 72(a) does not bar non-party appeals from magistrate's orders; and (4) the district court lacked jurisdiction because Ayestas's new claims were unauthorized successive applications under § 2244(b). *Ayestas v. Harris Cnty. Dist. Attorney's Office*, 169 F.4th 586 (5th Cir. 2026), *vacated en banc*, *Ayestas v. Harris Cnty. Dist. Attorney's Office*, 180 F.4th 776 (5th Cir. July 6, 2026). The panel vacated the Order and dismissed the new habeas claims. *Id.* at 597.

The dissent (Southwick, J.) opined that this Court lacked appellate jurisdiction, reasoning that a magistrate judge's discovery order cannot be appealed directly without district-court review or party consent under 28 U.S.C. § 636(c), and that the collateral-order doctrine could not supply appellate jurisdiction. *Id.* at 597–601.

This Court subsequently granted rehearing en banc, vacating the panel opinion and judgment. *Ayestas*, 180 F. 4th 776. This Court also provided a list of five questions for briefing, which HCDA will note and answer throughout this brief. ECF No. 130.

## SUMMARY OF THE ARGUMENT

**Issue I:** This Court has jurisdiction to consider and reverse the magistrate judge's order compelling HCDA to disclose decades of privileged work product. First, the Order is final because the district court's grant of authority to the magistrate judge to decide the discovery dispute was pursuant to 28 U.S.C. § 636(b)(1)(A). Thus, the Order became final once HCDA was served and did not object in the district court.

Second, HCDA satisfies the requirements for non-party standing. In the district court, HCDA objected to the discovery subpoena, asserted privilege, and demonstrated a direct stake in avoiding disclosure or contempt.

Third, the Order satisfies every requirement of the collateral-order doctrine: it conclusively resolves HCDA's privilege objections, involves an issue wholly separate from the merits of Ayestas's habeas claims, and threatens irreparable harm that cannot be remedied on appeal from final judgment. Nothing about this posture resembles routine party-to-party discovery disputes. Appellate jurisdiction under the collateral-order doctrine is proper.

Finally, Federal Rule of Civil Procedure 72 does not disturb this Court's jurisdiction. Rule 72 governs error preservation in non-dispositive pretrial matters involving parties. It does not apply to non-parties. This is made clear by the plain text of the rule. Federal Rule of Civil Procedure 71 does not incorporate Rule 72 or impose objection obligations on non-parties. Policy considerations and procedural rules confirm that Rule 72 does not apply to non-parties. But, even if Rule 72 applied, it is not a jurisdictional bar to appeal. At most, it raises the standard of review for HCDA's claims.

**Issue II:** With appellate jurisdiction established, Ayestas's motion to compel fails on its own terms. His selective-prosecution theory rests on purported comparator evidence he has not met the threshold to obtain. The district court abused its discretion when it permitted merits-based discovery because Ayestas failed to meet the threshold established by *United States v. Armstrong*, 517 U.S. 456 (1996), which requires some evidence of both discriminatory effect and intent to obtain discovery. Ayestas has never made a factual showing that would justify access to charging memoranda from hundreds of unrelated prosecutions, nor has he demonstrated that such materials are necessary to resolve any issue

properly before the district court. Because Ayestas could not satisfy *Armstrong*, the district court lacked authority to order discovery.

Even if merits-based discovery, the materials at issue are protected by core work-product privilege. The Order compels disclosure of internal memoranda reflecting charging deliberations, case assessments, and legal strategy—precisely the type of opinion work product that courts consistently shield from disclosure. Opinion work product is afforded near-absolute immunity and may only be disclosed in rare and extraordinary circumstances, which are not present here. Once these documents are exposed, the harm cannot be undone. The compelled disclosure of decades of HCDA's prosecutorial analyses would chill candid decision-making, undermine the independence of prosecutorial judgment, and inflict precisely the kind of non-remediable injury that the collateral-order doctrine was designed to prevent. The magistrate judge's privilege ruling was fundamentally wrong.

**Issue III:** The district court lacked jurisdiction to reopen discovery because Ayestas's Rule 59(e) and Rule 60(b) motions were unauthorized second-or-successive petitions. Ayestas's filings after final judgment introduced new grounds for relief and constituted successive petitions.

His attempt to present new claims after the Rule 59(e) window closed, coupled with a lack of diligence in discovering the underlying information, placed his filings squarely within the category of serial litigation that federal habeas law forecloses. He did not meet the standard for reopening judgment, and no extraordinary circumstances justified revisiting long-settled matters. The district court therefore lacked jurisdiction from the outset, and its discovery orders necessarily fail due to that defect.

**Issue IV:** This Court can use its supervisory authority to resolve this appeal in other manners. First, this Court may treat HCDA's appeal as a request for mandamus. This Court has the jurisdiction to do so and the requirements for mandamus are met: (1) HCDA has a clear right of relief, (2) HDCA has no other adequate means to obtain relief, and (3) mandamus is appropriate under these extraordinary circumstances. Second, this Court can and should reconsider the denial of TDCJ's 2023 mandamus petition. The district court lacks jurisdiction over the proceedings because Ayestas filed an unauthorized second-or-successive habeas application. As such, the panel erred in denying TDCJ's petition for mandamus. Third, this Court can hold that the district court should

have quashed the subpoena issued to HCDA because it is inconsistent with 28 U.S.C. § 2254(e)(2).

## ARGUMENT

### I. This Court has appellate jurisdiction because the discovery order was final, HCDA has standing, and this Court has jurisdiction under the collateral-order doctrine.

"Jurisdiction is always first." *Wertenbroch v. Hardeman*, 178 F.4th 186, 189 (5th Cir. 2026) (citation omitted). Generally, this Court has jurisdiction to review "final decisions" pursuant to 28 U.S.C. § 1291. "Although 'final decisions' typically are ones that trigger the entry of judgment, they also include a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

#### A. Standard of Review

"[T]his court has a duty to analyze its own jurisdiction de novo." *Providence Behavioral Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 (5th Cir. 2018) (citation omitted). This duty stems from the fact that "standing is an essential and unchanging part of the case-or-controversy requirement," and every "federal appellate court has a special obligation

to satisfy itself not only of its own jurisdiction, but also that of the district court." *Id.* at 350 n.2 (cleaned up).

The legal issue of a non-party's "[s]tanding is reviewed under a *de novo* standard." *Castillo v. Cameron Cnty.*, 238 F.3d 339, 347 (5th Cir. 2001) (citation omitted).

### B. The Order is final.

Under 28 U.S.C. § 636(b)(1)(A), with specifically noted exceptions, a district court may refer to a magistrate judge pretrial matters that do not ultimately dispose of the litigation. In this type of referral, review is by appeal to the district court: a party aggrieved "may serve and file objections to the order within 14 days after being served with a copy" of the order. FED. R. CIV. P. 72(a) (applying to "pretrial matter[s] not dispositive of a party's claim or defense"). If the aggrieved party preserves his rights in this fashion, the district court can set aside the magistrate's ruling if found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a).

The Third Circuit has explained that, under § 636(b)(1)(A), "the magistrate judge's order is dispositive as to the discrete matter referred to him or her unless" a party raises objections to the order. *In Cont'l Cas.*

*Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 249–50 (3d Cir. 1998), ("In a subsection (A) referral, the magistrate judge's order has the force of law unless appealed. It is final in the sense that it may be appealed."). While a party can appeal to the district court—which would disrupt its finality—the decision to appeal is discretionary. *See* FED. R. CIV. P. 72(a) ("A party *may* serve and file objections . . .") (emphasis added). If a party chooses not to appeal, the magistrate judge's order is final.[2] *See In Cont'l Cas. Co.*, 150 F.3d at 250–51.

As detailed above, Ayestas requested permission from the district court to conduct discovery under Habeas Rule 6(a). He specifically sought documents from TDCJ and HCDA. TDCJ objected on various grounds; HCDA was not yet involved in the litigation. ROA.2251. The district court subsequently authorized Ayestas to seek discovery from TDCJ and HCDA. In addition, the district court specifically allowed TDCJ to object to Ayestas's discovery requests but did not extend this right to non-

[2] Crucially, nothing in the collateral-order doctrine requires that a district judge sign the underlying directive; it requires only that the operative order be final, separate from the merits, and effectively unreviewable. *See In re Grand Jury Proc.*, 43 F.3d 966, 969 (5th Cir. 1994). To be sure, this Court has recognized the general rule that an order compelling disclosure "is not final until the individual seeking to quash disobeys the court order and is held in contempt." *Id.* "This general rule, however, is just that: a general rule." *Id.* Courts have carved out a critical exception via the collateral-order doctrine. *Id.*

parties.

In August 2023, HCDA received a third-party subpoena from Ayestas and objected to it. Ayestas moved to compel discovery from HCDA, prompting additional briefing. At this point, the district court referred Ayestas's motion to compel and all related discovery disputes to the magistrate judge for determination. The magistrate judge granted the motion to compel and ordered production.

The Order is non-dispositive because it did not dispose of a party's claim or defense. *See Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995) (discovery orders are non-dispositive). Therefore, the district court's grant of authority to the magistrate judge was pursuant to § 636(b)(1)(A). Under subsection (A), the magistrate judge's order became final when HCDA was served with the Order. *See In Cont'l Cas. Co.*, 150 F.3d at 249–50. Given that HCDA is a non-party to the case, it did not appeal to the district court under Rule 72(a) (*see* Argument I(E), *infra*) and that finality was never disrupted.

Moreover, the Order was tethered to the district court's discovery authorization, which permitted Ayestas to seek discovery from HCDA. After being served the subpoena and becoming a non-party, HCDA filed

objections in the district court, arguing that the district court's discovery authorization was improper under *Armstrong* and, even if proper, the subpoena itself infringed on its work-product privilege and should be quashed. Therefore, when the magistrate granted Ayestas's motion to compel (in part relying on the district court's previous ruling on TDCJ's *Armstong* objections), it was merely effectuating the district court's discovery order, which also was a final order.

**C. HCDA has standing to appeal as a non-party.**

While non-parties cannot generally appeal an order or judgment, exceptions to this rule have been frequently applied when the decree affects the third-party's interests. *See Castillo*, 238 F.3d at 349. Specifically, "a non-party may appeal orders for discovery if he has no other effective means of obtaining review." *United States v. Chagra*, 701 F.2d 354, 359 (5th Cir. 1983).

Three factors guide the determination: (1) whether the nonparty actually participated in the proceedings below, (2) whether the equities weigh in favor of hearing the appeal, and (3) whether the nonparty has a personal stake in the outcome. *Castillo*, 238 F.3d at 349.

Application of these factors establish standing. First, HCDA,

having been served with a third-party subpoena seeking the documents at issue in the appeal, objected, invoked claims of privilege, and responded to Ayestas's motion to compel those materials. *See La Union Del Pueblo Entero v. Abbott*, 93 F.4th 310, 315–16 (5th Cir. 2024) ("*Bettencourt*") (holding a third-party "participated" under this requirement by objecting to a subpoena directed at them).

Second, the equities weigh in favor of allowing the appeal as substantial questions of core work product privilege are in dispute. Moreover, equities favor an appeal when appeal is the only "mechanism to vindicate [a] potentially meritorious claim[]" of privilege. *Id.* at 316.

Third, HCDA has a very real stake in the ultimate determination of whether it will be required to turn over decades-worth of privileged materials, or risk contempt. *See Lewis v. Crochet*, 105 F.4th 272, 282 (5th Cir. 2024) (finding a personal stake in the outcome when appellant must comply with the order or risk contempt or sanctions).

### D. This appeal is permitted under the collateral-order doctrine.

Generally, this Court's appellate jurisdiction "extends only to 'final decisions of the district courts.'" *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 232 (5th Cir. 2023) ("*Hughes*") (quoting 28 U.S.C. § 1291).

The collateral order doctrine is an exception to § 1291 and permits certain orders to be appealable immediately to preserve rights that cannot be vindicated after final judgment. *Cohen*, 337 U.S. at 545–55.

"To qualify as a collateral order, an 'order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'" *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) (quoting *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 171 (5th Cir. 2009)).

The doctrine expressly encompasses orders directed at entities who cannot seek post-judgment review and whose rights would be destroyed if immediate appeal were unavailable. Over recent years, this Court has exercised jurisdiction in closely analogous cases: *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018); *Vantage Health*, 913 F.3d at 449–50; *Hughes*, 68 F.4th at 232–35; *Bettencourt*, 93 F.4th at 319–20; and *Lewis*, 105 F.4th at 281.

### 1. The three conditions are met.

**<u>Conclusiveness:</u>** The Order conclusively determines the disputed

question—application of privilege to the documents. This Court's cases repeatedly confirm that dispositive-to-the-non-party is dispositive for collateral-order purposes. *See e.g.*, *Whole Woman's Health*, 896 F.3d at 367; *Vantage Health*, 913 F.3d at 448; *Lewis*, 105 F.4th at 280 (all finding that disclosure orders adverse to non-parties to be conclusive determinations).

**Separateness:** The application of privilege to the requested documents is an important issue separate from the merits of the action. HCDA is not a party to the habeas proceeding; its privilege claim does not overlap with Ayestas's underlying habeas claims. This Court's authority is clear that privilege disputes are separate from the merits of the underlying litigation. *Whole Woman's Health*, 896 F.3d at 367; *Lewis*, 105 F.4th at 280.

The privilege claim here is even more distinct: it concerns internal prosecutorial deliberations that reflect sovereign decision-making about criminal enforcement. These materials shed no light on Ayestas's habeas claims but implicate core governmental functions that operate outside the merits of any individual federal habeas case.

**Effective Unreviewability:** The lower court's denial of the

privilege is effectively unreviewable on final appeal. *See Whole Woman's Health*, 896 F.3d at 367 (the collateral order doctrine is met when district court's discovery order to a third-party—with which failure to comply may result in sanctions—was conclusive and effectively unreviewable on appeal from final judgment). Addressing the third prong, this Court asks whether delaying review "would imperil a substantial public interest or some particular value of a high order." *Leonard v. Martin*, 38 F.4th 481, 486 (5th Cir. 2022) (citations omitted). This Court looks to the harms suffered by non-parties when privileged information is compelled without the ability to control the course of litigation or obtain effective post-judgment review. *Hughes*, 68 F.4th at 233–34.

Applying that framework, this Court has repeatedly permitted non-party interlocutory appeals where compelled disclosure threatens irreversible institutional or constitutional harms.[3] Once HCDA produces privileged prosecutorial work-product, the confidentiality of those documents—and the sovereign interests it protects—will be lost. *See In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003).

---

[3] Even *Leonard* recognizes the difference between ordinary third-party discovery disputes (*e.g.*, undue burden) and orders compelling disclosure of sensitive, privileged material—precisely the distinction applicable here. 38 F.4th at 486–87.

As *Vantage Health* emphasized, "secrecy is a one-way street," and no appellate remedy can restore confidentiality after disclosure. 913 F.3d at 449 (quoting *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) (emphasizing the harm to non-parties is not merely the introduction of adverse evidence at trial, but the forced disclosure of confidential information without full access to appellate review).

This Court has also recognized that immediate review is appropriate where disclosure of a non-party's confidential or privileged materials threatens significant public interests or irreparable harm. *Hughes*, 68 F.4th at 232. HCDA's assertion of prosecutorial work-product implicates exactly such concerns: sovereign charging discretion, criminal-enforcement integrity, and systemic effects extending far beyond this case.

Compelling disclosure of internal prosecutorial deliberations does more than affect one case; it intrudes on the State's authority to enforce its criminal laws and undermines the integrity of past and future prosecutions. Federal habeas review already implicates profound state interests in finality and sovereignty. Forcing disclosure of privileged prosecutorial materials magnifies that intrusion.

### 2. *Mohawk* does not dictate otherwise.

Reliance on *Mohawk* to disrupt collateral-order jurisdiction is unavailing. In *Mohawk*, the Supreme Court held that *parties* may not immediately appeal discovery orders adverse to attorney-client privilege under the collateral order doctrine. 558 U.S. at 114. The Court emphasized that such orders are not "effectively unreviewable" on appeal from a final judgment because alternative mechanisms—such as post-judgment appeals or contempt proceedings—adequately protect the party's privilege. *Id*. at 110–12.

But *Mohawk* did not address the rights of non-parties, nor did it categorically bar all discovery-related appeals under the collateral order doctrine. This Court has acknowledged that non-parties may appeal discovery orders under the collateral order doctrine, and each subsequent case decided by this Court harmonizes non-party appealability with *Mohawk*, not against it. *See X Corp. v. Media Matters for Am.*, 120 F.4th 190, 196 (5th Cir. 2024) (exercising collateral-order jurisdiction over non-party compelled disclosure of donor identities and internal communications, reiterating that loss of confidentiality cannot be

remedied on appeal and the importance of the issue is central to appealability); *Bettencourt*, 93 F.4th at 320 (recognizing that compelling non-party legislators to disclose privileged materials intrudes on core legislative deliberations); *Hughes*, 68 F.4th at 233 (same); *Vantage Health*, 913 F.3d at 449–50 (non-party may appeal discovery order unsealing confidential documents because the harm is irreparable).

Similarly, in *Whole Woman's Health*, this Court allowed an interlocutory appeal under the collateral-order doctrine where the discovery order implicated First Amendment associational rights. This Court distinguished the Supreme Court's reasoning in *Mohawk* because "*Mohawk* does not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect." *Whole Woman's Health*, 896 F.3d at 368.

In *Lewis*, this Court relied on its holding in *Whole Woman's Health* to again provide jurisdiction to a non-party seeking a discovery order appeal. This Court held that because "*Mohawk* was a case addressing a *party's* interlocutory appeal of a disclosure order adverse to the attorney-client privilege[,] [it did] not apply to bar appellate jurisdiction" to the non-party appellant. *Lewis*, 105 F.4th at 281 (emphasis added).

This distinction is critical: unlike parties, non-parties cannot appeal from a final judgment in the underlying litigation. *Henry*, 566 F.3d at 171. "[T]he consequences of forced discovery were 'effectively unreviewable' on appeal from the final judgment because the appellant was a non-party to the case." *Id.* at 280.

Although mandamus or contempt may theoretically provide alternative avenues for review, this Court acknowledged that mandamus is narrow, and incurring sanctions is risky and burdensome, particularly for non-parties. *Vantage Health,* 913 F.3d at 449–50 (citing *Mohawk*, 558 U.S. at 109–12). Protective orders do not cure this harm. And the contempt route for non-parties is particularly exacting. *See Mohawk*, 558 U.S. at 109–12. Prosecutors and public servants asked to violate a court order merely to obtain appellate review face unique burdens and risks and professional consequences. *See Leonard*, 38 F.4th at 492–93 (5th Cir. 2022) (Haynes, J., dissenting). This Court's precedents repeatedly distinguish *Mohawk* on this basis. *See Vantage Health*, 913 F.3d at 449–50; *Whole Woman's Health*, 896 F.3d at 368; *Lewis*, 105 F.4th at 281.

### 3. Prosecutorial work-product privilege should be permitted as a class under the collateral-order doctrine.

Whether an order is immediately appealable is determined by the entire category to which a claim belongs and on the class of claims taken as a whole. *Bettencourt*, 93 F.4th at 319 (citing *Hughes*, 68 F.4th at 232; *Mohawk*, 558 U.S. at 107). Consistent with this categorical approach, this Court has recognized that orders compelling non-parties to produce work-product constitute an independently appealable class. In *In re Grand Jury Proceedings*, this Court exercised collateral-order jurisdiction to protect work product from compelled disclosure outside the context of a final judgment. 43 F.3d at 969–70 (allowing immediate appeal of denial of motion to quash grand jury subpoena issued to third-party over work-product objections).

#### a. This privilege is comparable to already recognized categories.

The prosecutorial work product privilege asserted by HCDA is more similar to the legislative privilege at issue in *Hughes*, and the confidential documents in *Vantage Health*, than it is to the attorney-client privilege at issue in *Mohawk*. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989) ("work product privilege is very

different from the attorney-client privilege" and it exists "to promote the adversary system").

Just as the legislative privilege protects sovereign deliberations, the work-product doctrine ensures that attorneys can prepare cases without fear of exposing their strategies. *Cf. Hughes*, 68 F.4th at 235–36 (the legislative privilege "protect[s] actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process'"); *Bettencourt*, 93 F.4th at 323 (documents "created, transmitted, and considered *within* the legislative process itself" are protected by legislative privilege) (emphasis in original).

Both doctrines serve to protect the integrity of core governmental functions—the adversarial legal process and the legislative process, respectively. *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000) ("the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality").

*Hughes* identified several critical factors directly relevant here:

1. **Conclusiveness:** The order is conclusive because non-compliance invites sanctions.

2. **Erosion of Privilege:** Navigating contempt proceedings or protective-order negotiations inherently diminishes the underlying privilege.

3. **Irreparable Harm:** Improper disclosure cannot be remedied on a later appeal.

4. **No Trial remedy:** Non-parties lack standing to object at trial or move for a new trial.

5. **No Post-Judgment Appeal:** Non-parties have no mechanism to seek post-judgment remedies.

*See Hughes*, 68 F.4th at 232–34. This reasoning applies with equal force to HCDA and evidences the similarities in both posture and privilege between the non-parties in *Hughes* and HCDA.

This Court applied a similar rationale in *Vantage Health*. There, the unsealing of confidential, potentially sensitive information warranted collateral-order jurisdiction because a contrary ruling would force the disclosure of confidential and sensitive information without full access to appellate review. *Vantage Health*, 913 F.3d at 449.

To the extent this specific class of claims has not yet been explicitly designated as appealable under the collateral-order doctrine, this Court should formally recognize it now. Much like the privileged materials in *Hughes* and the confidential commercial documents in *Vantage Health*, the forced disclosure of core opinion work-product inflicts an irreparable injury that cannot be undone.

#### b. This category conforms with prior precedent.

This is a straightforward, narrow application of settled precedent to another familiar non-party privilege. The categories previously approved share defining traits with prosecutorial work-product: each implicates a substantial public interest, requires narrow protection, and demands immediate review to prevent the loss of the privilege. The key features that justify collateral-order review are present here; prosecutorial deliberations touch on quintessential public-interest concerns that depend on candid, protected analysis.

This Court's decision in *In re United States*, 397 F.3d 274, 285–86 (5th Cir. 2005), confirms that compelling disclosure of capital-charging practices constitutes clear legal error when it invades core prosecutorial functions and raising separation-of-powers concerns. The work-product doctrine's near-absolute protection of opinion work-product reflects the same concern: requiring disclosure "on mere demand" would chill candid analysis. *See Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). For prosecutors in particular, candid internal analysis is essential to the integrity of criminal adjudication. The interests of society and the

accused require safeguarding attorney mental processes. *United States v. Nobles*, 422 U.S. 225, 238–39 (1975).

The public-interest concerns raised by compelled access to over 400 internal charging memoranda and privileged portions of HCDA's file warrant collateral-order review. Just as the legislative privilege ensures that lawmakers can deliberate freely without judicial intrusion, the work-product doctrine ensures that attorneys can prepare cases without fear of exposing their strategies. Both doctrines serve to protect the integrity of core governmental functions. *In re Grand Jury Subpoena*, 220 F.3d at 409 ("the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality").

Prosecutorial work-product therefore stands in the same narrow, precedent-recognized category involving irreparable institutional harm if disclosure is compelled. This interpretation does not create any intra or inter-circuit conflict; it follows this Court's long-standing category-based approach and applies settled logic to a privilege whose forced disclosure would irreversibly compromise internal charging deliberations and broader law-enforcement interests.

This Court's prior decisions did not open floodgates; rather, they produced narrow, posture-specific appeals limited to orders that would irreversibly destroy protected interests of non-parties. This interpretation slots into that framework; it does not expand it.

### 4. Rule 72 does not negate this Court's jurisdiction.

Rule 72 plays no jurisdictional role in this appeal. It does not apply to HCDA and has no bearing on the collateral-order doctrine analysis. Rule 72 is a procedural mechanism governing *party* objections to non-dispositive pretrial matters; it is neither a prerequisite to appellate review nor a hurdle for non-parties.

Treating Rule 72 as a jurisdictional bar misunderstands both its text and its function. The rule simply does not reach non-party, dispositive privilege orders like the one at issue here. Accordingly, Rule 72 is a jurisdictional red herring; at most, failing to object merely heightens the standard of review.

#### a. Rule 72 is not jurisdictional.

Rule 72 and § 636(b) work together to let district court judges assign pretrial work, both dispositive and non-dispositive matters, to magistrate judges. They also set rules for how parties file objections to magistrate judge orders and how district judges review those decisions.

Under both provisions, a party has 14 days to file objections to a magistrate judge's order. FED. R. CIV. P. 72(a)–(b); 28 U.S.C. §§ 636(b)(1)(A)–(B).

Typically, the district judge can set aside the magistrate's ruling if he or she finds it to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). If a party does not object after being warned of the consequences, this Court reviews for plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985) ("because the rule is a nonjurisdictional waiver provision, the Court of Appeals may excuse the default in the interests of justice").

Thus, Rule 72 and § 636(b) are not jurisdictional. If they were, a party's failure to timely object could never be reviewed. But that is not the case; untimely objections in this Circuit are reviewed for plain error. *See, e.g.*, *Douglass*, 79 F.3d at 1428–29; *Clark v. Doe*, 157 F.3d 902 (5th Cir. 1998).

This is consistent with the Supreme Court's statement in *Arbaugh* that "when Congress does not rank a statutory limitation on coverage as

jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) (citation and footnote omitted). Neither Rule 72(a) nor § 636(b)(1)(A) contain jurisdictional terminology. As such, they are not jurisdictional.

**b. Rule 72's text limits it to parties and non-dispositive matters.**

Rule 72(a) governs objections to a magistrate judge's ruling on "a pretrial matter not dispositive of a party's claim or defense." FED. R. CIV. P. 72(a). The rule's text is explicit and exclusive: only parties may object, and only when the order concerns their non-dispositive claims or defenses. FED. R. CIV. P. 72(a) ("*A party may* serve and file objections to the order" and "*[a] party may not* assign as error a defect in the order not timely objected to.") (emphasis added). This language forecloses any interpretation extending Rule 72's objection procedure to non-parties. *See Quantlab Grp., LP v. Dempster*, No. H-18-2171, 2019 WL 7037653, at *2 (S.D. Tex. Dec. 20, 2019) (overruling non-party Rule 72 objections because the rule "only provides for 'a party' to file objections").

This Court routinely enforces plain-language limitations and it should do so again. *See, e.g.*, *In re Rogers*, 513 F.3d 212, 225 (5th Cir. 2008) (recognizing that when a text is plain, the court's sole function is

to enforce it, absent absurd results); *Point Landing, Inc. v. Omni Cap. Int'l, Ltd.*, 795 F.2d 415, 427 (5th Cir. 1986) (construing FED. R. CIV. P. 4(e) to strictly conform with its literal text); *Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809, 811–12 (5th Cir. 2026) (interpreting a statute according to its plain meaning).

This textual reading is reinforced by the broader structure of the Federal Rules of Civil Procedure. When the drafters intend to bind non-parties, they say so expressly. Numerous rules—Federal Rules of Civil Procedure 4, 5.2, 6, 14, 30, 32, 34, 37, 45, 53, 71—explicitly address non-parties and impose obligations. Rule 72 contains no such language to require, or allow, objections by non-parties, confirming that its objection procedure applies only to parties in non-dispositive pretrial matters. *Cf.* FED. R. CIV. P. 72 advisory committee's note to 2007 amendment ("The language of Rule 72 has been amended . . . to make style and terminology consistent throughout the rules."). Even if courts allow such objections, allowance is not a requirement or permission. HCDA has found no cases requiring non-parties to abide by Rule 72.

Any interpretation suggesting that "party" should be loosely read as "party to the order" rather than an active party to the underlying

lawsuit introduces fluid, ad hoc definitions into a highly cohesive statutory scheme. Varying the definition of "party" from rule to rule would subvert the canon of consistent usage and introduce systemic instability into the Federal Rules of Civil Procedure. *See Landry's, Inc. v. Ins. Co. of the State of Penn.*, 4 F.4th 366, 370 (5th Cir. 2021) (explaining that under the consistent-usage canon, "a word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning") (quotation omitted).

Moreover, the claim at issue in this appeal is dispositive to the only order affecting HCDA. Rule 72(a) governs orders "not dispositive of a party's claim or defense." FED. R. CIV. P. 72(a). Rule 72(a) is inapplicable to HCDA for the same reason HCDA's appeal satisfies the first prong of the collateral-order doctrine requirement: the order conclusively determines an important issue separate from the merits and would be effectively unreviewable later. Unlike parties engaged in pretrial discovery disputes, HCDA cannot await final judgment or participate in any merits appeal.

**c. Rule 71 does not incorporate Rule 72 or impose objection obligations on non-parties.**

Rule 71 provides that when an order grants relief for or against a

non-party, "the procedure for enforcing the order is the same as for a party." FED. R. CIV. P. 71. It addresses enforcement—not objections, review standards, or appellate prerequisites. Treatises confirm this limited scope: Rule 71 does not alter who is bound by judgments and simply ensures non-parties are subject to the enforcement process. § 3031 History and Purpose of Rule, 12 FED. PRAC. & PROC. (3d ed.).

Rule 71 is not an incorporation clause and does not rewrite Rule 72 to impose obligations on non-parties. *See* FED. R. CIV. P. 71. Courts have repeatedly rejected such stealth amendments. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 523–24 (1989) (holding that conferees could have drafted rules to apply more broadly, and their failure to do so indicates it was not intended); *In re CPDC, Inc.*, 337 F.3d 436, 445 (5th Cir. 2003) ("[L]ooking to other statutes is improper when the interpretation of a statute is self-evident from its text.").

The contrast between Rule 71 and Rule 72 underscores HCDA's position: Rule 71 expressly references non-parties; Rule 72 does not. Because Rule 72 contains no reference to non-parties, Rule 71 cannot be used to import obligations into Rule 72 that the drafters chose not to include. Reading non-parties into Rule 72 would erase deliberate drafting

distinctions and disrupt the Rules' structural design.

#### d. Civil procedure and policy considerations support this interpretation.

Even though Rule 72 does not apply to non-parties, they remain subject to compliance deadlines and must file timely notices of appeal under the Federal Rules of Appellate Procedure. Appeals taken under the collateral-order doctrine are likewise "subject to all the usual appellate rules and time periods." *United States v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992). Moreover, non-parties have limited avenues for appellate review, such as the collateral-order doctrine, mandamus, or contempt, which inherently restrict forum shopping and delay. Distinct treatment of parties and non-parties is logical: parties may seek review after entry of final judgment, non-parties typically cannot.

Rule 72(a) was designed to prevent parties from holding back objections for use on appeal after final judgment, rather than to force non-parties to file perfunctory objections in proceedings where they cannot obtain final-judgment review. This interpretation does exactly what the language of Rule 72 requires: applying Rule 72's text as written, refusing to import Rule 71 to enlarge Rule 72's scope, and preserving this Court's practice of allowing non-party collateral-order appeals.

That is not innovation; it is fidelity to the Rules' plain language and to Circuit practice. Concerns about "floodgates" are misplaced. Non-parties remain bound by subpoenas, compliance obligations, Rule 4 deadlines, and the narrow strictures of the collateral-order doctrine. Reading Rule 72 as inapplicable to non-parties protects the intended structure of the Rules; it does not broaden litigation opportunities.

In addition, policy considerations reinforce why Rule 72 cannot be read to bind non-parties. First, imposing Rule 72 objections on non-parties would create procedural dilemmas that parties never face. Parties wait until final judgment before any appellate deadlines attach; Rule 72 is simply an error-preservation mechanism for their eventual appeals. Non-parties do not have that luxury.

For non-parties, "a timely notice of appeal is a jurisdictional requirement," and without it "the court of appeals cannot review the case." *United States v. McDaniels*, 907 F.3d 366, 370 (5th Cir. 2018) (citing *Bowles v. Russell*, 551 U.S. 205, 214 (2007)). A non-party confronted with a dispositive order must either:

1) file Rule 72 objections and risk the district court striking them—as occurred in *Quantlab Group*, 2019 WL 7037653, at *2—or simply declining to consider them, and forfeiting the non-party's appellate deadline in the meantime; or

2) preserve its jurisdictional right to appeal by filing a timely notice of appeal, at the cost of not filing objections within Rule 72's 14-day window.

The Rules provide no tolling mechanism, stay procedure, or parallel track for non-parties that would allow them to comply with Rule 72(a) while preserving appellate jurisdiction. That creates an unavoidable timing conflict if Rule 72(a) were applied to non-parties. Parties never confront this dilemma because their appellate deadlines arise only after the district court enters final judgment.

Finally, collateral-order review illustrates the structural purpose of Rule 72's limits. Rule 72 is an error-preservation mechanism for parties who will eventually obtain review after final judgment. Non-parties, however, must avail themselves of collateral-order review because they cannot appeal after final judgment—at that point, they are no longer in the case. Collateral-order review is the only off-ramp available to non-parties, aside from the impractical and punitive alternative of appealing a contempt order. Nothing in Rule 72 relates to perfection of an appeal for non-parties, and nothing in its structure suggests it governs those off-ramps.

**e. Even if Rule 72 applied to non-parties, error is not waived under *Douglass* and its progeny.**

If this Court holds that Rule 72 applies to non-parties, this new rule should be prospective only and inapplicable HCDA in this appeal. In *Douglass*, this Court created a new appellate forfeiture rule for unobjected-to proposed findings and conclusions. *Douglass*, 79 F.3d at 1428. It determined, however, that because Douglass was not warned about this new rule, he fell within an exception to the rule and therefore this Court applied the former rule to him. *Id.* at 1429. So too here. HCDA should fall into an exception to this new rule because it had no warning that Rule 72(a) would be applicable to it as a non-party.

If this Court determines that Rule 72 applies to HCDA and its failure to timely object to the Order in the district court resulted in waiver, this Court should review for plain error. *See Douglass*, 79 F.3d at 1428–29; *see also Johnson-Williams v. Mortg. Elec. Registration Sys., Inc.*, 675 F. App'x 396, 400 (5th Cir. 2017) (unpublished); *Clark*, 157 F.3d at 902. To establish plain error, HCDA "must show (1) error (2) that is plain and (3) that affects [its] substantial rights." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 675 (5th Cir. 2015). "Even if those three

prongs are satisfied, [this Court has] the discretion to remedy the error but only if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* For the reasons stated below in Argument II(B)–(C), *infra*, HCDA has met its burden.

Finally, if this Court determines that Rule 72(a) applies and HCDA has not demonstrated plain error, it requests that, upon remand, this Court permit HCDA to file objections under Rule 72(a) in the district court and order the district court to accept and rule on those objections.

**5. If this Court determines it does not have appellate jurisdiction under the collateral-order doctrine, it may still review the jurisdiction of the district court.**[4]

"Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). As the Supreme Court has explained "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

[4] This section is responsive to this Court's second briefing question.

"[I]f the record discloses that the lower court was without jurisdiction[,] this court will notice the defect, [even if] the parties make no contention concerning it." *United States v. Corrick*, 298 U.S. 435, 440 (1936) (footnote omitted). If the lower federal court "lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits, but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id.* (footnote omitted).

Additionally, and as this Court has acknowledged, the Supreme Court has consistently held that "there is no mandatory 'sequencing of jurisdictional issues.'" *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping*, 549 U.S. 422, 431 (2007)). A "federal court has considerable leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co.*, 549 U.S. at 431 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). In fact, the Supreme Court has expressly approved of addressing personal jurisdiction before subject-matter jurisdiction, *see Ruhrgas*, 526 U.S. at 584–85, and addressing forum non conveniens before other jurisdictional issues, *see Sinochem*, 549 U.S. at 429.

In *Solomon v. St. Joseph Hospital*, 62 F.4th 54, 59–60 (2d Cir. 2023), the Second Circuit applied these concepts and determined that it could pretermit deciding "whether Defendants' interlocutory appeal [wa]s proper under the collateral-order doctrine" because it had "appellate jurisdiction to determine whether the district court had jurisdiction below." *Id.* (citations omitted). Finding that the district court did not have subject-matter jurisdiction, the Second Circuit vacated the district court's order and remanded with directions to remand this case to state court. *Id.* at 64.

The Second Circuit based its opinion in part on *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 73 (1997) ("*AOE*"). In *AOE*, the Supreme Court stated that, "[e]ven if we were to rule definitively that AOE and Park lack standing, we would have an obligation essentially to search the pleadings on core matters of federal-court adjudicatory authority—to inquire not only into this Court's authority to decide the questions petitioners present, but to consider, also, the authority of the lower courts to proceed." *Id.*

In other words, even if the Supreme Court lacked subject-matter jurisdiction, it still would have jurisdiction to assess the jurisdiction of

the lower federal courts. *See id.* ("When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.") (cleaned up).

Similarly, this Court has plenary jurisdiction to ascertain the district court's subject matter jurisdiction to entertain this habeas suit without first deciding its own jurisdiction. *See Griffin v. Lee*, 621 F.3d 380, 384 (5th Cir. 2010) (even if the district court lacked jurisdiction, "we have jurisdiction on appeal, not on the merits but for the purpose of addressing the lower court's jurisdiction to entertain the suit") (quoting *Corrick*, 298 U.S. 440); *Int'l Ass'n of Machinists & Aerospace Workers Loc. Lodge 2121 v. Goodrich Corp.*, 410 F.3d 204, 211 (5th Cir. 2005) ("Arguably, however, even though we do not have appellate jurisdiction under section 1291, because the order is not final or within the collateral order doctrine, and is not an appealable order under section 1292(a)(1), or under the FAA, we would still have appellate jurisdiction if the district court wholly lacked jurisdiction so that its order was a complete nullity."); *see also Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 189–90 (5th Cir. 1999) ("Our review of the district court's exercise of subject matter

jurisdiction is plenary.")

## II. The magistrate judge abused its discretion when it granted the motion to compel and ordered production of privileged materials.

### A. Standard of Review

This Court reviews discovery orders for abuse of discretion. *Hughes*, 68 F.4th at 235. "The district court's legal conclusions should be reviewed *de novo*, and its factual findings should not be disturbed unless they are clearly erroneous." *Id*.

### B. Under *Armstrong*, the district court's discovery order cannot stand.

*Armstrong* erects an absolute procedural bar to discovery that a litigant must surmount before a court may compel the disclosure of internal prosecutorial files. In this case, Ayestas seeks the production of internal charging memoranda from various "comparator cases" to establish an Equal Protection claim based on alleged selective prosecution. Because Ayestas targets the privileged files of non-party HCDA, HCDA's challenge properly invokes *Armstrong* as a threshold barrier. The *Armstrong* framework is not a flexible test for balancing a litigant's discovery needs against governmental privilege; rather, it is a rigid, mandatory showing that completely forecloses access to

prosecutorial files unless a prima facie case of selective prosecution is established first. Because Ayestas cannot satisfy this threshold burden, the discovery order cannot stand.

A court's consideration of an equal protection-based claim of selective prosecution necessarily begins with a presumption of good faith and constitutional compliance by prosecutors. *Armstrong*, 517 U.S. at 465–66. Before discovery may be ordered on a selective prosecution claim, a defendant must make out a prima facie case. Habeas Rule 6(a). Ayestas must bring forward "some evidence" that HCDA could have sought death against similarly situated individuals but did not. *Armstrong*, 517 U.S. at 465; *United States v. Webster*, 162 F.3d 308, 333–34 (5th Cir. 1998).

Ayestas must also present clear evidence of both discriminatory effect and discriminatory intent. *Armstrong*, 517 U.S. at 465 (citing *United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926)). Discriminatory intent requires proof that the prosecution was done invidiously or in bad faith, and that it rested on such impermissible consideration as race, religion, or the desire to exercise one's constitutional rights. *Webster*, 162 F.3d at 334; *United States v. Sparks*, 2 F.3d 574, 580 (5th Cir. 1993); *United States v. Hoover*, 727 F.2d 387,

389 (5th Cir. 1984).

TDCJ raised similar objections in its discovery disputes with Ayestas in the district court. ROA.2272–78. In response, Ayestas argued that *Armstrong* only involved the availability of discovery to federal criminal defendants under Federal Rule of Civil Procedure 16 rather than to habeas petitioners under Habeas Rule 6. ROA.2291, 3157. No circuit court appears to have limited *Armstrong* to Rule 16, and numerous district courts apply it to Rule 6 discovery. *See e.g.*, *Gabrion v. U.S.*, No. 1:15-CV-447, 2018 WL 4786310, at *93 (W.D. Mich. Oct. 4, 2018) (citing *Armstrong*, 517 U.S. at 468); *United States v. Johnson*, No. 02 C 6998, 2003 WL 1193257, at *12 (N.D. Ill. Mar. 12, 2003); *Johnson v. Outlaw*, 659 F. Supp. 2d 732, 737 (M.D.N.C. 2009); *United States v. Siegelman*, 282 F.R.D. 640, 652 (M.D. Ala. 2012).

Ayestas also argued that *Armstrong* does not apply to claims framed under the Eighth Amendment. ROA.3158. But this interpretation misreads *Armstrong* and undermines the doctrinal coherence of selective-prosecution jurisprudence. *Armstrong*'s reasoning is not limited to Equal Protection claims. It articulated a general standard for discovery in selective-prosecution cases, requiring defendants to produce "some

evidence" of both discriminatory effect and discriminatory intent before obtaining discovery. *Armstrong*, 517 U.S. at 469. The Court emphasized that "[t]he requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *Id.* at 465.

The core concern in *Armstrong* was preventing fishing expeditions into prosecutorial discretion, not the specific constitutional label attached to the claim.[5] If defendants could evade *Armstrong*'s discovery threshold simply by invoking the Eighth Amendment, the standard would become meaningless. Courts would be forced to entertain the same claim under a different label, opening the door to precisely the kind of speculative discovery *Armstrong* sought to prevent.

A significant barrier to discovery is necessary because discovery "imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution"; it diverts governmental resources and discloses prosecutorial strategies. *Armstrong*, 517 U.S. at

[5] *See e.g., Belmontes v. Brown*, 414 F.3d 1094, 1125 (9th Cir. 2005), *rev'd sub nom.*, *Ayers v. Belmontes*, 549 U.S. 7 (2006) (analyzing an Eighth Amendment and Equal Protection Clause claim regarding racially discriminatory charging decisions as a selective prosecution claim); *United States v. Henderson*, 485 F. Supp. 2d 831, 861 (S.D. Ohio 2007) (applying *Armstrong* to selective prosecution claim raised under the Fifth and Eighth Amendments); *United States v. Casey*, No. CR 05-277 (ADC), 2013 WL 12190569, at *2 (D.P.R. Jan. 30, 2013).

468. Thus, the Supreme Court cautioned that, "the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* at 464. Mere statistical evidence of racial disparity usually will be *per se* insufficient to support an inference of any "unacceptable risk" of discrimination in the administration of capital punishment. *McCleskey v. Kemp*, 481 U.S. 279, 292–93 (1987).

Importantly, the *Armstrong* requirement applies to substantially similar materials as those at issue in this case—core work product. In *In re United States*, this Court granted mandamus relief from a trial court order requiring the government to "reveal its capital-charging practices 'inclusive of this case but not this case exclusively[.]'" *Id.* at 285. The order "required the government to allow [the defendant] access to its internal, privileged data concerning its use of its discretion in seeking the death penalty." *Id.* at 281. To do so was clear legal error. *Id.* at 285.

This Court agreed with the government's assertion that the trial court had incorrectly applied *Armstrong* and thus improperly ordered discovery against the government. *Id.* at 283. Specifically, this Court stated:

> [S]haring a charge alone does not make defendant "similarly situated" for purposes of a selective prosecution claim. A much

> stronger showing, and more deliberative analysis, is required before a district judge may permit open-ended discovery into a matter that goes to the core of a prosecutor's function and implicates serious separation of powers concerns.

*Id.* at 285. Even *in camera* review of documents over which the government asserted privilege would be inappropriate and "could engender various privilege claims, and as a precedent, could be subject to abuse in this and in future cases." *Id.* at 286.

### C. The materials at issue are work product and thus protected from disclosure.

Even assuming that Ayestas is entitled to discovery under *Armstrong*, the magistrate judge abused its discretion in granting the motion to compel because Ayestas is not entitled to discovery of core opinion work product related to his (or any other) case prosecuted by HCDA.

It is axiomatic that the prosecution holds the same work-product protection as criminal defendants. *Nobles*, 422 U.S. at 238 ("The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.").

As such, HCDA asserted that the work product privilege applied to the charging memoranda and to the work product contained within its criminal case file. *See Atchison v. City of Tulsa,* 344 F.R.D. 28, 31 (N.D. Okla. 2023) (a non-party may assert the work product privilege). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigant in our adversary system." *Nobles*, 442 U.S. at 240.

#### 1. The capital murder summaries at issue, and some withheld case file materials, are opinion work product.

Tangible materials that contain the mental impressions, conclusions, opinions, or legal theories of a party's attorney or representative are known as opinion work product. *In re Int'l Sys. & Controls*, 693 F.2d at 1240. It "is the most sacrosanct of all forms of work product." *In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d. Cir. 1979).

As such, opinion work product is afforded an almost absolute protection from discovery. *In re Int'l Sys. & Controls*, 693 F.2d at 1240

(noting that "some courts have provided an almost absolute protection for such materials") (citations omitted); *see also In re Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994) (quoting *In re Murphy*, 560 F.2d 326,336 (8th Cir. 1977)); *Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) (deeming opinion work product "virtually undiscoverable").

Generally, to overcome the work product privilege a person must establish both a substantial need for the information, and that seeking the information through other means would cause undue hardship. *See, e.g.*, FED. R. CIV. P. 26(b)(3); *Hickman* 329 U.S. at 512–13 (party must show that production of the material is not merely relevant, but also necessary). But given its importance, even that showing does not suffice when considering opinion work product. *See, e.g.*, *Hickman*, 329 U.S. at 510; *Williamson v. Moore*, 221 F.3d 1177, 1182 (11th Cir. 2000) (noting in dispute under Rule 16(a)(2) that "opinion work product enjoys almost absolute immunity" from discovery).

The magistrate judge's order compels production of over 400 prosecutor prepared memoranda, which outline prosecutors' opinions,

mental impressions, and charging decisions to the elected District Attorney in their most critical cases. The Order also compels production of the opinion work product maintained in HCDA's case file relating to Ayestas's criminal prosecution (*e.g.*, prosecutorial strategy notes, memoranda, and witness interviews). These materials are opinion work product. *See In re Int'l Sys. & Controls*, 693 F.2d at 1240; *United Kingdom v. United States*, 238 F.3d 1312, 1322 (11th Cir. 2001) ("opinion" work product, such as internal memoranda, reflects an attorney's mental impressions); *see also Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006) (a deputy district attorney's disposition memorandum was work product); *Emery v. United States Dep't of Just.*, 639 F. Supp. 3d 87, 101 (D.D.C. 2022) (an AUSA's memorandum analyzing the facts of a case and making recommendations with regard to its prosecution was privileged attorney work product).

Ayestas has not met his burden to overcome opinion work-product protection, which can be discovered only in very rare and extraordinary circumstances. *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977). Ayestas identifies hundreds of cases as his "best efforts to identify a tranche of comparator cases." ROA.2994. He also states that the identified cases

constitute "defendants who were either coded or modeled to be noncitizens, nonwhite, or foreign born, and who were convicted for killing a victim was either female or non-white (including unknowns)." ROA.2995. The Order found that these materials are "relevant and proportional to the needs of the case." ROA.3175.

But Ayestas's request far exceeds the scope of comparator cases. Moreover, the timeframe in which these memoranda were created span more than a decade before and after the criminal prosecution at issue. Ayestas has not made a showing of the high necessity required to traipse through HCDA's work product on the scale contemplated by the Order.

The lower court nevertheless concluded that Ayestas had met a "compelling need" standard not only because Ayestas alleged prosecutorial misconduct but because the requested "victim and perpetrator statistics" are "highly relevant and important" to his claim. ROA.3178. But this mischaracterizes the scope of Ayestas's request. He is not merely seeking "statistics;" he is demanding access to charging memoranda that reveal the District Attorney's internal reasoning and punishment recommendations across a broad swath of unrelated prosecutions.

Permitting such discovery would eviscerate the protections afforded to opinion work product. The work-product doctrine—especially as it applies to opinion work product—exists to protect precisely this kind of internal legal analysis from disclosure. Ayestas's request far exceeds what the law permits, and the privilege must be upheld.

**2. The work product privilege survives the litigation for which it was prepared.**

Other Circuit Courts have held that the work product privilege extends to subsequent litigation, regardless of whether the litigation is related or not. *See, e.g.*, *Republic Gear Co. v. Borg–Warner Corp.*, 381 F.2d 551, 557 (2d Cir. 1967); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484–85 & n.15 (4th Cir. 1973); *Frontier Refining, Inc. v. Gorman Rupp–Co., Inc.*, 136 F.3d 695, 703 (10th Cir. 1998); *Murphy*, 560 F.2d at 335.

Although this Court has never expressly held that the privilege extends to subsequent litigation, it has recognized that the "broader" view[6] appears to be that the doctrine applies to all subsequent litigation, related or not. *In re Grand Jury Proceedings*, 43 F.3d at 971. It is

[6] *See In re Murphy,* 560 F.2d at 335; *Duplan Corp.,* 487 F.2d at 484–85 & n.15; *cf. United States v. Leggett & Platt, Inc.,* 542 F.2d 655, 660 (6th Cir. 1976).

immaterial that the litigation for which the document was prepared has concluded or that it is now sought in a separate proceeding. *Id.*

HCDA's assertion of privilege stems from the protections afforded by Federal Rule of Civil Procedure 45(d)(3)(A) and common law. Instructive on this issue is *Atchison,* which addressed records subpoenaed from the Tulsa County District Attorney's Office ("TCDA"), who was not a party to the suit. 344 F.R.D. at 30. The records sought were part of the prosecutor's criminal case file for Atchison's own prior prosecution, including prosecutorial work product. *Id.* TCDA withheld its opinion work product. *Id.* Atchison, like Ayestas, argued that work product protections are not available to non-parties and that he had shown a substantial need that would overcome any privilege. *Id.*

The court held that the work product protection of *Hickman* was broader than Rule 26 (which applies only to parties)[7] and operates independently to shield non-party work product. *Id.* at 30–31. It recognized that Rule 26 merely codified a portion of the common law and did not supplant the foundational principles of *Hickman*—the common-

[7] Rule 26(b)(3) applies to parties in the litigation. FED. R. CIV. P. 26(b)(3)(A). HCDA is not a party to this litigation and the materials at issue were not prepared for this case.

law framework survived to shield non-parties alongside the text of the rule itself. *Id*. at 34 (citing *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003)). "This finding avoids the 'intolerable' result caused by a narrow confinement of work product protection to the parties in a litigation." *Id.* at 34 (citing 8 FED. PRAC. & PROC. § 2024).

The primary purpose of the protection is preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases. *In re Nw. Senior Hous. Corp.*, 661 B.R. 345, 360 (Bankr. N.D. Tex. 2024) (citing *Hickman*, 329 U.S. at 511 ("Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.")). As such, an attorney's opinion work product, the type of information highlighted by the Court in *Hickman*, is "entitled to the most protection." *Atchison*, 344 F.R.D. at 35 (recognizing that district attorney's offices are the "quintessential 'repeat player' whose most basic practices would be affected by the threat of its attorneys' trial preparation strategies being subject to discovery in a subsequent action.")

The magistrate judge rejected this argument because "prosecutor

misconduct 'constitutes the heart of the issues' in [Ayestas]'s case." ROA.3177–78.[8] But the magistrate judge's order did not merely compel disclosure of the work product contained in the prosecution file for Ayestas. Instead, it stands for a far broader proposition: that an allegation of misconduct in a single case is sufficient to override the work-product privilege protecting the internal charging memoranda of hundreds of unrelated prosecutions. In effect, the decision authorizes a sweeping fishing expedition through a vast collection of core opinion work product.

The implication is troubling. If upheld, this reasoning would render HCDA's work-product privilege vulnerable in virtually any civil case—regardless of whether HCDA is a party—so long as the plaintiff alleges misconduct. Such a precedent would severely dilute the privilege, reducing it to a near-nullity and exposing sensitive prosecutorial deliberations to routine civil discovery.

[8] HCDA does not concede prosecutorial misconduct occurred in the underlying criminal prosecution of Ayestas.

## III. The district court lacked jurisdiction to reopen discovery because Ayestas's Rule 59(e) and Rule 60(b) motions were unauthorized second or successive petitions.[9]

### A. Standard of Review

This Court reviews a district court's determination of its jurisdiction de novo. *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000). "[T]he Courts of Appeals have a continuing duty to inquire into the basis of jurisdiction in the district court and to satisfy themselves that the district court properly had jurisdiction to entertain an action." *Warren G. Kleban Eng'g Corp. v. Caldwell*, 490 F.2d 800, 802 n.1 (5th Cir.1974) (citing *Mitchel,* 293 U.S. at 244).

Upon determination that the trial court was without jurisdiction to entertain the suit, this Court's function is limited to vacating the judgment below with directions that the case be remanded to the lower court for disposition. *Caldwell*, 490 F.2d at 803 n.2 (citing *Corrick*, 298 U.S. at 440).

### B. The introduction of new legal claims outside the strict deadline forfeits Rule 59(e) status and constitutes a successive petition.

AEDPA strictly limits federal habeas review: once a final judgment

[9] This section is responsive to this Court's first briefing question.

is entered, a state prisoner has "one chance" at federal habeas relief. *Banister*, 590 U.S. at 521. But Ayestas filed two such unauthorized successive motions. In 2015, he submitted a "supplemental" Rule 59(e) motion and a post-judgment motion to amend, adding new claims. ROA.1148, 1159. The district court correctly rejected these filings as unauthorized successive petitions under the AEDPA, ROA.1238, 1243, and this Court affirmed. *Ayestas*, 817 F.3d at 901. Then, in 2021, Ayestes filed a Rule 60(b) motion aimed at clearing procedural hurdles for those claims by invoking *Banister* and asserting a purported defect in the integrity of the habeas proceedings. ROA.1565–73.

Each filing had the same impermissible purpose: to inject new grounds for relief after judgment. AEDPA unequivocally forbids that tactic, and absent prior authorization from this Court, the district court had no jurisdiction to consider those claims—much less reopen proceedings and order extensive discovery. *See* 28 U.S.C. § 2244(b)(4); *Burton v. Stewart*, 549 U.S. 147, 152 (2007); *In re Edwards*, 865 F.3d 197, 203–05 (5th Cir. 2017); *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

The district court misapplied *Banister* by allowing a petitioner to utilize post-judgment motions to inject entirely new constitutional

grounds for relief years after a final judgment. *Banister* carved out a narrow, protective safe harbor holding that a timely effort to seek reconsideration of matters encompassed in the judgment is not a second-or-successive petition. *Banister*, 590 U.S. at 516, 517–20; *see also Demahy v. Schwarz Pharma.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012). However, that holding is explicitly grounded in the rigid procedural boundaries of Federal Rule of Civil Procedure 59(e), which requires a motion to be filed within a twenty-eight-day window and limits the court to a backward-looking re-examination of matters already encompassed within the existing judgment. *Id.*

Ayestas's 2015 "supplemental" Rule 59(e) motion failed both requirements. Ayestas did not seek a re-examination of the initial trial-counsel claims; instead, he sought to litigate an entirely new, forward-looking Equal Protection claim. ROA.1148. More critically, these new claims were not introduced until after the twenty-eight-day jurisdictional window had closed.

While a brand-new habeas claim brought within the strict twenty-eight-day window presents an unaddressed question of law under *Banister*, a claim introduced outside that window cannot wear the mask

of a Rule 59(e) motion. Under standard circuit precedent, any post-judgment filing that introduces new grounds for relief past the twenty-eight-day deadline must be evaluated as a Rule 60(b) motion and, consequently, be treated as a successive petition subject to AEDPA's appellate gatekeeping mechanism. *Gonzalez*, 545 U.S. at 531–32; *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004).

Even if the court could retroactively resurrect the 2015 Rule 59(e) motion, *Banister* still commands its dismissal. A proper Rule 59(e) motion is inherently "backward-looking" and "cannot be used to raise arguments or evidence that could have been presented before judgment." *Banister*, 590 U.S. at 516. It "will not entertain arguments that could have been but were not raised before the just-issued decision." *Id.*

The idea that *Banister* and *Rivers v. Guerrero*, 605 U.S. 443 (2025), can be combined to suspend finality indefinitely is a severe distortion of federal habeas architecture. *Banister* holds that a timely Rule 59(e) motion is a part of the baseline trial-court proceedings, meaning that it suspends the finality of the judgment for purposes of appeal. 590 U.S. at 508, 517. It is erroneous to extend this logic to mean that the presence of *any* pending, timely Rule 59(e) motion completely dissolves the finality

of the underlying judgment itself, making the active docket a free-for-all where a petitioner can continually add new claims *ad infinitum* so long as the original motion remains undecided.

This reading would establish a deeply harmful template for habeas practice. If a timely "placeholder" Rule 59(e) motion functions as a jurisdictional master key, death row petitioners would be actively incentivized to file a minimal motion within twenty-eight days of a loss, wait out the clock, and later conduct new investigations to harvest new evidence for future supplemental claims. As the Supreme Court warned in *Rivers*, if petitioners were permitted to continually inject new claims while post-judgment actions are processed, "a petitioner could file any number of new applications . . . thereby prolonging the case seemingly indefinitely." 605 U.S. at 455.

Both this Court and the Texas Court of Criminal Appeals have already held that Ayestas failed to exercise reasonable diligence in discovering these claims. *Ayestas*, 817 F.3d at 901; *Ex parte Ayestas*, No. WR-69,674-02, 2020 WL 7234477, at *1 (Tex. Crim. App. Dec. 9, 2020). Ayestas was dilatory in presenting evidence of diligence and did not overcome the state court's and this Court's prior diligence findings.

Ayestas's lack of diligence weighs heavily against extending the rationale of *Banister*.

The idea that *Banister* allows new claims to be bootstrapped to a pending Rule 59(e) motion via motions filed outside the twenty-eight-day window is contrary to AEDPA and Supreme Court precedent. This precise form of piece-meal, serial litigation is what AEDPA seeks to uproot. Because the 2015 supplement introduced new legal claims outside the statutory window, it was a successive application that the district court had no power to entertain.

### C. The Rule 60(b) motion was an impermissible effort to circumvent the merits bar and failed to present extraordinary circumstances.

The district court similarly misconstrued *Gonzalez v. Crosby*, 545 U.S. 524 (2005), by treating the 2021 Rule 60(b) motion as a permissible attack on a "procedural defect" in the integrity of the prior habeas proceedings. Under *Gonzalez*, a Rule 60(b) motion escapes the successiveness bar only if it targets a localized flaw in how the federal court processed the initial petition—such as an erroneous statute-of-limitations dismissal. *Gonzalez*, 545 U.S. at 533. A motion does not attack a procedural defect when its underlying, singular purpose is to clear away

old procedural rulings solely to force an adjudication on the merits of unauthorized claims.

The 2021 motion sought to utilize *Banister*, an intervening change in decisional law, to reopen a long-closed 2015 successiveness ruling. Because the ultimate object of the motion was to compel the district court to accept new substantive grounds for relief, it was substantively a successive application under *Gonzalez*, contrary to the Supreme Court's clear directive that Rule 60(b) cannot be employed to advance new claims. *See Edwards*, 865 F.3d at 203–05.

The district court attempted to bypass this rule by manufacturing a "time-machine" illusion, using the 2021 Rule 60(b) motion to retroactively recreate the pre-appeal safe harbor of *Banister*. In the district court's view, undoing the denial of the 2015 motion meant the Rule 59(e) motion was "pending" again, thereby dissolving the finality of the underlying judgment.

But a district court cannot use a Rule 60(b) motion to erase history. Once a Rule 59(e) motion is denied and the case leaves the district court, that specific *Banister* window is permanently closed. The statute is unequivocal: absent prior authorization from this Court, the district

court had no jurisdiction to consider those claims—much less reopen proceedings and order extensive discovery. 28 U.S.C. § 2244(b)(4); *Burton*, 549 U.S. at 152.

Even if the Rule 60(b) motion were procedurally proper to clear the threshold successiveness hurdle, the district court abused its discretion by finding that a change in decisional law constituted an "extraordinary circumstance" warranting relief under Rule 60(b)(6). A mere change in decisional law does not suffice to disturb the finality of an entered judgment. *Crutsinger v. Davis*, 936 F.3d 265, 270 (5th Cir. 2019); *Gonzalez*, 545 U.S. at 536. Without such circumstances, reopening judgment was an abuse of discretion.

Federal law guarantees finality in habeas proceedings. Ayestas's Rule 60(b) motion should have been dismissed as successive or denied outright, and his amended petition—filed without appellate authorization—was jurisdictionally barred. By reopening judgment and granting discovery, the district court disregarded the AEDPA's strict limits and abused its discretion subjecting HCDA to a massive, multi-decade discovery fishing expedition. *See Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 470 (5th Cir. 2023).

## IV. Alternatively, this Court can resolve this appeal in other manners.

### A. Standard of Review

"The supervisory power of the appellate courts has long been established." *United States v. Hammond*, 605 F.2d 862, 864 (5th Cir. 1979) (citing *McNabb v. United States*, 318 U.S. 332, 340–41 (1942); *Thomas v. United States*, 368 F.2d 941, 947 (5th Cir. 1966)). "The variety of situations in which [the supervisory power] has been invoked defies any attempt to [define] which is at once comprehensive and accurate . . . The sole common denominator . . . is a desire to maintain and develop standards of fair play in the federal courts . . . ." *United States v. Castillo-Rivera*, 853 F.3d 218, 234 (5th Cir. 2017) (Smith, J., dissenting) (citation omitted); *see Hammond*, 605 F.2d at 864 ("The supervisory power gives the appellate courts latitude to fashion remedies such as we have devised in the present case."). "When sitting en banc, the court has authority to overrule a prior panel opinion, whether in the same case or in a different case." *Cottier v. City of Martin*, 604 F.3d 553, 556 (8th Cir. 2010) (en banc).

### B. This Court may treat HCDA's appeal as a request for mandamus relief.[10]

#### 1. This Court has jurisdiction to treat HCDA's appeal as a request for mandamus relief.

This Court can, in its discretion, treat this appeal as a request for mandamus relief. *See Leonard*, 38 F.4th at 488 n.4 (although "Turnipseed did not formally seek a writ of mandamus under Federal Rule of Appellate Procedure 21, this court may, in its discretion, treat an appeal as a petition for a writ of mandamus") (citing *In re Deepwater Horizon*, 793 F.3d 479, 491 n.12 (5th Cir. 2015); *In re Grand Jury Subpoena*, 190 F.3d 375, 389 n.16 (5th Cir. 1999)).

#### 2. The requirements for mandamus are met.

A writ of mandamus is proper when the petitioner's "right to issuance of the writ is clear and indisputable," and he "ha[s] no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004). The Court "in the exercise of its discretion" must also be "satisfied that the writ is appropriate under the circumstances." *Id.* at 381.

[10] This section is responsive to this Court's third briefing question.

**a. HCDA has a clear right to relief.**

HCDA has a clear right to relief for three reasons. *First*, the district court lacked jurisdiction because Ayestas's motion to reopen the proceedings was a disguised second-or-successive petition under AEDPA, and even if it was proper, the district court erred when it granted Rule 60(b) relief. *See* Argument III, *supra.*

*Second*, the district court could not grant merits-based discovery when, as multiple courts have determined, Ayestas failed to diligently develop the factual basis of his claims, and he therefore cannot surmount AEDPA's numerous other procedural hurdles, including the statute of limitations, procedural default, and 28 U.S.C. § 2254(e)(2). *See* Argument II, *supra.*

*Third*, the district court's discovery orders violate *Armstrong* because Ayestas conceded he could not meet its comparator requirement without discovery, and he could not meet it even if he tried because HCDA declined to pursue the death penalty against his two co-defendants of the exact same citizenship status, national origin, and race. ROA.8092. But even if *Armstrong* is not a bar to discovery, the materials at issue are protected by work-product privilege. *See* Argument II, *supra.*

**b. HCDA has no other adequate means to obtain relief.**

Mandamus is an "extraordinary remedy [reserved] for special situations where the unlawful exercise of federal jurisdiction imposes extraordinary harms" and there is no other means of relief. *In re Gee*, 941 F.3d 153, 166 (5th Cir. 2019). One such situation is where the district court's error intrudes on state sovereignty. *See id.* at 167–68. Another is where it imposes litigation burdens beyond those ordinarily attending an erroneous failure to dismiss. *See id.* These special circumstances exist here.

The district court's errors intrude on an issue of state sovereignty. "Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993). Federal habeas "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Disregarding barriers to federal-habeas relief—like § 2244(b)—imposes "substantial costs" on the states and interferes with

the “finality, comity, and the orderly administration of justice.” *Shinn v. Ramirez*, 596 U.S. 366, 379 (2022) (citation omitted).

These harms are particularly acute in this case given the passage of many years and this Court’s prior rejection of the very same claims. *See Ayestas*, 817 F.3d at 901. Allowing him to litigate those claims now, over almost three decades after his trial, “pos[es] the most daunting difficulties for the prosecution.” *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012) (discussing retrial); *see also Edwards v. Vannoy*, 593 U.S. 255, 263 (2021) (“When previously convicted perpetrators of violent crimes go free merely because the evidence needed to conduct a retrial has become stale or is no longer available, the public suffers, as do the victims”) (citation omitted). The district court’s order threatens a “profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike.” *Ramirez*, 596 U.S. at 377 (citation omitted).

Moreover, ordering extensive discovery “aggravate[s] the harm to federalism that federal habeas review necessarily causes” because it introduces potentially years of additional delay in the execution of Ayestas’s sentence. *Davila v. Davis*, 582 U.S. 521, 523 (2017). Yet the

district court has authorized Ayestas to pursue extensive discovery into his new memorandum-based claims, which includes thirty years of HCDA's work product.

Finally, there is no other means of relief. HCDA is a non-party to the underlying case. This distinction is critical. Unlike parties, non-parties cannot avail themselves of Rule 72. *See* Argument I(E), *supra*. But even if they could, non-parties still would need this Court to grant jurisdiction under the collateral-order doctrine to obtain appellate review. Nor can non-parties appeal from a final judgment in the underlying litigation. Moreover, relying on contempt for possible appellate review is uncertain due to the burdens and risks—such as professional consequences—of violating a court order to obtain appellate review via contempt. *See Leonard*, 38 F.4th at 492–93 (Haynes, J., dissenting).

**c. Mandamus is appropriate under the circumstances.**

The Court should exercise that discretion in this case. "The clearest traditional office of mandamus and prohibition has been to control jurisdictional excesses, whether the lower court has acted without power[.]" *In re Gee*, 941 F.3d at 158. Accepting Ayestas's unauthorized

second-or-successive habeas application, particularly where AEDPA would bar authorization in the first place, is just such an excess. *See Thaler*, 565 U.S. at 142.

Mandamus is particularly appropriate where the error occurred in an area of the law governed by well-settled standards. *In re Paxton*, 60 F.4th 252, 260 (5th Cir. 2023). This Court has already held that Ayestas was not diligent. TDCJ repeatedly identified the jurisdictional defect, but the district court refused to dismiss. Worse still, it authorized extensive merits-based discovery spanning thirty years, violating AEDPA's numerous other procedural hurdles, including the statute of limitations, procedural default, and § 2254(e)(2). Ayestas's claims embody the serial habeas litigation that AEDPA abjures. Because the district court's errors are clear and the HCDA has no other remedy, this Court should issue a writ of mandamus requiring the district court to vacate its order authorizing discovery

### B. This Court can reconsider the denial of TDCJ's mandamus petition.[11]

This Court can and should exercise its supervisory authority here

[11] This section is responsive to this Court's fifth briefing question.

and revisit the prior panel's denial of TDCJ's mandamus petition in *In re Bobby Lumpkin*, No. 23-20169. *See Irving v. United States*, 162 F.3d 154, 161 (1st Cir. 1998) (en banc) ("The authority to overrule the decision of a prior panel in the same case flows logically from the error-correcting function of the full court."). As explained Argument III, *supra*, the district court lacks jurisdiction over the proceedings because Ayestas filed an unauthorized second-or-successive habeas application. As such, the prior panel erred when denying TDCJ's petition for mandamus, and this en banc Court should correct that erroneous denial.

The fact that TDCJ is not a party to this appeal is of no import; it is a party in the district court proceedings. But even if it were not, an en banc court can overrule or modify the holdings of any panel. *See Castillo-Rivera*, 853 F.3d at 233; *see, e.g.*, *United States v. Reyes-Contreras*, 910 F.3d 169, 187 (5th Cir. 2018) (en banc) (overruling, in whole or in part, 18 en banc or panel opinions), *abrogated by Borden v. United States*, 593 U.S. 420 (2021).

The law of the case doctrine does not preclude the en banc Court's re-consideration of the prior panel's decision. "The law of the case doctrine 'expresses the practice of courts generally to refuse to reopen

what has been decided,' but it is 'not a limit to their power.'" *Cottier*, 604 F.3d at 556 (quoting *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). This "[C]ourt sitting en banc may overrule or abrogate a panel's decision if the en banc court concludes that panel opinion's holding was indeed flawed." *Planned Parenthood of Greater Texas Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 369 (5th Cir. 2020).

And even if the doctrine applied, that the prior panel denied the petition for mandamus "is not controlling, because the decision to deny [the petition] is a pure exercise of discretion. It is not a ruling on the merits." *Cottier*, 604 F.3d at 556. The denial merely signals that, at that time, the panel believed that the petition did not qualify under the stringent requirements of mandamus, nothing more.

### C. This Court can hold that the subpoena issued to HCDA should have been quashed on the grounds that it is inconsistent with 28 U.S.C. § 2254(e)(2).[12]

This Court also can hold that the subpoena issued to HCDA should have been quashed on the ground that it is inconsistent with 28 U.S.C. § 2254(e)(2).[13] Again, it is "well settled that the Courts of Appeals . . .

---

[12] This section is responsive to this Court's fourth briefing question.

[13] As stated in Argument II(B) *supra*, the district court's grant of discovery under Habeas Rule 6 also is inconsistent with 28 U.S.C. § 2254(e)(2)

have such supervisory control of the district courts as is necessary to 'the administration of criminal justice in the federal courts.'" *Thomas v. United States*, 368 F.2d 941, 947 (5th Cir. 1966).

As argued above, the district court indisputably erred in authorizing merits-based discovery because Ayestas's claims cannot be authorized under § 2244(b). Moreover, any evidence he might uncover has never been properly presented in state court, so it is inadmissible under § 2254(e)(2). TDCJ objected to the district court's grant of merits-based discovery on these (and other) grounds, but the district court overruled them with little explanation. ROA.2328 (stating all TDCJ's objections "have been addressed"). TDCJ also raised this argument in its petition for mandamus. When HCDA was subpoenaed, it also argued that Ayestas did not meet the threshold for discovery. ROA.3097–01. As such, this Court can and should quash the subpoena issued to HCDA on the grounds that it is inconsistent with § 2254(e)(2).

## PRAYER

For these reasons, the Harris County District Attorney's Office respectfully requests that this Court reverse the decision of the lower court to compel production of its privileged materials.

Respectfully submitted,

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Tel: (713) 274-5816

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been electronically served via the Court's ECF system in compliance with Federal Rules of Appellate Procedure 25(b) and (c), on July 30, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitations set by this Court in the letter to the parties dated July 10, 2026:

- Exclusive of the exempted portions in FED. R. APP. P. 32(f) and 5th CIR. R. 32.2, this brief contains 14,902 words.

The undersigned certifies that this brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5th CIR. R. 32.1, and the type requirements of FED. R. APP. P. 32(a)(6):

- This brief has been prepared in proportionally spaced typeface using Microsoft Word in Century Schoolbook font, with 14 point font for text and 12-point font for footnotes.

The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits, may result in the Court's striking the brief and imposing sanctions.

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**
**Counsel for Respondent - Appellant**
**Harris County District Attorney's Office**

Date: July 30, 2026