No. 25-70014

# In the United States Court of Appeals for the Fifth Circuit

Carlos Manuel Ayestas,
also known as Dennis Zelaya Corea,
Petitioner–Appellee,

v.

Harris County District Attorney's Office,
Defendant–Appellant.

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division

## OPPOSED MOTION FOR LEAVE TO FILE AMICUS BRIEF IN SUPPORT OF APPELLANT

The Texas Department of Criminal Justice respectfully requests leave to file the attached amicus brief in support of Appellant Harris County. Harris County does not oppose this motion. Appellee Carlos Ayestas opposes this motion but does not presently intend to file a response.

As the respondent in the underlying habeas proceeding, TDCJ has an interest in the outcome of this appeal, particularly with respect to the panel's holding that the district court lacks jurisdiction to consider the merits of Ayestas's new claims. TDCJ filed an amicus brief and participated in oral argument at the panel stage.

TDCJ previously sought mandamus relief from this Court in an original proceeding that substantially overlapped with this appeal. *See* Dkt 63-1, *In re*

*Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023). This Court has asked the parties to address whether the en banc Court may reconsider the panel's decision in that prior proceeding, and TDCJ has a particular interest in the adjudication of that issue.

In addition to its interest in this case, TDCJ has a general interest in ensuring that federal courts comply with AEDPA's procedures and a corresponding interest in preserving the intended function of federal habeas corpus as a "guard against extreme malfunctions" rather than "a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). As the custodian of felony inmates in Texas, TDCJ routinely appears as the respondent in habeas proceedings and has a particular interest in the correct application of AEDPA's procedural rules.

The proposed amicus brief addresses several issues on which this Court requested supplemental briefing. Dkt. 130. The amicus brief explains that Ayestas's Rule 60(b) motion constitutes a second or successive application requiring authorization under 28 U.S.C. § 2244(b)(2). The same is true of Ayestas's filing in January 2015, which sought to raise new claims outside the 28-day deadline of Rule 59(e). The amicus brief also discusses the process by which the en banc Court could reconsider the panel's denial of TDCJ's mandamus petition. Particularly as the respondent below, TDCJ's perspective on these issues will be helpful to this Court.

In addition, the proposed amicus brief discusses other errors in the discovery order, including Ayestas's failure to satisfy the requirements of Rule 60(b)(6), the

bar on discovery under 28 U.S.C. § 2254(e)(2), and the limits on discovery placed by *United States v. Armstrong*, 517 U.S. 456 (1996).

## Conclusion

For the foregoing reasons, TDCJ requests leave to file the attached brief of amicus curiae in support of Appellant Harris County.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

/s/ William R. Peterson
William R. Peterson
Solicitor General
William.Peterson@oag.texas.gov

William F. Cole
Principal Deputy Solicitor General

Benjamin Wallace Mendelson
Deputy Solicitor General

Gwendolyn Vindell
Assistant Attorney General

*Counsel for the Texas Department of Criminal Justice*

## Certificate of Conference

On August 3, 2026, counsel for TDCJ conferenced with Meagan Scott, counsel for Appellant, and Lee Kovarsky, counsel for Appellee, regarding this motion. Appellant does not oppose this motion. Appellee opposes this motion but does not presently intend to file a response.

/s/ William R. Peterson
William R. Peterson

## Certificate of Compliance

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 418 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface and type-style requirements of Rules 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ William R. Peterson
William R. Peterson

No. 25-70014

# In the United States Court of Appeals for the Fifth Circuit

Carlos Manuel Ayestas,
also known as Dennis Zelaya Corea,
Petitioner–Appellee,

v.

Harris County District Attorney's Office,
Defendant–Appellant.

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division

## BRIEF FOR THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE AS AMICUS CURIAE IN SUPPORT OF APPELLANT URGING REVERSAL

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General
William.Peterson@oag.texas.gov

William F. Cole
Principal Deputy Solicitor General

Benjamin Wallace Mendelson
Deputy Solicitor General

Gwendolyn Vindell
Assistant Attorney General

*Counsel for the Texas Department of Criminal Justice*

## Certificate of Interested Persons

No. 25-70014

Carlos Manuel Ayestas,
also known as Dennis Zelaya Corea,
Petitioner–Appellee,

v.

Harris County District Attorney's Office,
Defendant–Appellant.

Under the fourth sentence of Fifth Circuit Rule 28.2.1, the Texas Department of Criminal Justice, as a governmental party, need not furnish a certificate of interested persons.

/s/ William R. Peterson
William R. Peterson
*Counsel of Record for the*
*Texas Department of Criminal Justice*

# Table of Contents

Page

Certificate of Interested Persons .......... i
Table of Authorities .......... iii
Interest of Amicus Curiae .......... 1
Introduction .......... 2
Argument of Amicus Curiae .......... 3
I. The District Court Lacked Jurisdiction to Order Discovery on the Merits of Ayestas's New Claims. .......... 3
A. Ayestas's January 2015 filing was a second or successive application. .......... 3
B. Ayestas's February 2021 filing was a second or successive application. .......... 8
II. Even If the District Court Had Jurisdiction to Consider the Rule 60(b)(6) Motion, It Erred in Ordering Discovery. .......... 11
A. If it had jurisdiction, the district court should have denied the Rule 60(b)(6) motion. .......... 11
B. AEDPA bars the district court's discovery order because Ayestas was not diligent in developing his claims. .......... 13
C. The district court's grant of discovery violated *Armstrong*. .......... 15
III. This Court Could Reconsider Its Denial of TDCJ's Mandamus Petition in *In re Lumpkin*. .......... 19
Conclusion and Prayer .......... 25
Certificate of Compliance .......... 26

# Table of Authorities

Page(s)

**Cases:**

*Am. Iron & Steel Inst. v. E.P.A.*,
560 F.2d 589 (3d Cir. 1977) ........ 20

*Ayestas v. Davis*,
584 U.S. 28 (2018) ........ 13

*Ayestas v. Stephens*,
817 F.3d 888 (5th Cir. 2016) ........ 13, 14, 15, 16

*Banister v. Davis*,
590 U.S. 504 (2020) ........ 4, 5, 6, 7, 8, 11, 12, 23

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) ........ 11

*Burton v. Stewart*,
549 U.S. 147 (2007) ........ 2, 3

*Calderon v. Thompson*,
523 U.S. 538 (1998) ........ 20, 22

*Chery v. Bowman*,
901 F.2d 1053 (11th Cir. 1990) ........ 6

*Comm. for First Amend. v. Campbell*,
962 F.2d 1517 (10th Cir. 1992) ........ 6

*Cottier v. City of Martin*,
604 F.3d 553 (8th Cir. 2010) ........ 19

*Dean v. City of Bay City*,
239 F. App'x 107 (6th Cir. 2007) ........ 8

*Demahy v. Schwarz Pharma, Inc.*,
702 F.3d 177 (5th Cir. 2012) ........ 4

*Dennis v. Sparks*,
449 U.S. 24 (1980) ........ 20

*Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*,
693 F.3d 1195 (10th Cir. 2012) ........ 5

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ........ 7

*Feldberg v. Quechee Lakes Corp.*,
463 F.3d 195 (2d Cir. 2006) ........ 5

*Fernandez v. United States*,
146 S. Ct. 1292 (2026) .......... 8
*Frew v. Young*,
992 F.3d 391 (5th Cir. 2021) .......... 4
*Gleash v. Yuswak*,
308 F.3d 758 (7th Cir. 2002) .......... 7
*Gonzalez v. Crosby*,
545 U.S. 524 (2005) .......... 2, 3, 4, 8, 9, 10, 11, 12, 23
*Halicki v. La. Casino Cruises, Inc.*,
151 F.3d 465 (5th Cir. 1998) .......... 4
*Harrington v. Richter*,
562 U.S. 86 (2011) .......... 23
*Ins. Co. of N. Am. v. Bd. of Comm'rs of Port of New Orleans*,
524 F. App'x 103 (5th Cir. 2013) .......... 21
*Meredith v. Fair*,
306 F.2d 374 (5th Cir. 1962) .......... 20, 22
*Nat'l Sur. Corp. v. Charles Carter & Co.*,
621 F.2d 739 (5th Cir. 1980) .......... 22
*Nevius v. Sumner*,
105 F.3d 453 (9th Cir. 1996) .......... 21, 22
*Nobby Lobby, Inc. v. City of Dallas*,
970 F.2d 82 (5th Cir. 1992) .......... 5
*Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*,
981 F.3d 347 (5th Cir. 2020) .......... 19
*Rivers v. Guerrero*,
605 U.S. 443 (2025) .......... 3, 10
*Sargent v. Columbia Forest Prods., Inc.*,
75 F.3d 86 (2d Cir. 1996) .......... 21
*Shimman v. Int'l Union of Operating Eng'rs, Loc. 18*,
744 F.2d 1226 (6th Cir. 1984) .......... 19
*Shinn v. Ramirez*,
596 U.S. 366 (2022) .......... 13, 23
*Shoop v. Twyford*,
596 U.S. 811 (2022) .......... 13, 14, 15, 23

*Sparks v. Duval Cnty. Ranch Co.*,
604 F.2d 976 (5th Cir. 1979) .......... 20
*In re Transtexas Gas Corp.*,
303 F.3d 571 (5th Cir. 2002) .......... 7
*In re United States*,
397 F.3d 274 (5th Cir. 2005) .......... 18
*United States v. Armstrong*,
517 U.S. 456 (1996) .......... 2, 15, 16, 17, 18
*United States v. Bass*,
536 U.S. 862 (2002) .......... 18
*United States v. Fuentes*,
822 F. App'x 303 (5th Cir. 2020) .......... 24
*United States v. Tolliver*,
116 F.3d 120 (5th Cir. 1997) .......... 21
*White v. N.H. Dep't of Emp. Sec.*,
455 U.S. 445 (1982) .......... 7

**Statutes and Rules:**

28 U.S.C.
§ 452 .......... 21
§ 1651 .......... 19
§ 2244 .......... 2, 9, 22
§ 2244(b) .......... 2, 3, 6, 10, 11, 12, 23
§ 2244(b)(3) .......... 2
§ 2254(e)(2) .......... 2, 13, 22, 23
§ 2254(e)(2)(A) .......... 13, 15
§ 2254(e)(2)(B) .......... 14
Fed. R. App. P.
40(b)(2)(B) .......... 23
40(b)(2)(D) .......... 23
40(c) .......... 23

Fed. R. Civ. P.
6(b) .... 4
15(a) .... 7, 11
59 .... 4, 9
59(e) .... 3, 4, 5, 6, 7, 8, 12
60(b) .... 2, 4, 8, 9, 10, 11
60(b)(6) .... 9, 10, 11, 12
Fed. R. Crim. P. 16 .... 17

**Other Authorities:**

16 Wright & Miller's Federal Practice & Procedure
§ 3938 (3d ed. 2026) .... 22
16A Wright & Miller's Federal Practice & Procedure
§ 3949.2 (5th ed. 2026) .... 24

## Interest of Amicus Curiae

As the custodian of felony inmates in Texas, the Texas Department of Criminal Justice routinely appears as the respondent in habeas proceedings and therefore has a strong interest in ensuring that federal courts comply with AEDPA's procedures, at issue here.

Moreover, TDCJ *is* the respondent in the underlying proceeding. TDCJ previously sought and was denied mandamus relief in this Court in an original proceeding that substantially overlapped with this appeal. This Court has now asked whether the en banc Court may reconsider the panel's decision in that prior proceeding, and TDCJ has a particular interest in that issue.

No party or party's counsel has authored this brief in whole or in part, and no party, party's counsel, or any third party has contributed money to fund the preparation of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

## Introduction

The district court has no jurisdiction to consider or allow discovery on the merits of Ayestas's new claims. This conclusion follows from three, undisputed facts:

- The district court entered final judgment on November 18, 2014. ROA.984.
- Ayestas did not attempt to raise his new claims within the 28-day window for a motion to alter or amend the judgment. ROA.1159 (filing of January 14, 2015); ROA.1343 (filing of February 5, 2021).
- This Court has not authorized the filing of a second or successive application. 28 U.S.C. § 2244(b)(3).

As a result, the district court lacks jurisdiction. *See, e.g.*, *Burton v. Stewart*, 549 U.S. 147, 149 (2007) (per curiam) (explaining that a prisoner's "fail[ure] to comply with the gatekeeping requirements of 28 U.S.C. § 2244(b) . . . . deprive[s] the District Court of jurisdiction to hear his claims").

Because it sought to add new claims more than 28 days after final judgment, Ayestas's filing in January 2015 constituted a second or successive application, no matter how it was captioned. *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005) ("A motion that seeks to add a new ground for relief . . . will of course qualify.").

The same is true of Ayestas's filing in February 2021, which also sought to reopen the judgment to add new claims. *Id.* Because Ayestas has not received authorization from this Court, the district court lacked jurisdiction under § 2244 to consider Ayestas's new claims and order the discovery at issue.

Independently, Ayestas did not satisfy the standards for Rule 60(b); AEDPA forecloses this evidentiary development in federal court, 28 U.S.C. § 2254(e)(2); and the discovery order violates *United States v. Armstrong*, 517 U.S. 456 (1996).

# Argument of Amicus Curiae

## I. The District Court Lacked Jurisdiction to Order Discovery on the Merits of Ayestas's New Claims.

Throughout the district court proceedings, in its 2023 petition for writ of mandamus to this Court, and in its panel-stage amicus brief, TDCJ has explained that the district court lacked jurisdiction over Ayestas's Fourteenth and Eighth Amendment claims arising out of his discovery of the Siegler Memorandum.

A motion that "seeks to add a new ground for relief" is "construed as a second or successive petition and forced to face the gauntlet of § 2244(b), no matter how it is labeled." *Rivers v. Guerrero*, 605 U.S. 443, 451 (2025) (quoting *Gonzalez*, 545 U.S. at 532). Under this principle, Ayestas's January 2015 filing and his February 2021 filing both constitute second or successive applications. Because Ayestas did not have authorization from this Court, the district court lacked jurisdiction to entertain them. *Burton*, 549 U.S. at 153.

### A. Ayestas's January 2015 filing was a second or successive application.

Ayestas first raised his new Fourteenth and Eighth Amendment claims in January 2015, ROA.1148; ROA.1159, more than 28 days after the entry of final judgment in November 2014, ROA.984. Both in timing and substance, Ayestas's filing does not constitute a proper motion under Rule 59(e), so it must be construed as a second or successive application.

### 1. Ayestas first raised the claims outside the 28-day deadline for a Rule 59(e) motion.

Rule 59(e) has a strict 28-day deadline, "with no possibility of an extension." *Banister v. Davis*, 590 U.S. 504, 507-08 (2020) (citing Fed. R. Civ. P. 6(b)(2)). An untimely Rule 59(e) motion may be treated "as if it were a Rule 60(b) motion." *Frew v. Young*, 992 F.3d 391, 396 (5th Cir. 2021) (quoting *Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998)); *see also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 n.2 (5th Cir. 2012) (per curiam) (same).

In this case, the district court entered final judgment on November 18, 2014. ROA.984. Exactly 28 days later, on December 16, Ayestas filed a motion to alter or amend the judgment. ROA.985. This motion properly sought reconsideration of the district court's decision. *See* ROA.987 ("Grounds for Reconsideration"). Nearly one month later—57 days after the entry of judgment—on January 14, 2015, Ayestas filed a document captioned, "Supplement to Petitioner's Rule 59 Motion to Alter or Amend the Judgment Urging Court to Grant Leave to Amend Original Petition for Writ of Habeas Corpus." ROA.1159. In this document, Ayestas asked the district court "to allow him to amend his original petition to raise important new claims." ROA.1159. The district court correctly rejected this filing as an unauthorized second or successive application barred by AEDPA. ROA.1243-44.

Because this filing came outside the 28-day deadline of Rule 59(e), it must be treated as a Rule 60(b) motion that seeks to raise new claims and thus, under *Gonzalez*, 545 U.S. at 532, as a second or successive application. "Rule 59(e) gives a prisoner only a narrow window to ask for relief—28 days, with no extensions."

*Banister*, 590 U.S. at 516. A party cannot circumvent this deadline by "supplementing" a motion after the deadline expired. *See Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) (per curiam) ("Permitting [plaintiffs] to supplant their timely yet insufficient 'placeholder' Rule 59(e) motion . . . with their subsequent augmented filing . . . would afford them an easy way to circumvent Rule 6(b)'s prohibition on granting an enlargement of time.").

Ayestas has cited no authority supporting his attempt to raise these claims outside the 28-day deadline. When scrutinized, his cases do not support him. For example, before the district court, Ayestas led with *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82 (5th Cir. 1992). *See* ROA.1163. But that case involved a second Rule 59(e) motion that challenged an amended judgment entered by the district court. *See Nobby Lobby*, 970 F.2d at 85 ("[T]he court vacated its March 28 opinion and entered an amended memorandum opinion on April 24, 1991. . . . On May 8, 1991, the City moved for reconsideration for a second time."). It does not support allowing a party to file an out-of-time supplement to a Rule 59(e) motion challenging an original judgment.

In responding to TDCJ's petition for writ of mandamus, Ayestas relied on *Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195 (10th Cir. 2012). *See* Dkt. 37 at 17, *In re Lumpkin*, No. 23-20169 (5th Cir. May 10, 2023). But the Tenth Circuit emphasized that the party did not file "a *separate motion*" but instead filed "supplemental, supportive *briefing* for [its] timely filed Rule 59(e) motion." 693 F.3d at 1212 n.11; *see also id.* (noting that the supplement "cover[ed], generally speaking, some of the same jurisdictional terrain as the timely filed

Rule 59(e) motion"). Allowing supplemental briefing on *existing* issues is not equivalent to supplementing a Rule 59(e) motion with entirely *new* issues (or seeking to raise entirely new claims).

Ayestas has suggested that the Tenth and Eleventh Circuits "have specific tests for permitting Rule 59(e) supplementation upon newly discovered evidence." Dkt. 37 at 17, *In re Lumpkin*, No. 23-20169 (5th Cir. May 10, 2023). But these cases use "supplementation" to refer to supplementing the summary judgment record with evidence attached to a Rule 59(e) motion, not supplementing a Rule 59(e) motion after its filing. *See Chery v. Bowman*, 901 F.2d 1053, 1057 (11th Cir. 1990) ("[P]laintiffs filed a Rule 59(e) motion asking the court to alter or amend its judgment. With this motion, plaintiffs offered as additional evidence . . . ."); *Comm. for First Amend. v. Campbell*, 962 F.2d 1517, 1523 (10th Cir. 1992) (analyzing "summary judgment materials subsequently produced by the Plaintiffs in their postjudgment motion to reconsider").

No authority supports Ayestas's attempt to raise new issues (and new claims) through a "supplement" to a Rule 59(e) motion filed outside the strict 28-day deadline. Allowing such a supplement would conflict with the Supreme Court's explanation that "Rule 59(e) gives a prisoner only a narrow window to ask for relief—28 days, with no extensions." *Banister*, 590 U.S. at 516.

Because it was untimely, Ayestas's January 2015 filing cannot constitute a Rule 59(e) motion under *Banister*. As a result, it is a second or successive application subject to § 2244(b).

### 2. A Rule 59(e) motion cannot be used to raise new claims in a habeas application.

Even apart from timing, Ayestas's January 2015 filing was not, in substance, a Rule 59(e) motion under *Banister*. "In determining how to construe a postjudgment motion, we look beyond the form of the document and examine its substance to determine how the motion is best characterized." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002); *see also Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002) ("[C]ourts give effect to the substance of a document and not to its caption.").

In *Banister*, the Supreme Court explained that, in the habeas context,[1] Rule 59(e) is properly employed "only to request 'reconsideration of matters properly encompassed' in the challenged judgment." *Banister*, 590 U.S. at 516 (quoting *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982)). The motion "is therefore backward-looking" and "enable[s] a district court to fix any mistakes." *Id.*; *see also id.* ("[T]he Rule enables a district court to reverse a mistaken judgment[.]").

Ayestas's January 2015 filing is unrelated to these purposes. It does not argue that the district court made any mistakes in the November 2014 judgment. ROA.1159. And it does not address any matters properly encompassed in the

[1] This Court has held that when a district court enters judgment on the pleadings, a Rule 59(e) motion to amend is permissible and governed by the standards of Rule 15(a). *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981). In these circumstances, a request to amend challenges the underlying judgment. *See id.* ("[H]olding that the trial court should have permitted amendment necessarily implies that judgment on the pleadings was inappropriate."). *Banister* makes clear that a Rule 59(e) motion in a habeas proceeding cannot be used to raise additional claims, and in this case, the district court granted summary judgment on Ayestas's pleaded claims, not judgment on the pleadings. ROA.547.

challenged judgment. Instead, Ayestas sought "to amend his original petition to raise important new claims." ROA.1159.

Under *Banister*, this is an impermissible use of a Rule 59(e) motion in the habeas context. Although a Rule 59(e) motion may, in limited circumstances, be used to raise "new *arguments*," *Banister*, 590 U.S. at 508 n.2 (emphasis added), it "is not the proper vehicle for asserting a new *claim* for the first time," *Dean v. City of Bay City*, 239 F. App'x 107, 111 (6th Cir. 2007) (emphasis added).

Like Rule 60(b), Rule 59(e) cannot "be applied to habeas proceedings in a manner 'inconsistent with'" AEDPA. *Fernandez v. United States*, 146 S. Ct. 1292, 1301 (2026) (citation omitted) (discussing Rule 60(b)). To the extent that a motion purportedly filed under Rule 59(e) seeks to assert new claims (rather than new evidence or new arguments) after entry of a final judgment, it constitutes a second or successive application under *Banister* and *Gonzalez*.

### B. Ayestas's February 2021 filing was a second or successive application.

For similar reasons, Ayestas's February 2021 filing constitutes a second or successive application. *Gonzalez* squarely controls: "A [Rule 60(b)] motion that seeks to add a new ground for relief . . . will of course qualify [as a second or successive application]." 545 U.S. at 532. "Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's requirement that a new claim be dismissed unless it relies on either a new rule of constitutional law or newly discovered facts." *Id.* at 531.

Ayestas's Rule 60(b)(6) motion does not challenge any claims resolved by the district court in the November 2014 judgment. ROA.984. To the contrary, the district court expressly refused to exercise jurisdiction over the claims that Ayestas now seeks to raise. *See* ROA.1244 (noting the absence of jurisdiction). Ayestas seeks to reopen the judgment in order to add these additional claims. *See* ROA.1563 ("Had this Court permitted the 2015 amendment in the Rule 59 posture, then the Siegler Memorandum claims would now be before this Court[.]"). Indeed, Ayestas has argued that rather than challenging the November 2014 judgment, he "seeks reconsideration of that Rule 59 decision," ROA.1563, *i.e.*, the denial of his untimely post-judgment attempt to assert new claims in January 2015.

In other words, Ayestas contends that the district court should have allowed him to assert new claims through his January 2015 filing, and he now seeks to add these claims through a Rule 60(b) motion. *Gonzalez* forecloses this attempt. A Rule 60(b)(6) motion that "seek[s] leave to present [a] claim" is "in substance a successive habeas petition and should be treated accordingly." *Gonzalez*, 545 U.S. at 531.

Ayestas attempts to rely on *Gonzalez*'s exception for Rule 60(b) motions that identify "defect[s] in the integrity of the federal habeas proceedings" rather than "attac[k] the federal court's previous resolution of a claim *on the merits*." *Id.* at 532. Only the latter type of Rule 60(b) motion is subject to § 2244's second-or-successive bar because "alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* But in discussing Rule 60(b)

motions alleging a defect in the integrity of the previous habeas proceedings, the Court in *Gonzalez* was referring to challenges to the procedural resolution of claims in the earlier federal habeas proceeding, such as "a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar" or "fraud on the federal habeas court." *Id.* at 532 & nn.4, 5. These arguments do not "substantively addres[s] federal grounds for setting aside the movant's state conviction," so they do not qualify as a "claim" within the meaning of § 2244(b). *Id.* at 533. In *Gonzalez*, for example, the district court "dismissed petitioner's habeas petition as barred by AEDPA's statute of limitations." *Id.* at 527. This was an adjudication of the claim, albeit on procedural grounds, and was "not the equivalent of a successive habeas petition." *Id.* at 535-36.

By contrast, in this case Ayestas sought to use Rule 60(b)(6) to assert new claims. *Id.* at 532. Indeed, after the district court granted his motion, he filed an amended petition, which pleaded his new claims for the first time. ROA.1707. In denying reconsideration, the district court explained that its ruling "granted [Ayestas] leave to file an amended petition for a writ of habeas corpus *raising claims* arising out of the discovery of a prosecutor's memorandum listing Ayestas' national origin and citizenship status as possible reasons to seek the death penalty." ROA.1874 (emphasis added). This attempt to "add a new ground for relief" should have been "construed as a second or successive petition and forced to face the gauntlet of § 2244(b), no matter how it [was] labeled." *Rivers*, 605 U.S. at 451.

* * *

Ayestas first sought to raise his new claims more than 28 days after the entry of final judgment on his habeas petition. No matter how it was captioned, his filing that sought to raise these claims constituted a second or successive application subject to § 2244(b). Because this Court has not granted authorization, the district court lacked jurisdiction to order discovery into the merits of the claims.

## II. Even If the District Court Had Jurisdiction to Consider the Rule 60(b)(6) Motion, It Erred in Ordering Discovery.

### A. If it had jurisdiction, the district court should have denied the Rule 60(b)(6) motion.

Even if the district court had jurisdiction over Ayestas's Rule 60(b)(6) motion, it should have denied the motion because Ayestas does not satisfy the strict standards for relief under Rule 60(b)(6).

"[A] party seeking to reopen his case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 210 (2025). "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Gonzalez*, 545 U.S. at 535 (citation omitted). "[R]elief under Rule 60(b)(6) is available only in narrow circumstances." *BLOM Bank*, 605 U.S. at 211. "A party seeking Rule 60(b)(6) relief must always demonstrate 'extraordinary circumstances' justifying relief." *Id.* at 214.

The district court appeared to rely on *Banister* as an "intervening change in the law" and thus an extraordinary circumstance justifying relief under Rule 60(b)(6).

ROA.1613. As detailed above, the district court was incorrect: *Banister* did not alter the conclusion that Ayestas's untimely attempt to add new claims after entry of a final judgment was a successive petition. *See supra* at I.A.

Moreover, the Supreme Court held in *Gonzalez* that a change in the interpretation of AEDPA's procedural rules does not constitute "extraordinary circumstances" under Rule 60(b)(6). The *Gonzalez* petitioner sought to reopen the judgment on the basis that the Supreme Court subsequently rejected the district court's interpretation of AEDPA's statute of limitations. 545 U.S. at 536. The Supreme Court held that this argument could not justify relief under Rule 60(b)(6): "Petitioner contends that *Artuz*'s change in the interpretation of the AEDPA statute of limitations meets this description [of 'extraordinary circumstances' under Rule 60(b)(6)]. We do not agree." *Id.* "It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, this Court arrived at a different interpretation." *Id.*

This holding applies directly to this case. It is hardly extraordinary that subsequently, after Ayestas's case was no longer pending, the Supreme Court arrived at a different interpretation of the interaction of Rule 59(e) and § 2244(b). Under *Gonzalez*, the Supreme Court's decision in *Banister* does not "justif[y] reopening long-ago dismissals based on a lower court's unduly parsimonious interpretation of [§ 2244(b)]." *Id.* at 536-37.

Even if Ayestas's Rule 60(b)(6) motion, which sought to reopen the judgment to assert new claims, were not itself a second or successive application subject to § 2244(b), it should have been denied on the merits.

### B. AEDPA bars the district court's discovery order because Ayestas was not diligent in developing his claims.

Even if none of the above obstacles barred relief, the district court's discovery order was still erroneous under AEDPA because Ayestas was not diligent in developing his claims—as this Court already explained a decade ago. *See Ayestas v. Stephens*, 817 F.3d 888, 900-01 (5th Cir. 2016), *vacated on other grounds sub nom. Ayestas v. Davis*, 584 U.S. 28 (2018).

AEDPA "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop v. Twyford*, 596 U.S. 811, 819 (2022). "A court therefore must, consistent with AEDPA, determine at the outset whether the new evidence sought could be lawfully considered." *Id.* at 820. Otherwise, "holding an evidentiary hearing or otherwise expanding the state-court record would 'prolong federal habeas proceedings with no purpose'" *Id.* (quoting *Shinn v. Ramirez*, 596 U.S. 366, 390 (2022)). Thus, "a federal court, in deciding whether to grant an evidentiary hearing or 'otherwise consider new evidence' under § 2254(e)(2), must first take into account" § 2254(e)(2)'s restrictions. *Id.* (quoting *Ramirez*, 596 U.S. at 389). Relevant here, a prisoner must show that he "rel[ies] on 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Id.* at 819 (quoting 28 U.S.C. § 2254(e)(2)(A)).

Ayestas cannot meet § 2254(e)(2)(A)'s diligence requirement.[2] As this Court has already explained, "Ayestas did not exercise reasonable diligence in attempting

[2] Ayestas's efforts to develop new facts are doubly barred because his Fourteenth and Eighth Amendment claims would do nothing to "establish by clear and

to discover the [Siegler] memorandum earlier." *Ayestas*, 817 F.3d at 901. That means any new evidence "could [not] be lawfully considered." *Twyford*, 596 U.S. at 820. Then, as now, Ayestas "never suggest[ed] he sought to examine the prosecution's file prior to the December 22[, 2014] search that uncovered the memorandum." *Ayestas*, 817 F.3d at 900. But "[a] defense counsel's 'duty to investigate' includes 'efforts to secure relevant information in the possession of the prosecution [and] law enforcement authorities.'" *Id.* (quoting ABA Standards for Criminal Justice: Duty to Investigate and Engage Investigators 4-4.1(c) (4th ed. 2015)). This Court characterized Ayestas's argument—that "he assumed no material information was contained in the [prosecution's] file, and that had he known such material information was in the file, he would have investigated the file"—as "circular and without merit." *Id.* at 901.

Ayestas argued at the panel stage that TDCJ has long "misrepresent[ed] th[e] availability of the Siegler Memorandum," that this Court's earlier decision "[l]abor[ed] under that misrepresentation," and that, in the Supreme Court, "TDCJ finally acknowledged that the Siegler Memorandum was not in fact available to prior counsel" because Harris County treated it "as confidential work product." Dkt. 37 at 49-50. This argument is both incorrect and irrelevant.

---

convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). His claims hinge on the propriety of the prosecutor's charging decisions but have nothing to do with his guilt or innocence of capital murder.

True, Harris County did not "voluntarily turn[] over" the Siegler Memorandum at trial—as TDCJ acknowledged in the Supreme Court, *see* Dkt. 37 at 50, and as this Court was aware in 2016, *see Ayestas*, 817 F.3d at 900. But whether or not Harris County treated the memorandum as work product, the relevant question is whether Ayestas could have discovered the memorandum through the exercise of due diligence by reviewing the prosecution's file. On this point, the only evidence is an affidavit by Ayestas's state habeas counsel stating that he did "not recall ever having seen it." ROA.2183. That statement does not show that Ayestas could not have discovered the memorandum by reviewing the prosecution's file or otherwise developed his new claims in a timely fashion. His failure to do so means that he was not diligent within the meaning of § 2254(e)(2)(A) and that the evidence he seeks from Harris County "could [not] be lawfully considered." *Twyford*, 596 U.S. at 820.

### C. The district court's grant of discovery violated *Armstrong*.

The district court's order compelling discovery from Harris County is also erroneous because it violates *United States v. Armstrong*. *See* Dkt. 30 at 32-36; Dkt. 33 at 24-31.

In *Armstrong*, the Supreme Court held that to obtain discovery for a selective-prosecution claim, a defendant must first "produce some evidence that similarly situated defendants . . . could have been prosecuted, but were not." 517 U.S. at 469. That "required threshold" demands a "credible showing of different treatment of similarly situated persons" *before* a defendant may obtain discovery against a prosecutor. *Id.* at 470.

Making that showing would be particularly difficult for Ayestas. He asserts that Harris County sought the death penalty against him because of his alienage and, possibly, because of his race or national origin. Dkt. 37 at 24. But Ayestas was prosecuted along with two co-defendants. ROA.8090. All three were originally from Honduras. *See Ayestas*, 817 F.3d at 896 (Ayestas); ROA.2026 (Meza); ROA.2069 (Gutierrez). All three were noncitizens. ROA.8092 (Ayestas); ROA.2026 (Meza); ROA.2072-73 (Gutierrez). And all three were originally indicted for capital murder. ROA.1977. That Harris County sought the death penalty against Ayestas has nothing to do with his alienage or national origin; Ayestas's co-defendants received non-capital sentences because, according to the prosecutor, they were the "non-kille[r]" defendants, and Ayestas was the "killer." ROA.8092.

Ayestas tries to avoid *Armstrong* by pointing to a footnote in which the Supreme Court reserved the question "whether a defendant must satisfy the similarly situated requirement in a case involving direct admissions by [prosecutors] of discriminatory purpose," 517 U.S. at 469 n.3 (citation omitted), and arguing that the Siegler Memorandum shows such an admission, Dkt. 37 at 23. But even if a defendant need not satisfy the requirement in those circumstances, the Siegler Memorandum is not a "direct admission" of "discriminatory purpose."

That memorandum, entitled "capital murder summary," lists Ayestas and his two co-defendants as "parties" and summarizes the facts of the case. ROA.8090-91. It discusses why Harris County sought the death penalty against Ayestas and lists two "aggravating circumstances." ROA.8092. First, "the victim is a helpless 67-year-old woman killed in her home." ROA.8092. Second, "the defendant is not a

citizen." ROA.8092. The second reason is crossed out by hand, ROA.8092, and at the bottom of the page is a handwritten note: "Ok to plead non-killers for agg. Rob. Life, deadly weapon, seek death on killer Ayestas. 2 pleading [defendants] to testify." ROA.8092.

The district attorney, John B. Holmes, initialed that statement. ROA.8092. In other words, Holmes decided to seek the death penalty against Ayestas because he believed that Ayestas was the "killer" and wanted the "non-killers" to testify against Ayestas. The statement that Ayestas is not a citizen was crossed out, and the district attorney hand-wrote his reasoning for seeking the death penalty against Ayestas but not the others.

Ayestas also argues that *Armstrong* is "inapplicable" because it "concerned the proper interpretation of" the phrase "'the defendant's defense' in Fed. R. Crim. P. 16," which does not apply in habeas cases. Dkt. 37 at 27, 28. But *Armstrong* held that Rule 16's discovery parameters *did not apply* to selective-prosecution claims, so Rule 16 cannot be the basis for *Armstrong*'s discovery rule. 517 U.S. at 463. Specifically, *Armstrong* held that Rule 16 "authorizes defendants to examine Government documents material to the preparation of their defense against the Government's case in chief, but not to the preparation of selective-prosecution claims." *Id. Armstrong*'s discovery rule is not rooted in Rule 16.

Finally, Ayestas contends that *Armstrong* applies to equal protection claims but not Eighth Amendment claims. Dkt. 37 at 28. But *Armstrong*'s reasoning is grounded in the separation of powers and the presumption of regularity. *Armstrong* explained that "[a] selective-prosecution claim asks a court to exercise judicial power over a

'special province' of the Executive." 517 U.S. at 464. Courts are "properly hesitant to examine the decision whether to prosecute," and "[j]udicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts." *Id.* at 465.

Further, "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Id.* And discovery "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy," such that the "justifications for a rigorous standard for the elements of selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." *Id.* at 468. So, the "required threshold" to get discovery against a prosecutor—"a credible showing of different treatment of similarly situated persons"—"adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." *Id.* at 470.

*Armstrong*'s discovery rule is heavily based on the separation of powers and the presumption of regularity, not on the Equal Protection Clause. Applying *Armstrong*, the Supreme Court explained that failing to follow it "threatens the 'performance of a core executive constitutional function.'" *United States v. Bass*, 536 U.S. 862, 864 (2002) (per curiam) (quoting *Armstrong*, 517 U.S. at 465). This Court has similarly noted that *Armstrong* guards against "serious separation of powers concerns." *In re United States*, 397 F.3d 274, 285 (5th Cir. 2005) (per curiam). Cabining *Armstrong*'s

discovery rule to equal protection claims would ignore the separation of powers and presumption of regularity principles underlying it.

## III. This Court Could Reconsider Its Denial of TDCJ's Mandamus Petition in *In re Lumpkin*.

In its July 10 directive, the Court requested briefing on the question of whether "the en banc court [may] reconsider the panel's denial of TDCJ's mandamus petition in, No. 23-20169, *In re Bobby Lumpkin*[.]" Dkt. 130 at 2 (citing *Cottier v. City of Martin*, 604 F.3d 553, 556-57 (8th Cir. 2010) (en banc)).

To the extent this Court is asking whether the en banc Court is bound by the panel's 2023 decision, the answer is no. Neither the rule of orderliness nor the law of the case doctrine applies. *See Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 369 (5th Cir. 2020) (en banc) (The "court sitting en banc may overrule or abrogate a panel's decision if the en banc court concludes that the panel opinion's holding was indeed flawed."); *Shimman v. Int'l Union of Operating Eng'rs, Loc. 18*, 744 F.2d 1226, 1229 n.3 (6th Cir. 1984) (en banc) ("[T]he law of the case doctrine . . . does not impair the power of an en banc court to overrule *any* panel decision." (emphasis added)).

To the extent this Court is asking whether the en banc Court could grant TDCJ mandamus relief, the answer is yes. But unlike the decision in an earlier interlocutory appeal in *Cottier*, the denial of TDCJ's mandamus petition occurred in an original proceeding under the All Writs Act, 28 U.S.C. § 1651. Moreover, the parties to this appeal are different than the parties to TDCJ's mandamus petition. For that reason, TDCJ believes that exercising jurisdiction to grant TDCJ mandamus relief would

require the en banc Court to recall the panel's 2023 mandate, vote to rehear that case en banc, and consolidate it with this case for briefing and argument.[3] The en banc Court has the power to do so in this extraordinary case.

**A**. In April 2023, TDCJ requested mandamus relief from this Court "directing the district court to dismiss Ayestas's motion for relief from judgment and 'First Amended Petition for Writ of Habeas Corpus,' and to deny his motion for discovery." *See* Dkt. 2-1 at 20, *In re Lumpkin*, No. 23-20169 (5th Cir. Apr. 20, 2023). In an unreasoned order, the panel denied TDCJ's petition for writ of mandamus. *See* Dkt. 63-1, *In re Lumpkin*, No. 23-20169, (5th Cir. July 18, 2023). The panel's "judgment [was] issued as the mandate." *See* Dkt. 63-2, *In re Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023); 5th Cir. R. 41.4 (issuance of mandate in mandamus actions.).

Typically, a "Court's control over the judgment below comes to an end after the mandate has been issued." *Meredith v. Fair*, 306 F.2d 374, 376 (5th Cir. 1962). But "the courts of appeals are recognized to have an inherent power to recall their mandates, subject to review for an abuse of discretion." *Calderon v. Thompson*, 523 U.S. 538, 549 (1998).

Sitting en banc, this Court has recognized (and exercised) its "well established" "power to recall and reform a mandate even after issuance." *Sparks v. Duval Cnty. Ranch Co.*, 604 F.2d 976, 979 (5th Cir. 1979) (en banc), *aff'd sub nom. Dennis v. Sparks*, 449 U.S. 24 (1980). So too have other courts of appeals. *See, e.g.*, *Am. Iron & Steel Inst. v. E.P.A.*, 560 F.2d 589, 593-94 & n.14-19 (3d Cir. 1977) (collecting and

[3] In the alternative, this Court could construe this amicus brief as a petition for writ of mandamus and set the petition for initial hearing en banc.

discussing cases). That inherent power is expressly recognized in this Court's local rules. *See* 5th Cir. R. 41.2 (recall of mandate) ("Once issued a mandate will not be recalled except to prevent injustice.").

No time limit restricts this Court's jurisdiction to recall a prior mandate. "The decision whether to exercise the power falls within the discretion of the court," *Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996) (internal quotation marks omitted), so a court of appeals may recall its mandate "beyond the current term of the court" and has "the power to reopen a case at any time," *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 89 (2d Cir. 1996); *see also* 28 U.S.C. § 452 ("The continued existence or expiration of a session of a court in no way affects the power of the court to do any act or take any proceeding.").

Nor does a party need to affirmatively file a motion or request for the Court to recall its mandate: this Court may do so *sua sponte*. *Ins. Co. of N. Am. v. Bd. of Comm'rs of Port of New Orleans*, 524 F. App'x 103, 107 n.4 (5th Cir. 2013) (per curiam). That is because this Court—certainly when sitting en banc—retains the "authority to act *sua sponte* on all matters" where "a party evinces interest in judicial review." *United States v. Tolliver*, 116 F.3d 120, 124 n.4 (5th Cir. 1997). Although TDCJ would, if necessary, move to file a separate motion with the Court, this Court should *sua sponte* recall the panel's 2023 mandate and, as explained below (*see infra* at III.C), vacate the panel's 2023 judgment and grant TDCJ mandamus relief.[4]

[4] To the extent necessary, TDCJ requests that this amicus brief be construed as a motion to recall the mandate.

**B.** Though the power to recall a mandate is "exercised only in extraordinary circumstances," *Calderon*, 523 U.S. at 550, the Court is "empowered to recall or reform" the mandate "to prevent injustice," *Nat'l Sur. Corp. v. Charles Carter & Co.*, 621 F.2d 739, 741 (5th Cir. 1980) (per curiam); *see also* 5th Cir. R. 41.2 ("Once issued a mandate will not be recalled except to prevent injustice."). To do so, the Court must conclude that "good cause or unusual circumstances exist sufficient to justify modification or recall of a prior judgment." *Nevius*, 105 F.3d at 460; *Meredith*, 306 F.2d at 378 (highlighting "requirement that good cause must be shown in order for a mandate to be recalled"). As a leading treatise explains, recall is "justified to correct an order that has a continuing effect, such as an injunction or other order that regulates ongoing affairs outside the judicial system itself." 16 Wright & Miller's Federal Practice & Procedure § 3938 (3d ed. 2026).

This Court's previous order denying TDCJ's mandamus petition fits that description. That order lets stand an intrusive and burdensome discovery ruling against TDCJ, even though the district court was wholly without jurisdiction to act under § 2244. *See supra* at I. And as this appeal shows, the panel's decision to deny TDCJ's mandamus petition has now led to the district court ordering broad discovery against Harris County regarding claims over which the district court lacks jurisdiction.

Not only was the district court without jurisdiction to order such discovery under § 2244, but that discovery is separately barred by § 2254(e)(2). *See supra* at II.B. By proceeding with years of discovery, the district court has "'prolong[ed] federal habeas proceedings with no purpose'" and "disturb[ed] the 'State's

significant interest in repose for concluded litigation.'" *Twyford*, 596 U.S. at 820 (first quoting *Ramirez*, 596 U.S. at 390, then *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). All the while, the family of Santiaga Paneque continues to wait for justice more than three decades after her murder.

**C.** Once the Court recalls the mandate in *In re Lumpkin*, it could then *sua sponte* vote to rehear the case en banc, Fed. R. App. P. 40(c), and consolidate that appeal with this one for briefing and argument. That approach would allow the Court to avoid the question of appellate jurisdiction that divided the panel and proceed straight to the critical question of the district court's lack of jurisdiction under AEDPA.

The district court's misapplication of AEDPA represents a straightforward misapplication of *Banister* and *Gonzalez*, *see supra* at I.A, I.B, that warrants the attention of the en banc court, Fed. R. App. P. 40(b)(2)(B). The district court's decision to permit years of additional discovery on claims that it lacks jurisdiction to consider (and with respect to evidence it could not use in any event) presents a question of exceptional importance. Fed. R. App. P. 40(b)(2)(D).

Consolidation for briefing and argument would also be appropriate. TDCJ's 2023 mandamus petition raised essentially the same issues and arguments that are now before this Court, including whether "Ayestas's 'amended petition for writ of habeas corpus' is an unauthorized second-or-successive habeas application"; whether "Ayestas's second-or-successive application is permissible under [§] 2244(b)"; and whether "a district court may authorize discovery to substantiate claims in an unauthorized second-or-successive application" under § 2254(e)(2).

Dkt. 2-1 at 2, *In re Lumpkin*, No. 23-20169 (5th Cir. Apr. 20, 2023). "[F]or the sake of efficiency and to promote consistent treatment," the Court should consolidate TDCJ's petition with Harris County's appeal for briefing and argument after recalling the mandate and voting to rehear that mandamus proceeding en banc. 16A Wright & Miller's Federal Practice & Procedure § 3949.2 (5th ed. 2026). This Court has the "authority to *sua sponte* consolidate" this appeal with TDCJ's 2023 mandamus petition because, as discussed, the two cases "implicate[s] common facts and issues." *United States v. Fuentes*, 822 F. App'x 303 (5th Cir. 2020) (per curiam).[5]

[5] Should the Court consolidate TDCJ's mandamus proceeding with this appeal, this Court should treat TDCJ's amicus brief here as a supplemental brief supporting its request for mandamus relief. Ayestas would suffer no prejudice from the en banc Court doing so. Ayestas already has the opportunity to respond to TDCJ's arguments, which are no different than Harris County's. Moreover, this Court has requested briefing regarding whether it may reconsider the panel's 2023 mandamus denial at this time, *see* Dkt. 130 at 2, and Ayestas can be fully heard in his brief.

## Conclusion and Prayer

This Court should vacate the discovery order. To avoid the questions of appellate jurisdiction that divided the panel, this Court could recall the mandate in No. 23-20169, *In re Lumpkin*, vote to rehear that case en banc, consolidate that case with this appeal for briefing and argument, and grant TDCJ mandamus relief.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

/s/ William R. Peterson
William R. Peterson
Solicitor General
William.Peterson@oag.texas.gov

William F. Cole
Principal Deputy Solicitor General

Benjamin Wallace Mendelson
Deputy Solicitor General

Gwendolyn Vindell
Assistant Attorney General

*Counsel for the Texas Department of Criminal Justice*

## Certificate of Compliance

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,428 words, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ William R. Peterson
William R. Peterson