No. 25-70014

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

CARLOS MANUEL AYESTAS,
also known as Dennis Zelaya Corea,

*Petitioner-Appellee*,

vs.

HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE,

*Defendant-Appellant*.

---

# EN BANC BRIEF OF APPELLEE

---

On appeal from the United States District Court
Southern District of Texas, Houston Division, Case No. 4:09-CV-2999
Hon. Christina A. Bryan, United States Magistrate Judge

---

Lee B. Kovarsky
PHILLIPS BLACK, INC.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
CORNELL LAW SCHOOL
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

*Attorneys for Petitioner-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

No. 25-70014: *Ayestas v. Harris County District Attorney's Office*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

**Petitioner-Appellee:**

Carlos Manuel Ayestas
*Represented by:*

Lee B. Kovarsky, Phillips Black, Inc.

Sheri Lynn Johnson, Cornell Law School

**Defendant-Appellant:**

Harris County District Attorney's Office
*Represented by:*

Sean Teare, Harris County District Attorney

Meagan T. Scott, Assistant District Attorney

**Other Interested Entities:**

Texas Department of Criminal Justice
*Represented by:*

Gwendolyn S. Vindell, Assistant Attorney General

*/s/ Lee B. Kovarsky*

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........ 1

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF FACTS AND PROCEEDINGS ........ 5

SUMMARY OF THE ARGUMENT ........ 11

ARGUMENT ........ 14

I. THE DISTRICT COURT'S DILIGENCE FINDING IS WELL-SUPPORTED. ........ 14

II. THE DISTRICT COURT HAD JURISDICTION BECAUSE THE POST-JUDGMENT MOTIONS WERE NOT SUCCESSIVE PETITIONS. ........ 16

A. The Rule 59(e) Motion Was Not A Successive Petition. ........ 16

1. *Under The* Banister-Rivers *Rule, The Rule 59-Postured Amendment Was Not A Successive Petition*. ........ 16

2. *There Is No Doctrinal Support For Carve-Outs.* ........ 18

3. *There Is No Policy Rationale For Carve-Outs.* ........ 20

4. *A Carve-Out Would Create A Circuit Split.* ........ 21

B. The Rule 60(b) Motion Was Not A Successive Petition. ........ 22

III. THE DISTRICT COURT APPROPRIATELY COMPELLED DISCOVERY. ........ 24

A. Section 2254(e)(2) Does Not Justify Reversal. ........ 24

1. *The Discovery Order Was Not An Abuse Of Discretion.* ........ 25

2. *This Court Cannot Reach The Issue.* ........ 26

B. The Work-Product Privilege Does Not Foreclose Production. ........ 27

1. *Non-Party HCDA Cannot Claim Work-Product Privilege.* ........ 28

2. *Ayestas Has Demonstrated Substantial and Compelling Need That Overcomes Any Work-Product Protection.* ........ 31

a. Charging Memoranda........................................ 32

b. Ayestas's Own Case File.................................... 34

C. *Armstrong* Does Not Foreclose Production............................ 35

1. *The Amended Petition Proffers Direct Evidence Of Discriminatory Purpose.* .......................................... 36

2. Armstrong*'s Comparator Requirement Does Not Apply to Cases With Direct Evidence of Discriminatory Purpose.* .............................................. 37

3. Armstrong *Is Inapplicable To The Eighth Amendment Claim.* ........................................................ 39

IV. THIS COURT LACKS APPELLATE JURISDICTION OVER ALL ISSUES, INCLUDING DISTRICT COURT JURISDICTION. ....................................................................... 41

A. This Court Must Establish Its Own Jurisdiction Before Addressing Questions of Lower Court Jurisdiction. ............... 41

B. This Court Lacks Jurisdiction Over This Appeal. ................... 45

1. *28 U.S.C. § 636 and Rule 72(a) Bar Jurisdiction.* ........ 45

2. *The Non-Final Discovery Order Falls Outside The Collateral-Order Doctrine.* .................................... 49

V. ALTHOUGH THIS COURT MAY TREAT APPEALS AS MANDAMUS PETITIONS, IT SHOULD NOT GRANT MANDAMUS RELIEF. ................................................................... 54

VI. THE EN BANC COURT SHOULD NOT OVERRULE A PRIOR MANDAMUS DECISION BY A PANEL IN THE SAME CASE. ......................................................................... 58

CONCLUSION ........................................................................................ 61

# TABLE OF AUTHORITIES

**Cases**

*Alfred v. Duhe*,
2025 WL 3766412 (W.D. La. Dec. 30, 2025) .......... 30, 31, 35

*A-Mark Auction Galleries v. Am. Numismatic Ass'n*,
233 F.3d 895 (5th Cir. 2000) .......... 51-52

*Anthony v. Am. Heritage Life Ins. Co.*,
115 F. App'x 655 (5th Cir. 2004) .......... 43

*Atchison v. City of Tulsa*,
344 F.R.D. 28 (N.D. Okla. 2023) .......... 29

*Ayestas v. Davis*,
933 F.3d 384 (5th Cir. 2019) .......... 7

*Ayestas v. Harris Cnty. Dist. Att'y's Off.*,
169 F.4th 586 (5th Cir. 2026), *vacated on reh'g en banc*, 108 F.4th 776 (5th Cir. 2026) .......... 11

*Ayestas v. Stephens*,
817 F.3d 888 (5th Cir. 2016) .......... 6

*Ayestas v. Stephens*,
826 F.3d 214 (5th Cir. 2016) .......... 7

*Backe v. LeBlanc*,
691 F.3d 645 (5th Cir. 2012) .......... 42

*Banco Mercantil de Norte, S.A. v. Paramo*,
114 F.4th 757 (5th Cir. 2024) .......... 25

*Banister v. Davis*,
590 U.S. 504 (2020) .......... *passim*

*Bannister v. Armontrout*,
4 F.3d 1434 (8th Cir. 1993) .......... 18

*Bellum v. PCE Constructors, Inc.*,
407 F.3d 734 (5th Cir. 2005) .......... 48

*Belmontes v. Brown*,
414 F.3d 1094 (9th Cir. 2005), *rev'd sub nom.*, *Ayers v. Belmontes*, 549 U.S. 7 (2006) .......... 41

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) .................................................................... 17

*Blystone v. Horn*,
664 F.3d 397 (3rd Cir. 2011) .................................................................... 18

*Bracy v. Gramley*,
520 U.S. 899 (1997) .................................................................... 25, 26

*Burnham v. Cleveland Clinic*,
89 N.E.3d 536 (Ohio 2016) .................................................................... 53

*Burns v. Thiokol Chem. Corp.*,
483 F.2d 300 (5th Cir. 1973) .................................................................... 33

*Burton v. Stewart*,
549 U.S. 147 (2007) .................................................................... 20

*Calderon v. Thompson*,
523 U.S. 538 (1998) .................................................................... 14, 58, 60

*Caldwell v. Mississippi*,
472 U.S. 320 (1985) .................................................................... 40

*California v. Ramos*,
463 U.S. 992 (1983) .................................................................... 40

*Carter v. City of Phila.*,
2000 WL 632988 (E.D. Pa. May 5, 2000) .................................................................... 30

*Castillo v. Wal- Mart Stores Tex., LLC*,
2024 WL 4531080 (W.D. Tex. Oct. 8, 2024) .................................................................... 49

*Cent. Microfilm Serv. Corp. v. Basic/Four Corp.*,
688 F.2d 1206 (8th Cir. 1982) .................................................................... 19

*Chapman v. Bd. of Cnty. Comm'rs of Douglass Cnty.*,
107 U.S. 348 (1883) .................................................................... 59-60

*Charles v. Daley*,
799 F.2d 343 (7th Cir. 1986) .................................................................... 19

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) .................................................................... *passim*

*Clark v. Doe*,
157 F.3d 902 (5th Cir. 1998) .................................................................... 49

*CNPq-Conselho Nacional de Desenvolvimento Cientificoe Technologico v. Inter-Trade, Inc.*,
50 F.3d 56 (D.C. Cir. 1995) ... 46

*Coleman v. Thompson*,
501 U.S. 722 (1991) ... 21

*Colo. Bldg. & Const. Trades Council v. B.B. Andersen Const. Co.*,
879 F.2d 809 (10th Cir. 1989) ... 46

*Cortez v. Rubio*,
176 F.4th 373, 379 (5th Cir. 2026) ... 56

*Crosby v. City of N.Y.*,
269 F.R.D. 267 (S.D.N.Y. 2010) ... 30

*Demahy v. Schwarz Pharma, Inc.*,
702 F.3d 177 (5th Cir. 2012) ... 20

*Diamantis v. Milton Bradley Co.*,
772 F.2d 3 (1st Cir. 1985) ... 46

*Dixon v. Francis*,
3 F. App'x 186 (4th Cir. 2001) ... 46

*Donovan v. Sarasota Concrete Co.*,
693 F.2d 1061 (11th Cir. 1982) ... 46

*Dotson v. Clark Equip. Co.*,
805 F.2d 1225 (5th Cir. 1986) ... 19

*Doubleday v. Ruh*,
149 F.R.D. 601 (E.D. Cal. 1993) ... 30, 33

*Douglass v. United Servs. Auto. Ass'n*,
79 F.3d 1415, 1416-17 (5th Cir. 1996) ... 48, 49

*Drake v. Minn. Min. & Mfg. Co.*,
134 F.3d 878 (7th Cir. 1998) ... 46

*Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*,
242 F. Supp. 3d 576 (S.D. Tex. 2017) ... 50

*Drummond Co. v. Collingsworth*,
816 F.3d 1319 (11th Cir. 2016) ... 51

*Duplan Corp. v. Moulinage et Retorderie de Chavanoz*,
487 F.2d 480 (4th Cir. 1973) ... 28

*E.E.O.C. v. BDO USA, L.L.P.*,
876 F.3d 690 (5th Cir. 2017) .......... 32

*Emery v. U.S. Dep't of Just.*,
639 F. Supp. 3d 87 (D.D.C. 2022) .......... 35

*Erie Cnty. Dist. Att'y's Off. v. Gugino*,
2021 WL 4172876 (W.D.N.Y. Sept. 14, 2021) .......... 30

*Ex parte Fahey*,
332 U.S. 258 (1947) .......... 54

*Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*,
168 F.4th 271 (5th Cir. 2026) .......... 20

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981) .......... 51

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 20

*Foster v. Boise-Cascade, Inc.*,
1975 WL 11888 (S.D. Tex. May 29, 1975) .......... 34

*Frontier Refining, Inc. v. Gorman-Rupp Co.*,
136 F.3d 695 (10th Cir. 1998) .......... 28

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) .......... 35

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) .......... *passim*

*Green v. Bock Laundry Mach. Co.*,
490 U.S. 504 (1989) .......... 48

*Gregg v. Linder*,
349 F.3d 860 (5th Cir. 2003) .......... 45

*Harrell v. DCS Equip. Leasing Corp.*,
951 F.2d 1453 (5th Cir. 1992) .......... 47

*Harrison v. Quarterman*,
496 F.3d 419 (5th Cir. 2007) .......... 25

*Henry v. Lake Charles Am. Press, LLC*,
566 F.3d 164 (5th Cir. 2009) .......... 50

*Hernandez v. Causey*,
124 F.4th 325 (5th Cir. 2024) .......... 34

*Hernandez v. Tanninen*,
604 F.3d 1095 (9th Cir. 2010) .......... 51

*Hickman v. Taylor*,
329 U.S. 495 (1947) .......... 28, 29

*Hignell-Stark v. New Orleans*,
46 F.4th 317 (5th Cir. 2022) .......... *passim*

*Hines v. Stamos*,
111 F.4th 551 (5th Cir. 2024) .......... 43

*Hoven v. Walgreen Co.*,
751 F.3d 778 (6th Cir. 2014) .......... 46

*Howard v. United States*,
533 F.3d 472 (6th Cir. 2008) .......... 18

*Ibarra v. Harris Cnty.*,
2007 WL 9723645 (S.D. Tex. Nov. 16, 2007) .......... 30

*In re Atl. City R.R. Co.*,
164 U.S. 633 (1897) .......... 55

*In re Dall. Morning News Co.*,
916 F.2d 205 (5th Cir. 1990) .......... 47

*In re DePuy Orthopaedics, Inc.*,
870 F.3d 345 (5th Cir. 2017) .......... 55, 57

*In re Doe*,
662 F.2d 1073 (4th Cir. 1981) .......... 35

*In re Edwards*,
865 F.3d 197 (5th Cir. 2017) .......... 20

*In re Ford*,
2023 WL 11849856, at *1 (5th Cir. Dec. 11, 2023) .......... 56

*In re Gee*,
941 F.3d 153 (5th Cir. 2019) .......... 56, 57

*In re Grand Jury 2021 Subpoenas*,
87 F.4th 229 (4th Cir. 2023) .......... 51

*In re Grand Jury Proc.*,
43 F.3d 966 (5th Cir. 1994) .......... 28, 30, 53

*In re Grand Jury Subpoena*,
926 F.2d 1423 (5th Cir. 1991) .......... 52

*In re Lumpkin*,
No. 23-20169 (5th Cir. July 18, 2023) .......... 10

*In re Murphy*,
560 F.2d 326 (8th Cir. 1977) .......... 28

*In re Par.*,
81 F.4th 403, 419 (5th Cir. 2023) .......... 56

*In re PB Life & Annuity Co.*,
2024 WL 2972718 (2d Cir. June 13, 2024) .......... 44

*In re San Juan Dupont Plaza Hotel Fire Litig.*,
859 F.2d 1007 (1st Cir. 1988) .......... 32, 34

*In re Sealed Petitioner*,
106 F.4th 397 (5th Cir. 2024) .......... 47, 56, 57

*In re United States*,
397 F.3d 274 (5th Cir. 2005) .......... 40

*In re Willy*,
831 F.2d 545, 549 (5th Cir. 1987) .......... 56

*International Association of Machinists, Local 2121 v. Goodrich Corp.*,
410 F.3d 204 (5th Cir. 2005) .......... 43, 44

*Johnson v. Mahanoy*,
144 F.4th 178 (3d Cir. 2025) .......... 27

*Johnson-Williams v. Mortg. Elec. Registration Sys., Inc.*,
675 F. App’x 396 (5th Cir. 2017) .......... 49

*Kelly v. Moore*,
376 F.3d 481 (5th Cir. 2004) .......... 19

*Kidder v. Tidewater Marine, LLC*,
2007 WL 37954 (W.D. La. Jan. 5, 2007) .......... 34

*Klein v. Jefferson Par. Sch. Bd.*,
2003 WL 1873909 (E.D. La. Apr. 10, 2003) .......... 30, 31

*Kolwe v. Civ. & Structural Eng’rs, Inc.*,
858 F. App’x 129 (5th Cir. 2021) .......... 43

*La Union Del Pueblo Entero v. Abbott*,
68 F.4th 228 (5th Cir. 2023) .......... 52

*La Union Del Pueblo Entero v. Abbott*,
93 F.4th 310 (5th Cir. 2024) .......... 52

*Lacy v. Payne*,
2026 WL 447413 (E.D. Ark. Feb. 17, 2026) ........ 21

*Lawrence v. Suffolk Cnty.*,
2022 WL 855380 (E.D.N.Y. Mar. 23, 2022) ........ 30

*LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*,
63 F.4th 160 (2d Cir. 2023) ........ 44

*Lee v. City of Midland*,
2024 WL 4005959 (W.D. Tex. Feb. 15, 2024) ........ 31

*Leonard v. Martin*,
38 F.4th 481 (5th Cir. 2022) ........ *passim*

*Lewis v. Crochet*,
105 F.4th 272 (5th Cir. 2024) ........ 53

*Mansfield, C. & L.M. Ry. Co. v. Swan*,
111 U.S. 379 (1884) ........ 41

*Margolin v. Nat'l Ass'n of Immigr. Judges*,
146 S. Ct. 1285 (2026) ........ 27

*Mayfield v. Butler Snow, LLP*,
75 F.4th 494 (5th Cir. 2023) ........ 46

*McCleskey v. Kemp*,
481 U.S. 279 (1987) ........ 40

*Merritt v. Int'l Bhd. of Boilermakers*,
649 F.2d 1013 (5th Cir. 1981) ........ 49

*Mohawk Industries, Inc. v. Carpenter*,
558 U.S. 100 (2009) ........ *passim*

*Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*,
2 F.3d 1397 (5th Cir. 1993) ........ 52

*Off. of Thrift Supervision v. Vinson & Elkins, LLP*,
124 F.3d 1304 (D.C. Cir. 1997) ........ 35

*Orthoflex, Inc. v. ThermoTek, Inc.*,
990 F. Supp. 2d 675 (N.D. Tex. 2013) ........ 49

*Ostrowski v. Holem*,
2002 WL 31956039 (N.D. Ill. Jan. 21, 2002) ........ 30

*Pate v. Seaboard R.R., Inc.*,
819 F.2d 1074 (11th Cir. 1987) ........ 19

*Perlman v. United States*,
247 U.S. 7 (1918) ... 53

*Pogue v. Int'l Indus., Inc.*,
524 F.2d 342 (6th Cir. 1975) ... 19

*Pruett v. Marshall*,
283 F.2d 436 (5th Cir. 1960) ... 19

*Pyke v. Cuomo*,
258 F.3d 107 (2d Cir. 2001) ... 38

*Ramirez v. Abreo*,
2010 WL 11470102 (N.D. Tex. Nov. 24, 2010) ... 33, 35

*Republic Gear Co. v. Borg-Warner Corp.*,
381 F.2d 551 (2d Cir. 1967) ... 28

*Rivers v. Guerrero*,
605 U.S. 443 (2025) ... *passim*

*Roell v. Withrow*,
538 U.S. 580 (2003) ... 45

*Roy v. Volkswagenwerk Aktiengesellschaft*,
781 F.2d 670 (9th Cir. 1985) ... 19

*Sales v. Payne*,
2025 WL 967148 (E.D. Ark. Mar. 31, 2025) ... 21

*SEC v. Brady*,
238 F.R.D. 429 (N.D. Tex. 2006) ... 32

*Shepherd v. Int'l Paper Co.*,
372 F.3d 326 (5th Cir. 2004) ... 43

*Shields v. Sturm, Ruger & Co.*,
864 F.2d 379 (5th Cir. 1989) ... 51

*Shinn v. Ramirez,*
596 U.S. 366 (2022) ... 27

*Shoop v. Twyford,*
596 U.S. 811 (2022) ... 26

*Sick v. City of Buffalo, N.Y.*,
574 F.2d 689 (2d Cir. 1978) ... 46

*Siers v. Morrash*,
700 F.2d 113 (3d Cir. 1983) ... 46

*Singletary v. B.R.X., Inc.*,
828 F.2d 1135 (5th Cir. 1987) .......... 46

*Sinochem Int'l Co. v. Malasia Int'l Shipping Corp.*,
549 U.S. 422 (2007) .......... 45

*Solomon v. St. Joseph Hosp.*,
62 F.4th 54 (2d Cir. 2023) .......... 42, 44

*Stamps v. Town of Framingham*,
38 F. Supp. 3d 134 (D. Mass. 2014) .......... 30

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) .......... 41

*Stokes v. Stirling*,
64 F.4th 131 (4th Cir. 2023) .......... 27

*Thomas v. Lumpkin*,
995 F.3d 432 (5th Cir. 2021) .......... 18

*United Nat. Foods, Inc. v. Nat'l Lab. Rels. Bd.*,
138 F.4th 937 (5th Cir. 2025) .......... 27

*United States v. Al Jibori*,
90 F.3d 22 (2d Cir. 1996) .......... 38

*United States v. Armstrong*,
517 U.S. 456 (1996) .......... *passim*

*United States v. Arthur Young & Co.*,
465 U.S. 805 (1984) .......... 28

*United States v. Bain*,
309 F. App'x 889 (5th Cir. 2009) .......... 19

*United States v. Bass*,
536 U.S. 862 (2002) .......... 40

*United States v. Casey*,
2013 WL 12190569 (D.P.R. Jan. 30, 2013) .......... 41

*United States v. Castro-Alfonso*,
841 F.3d 292 (5th Cir. 2016) .......... 53

*United States v. Denedo*,
556 U.S. 904 (2009) .......... 42, 44

*United States v. Ecker*,
923 F.2d 7 (1st Cir. 1991) .......... 46

*United States v. El Paso Co.*,
682 F.2d 530 (5th Cir. 1982) ........ 32

*United States v. Emeary*,
773 F.3d 619 (5th Cir. 2014) ........ 59

*United States v. Fluitt*,
99 F.4th 753 (5th Cir. 2024) ........ 50

*United States v. Gordon*,
151 F.4th 1090 (9th Cir. 2025) ........ 18, 21, 22

*United States v. Gordon*,
2023 WL 4531955 (D. Mont. July 13, 2023) ........ 21

*United States v. Haley*,
541 F.2d 678 (8th Cir. 1974) ........ 46

*United States v. Henderson*,
2:06-cr-00039-ALM (S.D. Ohio Jan. 11, 2007), ECF No. 61,
2007 WL 5830748 ........ 41

*United States v. Henderson*,
485 F. Supp. 2d 831 (S.D. Ohio 2007) ........ 41

*United States v. Muhammad*,
124 F.4th 955 (5th Cir. 2025) ........ 16

*United States v. Renfro*,
620 F.2d 497 (5th Cir. 1980) ........ 46

*United States v. Rodgers*,
2022 WL 1074013 (E.D. Tex. Apr. 8, 2022) ........ 29, 31, 33, 35

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020) ........ 27

*United States v. Webster*,
162 F.3d 308 (5th Cir. 1998) ........ 33

*Uranga v. Davis*,
893 F.3d 282 (5th Cir. 2018) ........ *passim*

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
913 F.3d 443 (5th Cir. 2019) ........ 50, 52

*Walker v. Fitch*,
2025 WL 2735609 (S.D. Miss. Sept. 25, 2025) ........ 18

*Westinghouse Elec. Corp. v. Carolina Power & Light Co.*,
1992 WL 300796 (E.D. La. Sept. 22, 1992) .................................................... 49

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) .............................................................................. 52

*Will v. United States*,
389 U.S. 90 (1967) ............................................................................................. 55

*Williams v. Taylor*,
529 U.S. 420 (2000) ........................................................................................... 25

*Williams v. Thaler*,
602 F.3d 291 (5th Cir. 2010) ................................................................................ 6

*X Corp. v. Media Matters for Am.*,
120 F.4th 190 (5th Cir. 2024) ....................................................................... 27, 52

**Statutes**

28 U.S.C. § 1651(a) ........................................................................................... 1, 4

28 U.S.C. § 2244(b) ................................................................................................ 3

28 U.S.C. § 2244(d)(1)(D) ................................................................................... 21

28 U.S.C. § 2254(e)(2) ................................................................................ *passim*

28 U.S.C. § 2255 ............................................................................................ 21, 22

28 U.S.C. § 2255(h) .............................................................................................. 21

28 U.S.C. § 636 ............................................................................................ *passim*

28 U.S.C. § 636(b) ................................................................................................ 45

28 U.S.C. § 636(b)(1) ............................................................................................ 48

28 U.S.C. § 636(b)(1)(A) ...................................................................................... 49

28 U.S.C. § 636(c)(1) ............................................................................................ 46

28 U.S.C. § 636(c)(3) ............................................................................................ 46

**Other Authorities**

11 Fed. Prac. & Proc. § 2817 ............................................................................... 19

12 Fed. Prac. & Proc. Civ. § 3031 (3d ed.) .......................................................... 47

13 Moore's Fed. Prac. Civ. § 71.04 (2025) ........................................................... 47

15A Wright & Miller, Fed. Prac. & Proc. § 3901.1 (3d ed.) ................................. 49

**Rules**

Fed. R. App. P. 3 .......... 47
Fed. R. App. P. 3(c)(1)(A) .......... 47
Fed. R. App. P. 4 .......... 47
Fed. R. Civ. P. 15 .......... 20, 21
Fed. R. Civ. P. 21 .......... 47
Fed. R. Civ. P. 26 .......... 28, 29
Fed. R. Civ. P. 26(b)(3) .......... 28, 31
Fed. R. Civ. P. 45 .......... 28
Fed. R. Civ. P. 45(e)(2)(B) .......... 29
Fed. R. Civ. P. 59 .......... *passim*
Fed. R. Civ. P. 59(d) .......... 19
Fed. R. Civ. P. 59(e) .......... *passim*
Fed. R. Civ. P. 60 .......... 15
Fed. R. Civ. P. 60(b) .......... *passim*
Fed. R. Civ. P. 71 .......... 46, 47, 48
Fed. R. Civ. P. 72 .......... 46, 48
Fed. R. Civ. P. 72(a) .......... 1, 3, 12, 45
Fed. R. Crim. P. 16 .......... 39
Fifth Circuit Rule 41.2 .......... 58
Rule 6(a) of the Rules Governing Section 2254 Cases .......... 8, 24, 39, 41

**JURISDICTIONAL STATEMENT**

The district court properly exercised jurisdiction over the underlying proceedings and discovery dispute. As set forth in ARGUMENT Part II, Petitioner Carlos Manuel Ayestas's post-judgment motions were not successive petitions. Under *Rivers v. Guerrero*, 605 U.S. 443, f453-54 (2025), and *Banister v. Davis*, 590 U.S. 504, 516-17 (2020), an amendment attempted before final judgment—as when a timely Fed. R. Civ. P. 59(e) motion remains pending—cannot be a successive petition because the Rule 59 motion suspends finality of the original judgment. And under *Uranga v. Davis*, 893 F.3d 282, 284 (5th Cir. 2018), a motion attacking an order denying pre-judgment amendment does not raise a "new" claim requiring successive petition treatment because the claims were presented when amendment was first attempted.

This Court, however, lacks jurisdiction because, as set forth in ARGUMENT Part IV, the Harris County District Attorney's Office ("HCDA") violated 28 U.S.C. § 636 and Fed. R. Civ. P. 72(a) when it bypassed the district court and appealed directly from the magistrate judge's order. This Court also lacks jurisdiction because the magistrate judge's discovery order is non-final and does not satisfy the collateral-order doctrine. Although this Court may treat the improper appeal as a petition for mandamus under 28 U.S.C. § 1651(a), any such review must accord with the deference that the mandamus posture entails. Even under § 1651(a), this Court lacks

power to decide non-jurisdictional questions that HCDA did not appeal, including Ayestas's diligence and the effect of 28 U.S.C. § 2254(e)(2).

**STATEMENT OF THE ISSUES**

1. Whether 28 U.S.C. § 636 and Fed. R. Civ. P. 72(a) foreclose appellate jurisdiction over an appeal taken directly from a magistrate judge's order, without first objecting in the district court.

2. Whether this Court lacks appellate jurisdiction because the challenged discovery order is non-final and fails to satisfy the collateral-order doctrine's requirement that the order be "effectively unreviewable on appeal from a final judgment."

3. Whether, under *Rivers v. Guerrero*, 605 U.S. 443 (2025), and *Banister v. Davis*, 590 U.S. 504 (2020), an amendment attempted while a timely Rule 59(e) motion remains pending qualifies as a "successive" petition under 28 U.S.C. § 2244(b).

4. Whether a post-judgment motion challenging an order that denied a pre-judgment amendment raises a "new" claim requiring successive-petition treatment.

5. Whether the magistrate judge abused her discretion in ordering discovery over a work-product objection, given the limitations imposed by 28 U.S.C. § 2254(e)(2) and the threshold showing required by *United States v. Armstrong*, 517 U.S. 456 (1996).

6. Whether this Court should grant relief by treating the appeal as a petition for mandamus under 28 U.S.C. § 1651(a), or by reconsidering the 2023 order denying mandamus relief to the Texas Department of Criminal Justice.

## STATEMENT OF FACTS AND PROCEEDINGS[1]

In her Capital Murder Summary (the "Siegler Memorandum"), HCDA court chief Kelly Siegler formally recommended capital charges and a death sentence for Carlos Ayestas[2] because the victim was elderly and because "the Defendant is not a citizen." ROA.2545; ROA.8092.[3] HCDA secured a conviction and death sentence, which the Texas Court of Criminal Appeals affirmed. ROA.8003-8022 (*Ayestas v. State*, No. AP-72,928 (Tex. Crim. App. 1998)). Ayestas never saw the Memorandum until December 2014 because HCDA treated it as confidential work product. *See* Appellant's Br. in Opp'n at 18 n.10, *Ayestas v. Davis*, 584 U.S. 28 (2018) ("BIO") (admission from HCDA).

After state and some federal post-conviction proceedings, District Judge Sim Lake issued a provisional judgment on November 18, 2014. ROA.968. On December 22, Ayestas filed a timely motion, under Fed. R. Civ. P. 59(e), to alter or amend the judgment. ROA.985. Six days later, on December 22, Ayestas discovered the Siegler Memorandum when HCDA inadvertently left it in a box made available for a case file review. ROA.1150-53. Ayestas immediately sought to enlarge his pending Rule 59(e) motion and amend his petition based on this new evidence.

[1] Unless noted, all internal quotation marks, citations, and alterations are omitted, and all emphasis is added.

[2] Record material sometimes refers to Ayestas as Dennis Zelaya.

[3] An unknown person at an unknown date struck through the Memorandum's typed out reference to non-citizenship.

ROA.1148-58; ROA.1159-67. In opposition, the Texas Department of Criminal Justice ("TDCJ") repeatedly and *falsely* represented to the district court that prior counsel could have discovered the Siegler Memorandum with reasonable diligence.[4] At the time, Fifth Circuit precedent required treating all Rule 59(e) motions as successive petitions—a rule later overruled by *Banister v. Davis*, 590 U.S. 504 (2020). *See Williams v. Thaler*, 602 F.3d 291, 303 (5th Cir. 2010), *abrogated by Banister*, 590 U.S. at 507. The district court accordingly held that it lacked jurisdiction to consider the Siegler Memorandum claims. ROA.1241-44.

The Fifth Circuit affirmed on a different ground. *Ayestas v. Stephens*, 817 F.3d 888 (5th Cir. 2016) (per curiam). The court *did not* hold that the attempted amendment was a successive petition; instead, it held that adjudication of the claims fell outside the scope of a prior remand. *Id.* at 899. In so doing, the court credited TDCJ's false representations regarding the Memorandum's availability.[5] *See id.* at

[4] *See, e.g.*, ROA.1191 ("Despite the apparent availability of this document for quite some time…."); ROA.1193 n.5 ("[T]here is absolutely no evidence to indicate that the report has been concealed for twenty years…."); ROA.1194 ("[H]e should have raised these claims in his original federal petition because the factual predicate of the claim was available."); ROA.1197 ("Ayestas still cannot demonstrate … diligence because the 'evidence' he uses to support his new claims has always been available."); ROA.1202 ("[T]he new claims … were clearly available during his state habeas proceeding."); ROA.1212 ("[T]he 1995 prosecution report[] could have been discovered much earlier had Ayestas exercised due diligence."); ROA.1212 ("[T]here is absolutely no indication that the report was not in those very same files prior to his filing his original federal habeas application….").

[5] TDCJ's misrepresentations about the availability of the Siegler Memorandum continued in the Fifth Circuit: "… Ayestas[] attempt[ed] to excuse this lack of diligence by blaming the State and relying on the self-serving assumption that it would have been futile to ask the State to produce work product was unavailing." Resp. to Pet. for Reh'g at 9, *Ayestas v. Stephens*, No. 15-70015 (5th Cir. May 23, 2016).

900-02. On rehearing, the panel clarified that its criticism of diligence referred to the "diligence of Ayestas's *trial counsel*," not federal habeas counsel. *Ayestas v. Stephens*, 826 F.3d 214, 215 (5th Cir. 2016) (per curiam).

During Supreme Court proceedings, TDCJ finally acknowledged the truth: The Siegler Memorandum had not been available to trial counsel, because HCDA treated it—like all such memos—as confidential work product. BIO at 18 n.10 ("The fact that [the Siegler Memorandum] is privileged explains why it was not voluntarily turned over to [Ayestas's] counsel during the criminal trial."). The Supreme Court reversed on an ineffective-assistance-of-trial-counsel ("IATC") issue, vacating the Fifth Circuit's 2016 decision. *Ayestas*, 584 U.S. at 48. When the Fifth Circuit issued its new IATC opinion on remand, it did not reach the Memorandum-based claims. *See Ayestas v. Davis*, 933 F.3d 384 (5th Cir. 2019).

The Supreme Court thereafter decided *Banister*, which held that the district court's prior approach—treating Rule 59(e) motions as successive petitions—was incorrect. 590 U.S. at 511. Following *Banister*, Ayestas unsuccessfully sought state post-conviction relief to pursue the Siegler Memorandum claims. He then initiated this Fed. R. Civ. P. 60(b) litigation, invoking *Banister* and TDCJ's misrepresentations as grounds to reopen the judgment and pursue the claims he had attempted to raise in 2015. ROA.1343-1507.

On August 12, 2021, Judge Lake granted Ayestas's motion. ROA.1609-17. He determined that: (1) under *Gonzalez v. Crosby*, 545 U.S. 524 (2005), Ayestas's Rule 60(b) attack on the 2015 order refusing amendment was not a successive petition because that order was a "previous ruling which precluded a merits determination"; (2) Ayestas was entitled to post-judgment relief under Rule 60(b); (3) Ayestas's Rule 59(e)-postured amendment from 2015 was not a successive petition; and, (4) "Ayestas has demonstrated his diligence in pursuing" the Memorandum-based claims. ROA.1609-17.

Ayestas then filed an Amended Petition raising Eighth and Fourteenth Amendment claims based on the Memorandum. ROA.1707-34. On August 31, 2022, Ayestas moved for discovery under Rule 6(a) of the Rules Governing Section 2254 Cases ("Habeas Rules"), which the district court granted. ROA.2196-2206; ROA.2314-30. Ayestas sought certain charging memoranda that HCDA created during the tenures of Siegler and elected District Attorney Johnny Holmes. Holmes was District Attorney from 1979 to 2000, and Siegler remained at HCDA until 2008. (1979 to 2008 is therefore the "Covered Period.")

When the district court granted discovery, the record contained substantial evidence that Ayestas was diligent and that HCDA had withheld the Siegler Memorandum. What this Brief calls the "Diligence Evidence" includes: billing records showing that post-conviction representatives had reviewed the HCDA file

*four times* before December 2014 (ROA.2173-77); a notation that HCDA's general counsel told state post-conviction counsel that HCDA policy was to remove work product (ROA.2179); the BIO admission that TDCJ treated the Memorandum as work-product; sworn HCDA testimony from another case that "capital murder summaries in Harris County are work product" (ROA.1419); an affidavit from state post-conviction counsel attesting that he never saw the Siegler Memorandum during his file reviews (ROA.2182-83); and unrebutted allegations that this was the first time an HCDA capital murder summary had *ever* been disclosed to a death-sentenced prisoner (ROA.1578).

Judge Lake's discovery order noted TDCJ's prior misrepresentations: "Evidence suggests that the Siegler Memo was not disclosed to Ayestas's defense counsel, but was withheld as attorney work product." ROA.2322. It repeatedly described the initial disclosure as "accidental" and underscored that "Ayestas present[ed] evidence that the [HCDA] withheld the Siegler memo until its accidental discovery well into his federal habeas proceedings." ROA.2320-22. The district court observed that the 2016 "judgment was vacated," ROA.2321, extinguishing its precedential effect. On the merits, the district court found that Ayestas "presented evidence raising questions as to whether the decision to seek the death penalty against him was based on constitutionally impermissible factors." ROA.2329. This Court stayed district court proceedings to hear a mandamus challenge to the district

court's jurisdiction and discovery power, which it unanimously refused. *In re Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023).

After discovery resumed in 2023, Ayestas subpoenaed HCDA for case files involving Latino and non-citizen defendants, along with all charging memoranda for defendants charged with murder or capital murder during the Covered Period. ROA.2991; ROA.3116-27; ROA.3173. On August 18, HCDA objected based on burden, work-product privilege, and deliberative-process privilege. ROA.3011-14. Ayestas reiterated his request to HCDA on May 20, 2024, *see* ROA.2878, but narrowed it on November 21, ROA.3024-26. HCDA reiterated its objections. ROA.3173; ROA.3022-26. Ayestas narrowed his request *again* to (1) his own case file and (2) specific memoranda for defendants likely to be Latino, non-white, or non-citizens. ROA.3035-36. HCDA again asserted privilege, *see id.*, and Ayestas moved to compel, ROA.2985-3009.

In response, HCDA argued that compliance would be "unduly burdensome" but failed to explain the burden or offer any compromise. ROA.3109-12. (Ayestas had offered to further negotiate the scope of his request. ROA.3007.) The magistrate judge issued the "Discovery Order," finding HCDA's burden arguments "conclusory" and without "any supporting evidence." ROA.3175. The magistrate judge also determined that the documents were not protected by work-product privilege, and she ordered production by July 3, 2025. ROA.3181.

Instead of objecting before the district court, HCDA noticed an appeal. ROA.3182-83. TDCJ did not appeal, seek mandamus, or intervene; it instead filed amicus briefs. On March 9, 2026, the panel issued a 2-1 decision that would have declared the district court without jurisdiction to entertain the amendment and, by extension, without power to order discovery against HCDA. *See Ayestas v. Harris Cnty. Dist. Att'y's Off.*, 169 F.4th 586 (5th Cir. 2026), *vacated on reh'g en banc*, No. 25-70014 (5th Cir. July 6, 2026). Judge Southwick dissented on this Court's exercise of appellate jurisdiction. This Court granted rehearing *en banc*.

## SUMMARY OF THE ARGUMENT

This Court lacks jurisdiction over HCDA's appeal, but it may exercise its mandamus power to address jurisdictional issues and the discovery matters that HCDA improperly appealed. Ayestas therefore structures his Argument as follows: (1) district court jurisdiction, (2) propriety of the discovery orders, (3) appellate jurisdiction, (4) whether mandamus relief for HCDA is appropriate, and (5) whether this Court should reopen the July 2023 order denying mandamus relief to TDCJ.

First, the district court had jurisdiction over Ayestas's claims. Under *Banister* and *Rivers*, Ayestas's 2015 attempt to amend his petition was not a successive petition because it occurred before final judgment—while a timely Rule 59(e) motion remained pending. And the 2021 motion attacking the order denying amendment was not a successive petition either. Under *Uranga v. Davis*, 893 F.3d

282 (5th Cir. 2018), and *Gonzalez v. Crosby*, 545 U.S. 524 (2005), a post-judgment motion challenging a denied amendment does not raise a "new" claim because the prisoner already attempted to raise that claim when amendment was first sought.

Second, even if this Court reaches the merits, the Discovery Order was not an abuse of discretion; it was correct. 28 U.S.C. § 2254(e)(2) does not bar discovery when a prisoner has not "fail[ed] to develop" the factual basis of his claims in state court, and Ayestas did not fail to develop his claims—because HCDA suppressed the Siegler Memorandum as work product. Equally important: HCDA did not appeal the § 2254(e)(2) question, so it should not be decided here. On the merits of the discovery dispute, the district court correctly rejected HCDA's privilege claim because a district attorney's office cannot assert work-product privilege in a subsequent civil proceeding to which it is not a party. Even if the privilege attached, Ayestas can pierce it because there is sufficient need for the contested material, which cannot be obtained from other sources. Finally, HCDA's *Armstrong* objection fails because the Siegler Memorandum is a "direct admission" of discriminatory purpose, which *Armstrong* and its progeny reserve for special treatment, and because *Armstrong* does not restrict discovery on Eighth Amendment claims.

Third, this Court lacks appellate jurisdiction for two independent reasons. HCDA violated 28 U.S.C. § 636 and Fed. R. Civ. P. 72(a) by directly appealing the magistrate judge's Discovery Order without first objecting in the district court.

Separately, HCDA appealed a non-final order that the collateral-order doctrine does not cover. *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), and its progeny foreclose prejudgment appeals from garden-variety discovery orders—even those implicating third-party privilege. This Court can reach this case only by treating the appeal as a mandamus petition and reviewing the issues under the deferential standards that mandamus consideration requires.

Fourth, mandamus relief is inappropriate. Any mandamus review is necessarily limited to issues that HCDA actually appealed or that are jurisdictional—so § 2254(e)(2) and diligence issues do not qualify. As to the remaining issues, HCDA fails to satisfy the mandamus elements because (1) the district court did not clearly err and (2) HCDA had adequate remedies. HCDA could have objected before the district court; it could have made its objections with sufficient detail and a privilege log; or it could have defied the compulsion order, incurred a contempt citation, and appealed that. Mandamus power does not exist to rescue sophisticated litigants from their own procedural failures.

Finally, this Court should not reopen its 2023 order refusing mandamus relief to TDCJ. The *en banc* court may overrule any decision in any Fifth Circuit posture, but reversing a legal rule controlled by precedent or law of the case is different from recalling a mandate in a decided appeal. The power to recall a mandate *sua sponte* is "one of last resort, to be held in reserve against grave, unforeseen contingencies."

*Calderon v. Thompson*, 523 U.S. 538, 550 (1998). Given the "profound interests in repose," that power may be exercised only in "extraordinary circumstances." *Id.* No extraordinary circumstances exist here, the equities strongly disfavored TDCJ during the earlier mandamus proceedings, and recalling a mandate more than three years after disposition is virtually unthinkable.

## ARGUMENT

### I. THE DISTRICT COURT'S DILIGENCE FINDING IS WELL-SUPPORTED.

Because HCDA repeatedly implies that Ayestas sat on his hands, and because his diligence affects several issues presented, this Brief begins there. The "Diligence Evidence" recited in the STATEMENT, *supra*, is simply overwhelming; prior counsel looked for the Memorandum, and HCDA withheld it as work product. When federal habeas counsel discovered the Memorandum, Ayestas immediately moved to enlarge Rule 59 consideration and amend his petition. ROA.1148-58 (amendment); ROA.1159-67 (enlargement). He has zealously litigated those claims since then.

Judge Lake therefore found that Ayestas produced sufficient evidence of diligence, and he made that finding repeatedly. *See, e.g.*, ROA.1615 ("Ayestas has demonstrated his diligence in pursuing [the Memorandum-based claims]."); *id.* (finding the State's assertion of delay "unconvincing" and "[his conduct] does not demonstrate that Ayestas was dilatory"). He also found that the Memorandum was unavailable before its inadvertent disclosure. *See* ROA.2322 ("Evidence suggests

that the Siegler Memo was not disclosed to Ayestas's defense counsel, but was withheld as attorney work product."); ROA.2320-22 ("Ayestas present[ed] evidence that the [HCDA] withheld the Siegler memo until its accidental discovery well into his federal habeas proceedings"); ROA.2327 ("[I]f the Siegler Memo was not included in the case file given to trial counsel for review, *then any delay in the development of this evidence was due to the suppression of the Siegler Memo*.").

The questions of diligence and availability do not resolve the jurisdictional questions here,[6] but they matter for other reasons. First, they go to the effect of § 2254(e)(2). *See* Part III.A, *infra*. Second, TDCJ's long-running misrepresentation of the Siegler Memorandum's availability goes to the State's equitable standing on non-jurisdictional issues—like its entitlement to mandamus relief. And third, the facts outlined here are incompatible with the characterization of this litigation as strategically deferred. To rule in the State's favor, the *en banc* court would have to find that Judge Lake erred in his careful findings on diligence and the Memorandum's availability.

---

[6] HCDA sometimes talks about diligence in terms of whether the Rule 59 and 60 motions should have been granted, but whether Ayestas satisfies those rules is a non-jurisdictional question distinct from whether the motions are successive petitions.

## II. <u>THE DISTRICT COURT HAD JURISDICTION BECAUSE THE POST-JUDGMENT MOTIONS WERE NOT SUCCESSIVE PETITIONS.</u>

HCDA argues that Ayestas's post-judgment motions were successive petitions. *See* En Banc Br. of Appellant ("HCDA Br.") at 61-68, ECF No. 151-1. This Court reviews that question *de novo*. *See United States v. Muhammad*, 124 F.4th 955, 956 (5th Cir. 2025). The issue subdivides into the successive-petition status of two different motions, with the status of the first functionally dispositive: the successiveness of (1) the Rule 59-postured amendment attempted in 2015 dictates the successiveness of (2) the Rule 60(b) motion filed in 2021.

### A. <u>The Rule 59(e) Motion Was Not A Successive Petition.</u>

#### 1. *Under The* **Banister-Rivers** *Rule, The Rule 59-Postured Amendment Was Not A Successive Petition***.**

*Banister* established the governing principle: When a Rule 59(e) motion is pending, "there is no longer a final judgment to appeal from." 590 U.S. at 508. Finality materializes only when the district court disposes of the Rule 59(e) motion. *Id.* The straightforward consequence is that "Rule 59(e) motions are not second or successive petitions, but instead a part of a prisoner's first habeas proceeding." *Id.* at 517. Critically, this applies to *anything* filed while the motion is pending before final judgment, including "new arguments based on an intervening change in controlling law and newly discovered or previously unavailable evidence." *Id.* at 508 n.2.

*Rivers* reaffirmed this framework. The test for successiveness "generally turns on the existence of a final judgment with respect to the first petition." 605 U.S. at 453. A timely Rule 59(e) motion "suspends finality of the original judgment," "is part of producing the final judgment," and "merges into the final judgment of the initial habeas filing." *Id.* at 454. The Supreme Court recently confirmed that this finality rule is applicable across all case types. *See BLOM Bank SAL v. Honickman*, 605 U.S. 204, 215 (2025). After *Banister* and *Rivers*, the bright-line distinction is that Rule 59(e)-postured amendments are never successive petitions "because final judgment has not issued," but some Rule 60(b) additions are successive petitions because they come "after the judgment has issued." *Rivers*, 605 U.S. at 453.[7]

The *Banister-Rivers* rule resolves this case. Ayestas attempted to amend his petition before final judgment, so the attempt was not a successive petition. The provisional judgment issued on November 18, 2014, but there was no final judgment until the district court denied the Rule 59(e) motion on April 1, 2015. ROA.1241. Ayestas's timely Rule 59(e) motion was still pending in January 2015 when he enlarged that motion and moved to amend. Multiple courts have confirmed that the

[7] TDCJ's amicus brief substantially alters a quotation from *Rivers*. *Rivers* states that "[a post-judgment motion to amend] *can be construed as* a second or successive petition…." 605 U.S. at 451 (emphasis added and quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)). TDCJ replaces "can be construed as" with "is." Br. for Tex. Dep't of Crim. Justice as Amicus Curiae ("TDCJ Br.") at 4, ECF No. 171-1. Even though the quote is plainly talking about motions made after final judgment, the change to "is" implies that *all* post-judgments motions to facilitate amendment *are always* successive petitions.

*Banister-Rivers* rule applies in this posture. *See, e.g.*, *United States v. Gordon*, 151 F.4th 1090, 1104-06 (9th Cir. 2025); *Walker v. Fitch*, 2025 WL 2735609, at *3 (S.D. Miss. Sept. 25, 2025).

### 2. *There Is No Doctrinal Support For Carve-Outs.*

HCDA seeks two carve-outs from the *Banister-Rivers* rule. First, HCDA argues that a Rule 59(e) motion becomes a successive petition when the prisoner seeks to add a claim. *See* HCDA Br. at 63-64. No. There was no final judgment until April 1, 2015, and nothing filed before that date could be a successive petition. *See Rivers*, 605 U.S. at 453-54; *Banister*, 590 U.S. at 508. *Banister* explicitly contemplates new claims: "[C]ourts may consider new arguments based on an intervening change in controlling law and newly discovered or previously unavailable evidence." 590 U.S. at 508 n.2.[8] And *this Court* has held that "Rule 59(e) motions should not be recategorized as successive applications *regardless of their contents*." *Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021).

Second, HCDA argues that Rule 59-postured amendments should be treated as successive petitions when they are attempted after the 28-day window. *See* HCDA Br. at 63-64. But this conflates whether a district court should permit Rule 59-

[8] *Banister* overturned, *by name*, a circuit court decision giving successive-petition treatment to a Rule 59(e) motion raising a new claim. *See* 590 U.S. at 514-15 (overturning *Bannister v. Armontrout*, 4 F.3d 1434, 1445 (8th Cir. 1993)). Furthermore, *Banister* sided with two cases that rejected successive-petition treatment for Rule 59(e) motions designed to add claims. *See Blystone v. Horn*, 664 F.3d 397, 412-15 (3rd Cir. 2011); *Howard v. United States*, 533 F.3d 472, 473-76 (6th Cir. 2008).

postured amendment (internal to Rules) with whether a filing is a "successive petition." Even under standards internal to Rule 59—which are not before this Court—the suggestion that Rule 59 motions cannot be enlarged outside of the 28-day window is unsupported by *any* modern authority.[9]

HCDA excerpts language from *Banister* discussing the typical timing of initial Rule 59(e) motions, which must be filed within 28 days of the provisional judgment. *See id*. But that excerpted language is like a "whereas" clause in a contract; it explains why the Court adopted the rule, not what the rule is. The rule is that successiveness turns on whether final judgment has issued. *See Banister*, 590 U.S. at 519. District courts should usually refuse to enlarge Rule 59 consideration under standards internal to that Rule. But under *Banister-Rivers*, whether enlargement should be permitted is a Rule 59 issue, not a successiveness issue.

---

[9] Courts have discretionary authority to "enlarge the issues to be considered in acting on a timely motion under Rule 59." *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986) (citing *inter alia*, 11 *Fed. Practice & Proc.* § 2817 at 192 n.34 (1969)); *see also Kelly v. Moore*, 376 F.3d 481, 484 (5th Cir. 2004) (recognizing principle). This understanding prevails in *every circuit* to have decided the issue since the 1966 amendments to Rule 59(d), which now states that "the court may grant a timely motion for a new trial for a reason not stated in the motion." In dicta, the Fifth Circuit first explained that it would be "inclined to take" the now-accepted view. *Pruett v. Marshall*, 283 F.2d 436, 440 (5th Cir. 1960). That dicta was later recognized as the Circuit rule. *See, e.g.*, *United States v. Bain*, 309 F. App'x 889, 890 (5th Cir. 2009) ("later filed amendment to a timely [Rule 59 motion to] be considered by the district court in some, but not all, circumstances"); *Dotson v. Clark Equip. Co.*, 805 F.2d 1225, 1228 (5th Cir. 1986) (substantively same). *Pruett* was cited as the major authority for the Eleventh Circuit's decision that "the district court may consider amendments to a party's original timely [Rule 59] motion[.]" *Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1086 (11th Cir. 1987); *see also Cent. Microfilm Serv. Corp. v. Basic/Four Corp.*, 688 F.2d 1206, 1211 (8th Cir. 1982) (grounding principle in Rule 59(d))); *Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670, 670 (9th Cir. 1985) (substantively same as *Pate*); *Pogue v. Int'l Indus., Inc.*, 524 F.2d 342, 344 (6th Cir. 1975) (substantively same as *Pate*).

HCDA's other cited authorities are inapposite. *Burton v. Stewart*, 549 U.S. 147, 152 (2007), addresses when successive petitions require authorization—a question not in dispute here. *In re Edwards*, 865 F.3d 197, 203-05 (5th Cir. 2017), holds that motions raising new claims *after final judgment* receive successive-petition treatment, but Ayestas filed before final judgment. And *Demahy v. Schwarz Pharma, Inc*., 702 F.3d 177, 182 n.2 (5th Cir. 2012), supports Ayestas, holding that the first post-judgment motion filed within 28 days should be treated as a Rule 59(e) motion. None of these cases support carve-outs from the *Banister-Rivers* rule.

### 3. *There Is No Policy Rationale For Carve-Outs.*

HCDA warns that the *Banister-Rivers* rule "completely dissolves the finality of the underlying judgment," creating a "free-for-all where a petitioner can continually add new claims *ad infinitum* so long as the original motion remains undecided." HCDA Br. at 64-65. But federal habeas law contains multiple independent checks against the delay HCDA describes, and none requires a carve-out from *Banister-Rivers*. Rule 59(e) itself bars the addition of claims that "*could have been* but were not raised before the just-issued decision." *Banister*, 590 U.S. at 516. Fed. R. Civ. P. 15 bars post-judgment amendment when there is "undue delay, bad faith, or dilatory motive." *Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*, 168 F.4th 271, 279 (5th Cir. 2026) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The procedural default doctrine bars claims when prior

forfeiture is the result of "something that can[] fairly be attributed to" the claimant. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). And 28 U.S.C. § 2244(d)(1)(D) imposes a one-year limitations period running from when "the factual predicate of the claim … could have been discovered through the exercise of due diligence."

The *Banister-Rivers* rule is the status quo, and there is no torrent of abuse. Judgment becomes final the moment a court denies Rule 59 relief, *for any reason*. District courts ably refuse dilatory amendments, without changing the *Banister-Rivers* rule. *See Gordon*, 151 F.4th at 1105 (denying Rule 59(e) amendment on futility grounds); *Lacy v. Payne*, 2026 WL 447413, at *5-6 (E.D. Ark. Feb. 17, 2026) (denying amendment under Rule 15 standards); *Sales v. Payne*, 2025 WL 967148, at *3-5 (E.D. Ark. Mar. 31, 2025) (denying amendment under Rules 15 and 59 standards).

### 4. *A Carve-Out Would Create A Circuit Split.*

HCDA's position would create a split with the Ninth Circuit, which rejected the identical argument in *Gordon*. *See* 151 F.4th at 1105. *Gordon* involved a federal prisoner's § 2255 motion, subject to the same successiveness rules at issue here. *See* 28 U.S.C. § 2255(h). The prisoner sought to add a claim while his Rule 59(e) motion remained pending,[10] but long after the 28-day filing window had closed.[11] The

[10] The Ninth Circuit construed a second § 2255 motion as an attempted amendment to the first. *Gordon*, 151 F.4th at 1104.

[11] *See United States v. Gordon*, 2023 WL 4531955, at *1 (D. Mont. July 13, 2023).

government made HCDA's exact argument: that the attempted amendment "must be considered an impermissible second or successive motion[.]" *Gordon*, 151 F.4th at 1104.

The Ninth Circuit relied on the *Banister-Rivers* rule to hold that there could be no successive petition while a Rule 59(e) motion remained pending:

> *Banister*'s language … strongly support[s] Gordon's argument that the district court's decision on the first § 2255 motion was pending when Gordon filed his second-in-time motion. *See also* [*Rivers*, 605 U.S. 443] (reiterating *Banister*'s Rule 59(e) reasoning) …. *Banister*'s language declar[es] that the Rule 59(e) motion suspends the finality of the district court's decision, *thus allowing motions to amend to be filed at that time*. Thus, Gordon is correct that, under *Banister*, the finality of the district court's original denial of his § 2255 motion was suspended while it considered his Rule 59(e) motion, *allowing Gordon to file an additional habeas claim which the district court could consider as a motion to amend the first habeas motion*…. [His] *Rule 59(e) motion was still pending when he filed it*, making Gordon's second-in-time motion a permissible motion to amend.

*Id.* at 1105-06.

### B. <u>The Rule 60(b) Motion Was Not A Successive Petition.</u>

Because the Rule 59(e) motion wasn't a successive petition, the Rule 60(b) motion wasn't either. HCDA and TDCJ both ignore this Circuit's controlling precedent on post-judgment motions attacking denied habeas amendments. *See* HCDA Br. at 66-67; TDCJ Br. at 8-10. *Uranga v. Davis*, 893 F.3d 282, 284 (5th Cir. 2018), held that a post-judgment motion attacking a denied habeas amendment does not seek litigation of a "new" claim *because the prisoner tried to raise the claim*

*when amendment was first attempted*. *Uranga* follows directly from *Gonzalez v. Crosby*, 545 U.S. 524 (2005), which holds that successive-petition status depends on whether the movant seeks to add a new claim or to attack "a previous ruling which precluded a merits determination." *Id.* at 532 & n.4.[12] The district court correctly applied this principle: "[The] Motion attacks the court's prior jurisdictional ruling *that precluded adjudication on the merits*. Therefore, it is not a successive petition." *See* ROA.1613

The district court's analysis was correct. Ayestas first proffered his claims in 2015. The order denying amendment "precluded a merits determination" of those claims and, under *Uranga*, a post-judgment motion attacking such an order does not itself raise a new claim. *See* 893 F.3d at 284.[13] Indeed, *Uranga* explicitly reasoned that the claimant's post-judgment motion was not a successive petition because he "did not seek to add a new ground for relief…. Rather, he asserted that a previous ruling (the denial of his motion for leave to amend) *which precluded a merits determination* was in error." *Id.*

---

[12] *Gonzalez* identified two categories of non-merits rulings that Rule 60(b) motions may challenge: (i) those that "precluded a merits determination"; and (ii) those that reflect a "defect in the integrity" of the proceedings, including those resulting from misrepresentations to the court. 545 U.S. at 532 nn.4-5. Ayestas's 2021 motion was not a successive petition for both reasons.

[13] In *Uranga*, the post-judgment attack came by way of a Rule 59(e) motion, not a Rule 60(b) motion, but the Court applied *Gonzalez* because, at the time it saw no distinction between the two types of post-judgment motions. *See Uranga*, 893 F.3d at 284 n.6.

HCDA's arguments find no decisional support. It writes that "a motion does not attack a procedural defect when its underlying, singular purpose is to clear away old procedural rulings solely to force an adjudication on the merits…." HCDA Br. at 66-67. That is the *opposite* of what *Gonzalez* holds: An attack on a ruling that "precluded a merits determination" is *not* a successive petition. 545 U.S. at 532 nn.4-5. HCDA also argues that "[u]nder *Gonzalez*, a Rule 60(b) motion escapes the successiveness bar only if it targets a *localized flaw* in how the federal court processed the initial petition…." HCDA Br. at 66. But "localized flaw" is not a concept from *Gonzalez* or any other case. And if it means "discrete orders," then the denial of enlargement and amendment in early 2015 certainly qualifies.

Finally, HCDA raises an argument that is not part of this *en banc* proceeding. *See id.* at 68 (making alternative arguments "if the Rule 60(b) motion were procedurally proper"). The question before this Court is whether the Rule 60(b) motion should have been reclassified as a successive petition—not whether Rule 60(b) itself would permit relief. HCDA did not appeal that issue, and neither the panel nor the *en banc* Court ordered briefing on it.

## III. <u>THE DISTRICT COURT APPROPRIATELY COMPELLED DISCOVERY.</u>

### A. <u>Section 2254(e)(2) Does Not Justify Reversal.</u>

The subpoena to HCDA was appropriate if there was "good cause" for discovery under Habeas Rule 6(a). The district court found good cause, ROA.2328-

29, applying the familiar habeas standard from *Bracy v. Gramley*: "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief…." 520 U.S. 899, 909 (1997) (quoted at ROA.2328). This Court ordered briefing on whether "the subpoena should have been quashed" as "inconsistent with 28 U.S.C. § 2254(e)(2)." ECF No. 130. To reverse, this Court would have to conclude that the district court abused its discretion and that the discovery order was "arbitrary or clearly unreasonable." *Banco Mercantil de Norte, S.A. v. Paramo*, 114 F.4th 757, 760 (5th Cir. 2024).

**1. *The Discovery Order Was Not An Abuse Of Discretion.***

Section 2254(e)(2) bars the introduction of merits evidence only on claims that a prisoner "failed to develop" factually in state proceedings. Claimants "fail[] to develop" claims factually only when they are not "diligent" in investigating and presenting them. *Williams v. Taylor*, 529 U.S. 420, 435 (2000). Diligence requires a "*reasonable attempt*, in light of the information available at the time, to investigate and pursue claims in state court[.]" *Id.*; *see also Harrison v. Quarterman*, 496 F.3d 419, 429 (5th Cir. 2007) (diligence rule does not require a claimant to "act 'as soon as possible'"). When the acts of another interfere with fact development, the claimant does not "fail[] to develop" the claim. *Id.* Ayestas did not "fail[] to develop"

his claims because he was diligent. *See* STATEMENT (Diligence Evidence) and Part I, *supra* (collecting information and argument).

This case presents an *upstream* question, not a *downstream* one. The unpresented downstream question is whether Ayestas ultimately avoids § 2254(e)(2). The *upstream* question is whether there is good cause for discovery under Rule 6. Good cause exists if Ayestas "may, *if the facts are fully developed*, be able to demonstrate" that he avoids the restriction and can prove the constitutional error. *Gramley*, 520 U.S. at 909. The district court expressly found that, if HCDA withheld the Memorandum, then § 2254(e)(2) would not restrict relief. ROA.2327 ("[I]f the Siegler Memo was not included in the case file given to trial counsel for review, then any delay in the development of this evidence was due to the suppression of the Siegler Memo."). Because § 2254(e)(2) would not bar merits consideration of claims arising out of a suppressed memorandum, it cannot bar the upstream discovery needed to prove the merits of those claims. *Cf. Shoop v. Twyford,* 596 U.S. 811, 823 (2022) (§ 2254(e)(2) bars upstream fact development only where claimant "never explained" how the court could consider evidence).

**2. *This Court Cannot Reach The Issue.***

HCDA did not raise the § 2254(e)(2) issue in the district court or on appeal. Appellate non-party TDCJ attempted to argue the issue from an amicus posture, *see*

HCDA Br. at 3, 9, 18-20, 22, but § 2254(e)(2) is not a jurisdictional provision[14] and so it was not covered by the panel's order for supplemental briefing. Even if some judges take a different view of the § 2254(e)(2) issues, there is no procedural path to reach those questions in this appeal.

This Court cannot reach a non-jurisdictional issue that HCDA neither raised below nor appealed. Doing so in the face of double forfeiture would violate the "party-presentation principle." *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026). "Federal courts are not roving commissions licensed to sally forth each day looking for wrongs to right," and reaching a doubly forfeited § 2254(e)(2) argument would be an "abuse of discretion." *Id.* at 1288-89. The rule persists even when this Court orders *sua sponte* briefing. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020); *United Nat. Foods, Inc. v. Nat'l Lab. Rels. Bd.*, 138 F.4th 937, 950 (5th Cir. 2025).

**B. <u>The Work-Product Privilege Does Not Foreclose Production.</u>**

The magistrate judge's work-product decision wasn't arbitrary or clearly unreasonable; it was correct. *See X Corp. v. Media Matters for Am.*, 120 F.4th 190, 197 (5th Cir. 2024) ("arbitrary or clearly unreasonable" standard for review).[15]

---

[14] *Shinn v. Ramirez* held that the Supreme Court had discretion about whether to hear the § 2254(e)(2) issue even though it had been forfeited in the district court. 596 U.S. 366, 375 n.1 (2022). There would be no discretion if the restriction were jurisdictional. *See also Johnson v. Mahanoy*, 144 F.4th 178, 193 (3d Cir. 2025) ( "§ 2254(e)(2)'s requirements are not jurisdictional"); *Stokes v. Stirling*, 64 F.4th 131, 137-40 (4th Cir. 2023) (same).

[15] HCDA refused Ayestas's repeated offers to meet-and-confer concerning the scope and burden of his request, asserting a blanket work-product privilege objection even though its interests can

### 1. *Non-Party HCDA Cannot Claim Work-Product Privilege.*

HCDA cannot invoke a Rules-based or common-law work-product privilege because it prepared no documents for this litigation and is not a party to it. Fed. R. Civ. P. 26(b)(3) expressly applies only to materials prepared in anticipation of litigation "by or for another party" to that litigation. In subsequent litigation, the rule protects only "materials prepared for any litigation or trial as long as they were prepared *by or for a party to the subsequent litigation*." *In re Grand Jury Proc.*, 43 F.3d 966, 971 (5th Cir. 1994). Furthermore, there is no distinct work-product privilege for prosecutors; they can assert only the same work-product protection available to any litigant. HCDA concedes both of these points. HCDA Br. at 52, 58 n.7.[16] Nor can HCDA claim an analogous common-law immunity under Fed. R. Civ. P. 45, because HCDA's status as a public institution forecloses it. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 817-18 (1984) (entities with "public obligations" have a "public responsibility" and cannot benefit from a judge-created

be addressed by *in camera* review or a protective order.

[16] HCDA's concessions notwithstanding, every case it cites to urge this Court to extend the work-product privilege involved Rule 26. *See* HCDA Br. at 57-60 (citing *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 557 (2d Cir. 1967) (tortious interference with contract); *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 484-85 n.15 (4th Cir. 1973) (patent-antitrust action); *Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 703 (10th Cir. 1998) (equitable indemnity); *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977) (fraud action)). None of these cases can support HCDA's position.

"analogue to the work-product doctrine established in *Hickman v. Taylor*[, 329 U.S. 495 (1947)]").

For the common-law argument, HCDA relies on a single, unreported district court opinion: *Atchison v. City of Tulsa*, 344 F.R.D. 28 (N.D. Okla. 2023). *Atchison* is against the great weight of authority, but it is also off-point. First, in *Atchison*, the plaintiff did "not assert that [the DA] engaged in any wrongful conduct in its prosecution of him." ROA.3177 (quoting *Atchison*, 344 F.R.D. at 30). Here, prosecutor misconduct "constitutes the heart of the issues." *Id.* (quoting *United States v. Rodgers*, 2022 WL 1074013, at *7 (E.D. Tex. Apr. 8, 2022)). Second, *Atchison*'s reasoning—that Rule 45's reference to a "person" instead of a "party" means there must be some common-law work-product protection for non-parties, *id.* at 33-34—ignores Rule 45's text. Rule 45 covers many evidentiary privileges, some held by non-parties. *See* Fed. R. Civ. P. 45(e)(2)(B). Rule 45's use of "person" fits the Rule to *those* privileges; it doesn't change Rule 26's limitation of work-product protection to parties.

Third, *Atchison* held that non-parties could assert work product only in "certain instances" when *Hickman*'s purposes "are implicated"—i.e., only when protecting an attorney's ability to formulate legal theories, preventing opponents from free-loading off adversaries' work, and preventing interference with ongoing litigation. None of those purposes applies here. Producing HCDA's capital charging

recommendations or Ayestas's own case file *in subsequent habeas litigation* cannot result in "freeloading" or "interfere[] with ongoing litigation," because the criminal cases are over. *See Crosby v. City of N.Y.*, 269 F.R.D. 267, 277 (S.D.N.Y. 2010); *Ibarra v. Harris Cnty.*, 2007 WL 9723645, at *1 (S.D. Tex. Nov. 16, 2007) (rejecting work-product claim because "the work of a district attorney is not confidential" except to "protect the innocent and ongoing investigations"); *Alfred v. Duhe*, 2025 WL 3766412, at *7 (W.D. La. Dec. 30, 2025) (no risk of "raiding the file" "where the prior case was criminal and the subsequent civil" (quoting *Klein v. Jefferson Par. Sch. Bd.*, 2003 WL 1873909, at *3-4) (E.D. La. Apr. 10, 2003)). Nor can HCDA seriously maintain that a production order here would keep it from drafting charging recommendations in its pending cases.

The magistrate judge's holding aligns with Circuit and national authority. ROA.3176-77 (citing *Grand Jury Proc.*, 43 F.3d at 971). "[T]he cases denying privilege to the non-party district attorney's office are legion." *Lawrence v. Suffolk Cnty.*, 2022 WL 855380, at *7 (E.D.N.Y. Mar. 23, 2022).[17] District courts in this Circuit follow the oft-cited rule of *Doubleday v. Ruh*: District attorneys "cannot

[17] *See also Erie Cnty. Dist. Att'y's Off. v. Gugino*, 2021 WL 4172876, at *3 (W.D.N.Y. Sept. 14, 2021) ("it is settled that the attorney-work product protection applicable to a prosecution file is inapplicable to subsequent civil rights action later brought by a defendant in a prior criminal case"); *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 143-44 (D. Mass. 2014) (similar); *Ostrowski v. Holem*, 2002 WL 31956039, at *4 (N.D. Ill. Jan. 21, 2002) (similar); *Carter v. City of Phila.*, 2000 WL 632988, at *1-2 (E.D. Pa. May 5, 2000) (similar).

assert the immunity because they are not parties to the [subsequent civil] litigation." 149 F.R.D. 601, 605-08 (E.D. Cal. 1993); *see also Klein*, 2003 WL 1873909, at *3 (courts have "consistently held that the [work-product] privilege is unavailable" to prosecutor in "a related civil lawsuit"); *Alfred*, 2025 WL 3766412, at *7-8 (disclosure of material not "relevant to the underlying criminal prosecution" does not "undermine the criminal process or the policy underlying the privilege"); *Lee v. City of Midland*, 2024 WL 4005959, at *8 (W.D. Tex. Feb. 15, 2024) (documents prepared in separate criminal action "were not prepared *for* any party in *this* case").

#### 2. *Ayestas Has Demonstrated Substantial and Compelling Need That Overcomes Any Work-Product Protection.*

The magistrate judge correctly found that Ayestas's compelling need for these "highly relevant and important" materials overcomes any work-product protection that might attach. ROA.3178.

Courts distinguish between "ordinary" and "opinion" work product. Ordinary work product is "primary information, such as verbatim witness testimony or objective data." *Kent Corp. v. NLRB*, 530 F.2d 612, 624 (5th Cir. 1976). A court may order its production upon a showing of "substantial need" and inability to obtain the equivalent without "undue hardship." Fed. R. Civ. P. 26(b)(3). Opinion work product "consists of the mental impressions, conclusions, opinions, or legal theories of an attorney." *Rodgers*, 2022 WL 1074013, at *6. Protection for opinion work product is higher but not absolute; a court may order production upon a showing of

compelling need. *See, e.g.*, *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006); ROA.3178.

The magistrate judge found that Ayestas met the "higher 'compelling' need standard," which necessarily means that he also showed substantial need. ROA.3178 The district court also rejected work product protection because HCDA never bothered to provide a privilege log. *Id.*[18] Below, Ayestas offers more specific explanation for why he is entitled to the charging memoranda and his case file.

**a. Charging Memoranda.**

The charging memoranda constitute ordinary work product. Although the memoranda could theoretically capture prosecutors' motives and strategy *during the prosecutions*, those motives are now only *historical facts*. Ayestas needs this information to discover whether he was charged by reference to a forbidden characteristic; the memoranda do not contain "candid legal analysis" about Ayestas's constitutional claims. ECF No. 30 at 32. The only charging memorandum Ayestas has seen—the Siegler Memorandum—contains no legal analysis. ROA.8090-8092.

[18] Although HCDA has made a blanket assertion that "capital murder summaries, and *some* withheld case file materials, are opinion work product," HCDA Br. at 53, its failure to provide a privilege log defeats its assertion of privilege. *See United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982); *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017). "Not every item which may reveal some inkling of a lawyer's mental impressions, conclusions, opinions or legal theories is protected as opinion work product." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1015 (1st Cir. 1988).

Even if the memoranda are opinion work product, Ayestas has compelling need. *See* ROA.3178. Prosecutor motive and charging practice are the central issues, and Ayestas cannot rely on other discovery tools to unearth information memorialized decades ago. *Doubleday*, the leading decision, is unusually clear on this point. Animus was the "heart of" the civil complaint against a prosecutor's "handling of the case," so there was a compelling need for opinion work product because prosecutors' notes contained mental impressions and a deposition "may only result in 'self serving responses' which would not be as detailed or accurate as the file itself." 149 F.R.D. at 608; *see also, e.g.*, *Rodgers*, 2022 WL 1074013, at *7 (work-product privilege "overcome where a party has alleged Government misconduct and the documents sought were the sole way for a party to prove his allegations"); *Ramirez v. Abreo*, 2010 WL 11470102, at *4-5 (N.D. Tex. Nov. 24, 2010) (compelling production of prosecutors' files when misconduct allegations placed mental processes "squarely at issue").

The memoranda are indispensable because evidence of discrimination in other nonwhite-, Latino- and noncitizen-defendant cases is highly probative of whether a particular defendant was discriminated against. *See United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998) (a court may "find[] a constitutional violation" of selective prosecution "if the data presents a 'stark' enough picture"); *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 306 (5th Cir. 1973) ("Even though a suit seeks

only individual relief for an individual instance of discrimination, … the past history of [comparator] employees is surely relevant information."); *Foster v. Boise-Cascade, Inc.*, 1975 WL 11888, at *3 (S.D. Tex. May 29, 1975) (same). HCDA's charging practices in parallel cases bears on the certainty of discrimination *in Ayestas's case*. The memoranda are the only source of information about whether HCDA considered forbidden characteristics in other cases.

**b. Ayestas's Own Case File.**

HCDA has waived any privilege over Ayestas's case file by offering only a bare assertion that "some" of the file is opinion work product. *See* HCDA Br. at 52-60; *Hernandez v. Causey*, 124 F.4th 325, 335 (5th Cir. 2024) (inadequately briefed issues are abandoned). The file likely contains ordinary work product—witness transcripts and investigative notes—that could reveal whether HCDA considered Ayestas's ethnicity, race, national origin, or alienage. *See* ROA.3178; *see also San Juan*, 859 F.2d at 1015 (notes revealing attorney mental impressions not necessarily opinion work product); *Kidder v. Tidewater Marine, LLC*, 2007 WL 37954, at *2 (W.D. La. Jan. 5, 2007) (lists of interviewees is not opinion work product). Even if parts of the file qualify as opinion work product, Ayestas has compelling need: The

file goes to the "heart of the [case] issues," and he cannot obtain the information any other way.[19] *See* ROA.3164 (quoting *Rodgers*, 2022 WL 1074013, at *7).[20]

### C. *Armstrong* Does Not Foreclose Production.

HCDA fails to acknowledge, that, unlike *Armstrong*, this case involves direct evidence of discriminatory intent. HCDA Br. at 47-52. In *Armstrong*, the defendant claimed race discrimination in federal charging decisions but offered only statistics. *See United States v. Armstrong*, 517 U.S. 456, 459 (1996). The Supreme Court held that "to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Id*. at 465. Here, Ayestas *has* presented such clear evidence, including direct evidence of discriminatory purpose.

[19] *See also Ramirez*, 2010 WL 11470102, at *4-5 (compelling production after in camera review of prosecutors' opinion work product); *Alfred*, 2025 WL 3766412, at *7 (ordering production of opinion work product because the plaintiff showed a compelling need for information central to her *Monell* claim and had no other source).

[20] HCDA Br. at 55 fails to cite any prosecutorial misconduct case refusing discovery from a non-party prosecutor. *See Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006) (First Amendment case about the confines of a prosecutor's protected speech); *Emery v. U.S. Dep't of Just.*, 639 F. Supp. 3d 87, 101 (D.D.C. 2022) (FOIA case where requester didn't contest that AUSA's memorandum was work-product privileged). In fact, two of the cases HCDA cites for the proposition that opinion work product is virtually undiscoverable support Ayestas. *See In re Doe*, 662 F.2d 1073, 1080-82 (4th Cir. 1981) (work-product privilege was overcome in part because the case for which materials were created had terminated); *Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307-08 (D.C. Cir. 1997) ("under certain circumstances purely factual material embedded in attorney notes may not deserve the super-protection afforded to [opinion work product]").

### 1. *The Amended Petition Proffers Direct Evidence Of Discriminatory Purpose.*[21]

The Memorandum gives Ayestas's non-citizenship as one of two reasons that HCDA should seek death against him. ROA.8092. Nonetheless, TDCJ insists that the Memorandum is not evidence of discriminatory purpose. TDCJ Br. at 16. TDCJ is wrong.

TDCJ argues that Holmes's handwritten approval of Ayestas's capital prosecution—but not his co-defendants'—negates discriminatory intent. *Id.* at 17. That argument fails on two grounds. First, Holmes's note does not erase Siegler's upstream decision to recommend death consideration. Second, it does not reveal whether factors beyond the primary killer's identity influenced Holmes himself. The most natural reading of Holmes's notation is that it added to the factors Siegler identified (victim age and non-citizenship) rather than replace them.

Nor does the strikeout through "The defendant is not a citizen" disprove discrimination. ROA.8092. A strikeout is at least as consistent with concealment as with disavowal, particularly when neither its source nor timing is known. What *is* known is that the Memorandum was altered sometime after the charging meeting—

[21] Ayestas has previously briefed the circumstances supporting an inference of race or national origin discrimination in addition to alienage discrimination. ROA.1707-35. For the sake of economy, he does not separately address evidence of race or national origin discrimination here because the reasons *Armstrong*'s discovery limitation is inapplicable to his citizenship discrimination claim apply equally to his race/national origin discrimination claim.

as shown by the bottom-appearing notation "done," accompanied by a much later date. But whether the strikeout occurred at after the meeting when "done" was written remains unknown. *See id.*

Regardless of Holmes's own motivations, the Memorandum is direct and conclusive evidence that Ayestas's alienage factored into *Siegler's* recommendation for capital prosecution. Unless Siegler's views had no influence whatsoever on whom the office selected for death charging, her discriminatory intent tainted the decision.

### 2. Armstrong*'s Comparator Requirement Does Not Apply to Cases With Direct Evidence of Discriminatory Purpose.*

Ayestas does not dispute that discovery requires some evidence of discriminatory purpose and effect, but he need not produce an otherwise identical comparator outside the suspect class who received more favorable treatment. Such a rigid requirement would immunize the most flagrant discrimination simply because no perfect comparator existed. *Armstrong* does not "erect an absolute procedural bar to discovery," HCDA Br. at 47, where direct evidence of discriminatory purpose exists.

HCDA insists without elaboration that Ayestas "must bring forward 'some evidence' that HCDA could have sought death against similarly situated individuals but did not." *Id.* at 48. But Ayestas *has* pled that there were *death eligible* white

citizen defendants who were not capitally prosecuted, and he *did* proffer comparators. Ayestas has cross-referenced available datasets and attached to a discovery request a partial list of HCDA defendants who were American citizens charged with the capital murder of an older victim but did not receive capital sentences—including some against whom HCDA did not seek death.

Perhaps HCDA intended to argue that *Armstrong* prohibits discovery because Ayestas has failed to produce *identical* comparators. If so, it unmoors *Armstrong* from both its facts and its rationale. *Armstrong* details a "background presumption" of regularity for charging decisions. 517 U.S. at 463-64. *Where nothing upsets that background presumption*, *Armstrong* sets forth "the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of his race." *Id.* at 458. But *Armstrong* explicitly sets aside cases where a defendant has proffered direct evidence of invidious intent: "We reserve the question whether a defendant must satisfy the similarly situated requirement in a case involving direct admissions by prosecutors of discriminatory purpose." *Id.* at 469 n.3; *see also United States v. Al Jibori*, 90 F.3d 22, 25 (2d Cir. 1996) (holding that direct "admissions [may] justify further inquiry); *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001) (where plaintiff alleges "an express racial classification … [he] is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection").

### 3. **Armstrong** ***Is Inapplicable To The Eighth Amendment Claim.***

Even setting aside the direct evidence of discriminatory purpose, *Armstrong* would not bar discovery here because Ayestas also raises Eighth Amendment claims. HCDA argues that the nature of the claim is irrelevant because *Armstrong*'s "core concern" was "preventing fishing expeditions into prosecutorial discretion." HCDA Br. at 50. That is only half the story. *Armstrong* balances the risk of fishing expeditions against defendants' interests in avoiding discriminatory prosecution. 517 U.S. at 465. If avoiding discovery inconvenience were the sole concern, then *Armstrong* would have barred discovery entirely. Because *Armstrong* balances competing interests, the burden should be lighter for the smaller class of Eighth Amendment claimants who face execution.

A critical distinction also separates this case from *Armstrong*. Like most authority HCDA cites, *Armstrong* involved a selective-prosecution claim raised by a criminal defendant at trial, not a collateral attack on a conviction. *Armstrong* restricted discovery because it was unavailable under Fed. R. Crim. P. 16, which covers only "defenses" and not selective prosecution claims. *See Armstrong*, 517 U.S. at 462. Rule 16's heightened standard reflects a "core" concern that such discovery "delays" criminal prosecution. *Id.* at 465. But Ayestas seeks federal habeas relief; his prosecution ended decades ago. Habeas Rule 6 authorizes discovery for

"good cause," is not limited to trial defenses, and presents no risk of delaying prosecution.

Most importantly, the elements of an Eighth Amendment claim differ from those of an Equal Protection claim. Equal Protection claims require prima facie evidence of both discriminatory intent and effect because *prevailing* on those claims requires proving both elements. But Eighth Amendment claims unique to *capital* cases require only that a defendant "demonstrate a constitutionally significant risk of [] bias affecting the [state's] capital sentencing process." *McCleskey v. Kemp*, 481 U.S. 279, 313 (1987); *see also Caldwell v. Mississippi*, 472 U.S. 320, 343 (1985) ("unacceptable risk" of "arbitrary[ness]") (quoting *California v. Ramos*, 463 U.S. 992, 999 (1983)). A death-sentenced prisoner seeking discovery on an Eighth Amendment claim need only make a prima facie showing of unacceptable risk of arbitrariness—a showing that the Memorandum makes.

The additional authority HCDA and TDCJ cite doesn't strengthen their position. Both rely on *United States v. Bass*, 536 U.S. 862, 863-64 (2002), and *In re United States*, 397 F.3d 274, 277, 285 (5th Cir. 2005), but neither case involved direct evidence of discrimination and neither involved an Eighth Amendment claim.

Moreover, both were federal prosecutions presenting Criminal Rule 16 issues—not discovery under Habeas Rule 6(a).[22]

## IV. THIS COURT LACKS APPELLATE JURISDICTION OVER ALL ISSUES, INCLUDING DISTRICT COURT JURISDICTION.

Ayestas concedes that this Court may treat HCDA's appeal as a mandamus petition, but there is otherwise no appellate jurisdiction.

### A. This Court Must Establish Its Own Jurisdiction Before Addressing Questions of Lower Court Jurisdiction.

For over 150 years, it has been black-letter law that this Court must establish its own appellate jurisdiction before considering district-court jurisdiction. *See Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) ("On every … appeal the first and fundamental question is that of jurisdiction, *first*, of this court, and *then* of the court from which the record comes."). The Supreme Court rejected "hypothetical jurisdiction" in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998), and this Court has repeatedly confirmed the mandate: "We must, as

---

[22] HCDA offers footnote citation to three more off-point cases. HCDA Br. at 50 n.5. The first, *Belmontes v. Brown*, 414 F.3d 1094, 1125 (9th Cir. 2005), *rev'd sub nom.*, *Ayers v. Belmontes*, 549 U.S. 7 (2006), neither concerned discovery nor discussed *Armstrong* in connection with the Eighth Amendment claims at issue. The second, *United States v. Henderson*, 485 F. Supp. 2d 831, 861 (S.D. Ohio 2007), neither involved direct evidence of discrimination nor presented question about whether the discovery standards for Eighth and Fourteenth Amendment claims differed; the claimant simply asserted that he met the *Armstrong* standard. *See* Mot. to Dismiss, *United States v. Henderson*, 2:06-cr-00039-ALM (S.D. Ohio Jan. 11, 2007), ECF No. 61, 2007 WL 5830748. HCDA does not explain the significance of the third case, *United States v. Casey*, 2013 WL 12190569 (D.P.R. Jan. 30, 2013). *Casey* didn't involve a discovery motion, and it addressed only the only the "three motions to strike the Notice based upon allegations of racial bias and discrimination in the United States' decision to seek the death penalty and refusal to accept a plea of guilty from defendant." *Id.* at *1.

always, determine our own jurisdiction before proceeding further." *Backe v. LeBlanc*, 691 F.3d 645, 647 (5th Cir. 2012).

Each of the three cases this Court cited in its supplemental briefing order reinforces that appellate jurisdiction must come first. *See* ECF No. 130 at 1 (citing *United States v. Denedo*, 556 U.S. 904, 909 (2009); *Hignell-Stark v. New Orleans*, 46 F.4th 317, 331 (5th Cir. 2022); *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 59 (2d Cir. 2023)). *Denedo* explicitly held that, "[b]efore we address another court's subject-matter jurisdiction we must first determine our own." 556 U.S. at 909. Even the Chief Justice, who dissented, agreed on this sequencing. *See id.* at 918 (Roberts, C.J., dissenting in part) ("I agree with the majority that this Court has jurisdiction to review the decision below, but respectfully dissent from its holding [about military-court jurisdiction].").

*Hignell-Stark* is equally clear. This Court held that it has "no interlocutory appellate jurisdiction for policing a district court's jurisdictional holdings beyond what this court or the Supreme Court has already recognized." 46 F.4th at 330-31. There, a defendant cross appealed a preliminary "holding" that one of the plaintiffs' claims was "viable," arguing that this Court had "appellate jurisdiction to review whether [the district court] had jurisdiction over the case." *Id.* at 330. This Court rejected that argument, explaining that, because federal courts are courts of limited jurisdiction, a non-final "holding" cannot confer appellate jurisdiction except in very

narrow, already-recognized circumstances. *Id.* at 329-31 & 331 n.23. Those "circumstances" are otherwise appealable orders subject to the collateral order doctrine.[23]

Although there is a recognized exception providing appellate jurisdiction to review certain Rule 60(b) orders, *see Hignell-Stark*, 46 F.4th at 331 n.23 (citing *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328-29 (5th Cir. 2004)), that exception does not apply here for two reasons. First, this matter is not before the Court on appeal of the district court's August 12, 2021 Rule 60(b) order. ROA.1-23. Second, the *Shepherd* exception applies only when a district court grants a Rule 60(b) motion "*after* a notice of appeal ha[s] been filed." *Anthony v. Am. Heritage Life Ins. Co.*, 115 F. App'x 655, 657 (5th Cir. 2004); *see also id.* ("[T]he exception in *Shepherd* does not apply" because "the district court granted the Rule 60(b) motion *before* a notice of appeal had been filed.") (emphases in original).

*Hignell-Stark* also forecloses HCDA's reliance on favorable-sounding *dicta* from *International Association of Machinists, Local 2121 v. Goodrich Corp.*, 410

[23] The appellate court's exercise of its "inherent jurisdiction to determine its own jurisdiction and to evaluate the district court's jurisdiction," *Hines v. Stamos*, 111 F.4th 551, 558-59 (5th Cir. 2024), does not mean there doesn't need to be appellate jurisdiction to reach district court jurisdiction. *Compare Hines*, 111 F.4th at 558-59, *with Kolwe v. Civ. & Structural Eng'rs, Inc.*, 858 F. App'x 129, 130-31 (5th Cir. 2021). In both *Hines* and *Kolwe*, the court considered district court jurisdiction only after determining whether appellate jurisdiction existed. *See Hines*, 111 F.4th at 562 ("Having assured ourselves that we have appellate jurisdiction to consider the issue of personal jurisdiction…."); *Kolwe*, 858 F. App'x at 130-31 (holding that court "lack[ed] appellate jurisdiction to review" the district court order). *Id.* at 131.

F.3d 204, 211 (5th Cir. 2005). HCDA invokes *Goodrich* for the proposition that an appellate court may review district-court jurisdiction even absent appellate jurisdiction. But *Hignell-Stark* rejected that reading, explaining that *Goodrich* "said no such thing" and "its discussion is *dicta*." 46 F.4th at 330.

The Second Circuit reached the same conclusion in *Solomon*, when it found that it had "appellate jurisdiction to determine whether the district court had jurisdiction." 62 F.4th at 59. In *In re PB Life & Annuity Co.*, the Second Circuit interpreted *Solomon* to mean: "Only if this Court has appellate jurisdiction may we then proceed to review a district court's jurisdiction." 2024 WL 2972718, at *3 (2d Cir. June 13, 2024). An appellate court's "ultimate obligation to review a district court's federal subject matter jurisdiction does not overcome the finality rule and Congress's limits on which district court decisions we may review and when." *Id.*

HCDA's position—that this Court can bypass its own appellate jurisdiction to police district-court jurisdiction—is irreconcilable with *Solomon*, *PB Life*, *Denedo*, and *Hignell-Stark*. The principle that a court always has jurisdiction to consider its own jurisdiction "merely refers to *our* ability to determine … whether we have appellate jurisdiction to review an order we may ultimately lack jurisdiction to review." *PB Life*, 2024 WL 2972718, at *3 (citing *LeChase Constr. Servs., LLC v. Argonaut Ins. Co.*, 63 F.4th 160, 171 (2d Cir. 2023)). Appellate courts lack jurisdiction—"no matter the order appealed from—to correct a district court's

erroneous exercise of subject-matter jurisdiction." *Id.* They "do not have the authority to honor this obligation [of 'ensur[ing] that the district court had subject matter jurisdiction'] unless and until th[e] Court has appellate jurisdiction to review the district court's decision." *Id.*[24]

### B. <u>This Court Lacks Jurisdiction Over This Appeal.</u>

#### 1. *28 U.S.C. § 636 and Rule 72(a) Bar Jurisdiction.*

Under 28 U.S.C. § 636, circuit courts cannot hear appeals from magistrate judges unless a magistrate judge sits by consent under subsection (c). Justice Thomas has explained the rule: "[U]nder § 636, the necessary precondition for a court of appeals' jurisdiction over a magistrate judge's order is the parties' consent to proceed before the magistrate judge." *Roell v. Withrow*, 538 U.S. 580, 598 (2003) (Thomas, J., dissenting).[25] Rule 72(a) implements § 636(b), requiring district-court objections within 14 days and barring parties from "assign[ing] as error a defect in the order not timely objected to."

In violation of § 636 and Rule 72(a), HCDA filed no district-court objections and instead noticed a direct appeal here. Under longstanding precedent, this Court

---

[24] That there is no "mandatory sequencing of jurisdictional issues," *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (cited in HCDA Br. at 44), means that a district court may choose among jurisdictional ("nonmerits") grounds to dismiss a case. *Sinochem* does not alter the black-letter rule that an appeals court must abide by limits on its appellate jurisdiction even when deciding questions of district-court jurisdiction. *See Hignell-Stark*, 46 F.4th at 330.

[25] This rule was not the source of disagreement with the majority. *See Roell*, 538 U.S. at 592 (Thomas, J., dissenting).

has no appellate jurisdiction. *See Gregg v. Linder*, 349 F.3d 860, 862 (5th Cir. 2003) ("The only circumstance in which an order of a magistrate judge may be appealed directly to this Court is described in 28 U.S.C. § 636(c)(1) and (3)."); *see also Mayfield v. Butler Snow, LLP*, 75 F.4th 494, 502 (5th Cir. 2023) ("The law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates."); *Singletary v. B.R.X., Inc.*, 828 F.2d 1135, 1137 (5th Cir. 1987) ("settled" law); *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980) (same). Every sister circuit abides by the same rule.[26]

HCDA ignores the statute and suggests that the reference to *parties* in Rule 72 means that *non-parties* are exempt from its restrictions, and by extension from § 636. But Rule 72 is not—and could not be—inconsistent with the statute. Fed. R. Civ. P. 71 expressly requires that HCDA be treated like a party when there is a discovery order to be enforced against it: "When an order ... may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."[27] Non-

[26] *See*, *e.g.*, *United States v. Ecker*, 923 F.2d 7, 8 (1st Cir. 1991); *Sick v. City of Buffalo*, 574 F.2d 689, 690 (2d Cir. 1978); *Siers v. Morrash*, 700 F.2d 113 (3d Cir. 1983); *Dixon v. Francis*, 3 F. App'x 186, 187 (4th Cir. 2001); *Hoven v. Walgreen Co.*, 751 F.3d 778, 782 (6th Cir. 2014) *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir. 1998); *United States v. Haley*, 541 F.2d 678, 678 (8th Cir. 1974); *Colo. Bldg. & Constr. Trades Council v. B.B. Andersen Constr. Co.*, 879 F.2d 809, 811 (10th Cir. 1989); *Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1066-67 (11th Cir. 1982); *CNPq-Conselho Nacional de Desenvolvimento Cientificoe Technologico v. Inter-Trade, Inc.*, 50 F.3d 56, 57, 59 (D.C. Cir. 1995).

[27] Some courts treat subpoena recipients who contest disclosure before a magistrate judge as "parties" for Rule 72 purposes. *See*, *e.g.*, *Diamantis v. Milton Bradley Co.*, 772 F.2d 3, 4 n.2 (1st Cir. 1985).

parties subject to an order therefore "become[] fully amenable to all the processes that might be used to assure the obedience of a party." 12 *Fed. Prac. & Proc. Civ.* § 3031 (3d ed.); *see also* 13 Moore's *Fed. Prac*. Civ. § 71.04 (2025) (Rule 71 exists so that "[w]hen obedience to an order may be lawfully required of a person who is not a party to the lawsuit, that nonparty becomes fully amenable to all the processes that might be used to assure the obedience of a party.").

Consistent with Rule 71, courts regularly apply Rule text about "parties" to other entities. Ironically, HCDA could notice this appeal only because certain non-parties are permitted to do so under Fed. R. App. P. 3 and 4—which speak only in terms of "party" appeals. *See*, *e.g.*, Fed. R. App. P. 3(c)(1)(A) (requiring that all notices of appeal "specify the party or parties taking" them); Fed. R. App. P. 4 (requiring that "the notice of appeal required by Rule 3" be filed within 30 days of order). Fed. R. Civ. P. 60(b) refers only to post-judgment relief for a "party," though this Court recognizes that certain entities that are not formally parties can move under that Rule. *See*, *e.g.*, *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 n.14 (5th Cir. 1992). Fed. R. App. P. 21 speaks only of a "party" that may petition for mandamus, yet this Court regularly permits non-party mandamus petitions—as it would have to do in this very case. *See*, *e.g.*, *In re Sealed Pet'r*, 106 F.4th 397, 399 (5th Cir. 2024); *In re Dall. Morning News Co.*, 916 F.2d 205, 206 (5th Cir. 1990).

Courts reject absurd readings of the Rules when reasonable alternatives exist. On HCDA's view, parties have fourteen days to object while non-parties have no limit; parties may forfeit issues while non-parties never can; and parties face clear-error review while non-parties receive *de novo* review. Neither the Rules Committee nor Congress enacted those absurdities. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 509 (1989) (rejecting "odd" textual interpretation of Rule); *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 740 (5th Cir. 2005) (rejecting interpretation that produces an "absurd result"). HCDA argues that the presence of the word "nonparties" in Rule 71 somehow shows that Rule 72 should not apply to non-parties. HCDA Br. at 37-39. But that's backwards. The *whole point* of Rule 71 is to gap-fill rules—like Rule 72—that do not expressly provide guidance for adjudicating the rights and obligations of non-parties.

HCDA then insists that it should have been warned about its forfeiture and that, absent the warning, it is entitled to plain error review. HCDA Br. at 42. HCDA is confusing two scenarios: (1) appeals taken directly from magistrate judges (no jurisdiction), and (2) appeals taken from district court judgments that encompass unobjected-to orders (perhaps deferential review). A cursory glance at any authority used to support HCDA's argument immediately reveals this fatal problem.[28]

[28] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1416-17 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (describing the "critical issue" as

Finally, HCDA suggests radically and without authority that the magistrate judge's discovery order was dispositive and therefore exempt from jurisdictional restrictions. HCDA Br. at 16. But all available precedent is that the discovery order is *not* dispositive. *See, e.g.*, *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-18 (5th Cir. 1981) ("[D]iscovery issues are by definition pretrial matters," and a magistrate judge has "the authority under 28 U.S.C. § 636(b)(1)(A) to enter non-dispositive discovery orders."); *Castillo v. Wal-Mart Stores Tex., LLC*, 2024 WL 4531080, at *1 (W.D. Tex. Oct. 8, 2024) ("Motions on discovery matters are generally non-dispositive."). And it remains non-dispositive even when discovery is sought from a non-party. *See Leonard v. Martin*, 38 F.4th 481, 485 (5th Cir. 2022); *Orthoflex, Inc. v. ThermoTek, Inc.*, 990 F. Supp. 2d 675, 682 (N.D. Tex. 2013); *Westinghouse Elec. Corp. v. Carolina Power & Light Co.,* 1992 WL 300796, at *2 (E.D. La. Sept. 22, 1992).

### 2. *The Non-Final Discovery Order Falls Outside The Collateral-Order Doctrine.*

Jurisdiction independently fails because the Discovery Order is non-final and outside the collateral-order doctrine. That doctrine permits prejudgment appeals only

---

challenge to proposed findings of fact and legal conclusions "accepted" by the district court); *Johnson-Williams v. Mortg. Elec. Registration Sys., Inc.*, 675 F. App'x 396, 400 (5th Cir. 2017) (district court "accepted" recommendation); *Clark v. Doe*, 157 F.3d 902, 902 (5th Cir. 1998) (per curiam) (district court "accepted the magistrate judge's report"); *see also* 15A Wright & Miller, *Fed. Prac. & Proc.* § 3901.1 (3d ed. 2026) (describing *Douglass* as applying "only to recommendations that are 'accepted' by the district judge").

for orders that "(1) conclusively determine[] the disputed question, (2) resolve[] an important issue completely separate from the merits of the action, and (3) [are] effectively unreviewable on appeal from a final judgment." *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009). The "bar set by the collateral order doctrine is high," and the determination is made categorically—i.e., by "looking only at whether the class of claims, taken as a whole, can be vindicated by other means than immediate appeal"—not case-by-case. *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019); *see also Mohawk*, 558 U.S. at 107 (requiring categorical inquiry). The Discovery Order flunks two elements of that test: It is not dispositive,[29] and HCDA had other remedies.

This Circuit's general rule is that an entity asserting privilege may not appeal a compulsion order until held in contempt for disobeying the order. *See Leonard*, 38 F.4th at 488; *see also United States v. Fluitt*, 99 F.4th 753, 760 (5th Cir. 2024) (describing the defy-contempt-appeal route as the approach that "has long been followed in this circuit"). There is no confidentiality-based need to deviate from this longstanding approach because (1) the defy-contempt-appeal route protects against the harm from disclosure, (2) compelled disclosure does not waive work-product protection, and (3) the protective order that Ayestas has offered to accept would

[29] HCDA also asserted, without supporting authority, that the discovery order was dispositive (final) for purposes of the collateral-order doctrine. HCDA Br. at 22. The analysis of non-dispositiveness in the previous subsection on § 636 applies equally here.

preserve confidentiality. *See Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989); *see also Dresser-Rand Co. v. Schutte & Koerting Acquisition Co.*, 242 F. Supp. 3d 576, 578 (S.D. Tex. 2017) (applying rule to work-product privilege).

With respect to whatever harm there is, controlling authority establishes that it's not enough to justify prejudgment appeal. *Mohawk* holds that "orders adverse to the attorney-client privilege" do not "qualify for immediate appeal under the collateral-order doctrine" because "[p]ostjudgment appeals, together with other review mechanisms, suffice." 558 U.S. at 103. Even before *Mohawk*, "orders requiring discovery over a work-product objection" were quintessential forms of "harm" that were "not appealable" before judgment because they would transform the collateral order doctrine "into a license for broad disregard of the finality rule imposed by Congress." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 (1981). Three sister circuits have explicitly extended *Mohawk* to work-product claims. *See In re Grand Jury 2021 Subpoenas*, 87 F.4th 229, 246 (4th Cir. 2023); *Drummond Co. v. Collingsworth*, 816 F.3d 1319, 1325 (11th Cir. 2016); *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010).

HCDA tries to escape the extensive authority against its position by asserting its non-party status. HCDA Br. at 30-33. But "this court and every other circuit court hold that the collateral order doctrine does not provide jurisdiction over a nonparty's appeal from a discovery order." *Leonard*, 38 F.4th at 487; *see also A-Mark Auction*

*Galleries, Inc. v. Am. Numismatic Ass'n*, 233 F.3d 895, 898-99 (5th Cir. 2000) (no collateral-order jurisdiction because non-party may challenge discovery order by appealing contempt citation); *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1405 n.16 (5th Cir. 1993) (same) (citing *In re Grand Jury Subpoena*, 926 F.2d 1423, 1430 (5th Cir. 1991)).

HCDA aligns what it calls "*prosecutorial* work product" with other arguments that trigger prejudgment appeals—orders to publish sealed materials, and privileges that belong exclusively to government or that touch on First Amendment issues. HCDA Br. at 20-32. But there is no special "prosecutorial" work product privilege; there is just plain-old work-product privilege, and *Mohawk* requires a "categorical" inquiry devoid of the granular privilege specification that HCDA attempts. 558 U.S. at 107. The claim of basic work-product immunity here is nothing like the claim of core legislative privilege at issue in HCDA's principal authority—*La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023), and *La Union Del Pueblo Entero v. Abbott*, 93 F.4th 310 (5th Cir. 2024). Nor is it anything like the First Amendment privilege at issue in *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), and *X Corp.*, 120 F.4th 190, or the unseal-and-publish order at issue in *Vantage Health*. 913 F.3d at 449.[30]

---

[30] There is no defy-contempt appeal recourse to unsealing orders, which make information public in a way that ordered production does not.

*Lewis v. Crochet*, 105 F.4th 272 (5th Cir. 2024), is also unavailing. *Lewis* was a narrow holding about the crime-fraud exception to a third-party claim of attorney-client privilege. Crime-fraud inquiries are unique and balance interests differently than they do in routine determinations of work-product privilege. *Cf. Burnham v. Cleveland Clinic*, 89 N.E.3d 536, 537 (Ohio 2016) (distinguishing between the immediate appealability of orders adverse to attorney-client privilege claims and orders adverse to work-product protection claims). And to the extent *Lewis* conflicts with *Mohawk* and *Leonard*, the rule of orderliness requires it yield. *See United States v. Castro-Alfonso*, 841 F.3d 292, 297 (5th Cir. 2016).[31]

Finally, *Mohawk* explains that even for valuable rights "central to [the] adversarial system," courts "routinely require litigants to wait until after judgment" because deferring review does not meaningfully reduce *ex ante* incentives to engage in the protected conduct. 558 U.S. at 108-09. Prosecutors will continue to prepare charging memoranda notwithstanding some risk of erroneous post-conviction production reviewable only after judgment in a habeas case. The existing matrix of appellate remedies protects that government function, and a rule making garden-variety work orders subject to prejudgment appeal is unnecessary.

---

[31] HCDA invokes *In re Grand Jury Proceedings*, 43 F.3d 966 (5th Cir. 1994), but that case rests on the *Perlman* doctrine for "disinterested third parties"—entities possessing the materials but who do not hold the privilege. In such cases, the third party holding the material has no incentive to protect the privilege. *See Perlman v. United States*, 247 U.S. 7 (1918). But *Perlman* is inapplicable here because HCDA both holds the materials and asserts the privilege.

* * *

Because HCDA may not appeal from the Discovery Order, mandamus is the only path to review the district court's jurisdictional holding. (Mandamus is discussed in Part V, *infra*.) And if this Court can reach district court issues only through its mandamus power, then it must review those issues with the extreme deference that the mandamus posture entails. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004).

## V. **ALTHOUGH THIS COURT MAY TREAT APPEALS AS MANDAMUS PETITIONS, IT SHOULD NOT GRANT MANDAMUS RELIEF.**

This Court may construe improper appeals as mandamus petitions, but HCDA cannot satisfy the mandamus standard for the discovery issues that it actually appealed. Moreover, because HCDA did not appeal the district court's rulings on diligence or § 2254(e)(2), and because those issues are non-jurisdictional, this Court cannot reach them regardless of the appellate vehicle.

"Mandamus is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'" *Cheney*, 542 U.S. at 380 (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). Because the mandamus writ "is one of 'the most potent weapons in the judicial arsenal,'" the party seeking it must demonstrate: (1) the district court clearly and indisputably erred; (2) there is no other adequate means to obtain the desired relief; and (3) the circumstances warrant equitable discretion in

the relator's favor. *Id.* at 380-81 (quoting *Will v. United States*, 389 U.S. 90, 107 (1967)); *see also In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 350 (5th Cir. 2017). HCDA fails all three prongs.

*First,* the district court did not commit a "clear and indisputable error." The error must amount to "a judicial usurpation of power" or a "clear abuse of discretion" to warrant the "extraordinary" remedy of mandamus. *DePuy*, 870 F.3d at 350. HCDA argues that the district court (1) lacked jurisdiction and (2) erroneously granted discovery. For all the reasons explained in Parts III and IV, *supra*, the district court did not clearly err by refusing successive-petition treatment or ordering discovery. And although the *refusal to exercise or reach* questions of jurisdiction is often a basis for mandamus review, mandamus relief for a decision to *exercise* jurisdiction is exceedingly rare. *See In re Atl. City R.R. Co.*, 164 U.S. 633, 635 (1897).

*Second,* HCDA has "adequate alternative means" of obtaining relief. Showing "no other adequate means" of obtaining relief, *Cheney*, 542 U.S. at 380, is a high bar; mandamus is appropriate "only where an error is 'truly irremediable on ordinary appeal'" *DePuy*, 870 F.3d at 353. HCDA had an obvious remedy at law: object before the district court. And even if it lost there, it could defy the Discovery Order and appeal any resulting contempt finding. Instead, HCDA didn't even bother to provide a privilege log. A party cannot forfeit its remedies and then claim

inadequacy. *See In re Ford*, 2023 WL 11849856, at *1 (5th Cir. Dec. 11, 2023) (holding that inadequate-remedies prong cannot be satisfied when petitioner failed to pursue "available" remedies (citing *In re Willy*, 831 F.2d 545, 549 (5th Cir. 1987), *aff'd sub nom. Willy v. Coastal Corp.*, 503 U.S. 131 (1992)); *In re Par.*, 81 F.4th 403, 419 (5th Cir. 2023) (court will not "allow the use of the mandamus process for parties to escape from the litigation positions that they have put themselves in"); *see also Cortez v. Rubio*, 176 F.4th 373, 379 (5th Cir. 2026) (alternative remedy was adequate even if petitioner forfeited it). That failure is fatal. Nonetheless, Ayestas briefly addresses HCDA's remaining arguments: intrusions on state sovereignty, discovery burdens, and non-party status. HCDA Br. at 72-74.

*State sovereignty.* HCDA offers little explanation for why post-judgment appeals inadequately protect state interests. HCDA invokes *In re Gee*, 941 F.3d 153 (5th Cir. 2019) (per curiam), for the proposition that some irremediable cost to state sovereignty warrants mandamus relief. *See* HCDA Br. at 72. But any sovereignty impact from further habeas proceedings is orders of magnitude smaller than the impact of relief requested in *Gee*, where the providers "s[ought] a federal injunction against virtually all of Louisiana's legal framework for regulating abortion." 941 F.3d at 156. Even so, *Gee* refused mandamus relief. *See also In re Sealed Pet'r*, 106 F.4th at 400, 402 (refusing "serious federalism concerns" argument in mandamus challenge to district court order authorizing grand jury testimony of state

government officials, even though order was erroneous). Mandamus seekers must do far more than invoke generic federalism concerns.

*Discovery burdens.* Although "it is always true that an erroneous failure to dismiss will result in some inconvenient discovery and unnecessary litigation," that inconvenience does not justify mandamus relief. *Gee*, 941 F.3d at 165-66. Otherwise, mandamus challenges to garden-variety subpoenas would overrun this Court's docket, forcing unnecessary stays and satellite litigation throughout the judicial system.

*Non-party status.* HCDA's status as a non-party does not warrant mandamus relief. *See Leonard*, 38 F.4th at 488 (non-party's appeal of erroneous denial of Rule 45 denial failed to meet the "extraordinary" mandamus requirements, in part because "district courts are afforded wide discretion in discovery matters"); *In re Sealed Pet'r*, 106 F.4th at 400-04 (rejecting mandamus review of a district court's refusal to quash subpoenas against non-party state agency). HCDA claims it cannot appeal from a final judgment in the underlying litigation. Even if true, that is irrelevant because HCDA has other remedies available to non-parties—objecting before the district court and pursuing the defy-contempt-appeal pathway. *See* Part IV.B, *supra*.

Finally, the equities cut against HCDA. Mandamus requires a showing that, as an equitable matter, this Court should exercise discretionary authority in the relator's favor. *See Cheney*, 542 U.S. at 380-81; *DePuy*, 870 F.3d at 350. There is no

equitable basis, however, for rescuing HCDA from its own mistakes: failing to meaningfully articulate its burden and privilege arguments, failing to provide a privilege log, failing to lodge objections with the district court, and failing to recognize that it could appeal by defying a contempt order. TDCJ's presence doesn't improve the equities because it flatly misrepresented the Siegler Memorandum's availability to the district and circuit courts.

## VI. THE EN BANC COURT SHOULD NOT OVERRULE A MANDAMUS DECISION BY A PANEL IN THE SAME CASE.

This Court may treat *HCDA's* appeal as a mandamus petition and adjudicate it under the mandamus standards. But it should not overrule the prior panel's denial of mandamus to *TDCJ*. Even if HCDA had requested that relief, granting it would require recalling a mandate.[32] Fifth Circuit Rule 41.2 provides that a "mandate will not be recalled except to prevent injustice." Decisional law reinforces that principle: the power to recall a mandate *sua sponte* is "one of last resort, to be held in reserve against grave, unforeseen contingencies." *Calderon*, 523 U.S. at 550. Given the "profound interests in repose," the power may be exercised only in "extraordinary

[32] Ayestas does not suggest that the *en banc* court is constrained in its adjudication of *this appeal* by the holdings in the prior mandamus action. Indeed, much of the authority upon which HCDA relies involves the straightforward idea that neither law of the case nor circuit precedent formally precludes outcomes. But recognizing the court's power to reverse positions on legal issues is not to recognize a power to recall mandates in long-final cases.

circumstances." *Id.*; *see also United States v. Emeary*, 773 F.3d 619, 621 (5th Cir. 2014) (same). That standard is not met here.

If this Court were inclined to consider such an unprecedented maneuver, then its review would be limited to the mandamus arguments that TDCJ raised in the prior mandamus proceeding, and those arguments would be evaluated under the already-demanding mandamus standard nested inside the "extraordinary circumstances" standard for recalled mandates. That stacked combination would require the Court to conclude not only that TDCJ was entitled to mandamus relief under the applicable standards, but also that denying relief was so "exceptional" that it warrants recalling a three-year-old mandate. The record does not come close to supporting that kind of innovation.

For the reasons set forth in this Brief, the district court did not clearly err on the questions of district-court jurisdiction, § 2254(e)(2), or diligence. Nor was any other determination implicit in the 2023 mandamus order clearly erroneous—let alone erroneous enough to justify recalling the three-year-old mandate.

The equities also cut harshly against TDCJ. It waited nearly twenty months before seeking mandamus relief from the Rule 60(b) order, which issued on August 12, 2021. That delay alone justified the prior panel's decision. *See Cheney*, 542 U.S. at 379 (holding that laches bars mandamus relief where government litigation exhibits "neglect or delay"); *Chapman v. Bd. of Cnty. Comm'rs of Douglass Cnty.*,

107 U.S. 348, 355 (1883) ("The writ may well be refused when the relator has slept upon his rights for an unreasonable time[.]"). And much of this post-conviction proceeding revolves around TDCJ's willful misrepresentation of the Siegler Memorandum's availability. *See* Part II.A, *supra*.

There is one final, nearly insurmountable obstacle to recalling the summer 2023 mandate: time. In *Calderon*, the Court emphasized that the recall-mandate power is reserved for "grave" situations and explained that a delay of *four months* was virtually disqualifying because "the promptness with which a court acts to correct its mistakes is evidence of the adequacy of its grounds for reopening the case." 523 U.S. at 552. Any action here would come more than *three years* after the decision.

The cases HCDA cites to argue that this Court can reconsider the denial of TDCJ's mandamus petition only underscore the procedural oddity here. Every cited case involves the *same* parties at both the panel and *en banc* stages. *See* HCDA Br. at 76-77 (collecting authority). In those circumstances, it makes sense for an *en banc* court to reconsider the prior panel rulings involving the same legal issues and parties. That is not what is contemplated here. HCDA has identified no case where an *en banc* court recalled a mandate from a prior panel involving *different* parties. That absence warrants skepticism of any such maneuver here.

## **CONCLUSION**

For the foregoing reasons, this Court should affirm the district court's discovery order.

Date: August 24, 2026

Respectfully submitted,

*/s/ Lee B. Kovarsky*

Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER-APPELLEE

**CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2026, an electronic copy of the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit and served on counsel for Defendant-Appellant using the appellate CM/ECF system.

*/s/ Lee B. Kovarsky*
Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER-APPELLEE

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit and the word limit of Fed. R. App. P. 40(d)(3)(A) and this Court's July 10, 2026 letter to the parties because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains less than 15,000 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(7)(B)(i) and Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14 point font in Times New Roman for above-the-line text and 12 point font in Times New Roman for footnotes.

*/s/ Lee B. Kovarsky*

Lee B. Kovarsky
Phillips Black, Inc.
727 East Dean Keeton Street
Jon 5.231
Austin, TX 78705
(434) 466-8257
l.kovarsky@phillipsblack.org

Sheri Lynn Johnson
Cornell Law School
240 Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478
slj8@cornell.edu

ATTORNEYS FOR PETITIONER-APPELLEE