**No. 25-70014**

In the
United States Court of Appeals
For the Fifth Circuit

**CARLOS MANUEL AYESTAS,**
*Petitioner – Appellee*

v.

**HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE**
*Respondent – Appellant*

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division
No. 4:09-CV-2999

# EN BANC REPLY BRIEF OF APPELLANT

**SEAN TEARE**
District Attorney
Harris County, Texas

**MEAGAN T. SCOTT**
Assistant District Attorney
1201 Franklin Street, Suite 600
Houston, Texas 77002
Tel: (713) 274-5816

*Counsel for Appellant*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iv

ARGUMENT .......... 1

I. The district court lacked jurisdiction because the 2015 and 2021 filings were second-or-successive petitions. .......... 1

A. Rule 59(e) motions do not defer finality for post-judgment amendments. .......... 2

B. Ayestas's 2015 filing was untimely and constitutes a successive application. .......... 6

C. The 2021 motion was an impermissible successive attack on a valid jurisdictional refusal. .......... 9

II. Even assuming jurisdiction, the discovery order was improper. .......... 11

A. Discovery is barred by 28 U.S.C. § 2254 .......... 11

B. *Armstrong* forecloses merits discovery. .......... 13

1. The record contains no direct admission of discrimination to evade *Armstrong*. .......... 13

2. Citizenship status would not amount to constitutionally forbidden discrimination. .......... 15

3. *Armstrong* applies to Eighth Amendment claims. .......... 16

C. The common law work-product doctrine and Rule 45 protect the compelled materials .......... 18

1. Rule 45 protects non-party subpoena recipients. .......... 18

2. *Hickman* prohibits raiding prosecutorial files. .......... 20

## TABLE OF CONTENTS, con't


3. Speculative need cannot pierce the near absolute immunity of opinion work product. ............................ 22

III. This Court has jurisdiction under the collateral-order doctrine. ............................ 24

A. The federal rules consistently distinguish between litigating parties and non-party subpoena recipients. ......... 24

B. Procedural designations in an appellate forum do not alter substantive status below. ............................ 25

C. Non-party categorical interests outweigh *Mohawk*'s party-centric rule. ............................ 25

IV. Mandamus relief is appropriate. ............................ 28

A. This case is the unique circumstance that allows mandamus relief. ............................ 28

B. Contempt directives, laches, and temporal rules do not bar mandamus to correct severe, ongoing federalism injuries. ............................ 30

C. Alternatively, the Court should exercise its supervisory authority to order dismissal of the underlying case or vacate the discovery order. ............................ 32

CONCLUSION ............................ 34

CERTIFICATE OF SERVICE ............................ 35

CERTIFICATE OF COMPLIANCE ............................ 36

# TABLE OF AUTHORITIES

**Cases** **Page**

*Atchison v. City of Tulsa,* 344 F.R.D. 28 (N.D. Okla. 2023) .................... 19

*Alfred v. Duhe,* No. 6:24-CV-00274, 2025 WL 3766412 (W.D. La. Dec. 30, 2025) .................... 22

*A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n,* 233 F.3d 895 (5th Cir. 2000) .................... 26, 27

*Ayestas v. Stephens*, 817 F.3d 888 (5th Cir. 2016), *vacated on other grounds sub nom., Ayestas v. Davis*, 584 U.S. 28 (2018) .................... 11

*Banister v. Davis*, 590 U.S. 504 (2020) .................... *passim*

*Bankers Tr. Co. v. Mallis,* 435 U.S. 381 (1978) .................... 4

*Bannister v. Armontrout*, 4 F.3d 1434 (8th Cir. 1993) .................... 8

*Blystone v. Horn*, 664 F.3d 397 (3d Cir. 2011) .................... 8, 9

*Branch v. Phillips Petroleum Co.,* 638 F.2d 873 (5th Cir. Unit A Mar. 1981) .................... 27

*Calderon v. Thompson*, 523 U.S. 538 (1998),.................... 31

*Cates v. LTV Aerospace Corp.,* 480 F.2d 620(5th Cir. 1973) .................... 27

*Charles v. Daley*, 799 F.2d 343 (7th Cir. 1986).................... 3

*Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367 (2004) .................... 28, 32

*Doubleday v. Ruh,* 149 F.R.D. 601 (E.D. Cal. 1993).................... 22

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1981) .................... 5

*Foley v. Connelie,* 435 U.S. 291 (1978).................... 16

*Ford v. Elsbury*, 32 F.3d 931 (5th Cir. 1994).................... 6

## TABLE OF AUTHORITIES, con't

**Cases, con't** **Page**

*Frew v. Young*, 992 F.3d 391 (5th Cir. 2021) ........ 6, 25

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ........ 23

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ........ 7, 8

*Graham v. Richardson,* 403 U.S. 365 (1971) ........ 16

*Harrington v. Richter*, 562 U.S. 86 (2011) ........ 31

*Hickman v. Taylor*, 329 U.S. 495 (1947) ........ 18, 21

*Howard v. United States*, 533 F.3d 472 (6th Cir. 2008). ........ 8, 9

*Ibarra v. Harris County*, No. 3:06-CV-0012, 2007 WL 9723645 (S.D. Tex. Nov. 16, 2007) ........ 21

*In re Avantel, S.A.*, 343 F.3d 311 (5th Cir. 2003). ........ 33

*In re Dallas Morning News Co.*, 916 F.2d 205 (5th Cir. 1990) ........ 25

*In re Dresser Indus., Inc.*, 972 F.2d 540 (5th Cir. 1992) ........ 28

*In re Gee*, 941 F.3d 153, 158 (5th Cir. 2019) ........ 28, 29

*In re Grand Jury Investigation*, 599 F.2d 1224 (3d. Cir. 1979) ........ 23

*In re Hubbard,* 803 F.3d 1298 (11th Cir. 2015) ........ 27

*In re JPMorgan Chase & Co,* 916 F.3d 494 (5th Cir. 2019) ........ 32

*In re Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023), ........ 33

*In re Murphy,* 560 F.2d 326 (8th Cir. 1977) ........ 23

*In re Nw. Senior Housing Corp.,* 661 B.R. 345 (Bankr. N.D. Tex. 2024) ........ 21

## TABLE OF AUTHORITIES, con't

**Cases, con't** **Page**

*In re Paxton*, 60 F.4th 252 (5th Cir. 2023). .......... 29

*In re Ryan*, 88 F.4th 614 (5th Cir. 2023) .......... 30

*In re United States*, 397 F.3d 274 (5th Cir. 2005) .......... *passim*

*Klein v. Jefferson Parish School Board,* No. 2:02-CV-3401, 2003 WL 1873909 (E.D. La. Apr. 10, 2003) .......... 22

*Leonard v. Martin,* 38 F.4th 481 (5th Cir. 2022) .......... 26, 27, 30

*McClesky v. Kemp,* 481 U.S. 279 (1987). .......... 17

*Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100 (2009) .......... 26

*Osterneck v. Earnst & Whinney*, 489 U.S. 169 (1989) .......... 3

*Parker v. Hooper,* 171 F.4th 736 (5th Cir. 2026) .......... 5

*Plyler v. Doe,* 457 U.S. 202 (1982) .......... 16

*Portis v. First Nat. Bank of New Albany*, 34 F.3d 325 (5th Cir. 1994) .......... 15

*Rivers v. Guerrero*, 605 U.S. 443 (2025) .......... 7

*Shinn v. Ramirez*, 596 U.S. 366 (2022) .......... 31

*Shoop v. Twyford,* 596 U.S. 811 (2022) .......... 11

*Spinkellink v. Wainwright*, 578 F.2d 582 (5th Cir. 1978) .......... 17

*Thomas v. Lumpkin,* 995 F.3d 432 (5th Cir. 2021) .......... 7

*United Natural Foods, Inc. v. NLRB*, 138 F.4th 937 (5th Cir. 2025) .......... 13

## TABLE OF AUTHORITIES, con't

**Cases, con't** **Page**

*United States v. Armstrong*, 517 U.S. 456 (1996) ........................... *passim*

*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984).................... 22

*United States v. Chem. Found., Inc.*, 272 U.S. 1 (1926) ......................... 14

*United States v. Gordon*, 151 F.4th 1090 (9th Cir. 2025)......................... 9

*United States v. Hammond*, 605 F.2d 862 (5th Cir. 1979) ..................... 32

*United States v. Martin*, 831 F. App'x 152 (5th Cir. 2020)..................... 26

*United States v.* Nobles, 422 U.S. 225, 238 (1975) ................................ 20

*United States v. Rodgers*, 2022 WL 1074013 (E.D. Tex. Apr. 8, 2022) .......................................................................................... 20

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020). ......................... 12

*Uranga v. Davis*, 893 F.3d 282, 284 (5th Cir. 2018)............................... 10

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443 (5th Cir. 2019) ............................................................ 26, 30

*Vielma v. Eureka Co.*, 218 F.3d 458 (5th Cir. 2000) ................................ 5

*Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018)............ 26

*Wilmington Sav. Fund Soc'y, FSB v. Myers*, 95 F.4th 981 (5th Cir. 2024) ............................................................................................ 2

**Statutes**

28 U.S.C. § 1291 ................................................................................ 3, 25

28 U.S.C. § 2244(b) ........................................................................... 2, 10

## TABLE OF AUTHORITIES, con't

**Statutes, con't** **Page**


28 U.S.C. § 2244(b)(1) .......... 7

28 U.S.C. § 2244(b)(2) .......... 7

28 U.S.C. § 2253(c) .......... 4

28 U.S.C. § 2254 .......... 6, 11

28 U.S.C. § 2254(e)(2) .......... 11, 12

28 U.S.C. § 2254(e)(2)(B) .......... 12

28 U.S.C. § 2254(e)(2)(B)(ii) .......... 12

28 U.S.C. § 636(b)(1)(A) .......... 24


**Rules**


FED. R. APP. P. 4(a) .......... 4, 25

FED. R. APP. P. 4(a)(1)(A) .......... 3, 4

FED. R. APP. P. 4(a)(4)(A)(iv) .......... 2

FED. R. APP. P. 4(a)(4)(B)(ii) .......... 5

FED. R. APP. P. 4(a)(7)(A)(ii) .......... 4

FED. R. CIV. P. 15(a) .......... 5

FED. R. CIV. P. 26 .......... 18, 19

FED. R. CIV. P. 45 .......... 18

FED. R. CIV. P. 45(a)(3) .......... 24

FED. R. CIV. P. 45(a)(4) .......... 19, 24

## TABLE OF AUTHORITIES, con't

**Rules, con't** **Page**

FED. R. CIV. P. 45(d)(1) .......... 19, 24

FED. R. CIV. P. 45(e)(2)(A) .......... 19

FED. R. CIV. P. 58 .......... 4

FED. R. CIV. P. 59(d) .......... 6

FED. R. CIV. P. 59(e) .......... *passim*

FED. R. CIV. P. 60(b)(2) .......... 6, 7

FED. R. CIV. P. 60(b)(6) .......... 1, 9

FED. R. CIV. P. 62 .......... 4

FED. R. CIV. P. 62(a) .......... 3, 4

FED. R. CIV. P. 62(b) .......... 4

FED. R. CIV. P. 62 advisory committee's note to 2018 amendment .......... 4

FED. R. CIV. P. 72(a) .......... 24

FED. R. CIV. P. 81(a)(4) .......... 6

Rule 12 of the Rules Governing Section 2254 Cases .......... 6

**Treatises**

11 Wright & Miller, Federal Practice & Procedure § 2810.1 (3rd ed. 1973) .......... 5

# ARGUMENT

The Harris County District Attorney's Office ("HCDA") replies to make clear what Carlos Ayestas's response obscures: the discovery order is built on jurisdictional defects, misapplied habeas doctrine, and incursions on privilege. The district court lacked authority to entertain Ayestas's successive filings or authorize merits discovery. This Court possesses collateral-order and mandamus jurisdiction to remedy those errors.

## I. The district court lacked jurisdiction because the 2015 and 2021 filings were second-or-successive petitions.

The district court entered judgment in November 2014. ROA.968, 984. Ayestas's January 2015 filing raised new claims post-judgment, ROA.1159–66, making it successive under AEDPA. Ayestas's February 2021 motion, filed pursuant to Federal Rule of Civil Procedure 60(b)(6), relitigated that jurisdictional issue. ROA.1348. Because the Rule 60(b)(6) motion did not challenge any defect in the federal proceedings but instead sought to reopen the judgment to present new claims, it too was successive.

The district court's reliance on *Banister v. Davis*, 590 U.S. 504 (2020), to reverse its prior jurisdictional ruling was incorrect. AEDPA

required Ayestas to obtain authorization under 28 U.S.C. § 2244(b), and because he did not, the court lacked jurisdiction to revive the case or order the merits discovery at issue. *See* HCDA Br. 61–69.

### A. Rule 59(e) motions do not defer finality for post-judgment amendments.

Ayestas's theory—that any filing submitted while a timely Federal Rule of Civil Procedure 59(e) motion is "pending" cannot be successive (Ayestas Br. 5, 17–19)—stretches *Banister* past its holding. It conflicts with the federal rules, creating a loophole to avoid the requirements of § 2244(b) and preventing finality.

In *Banister*, the Supreme Court tied the suspension of finality to a narrow procedural context: the "filing of a Rule 59(e) motion within the 28-day period 'suspends the finality of the original judgment' for purposes of an appeal." 590 U.S. at 508 (citation omitted); *accord* FED. R. APP. P. 4(a)(4)(A)(iv); *Wilmington Sav. Fund Soc'y, FSB v. Myers,* 95 F.4th 981, 982 (5th Cir. 2024). *Banister* clarified that Rule 59(e) motions are consistent with habeas practice, but only when filed within the 28-day statutory period. 590 U.S. at 516, 519 (Rule 59(e) is "backward-looking" remedy in "fixed 28-day window" to address "matters properly encompassed" with "no extensions"). It did not transform an entered,

final judgment into a "provisional" judgment, allowing additional filings outside the 28-day window while the initial motion is pending. *See Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986) ("The time limit would be a joke if parties could continually file new motions, preventing the judgment from becoming final."). *Banister* simply recognized the need to suspend appellate finality while the district court determines whether to amend or alter its judgment. *Id.* at 508–09.

This comports with the purpose and effect of the federal rules, which give district courts the chance "to rectify" mistakes "in the period immediately following" their decision. *Id.* at 508. It also implements the finality requirement of 28 U.S.C. § 1291 by preventing notice of appeal until the district court has an opportunity to dispose of motions that seek to amend or alter a final judgment. *Osterneck v. Earnst & Whinney*, 489 U.S. 169, 173–74 (1989).

But this opportunity for correction is limited. The time for filing a Rule 59(e) motion is 28 days. FED. R. CIV. P. 59(e). The time for filing a notice of appeal is 30 days. FED. R. APP. P. 4(a)(1)(A). Enforcement of the judgment is stayed automatically for 30 days only. FED. R. CIV. P. 62(a). This stay accommodates the 28-day window for post-trial motions and

coincides with the appellate timeline. *See* FED. R. APP. P. 4(a); FED. R. CIV. P. 59(e); FED. R. CIV. P. 62 advisory committee's note to 2018 amendment. After the stay expires, judgment is enforceable absent an additional stay. *See* FED. R. CIV. P. 62(a)–(b).[1] The interplay between these rules—and the deadlines they impose—cut against Ayestas's expansive interpretation of *Banister*.

Ayestas's 2014 judgment was final in both form and substance, complying with Federal Rule of Civil Procedure 58 and evincing the court's intent that judgment be effective immediately. *See* FED. R. CIV. P. 58; *Bankers Tr. Co. v. Mallis,* 435 U.S. 381, 387 (1978). As Ayestas concedes (Ayestas Br. 5), it started the clock to file post-judgment motions or notice of appeal. *See* FED. R. CIV. P. 59(e), 60(c)(1); FED. R. APP. P. 4(a)(1)(A), 4(a)(7)(A)(ii).[2] The clock could not begin on that date if judgment was not final.

---

[1] *Banister,* 590 U.S. at 507–08, addressed appellate finality, not the trial court's enforcement power. This accords with Federal Rule of Civil Procedure 62, which operates on the premise that final judgments are immediately operable. If a pending Rule 59(e) motion stripped a judgment of its enforceability, Rule 62 would be rendered moot.

[2] Although Federal Rule of Appellate Procedure 4 governs the timing of a notice of appeal, the right of a petitioner seeking to initiate an appeal of the dismissal of a habeas corpus petition is governed by certificate of appealability requirements. 28 U.S.C. § 2253(c).

Federal Rule of Civil Procedure 15(a) and Appellate Rule 4(a)(4)(B)(ii) support this conclusion. Ayestas's 2014 judgment terminated his right to amend pleadings under Rule 15(a). While Rule 15(a) endows a district court with "virtually unlimited discretion" to allow amendments before judgment, "that discretion narrows considerably after entry of judgment." *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000) (citation omitted). Post-judgment amendment can only occur once the judgment itself is vacated. *Id.* (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981)); *see also* 11 Wright & Miller, Federal Practice & Procedure § 2810.1 (3rd ed. 1973). Rule 4(a)(4)(B)(ii) bolsters this conclusion, providing that appellants must file a separate notice of appeal to challenge the denial of post-judgment motions. FED. R. APP. P. 4(a)(4)(B)(ii).

The district court's 2014 "Final Judgment" was not provisional but an operable, immediately appealable final judgment. *See Parker v. Hooper,* 171 F.4th 736, 743 (5th Cir. 2026) ("We take the district court's entry of 'Final Judgment' literally and construe it as a 'final,' appealable judgment."); *see id.* at 744 ("But common sense compels us to acknowledge that the district court's Final Judgment was in fact final.").

### B. Ayestas's 2015 filing was untimely and constitutes a successive application.

Ayestas's 2015 motion was filed far past Rule 59(e)'s inflexible, mandatory 28-day window. *See* FED. R. CIV. P. 59(e). Because the filing was untimely, it cannot be treated as a Rule 59(e) motion; instead, it must be scrutinized as a Rule 60(b)(2) motion. *Frew v. Young*, 992 F.3d 391, 396 (5th Cir. 2021); *Ford v. Elsbury*, 32 F.3d 931, 937 n.7 (5th Cir. 1994) (post-judgment reconsideration filings are categorized strictly based "on the time at which the motion is served").

Ayestas relies on cases interpreting new trial motions under Rule 59 to argue that courts have authority to enlarge the time for amending Rule 59(e) motions. Ayestas Br. 18–20 & n.9. But new trial motions are distinct from motions to alter or amend a judgment. *See* FED. R. CIV. P. 59(d). Moreover, none of the cases he cites grapple with Rule 59 in the habeas context. While the Civil Rules generally govern habeas proceedings, they give way to the extent they are "inconsistent with any statutory provisions or [habeas-specific] rules." Rule 12 of the Rules Governing Section 2254 Cases; *see* FED. R. CIV. P. 81(a)(4); 28 U.S.C. § 2254. Accordingly, any generic case about Rule 59 should give way to specific habeas rules. *See Banister*, 590 U.S. at 511.

Ayestas also attempts to sanitize his 2015 filing by labeling it a "supplement," but the document explicitly requested leave "to amend his original petition to raise important new claims." ROA.1159. Any post-judgment motion seeking to introduce new grounds for habeas relief is, in substance, a successive habeas petition no matter the label. *Rivers v. Guerrero*, 605 U.S. 443, 450–51 (2025); *accord Gonzalez v. Crosby*, 545 U.S. 524, 529–32 (2005) (motions that seek to add new habeas grounds are inherently successive). As such, it must be dismissed unless the petitioner relies on a new, retroactive constitutional rule or new facts showing a high probability of actual innocence. *Id.* at 529–30; 28 U.S.C. §§ 2244(b)(1)–(3). Because the 2015 filing was not a proper Rule 59(e) motion, Ayestas's filing was a Rule 60(b)(2) motion in disguise.[3]

Rule 60(b)(2) requires a showing of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." FED. R. CIV. P. 60(b)(2).[4] Ayestas was

---

[3] Ayestas's reliance on *Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021), is misplaced because *Thomas* involved a timely Rule 59(e) motion that did not seek to introduce new claims.

[4] The purpose of this rule is to encourage pre-judgment diligence. *See* 28 U.S.C. § 2244(b)(2). Indeed, a petitioner's diligence—or (as here) absolute lack thereof—is directly relevant to the successiveness inquiry because it dictates the identity of the post-judgment filing. *Banister*, 590 U.S. at 508.

completely dilatory in this respect, and his late evidence was not filed in in support of a claim previously denied. Instead, it sought to inject a new legal theory, making it a successive petition. *See Gonzalez*, 545 U.S. at 531.

*Banister* did not upset this precedent, reiterating that "courts will not address new arguments or evidence that the moving party could have raised before the decision issued." 590 U.S. at 508. It acknowledged "courts may consider new arguments based on an intervening change in controlling law and newly discovered or previously unavailable evidence," but noted it is "rare for such arguments or evidence to emerge within Rule 59(e)'s strict 28-day timeframe." *Id.* at 508 n.2 (cleaned up). Accordingly, there is a bright line between the types of "new claims" that can and cannot be considered in a Rule 59(e) motion. Ayestas is on the wrong side of it.

Nor did *Banister* reject successive treatment for claim-adding motions when it overturned *Bannister v. Armontrout*, 4 F.3d 1434, 1445 (8th Cir. 1993), and "sided with" *Blystone v. Horn*, 664 F.3d 397, 412–15 (3d Cir. 2011), and *Howard v. United States*, 533 F.3d 472, 473–76 (6th Cir. 2008). *Armontrout* was overruled because it stood for the proposition

that *all* Rule 59(e) motions—even those merely seeking error-correction of adjudicated claims—should be treated as successive. *Banister*, 590 U.S. at 514–15. In siding with *Blystone* and *Howard*, the Supreme Court protected the traditional, backward-looking function of Rule 59(e) to correct errors in the *existing* record without triggering AEDPA's gatekeeping mechanisms, rather than labeling them successive as a matter of course. *Id.* at 519–20.

Finally, Ayestas posits that ruling against his position creates a circuit split with the Ninth Circuit in *United States v. Gordon*, 151 F.4th 1090, 1104–06 (9th Cir. 2025), which adopted his expansive reading of *Banister*. Ayestas Br. 20–21. To the extent *Gordon* holds that any filing submitted while a post-judgment motion is pending is automatically non-successive, *Gordon* conflicts with *Banister*. *See Banister*, 590 U.S. at 508 & n.2. This Court should decline to follow *Gordon* down a path that upends post-judgment finality.

### C. The 2021 motion was an impermissible successive attack on a valid jurisdictional refusal.

Ayestas's 2021 Rule 60(b)(6) motion fares no better. Ayestas does not defend the substantive correctness of the district court's order. He argues only about its classification. Ayestas Br. 22–24. But classification

cannot cure the jurisdictional defect: without authorization under § 2244(b), the district court lacked power to reopen the judgment or entertain the claims, regardless of labels. *See Gonzalez*, 545 U.S. at 529–32.

Ayestas's 2021 motion did not attack a merits-based refusal to amend; it attacked the district court's jurisdictional determination. ROA.1243–44 (rejecting 2015 filing as successive). The original defect in the filing—its untimely attempt to introduce new claims—remained unchanged. The district court treated *Banister* as having retroactively changed the jurisdictional consequences of that 2015 ruling. ROA.1609–17, 1873–74, 2319, 2329–30. But *Banister* did no such thing. Nor did it alter AEDPA's rule that new habeas claims raised after judgment are successive. Ayestas's 2021 motion was an impermissible successive attack.[5]

[5] *Uranga v. Davis* is distinguishable because there the defendant filed a post-judgment motion seeking reconsideration of a denied *pre-judgment* motion to amend his § 2254 application. 893 F.3d 282, 284 (5th Cir. 2018). Thus, Uranga did not seek to inject new grounds for relief post-judgment. *Id.* In contrast, Ayestas's 2021 motion targeted the district court's denial of his 2015 motion that presented new claims after final judgment. ROA.1148, 1563. Seeking to undo a prior post-judgment successiveness ruling is fundamentally different from the posture in *Uranga*.

## II. Even assuming jurisdiction, the discovery order was improper.

### A. Discovery is barred by 28 U.S.C. § 2254.

As amicus curiae TDCJ cogently argued, 28 U.S.C. § 2254(e)(2) independently barred the district court's discovery order because Ayestas was not diligent in developing his claims in state court. TDCJ Br. 13–15.

Under *Shoop v. Twyford*, a court must evaluate at the outset whether the evidence sought via discovery could be lawfully considered under AEDPA. 596 U.S. 811, 820 (2022). This threshold question must be resolved before the court can authorize discovery. *Id.* Ayestas cannot overcome this statutory bar because this Court has already ruled that he failed to exercise reasonable diligence. *Ayestas v. Stephens*, 817 F.3d 888, 900–01 (5th Cir. 2016), *vacated on other grounds sub nom., Ayestas v. Davis*, 584 U.S. 28 (2018).

Additionally, Ayestas's representations concerning diligence cannot be reconciled with the record or his own prior briefing. The district court found diligence only in Ayestas's return to state court after *Banister*, not diligence in discovering the Siegler Memorandum. ROA.1614–15. In granting discovery, the court stated that Ayestas raised a "genuine question" about discoverability. ROA.2320–21. Neither determination

constitutes a diligence finding under § 2254(e)(2). In his panel brief Ayestas admitted that "the district court has not even ruled on" issues related to his diligence. ECF 37, p. 53. His current assertion is irreconcilable with his earlier admission or the record.

Moreover, the discovery Ayestas seeks has no connection to the limited classes of evidence that § 2254(e)(2)(B) permits. Section 2254(e)(2)(B) allows new evidence only where the petitioner can show, by clear and convincing evidence, that no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2)(B)(ii). The charging memoranda from hundreds of unrelated prosecutions do not bear on whether he committed capital murder, only on prosecutorial charging decisions.

Finally, Ayestas's procedural objections based on forfeiture and the party-presentation principle are incorrect. That principle prevents surprise rulings on unbriefed theories; it does not hamstring an appellate court from directing the parties to address dispositive statutory guardrails. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). Reversing the discovery order by adopting a statutory framework fully briefed by an amicus fits squarely within traditional adversarial boundaries. *United Natural Foods, Inc. v. NLRB*, 138 F.4th 937, 950 (5th

Cir. 2025). This Court acted entirely within its inherent authority when it issued an order for supplemental briefing to address these mandatory limitations. *See* ECF No. 130.

### B. *Armstrong* forecloses merits discovery.

*United States v. Armstrong*, 517 U.S. 456 (1996), independently forecloses Ayestas's request for merits discovery. *Armstrong* establishes a mandatory threshold before a court may compel disclosure of internal prosecutorial deliberations. Far from permitting discovery here, *Armstrong* bars it.

#### 1. The record contains no direct admission of discrimination to evade *Armstrong*.

To obtain discovery into prosecutorial decision-making, a claimant must present "some evidence" of both discriminatory effect and discriminatory intent. *Id.* at 469. Ayestas utterly failed to meet this high bar. *See* HCDA Br. 47–52.

Instead, Ayestas attempts to evade *Armstrong* by framing the Siegler Memorandum as a "direct admission" of discriminatory intent which he argues is an exception to *Armstrong*'s rule. Ayestas Br. 36–37. It is no such thing. *Banister* simply reserved the question of whether the comparator requirement would apply "in a case involving direct

admissions by prosecutors of discriminatory purpose." *Id.* at 469 n.3.

Furthermore, nothing in the record fits this hypothetical category. To dispel the foundational presumption that a prosecutor has not violated the Equal Protection Clause, a claimant must present "clear evidence to the contrary." *Armstrong*, 517 U.S. at 465 (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)). This "presumption of regularity supports the official acts of public officers," and in the absence of clear evidence on the face of the record, courts must presume that prosecutors properly discharged their official duties. *Chem. Found.*, 272 U.S. at 14–15.

The Siegler Memorandum admits nothing. Although the document contains an initial notation referencing Ayestas's lack of citizenship, that notation was crossed out and superseded by the actual rationale for seeking the death penalty: Ayestas was the killer; his cooperating co-defendants were not. ROA.8090–92; *see In re United States*, 397 F.3d 274, 284 (5th Cir. 2005) (finding similar justification sufficient to block discovery under *Armstrong*). Because an observer must rely on speculation and inferences to find an improper motive, the document is not direct evidence. *See Portis v. First Nat. Bank of New Albany*, 34 F.3d

325, 328–29 (5th Cir. 1994) ("direct evidence is evidence which, if believed, proves the fact [of intentional discrimination] without inference or presumption"). The Siegler Memorandum does not clear this threshold.

This Court has applied *Armstrong* to the exact materials at issue here: core prosecutorial work product. In *In re United States*, 397 F.3d at 285, this Court granted mandamus relief from a trial court order requiring the government to "reveal its capital-charging practices 'inclusive of this case but not this case exclusively,'" after it asserted work-product privileges against the orders. This Court held that forcing the government to produce its internal, privileged data concerning its exercise of death-penalty discretion was clear legal error. *Id.* at 285 ("[S]haring a charge alone does not make defendant 'similarly situated' for purposes of a selective prosecution claim. A much stronger showing . . . is required.").

### 2. Citizenship status would not amount to constitutionally forbidden discrimination.

Even if citizenship or immigration status had been considered, it would not constitute constitutionally forbidden discrimination under the selective-prosecution doctrine. Ayestas collapses multiple distinct

classifications—national origin, ethnicity, immigration status—into a single protected category. But these categories are treated differently under the Equal Protection Clause. Only one category related to immigration status—lawfully admitted resident aliens—triggers strict scrutiny. *Graham v. Richardson*, 403 U.S. 365, 371 (1971).

The Supreme Court has recognized exceptions to even that principle: states may restrict participation in political functions to citizens under rational-basis review, *Foley v. Connelie*, 435 U.S. 291, 295–96 (1978), and undocumented aliens do not fall within the suspect class recognized in *Graham*, *Plyler v. Doe*, 457 U.S. 202, 219 (1982). Ayestas's undocumented alien status does not place him within any suspect class, and he cannot place himself into a suspect classification by relabeling undocumented status as racial or national-origin discrimination.

### 3. *Armstrong* applies to Eighth Amendment claims.

*Armstrong* applies to any selective-charging claim seeking discovery into prosecutorial decision-making whether categorized as an Equal Protection or Eighth Amendment claim. A contrary rule would enable petitioners to circumvent *Armstrong* by relabeling their claims. The Supreme Court grounded its rule in separation-of-powers concerns:

discovery into charging decisions diverts governmental resources, exposes internal strategies, and intrudes upon the prosecutorial function. *Armstrong*, 517 U.S. at 464–68. Those structural concerns exist in post-conviction habeas litigation just as acutely as in pre-trial criminal cases.

Ayestas's reliance on the Eighth Amendment also misconstrues this Court's precedent. Since *Spinkellink v. Wainwright*, 578 F.2d 582, 604–06 (5th Cir. 1978), this Court has recognized that when a state's capital sentencing scheme is facially valid and provides adequate statutory channels, the prosecutor's exercise of charging discretion within that scheme is presumed constitutional. It cannot be attacked as inherently "arbitrary" or "capricious." *Id.*

Furthermore, the Eighth Amendment does not require comparative proportionality across cases or permit a petitioner to weaponize general allegations of disparity to intrude upon prosecutorial choice. *McClesky v. Kemp,* 481 U.S. 279, 306–07 (1987). Statistical or systemic allegations—especially speculative ones—cannot support an Eighth Amendment claim of arbitrariness justifying discovery, absent evidence meeting extraordinarily high burdens. *Id.* at 292–94. Statistical evidence of racial disparity is generally insufficient *per se* to support an inference of an

"unacceptable risk" of discrimination in capital administration. *Id.* at 294–97. Because Ayestas cannot point to unconstitutional arbitrariness in his own charging decision, his claim fails and cannot serve as a backdoor vehicle for invasive discovery.

### C. The common law work-product doctrine and Rule 45 protect the compelled materials.

Ayestas's asserts that HCDA cannot invoke work-product protection because Federal Rule of Civil Procedure 26 applies only to parties. Ayestas Br. at 28–31. That premise is faulty because HCDA is not relying on Rule 26 but invoking the common-law doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947).[6]

#### 1. Rule 45 protects non-party subpoena recipients.

*Hickman* does not restrict its protection to parties, and nothing in the Civil Rules abrogates the common-law privilege for non-party subpoena recipients. Federal Rule of Civil Procedure 45 confirms this structural reality, repeatedly distinguishing between "a party" who issues the subpoena and "the person to whom it is directed." *See, e.g.,*

[6] Ayestas's claim that HCDA's lack of a detailed privilege log defeats the privilege (Ayestas Br. 32–33) is a procedural fallacy born of his own corner-cutting. A privilege log was not generated as to the opinion work-product in Ayestas's case file because Ayestas did not subpoena it—he jumped straight to a motion to compel with no prior notice. ROA.2985–90, 3116–27, 3152.

FED. R. CIV. P. 45(a)(4), 45(d)(1). HCDA fits squarely in Rule 45's category of persons subject to the subpoena and not a party.

Rule 45 also recognizes that non-parties may withhold privileged material, providing that "a person withholding subpoenaed information under a claim of privilege must expressly make the claim." FED. R. CIV. P. 45(e)(2)(A). This presupposes that non-party privilege assertions exist and that courts are required to decide them. Ayestas's argument that Rule 45's text "doesn't change Rule 26's limitation of work-product protection to parties" (Ayestas Br. 30) misunderstands the rules. Rule 45 operates independently, confirming that Rule 26 is not the exclusive source of work-product protection.

*Atchison v. City of Tulsa,* supports this interpretation, reasoning that non-party prosecutors can assert work-product protection because Rule 45's use of "person" reflects a category of non-party privilege holders protected by common-law work-product doctrine. 344 F.R.D. 28, 33–34 (N.D. Okla. 2023). Ayestas's assertion that unproven misconduct allegations make *Atchison* "inapplicable" (Ayestas Br. 29) misunderstands the distinction between the existence of the privilege and piercing it. Misconduct allegations—unproven and directed solely at

one prosecution—do not erase *Hickman*'s protection across hundreds of unrelated files. Yet that is precisely the expansion the magistrate judge adopted: a single allegation dissolves protection for hundreds of HCDA's capital-charging memoranda. ROA.3177–78.[7] Work-product protections should not turn on the ease with which a petitioner can level an allegation.

### 2. *Hickman* prohibits raiding prosecutorial files.

Ayestas attempts to diminish *Hickman*'s relevance by arguing that HCDA's candid prosecutorial deliberations cannot be chilled because the underlying prosecutions have ended. Ayestas Br. 29–30. The Supreme Court has rejected this argument, explaining that robust work-product protection is "vital" to the proper functioning of the criminal justice system. *United States v. Nobles*, 422 U.S. 225, 238 (1975); *see Armstrong*, 517 U.S. at 465 (forcing the government to expose its internal files "threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness"). The instant proceedings contradict

[7] *United States v. Rodgers*, 2022 WL 1074013, at *7 (E.D. Tex. Apr. 8, 2022), does not dictate otherwise because it addressed limited, case-specific materials where alleged misconduct was intertwined with contemporaneous mental impressions about that particular prosecution.

Ayestas's claim that work-product protections evaporate because his case is "over." Indeed, the types of cases for which these documents are prepared can be litigated for many decades through the misuse of habeas litigation.

Moreover, Ayestas argument omits the doctrine's central purpose: safeguarding an attorney's mental impressions so lawyers can think, strategize, and write candidly. Courts applying common-law privilege routinely recognize that forced disclosure deters honest evaluation. *See, e.g., In re Nw. Senior Housing Corp.*, 661 B.R. 345, 360 (Bankr. N.D. Tex. 2024) (citing *Hickman*, 329 U.S. at 511). The deterrent effect does not turn on whether the specific prosecution is active.[8]

To support his claim that prosecutors' files lose protection upon the conclusion of litigation, Ayestas relies on a handful of distinguishable cases. Ayestas Br. 30. *Ibarra v. Harris County*, No. 3:06-CV-0012, 2007 WL 9723645, at *1 (S.D. Tex. Nov. 16, 2007), stands for the unremarkable

[8] Ayestas argues that HCDA conceded that "there is no distinct work-product privilege for prosecutors; they can assert only the same work-product protection available to any litigant." Ayestas Br. 28. Ayestas misses the point. While the legal mechanics of work-product protection are uniform across litigants, its application to internal prosecutorial deliberations carries constitutional weight. Compelled disclosure of a prosecutor's files directly threatens the separation of powers in a way civil discovery does not. *See, e.g.*, *In re U.S.*, 397 F.3d at 285–86; *Armstrong*, 517 U.S. at 468.

rule that public entities cannot assert blanket immunity over non-segregated files. *Alfred v. Duhe*, No. 6:24-CV-00274, 2025 WL 3766412 (W.D. La. Dec. 30, 2025), and *Klein v. Jefferson Parish School Board*, No. 2:02-CV-3401, 2003 WL 1873909 (E.D. La. Apr. 10, 2003), deal with ordinary work product, not opinion work product. Moreover, *Klein* specifically relates to work product sought in a *related* civil proceeding. *Klein*, 2003 WL 1873909 at *3–4. *Doubleday v. Ruh*, 149 F.R.D. 601, 606 (E.D. Cal. 1993), involved a civil rights lawsuit directed at a prosecutor's handling of one specific case. It did not announce a rule that misconduct allegations in one case authorize a petitioner to rummage through hundreds of unrelated prosecutions. And in *United States v. Arthur Young & Co.*, 465 U.S. 805, 817 (1984), the Supreme Court declined to fashion a brand-new, judge-made "accountant analogue" to the attorney work-product doctrine for independent tax auditors. *Id.* at 817.

#### 3. Speculative need cannot pierce the near absolute immunity of opinion work product.

Ayestas's claim of "compelling need" for HCDA's internal memoranda (Ayestas Br. 31–35) also fails. Compelling need is a narrow exception that principally applies to ordinary work product rather than core mental impressions. Opinion work product, however, enjoys "nearly

absolute immunity." *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977); *see In re Grand Jury Investigation*, 599 F.2d 1224, 1231 (3d. Cir. 1979) (Opinion work product "is the most sacrosanct of all forms of work product."). The materials HCDA seeks to protect—handwritten recommendations by elected officials, deliberative comments, and commentary on culpability and punishment—are at the core of opinion work product. *See Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006) (holding that, where a deputy district attorney alleged he was subjected to employment retaliation for writing a disposition memorandum in which he recommended dismissal, the memorandum was work product).

Ayestas demonstrates no extraordinary circumstances to pierce this immunity. His request is not limited to identified comparators; it seeks internal legal analyses across decades of cases involving different prosecutors, facts, and eras. The suggestion that these memoranda "might" reveal statistical patterns is speculative; *Hickman* does not permit litigants to rummage through mental impressions for possible comparative insights. It is precisely the kind of broad, exploratory intrusion the work-product doctrine forbids.

## III. This Court has jurisdiction under the collateral-order doctrine.

Ayestas's jurisdictional attack depends on collapsing the distinct definitions of a party to the underlying litigation and a party to an appeal. HCDA's non-party status shapes both the inapplicability of 28 U.S.C. § 636(b)(1)(A) and the availability of collateral-order review. HCDA Br. 20–27.

### A. The federal rules consistently distinguish between litigating parties and non-party subpoena recipients.

Federal Rule of Civil Procedure 72(a)'s error-preservation and objection mechanisms bind only "a party," FED. R. CIV. P. 72(a), and HCDA is not one. HCDA Br. 33–41. HCDA is not a litigant in Ayestas's habeas case; it is a third-party subpoena recipient. Rule 45 reinforces this distinction. *See, e.g.*, FED. R. CIV. P. 45(a)(3), 45(a)(4), 45(d)(1). This uniform textual barrier leaves no ambiguity: a non-party subpoena recipient is not a Rule 72 party. HCDA did not—and could not—violate a rule that does not apply to it.

In his work-product argument, Ayestas vigorously contends that HCDA is a non-party and weaponizes that distinction to argue that HCDA cannot invoke Rule 26 work-product protections. Ayestas Br. 28–31. But later, he pivots to argue that HCDA must be treated as a "party"

under Rule 72(a). Ayestas Br. 45–48. The federal rules do not permit such opportunistic, shifting reclassifications. HCDA cannot be a non-party when it suits Ayestas's merits defense and a party when he needs a procedural bar to defeat this appeal.

### B. Procedural designations in an appellate forum do not alter substantive status below.

Ayestas incorrectly argues that because the appellate rules describe notices of appeal and mandamus petitions as actions taken by "parties," HCDA must be treated as a party under Rule 72(a). Ayestas Br. 45–48.

The appellate rules describe a filer as a "party" because any entity that files a notice of appeal or mandamus petition sequentially becomes a party to the appellate proceeding itself. *See* FED. R. APP. P. 4(a); *In re Dallas Morning News Co.*, 916 F.2d 205 (5th Cir. 1990) (non-party newspaper became party in appeal after filing petition for writ of mandamus). That designation has no retroactive effect on the filer's status in the district court. HCDA's filing of a notice of appeal made it a "party" only in this appellate matter.

### C. Non-party categorical interests outweigh *Mohawk*'s party-centric rule.

An appealable collateral order "is a final decision under 28 U.S.C. § 1291." *Frew,* 992 F.3d at 396–97 (citation omitted). As previously

argued, the magistrate judge's order satisfies all three conditions of the collateral-order doctrine. *See* HCDA Br. 21–25.

This Court has repeatedly recognized a distinct non-party privilege exception that permits immediate appellate review where the traditional paths to final judgment are foreclosed. *See, e.g., Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.,* 913 F.3d 443, 448–49 (5th Cir. 2019); *Whole Woman's Health v. Smith,* 896 F.3d 362, 367–68 (5th Cir. 2018); *see also United States v. Martin,* 831 F. App'x 152, 154 (5th Cir. 2020) (reaffirming that the collateral-order doctrine remains available when an "order would disclose confidential third-party information and so [is] unreviewable on appeal").

Ayestas's contrary argument (Ayestas Br. 49–54) rests on *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100 (2009), and Fifth Circuit cases describing the general rule that privilege orders are not immediately appealable. *See, e.g., Leonard v. Martin,* 38 F.4th 481 (5th Cir. 2022); *A-Mark Auction Galleries, Inc. v. Am. Numismatic Ass'n,* 233 F.3d 895 (5th Cir. 2000). Those cases do not govern here.

*Mohawk* expressly relied on categorical analysis; discovery orders targeting a non-party's opinion work-product occupy a different category

than parties' routine attorney-client privilege disputes. In addition, both *A-Mark* and *Leonard* acknowledge exceptions, such as circumstances involving significant privileges and irreversible structural harms—exceptions Ayestas does not address (Ayestas Br. 49–54). *See Leonard,* 38 F.4th at 485; *A-Mark*, 233 F.3d at 897. As the Eleventh Circuit recognized, *Mohawk* "said nothing about the kind of governmental privileges asserted here or any governmental privilege for that matter. Nor did it alter the scope of the collateral order doctrine." *In re Hubbard,* 803 F.3d 1298, 1306 (11th Cir. 2015). Thus, the foundational law of this Circuit remains intact: "one who unsuccessfully asserts a governmental privilege may immediately appeal a discovery order where he is not a party to the lawsuit." *Id.* at 1305 (summarizing cases).

Due to the equities involved, this well-settled rule extends the right of immediate pre-contempt appeal to non-party government entities and executive officials in custody of subpoenaed material. *See, e.g., Branch v. Phillips Petroleum Co.,* 638 F.2d 873, 878–79 (5th Cir. Unit A Mar. 1981); *Cates v. LTV Aerospace Corp.,* 480 F.2d 620, 622 (5th Cir. 1973).

## IV. Mandamus relief is appropriate.

### A. This case is the unique circumstance that allows mandamus relief.

While the hurdles to mandamus relief are demanding, they are not insuperable, particularly where a lower court disregards controlling law. *In re United States*, 397 F.3d at 282. "And in extraordinary cases, mandamus petitions serve as useful safety valves for promptly correcting serious errors." *In re Gee*, 941 F.3d 153, 158 (5th Cir. 2019) (cleaned up). Mandamus is warranted where the district court has exceeded its jurisdiction, or so clearly abused its discretion that prompt appellate intervention is required. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). That is precisely what occurred here.

"Accepted mandamus standards are broad enough to allow the court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 370 (2004). Federal courts have issued the writ to restrain a lower court when its actions would threaten the separation of powers. *See In re United States*, 397 F.3d at 282–83; *Cheney*, 542 U.S. at 381. This Court has recognized that "various courts of appeals have found mandamus appropriate in [issues related to]

discovery orders, and assertions of privilege." *In re United States*, 397 F.3d at 283.

Here, the district court committed jurisdictional error and a clear abuse of discretion. First, it lacked jurisdiction to reopen proceedings because Ayestas's motions were second-or-successive petitions. The court's reopening was contrary to *Banister* and *Gonzalez* and permitted merits-based discovery on claims not properly before the court. Mandamus is appropriate to control "jurisdictional excesses" where courts act "without power," *In re Gee*, 941 F.3d at 158, particularly in cases governed by "well-settled standards" where errors "cannot be rectified as the case progresses," *In re Paxton*, 60 F.4th 252, 260 (5th Cir. 2023).

Second, the discovery orders represent a textbook abuse of discretion. Ayestas conceded he could not meet *Armstrong* without discovery (ROA.2202)—a fatal admission. *Armstrong*, 517 U.S. at 465–68. His inability to identify any similarly situated comparator is independently fatal; HCDA declined to pursue the death penalty against his two co-defendants of the exact same citizenship status, national origin, and race. ROA.2026, 2072–73. Discovery orders that disregard

*Armstrong* and pierce privilege constitute clear error warranting mandamus. *In re United States,* 397 F.3d at 283–84. HCDA's work product is precisely the sort of privileged material this Court has protected via mandamus because "an appeal after disclosure of the privileged communication is an inadequate remedy." *Id*. at 283.

### B. Contempt directives, laches, and temporal rules do not bar mandamus to correct severe, ongoing federalism injuries.

Ayestas's argument that HCDA could rely on contempt review (Ayestas Br. 55) fundamentally misunderstands mandamus doctrine. Forcing a non-party public agency or state official to incur contempt sanctions—with attendant professional and ethical consequences—merely to preserve review is highly disfavored. *See, e.g., Leonard*, 38 F.4th at 492 (Haynes, J. dissenting) ("such an extreme avenue is not always required for nonparties"); *Vantage Health*, 913 F.3d at 449 ("incurring sanctions is risky").

Nor does laches bar relief. Ayestas's Br. 60. Laches requires a showing of both unreasonable delay and undue prejudice. *In re Ryan*, 88 F.4th 614, 628 (5th Cir. 2023). Here, any timeline was driven by the district court's repeated refusal to enforce AEDPA's explicit statutory

barriers—procedural choices that forced extensive satellite litigation and multi-year delays in the execution of Ayestas's sentence.

Moreover, the intrusion on state sovereignty is not comparable to routine discovery disputes. The Supreme Court has repeatedly recognized the profound injury caused by reopening long-final habeas judgments decades later, especially in capital cases. *See Harrington v. Richter*, 562 U.S. 86, 102–03 (2011); *Shinn v. Ramirez*, 596 U.S. 366, 376–78 (2022).

Nor does *Calderon v. Thompson*, 523 U.S. 538 (1998), bar relief. There, the Supreme Court held the Ninth Circuit erred in recalling a mandate because it did not exercise its discretion in a manner consistent with the objects of AEDPA. *Id.* at 554. That is not the case here. The district court's unconstitutional exercise of jurisdiction under AEDPA and its ongoing, overbroad discovery orders inflicting a continuing and severe injury on state sovereignty, satisfy the *Calderon* requirement. *See In re United States,* 397 F.3d at 286–87 (granting mandamus to vacate discovery orders in a death-penalty case after district court disregarded *Armstrong* allowing privileged discovery contrary to law). Mandamus exists precisely to correct such "clear and indisputable" errors. *Cheney,*

542 U.S. at 380–81.

### C. Alternatively, the Court should exercise its supervisory authority to order dismissal of the underlying case or vacate the discovery order.

Ayestas argues that if criteria for a writ are not met, mandamus must be denied. Ayestas Br. 54–60. But that does not end the inquiry.

In *In re JPMorgan Chase & Co.*, this Court confronted an overbroad district court plan that misapplied governing law and threatened to facilitate the unconstitutional stirring up or solicitation of claims. 916 F.3d 494, 503–04 (5th Cir. 2019). Although this Court found the error did not quite establish a clear and indisputable right to a writ, it did not simply walk away. *Id.* at 504. Instead, it utilized its supervisory authority to "correct errant caselaw from district courts under [its] jurisdiction" and "settle new and important problems." *Id.* at 500 n.4, 504.

Issuing a published merits opinion on the legal issues, it declared the holding to be "binding precedent throughout the Fifth Circuit," and explicitly instructed the district court to "revisit its decision in light of this opinion." *Id.* at 504. This Court has long recognized its supervisory power to maintain standards of fair play and correct systemic legal error. *United States v. Hammond*, 605 F.2d 862, 864 (5th Cir. 1979). It utilized

the same approach in *In re Avantel, S.A.*, 343 F.3d 311, 324–25 (5th Cir. 2003).

The structural necessity for supervisory intervention is present here. By authorizing sweeping discovery violating *Armstrong*'s threshold requirements and invading decades of work-product privilege, the district court has effectively leveraged its judicial discretion to authorize the serial habeas litigation AEDPA abjures.

Consequently, even if this Court declines to formally issue a writ of mandamus or recall the mandate in *In re Lumpkin*, No. 23-20169 (5th Cir. July 18, 2023), it should follow the template established in *In re JPMorgan Chase* and *In re Avantel* and publish a binding opinion directing the district court to dismiss the underlying proceedings.

## CONCLUSION

For these reasons, the Harris County District Attorney's Office respectfully requests that this Court dismiss the underlying proceedings or, alternatively, vacate the lower court's order compelling production of its privileged materials.

Respectfully submitted,

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**
Assistant District Attorney
Harris County, Texas
1201 Franklin Street, Suite 600
Houston, Texas 77002
Tel: (713) 274-5816

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been electronically served via the Court's ECF system in compliance with Federal Rules of Appellate Procedure 25(b) and (c), on September 4, 2026, on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitations FED. R. APP. P. 32(a)(7)(B)(ii):

- Exclusive of the exempted portions in FED. R. APP. P. 32(f), this brief contains 6,484 words.

The undersigned certifies that this brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and 5th CIR. R. 32.1, and the type requirements of FED. R. APP. P. 32(a)(6):

- This brief has been prepared in proportionally spaced typeface using Microsoft Word in Century Schoolbook font, with 14 point font for text and 12-point font for footnotes.

The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits, may result in the Court's striking the brief and imposing sanctions.

*/s/ Meagan T. Scott*
**MEAGAN T. SCOTT**
**Counsel for Respondent - Appellant**
**Harris County District Attorney's Office**

Date: September 4, 2026